IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| NJOY, INC.,[1] | Case No. 16-12076 (___) |
| Debtor. | |

**DEBTOR'S MOTION FOR INTERIM AND FINAL ORDERS (I) AUTHORIZING POSTPETITION FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE PRIORITY, (III) AUTHORIZING USE OF CASH COLLATERAL, (IV) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED LENDERS, (V) MODIFYING THE AUTOMATIC STAY AND (VI) SCHEDULING A FINAL HEARING**

NJOY, Inc., the above-captioned debtor and debtor in possession (the "**Debtor**"), moves (the "**Motion**") this Court for entry of for interim and final orders: (i) authorizing the Debtor to obtain senior secured superpriority postpetition debtor in possession financing (the "**DIP Financing**") up to an aggregate principal maximum revolving amount of $6,000,000, pursuant to the terms set forth in an Interim Order substantially in the form attached as <u>Exhibit A</u> (the "**Interim Order**") and the Ratification and Amendment Agreement, in substantially the form attached as <u>Exhibit B</u> (the "**Ratification Agreement**" and together with all other Loan Documents, the "**DIP Financing Agreements**"),[2] by and between the Debtor and FLFC Lending Co. (the "**DIP Lender**"); (ii) authorizing the Debtor to (i) use the cash collateral in which the Agent (defined below) has a security interest (the "**Cash Collateral**") pursuant to sections 361, 362 and 363 of the Bankruptcy Code, and all other collateral in which the Agent holds a security interest pursuant to the Prepetition Financing Agreement (defined below) (the "**Prepetition**

---

[1] The last four digits of the Debtor's federal tax identification number are 6013. The Debtor's mailing address and principal place of business is 15211 N. Kierland Blvd., Suite 200, Scottsdale, Arizona 85254.

[2] Capitalized terms not otherwise defined in this Motion shall have the meanings ascribed to them in the DIP Financing Agreements.

**Collateral**") and (ii) provide adequate protection to the Agent on an interim basis (pending the refinancing of the Roll-Up Obligations (defined below)) and to the Prepetition Secured Lenders (defined below); (iii) approving certain stipulations by the Debtor with respect to the Prepetition Financing Agreement; (iv) subject to entry of an order granting the relief requested in this Motion on a final basis (the "**Final Order**"), authorizing the Debtor to grant first priority priming, valid, perfected and enforceable Liens pursuant to section 364(d), subject only to the Carve Out (defined below) and the Permitted Prior Liens (defined below) in favor of the DIP Lender, upon substantially all of the Debtor's real and personal property as contemplated by the DIP Financing Agreements (the "**DIP Collateral**"); (v) subject to entry of the Final Order, granting the DIP Lender a superpriority administrative claim in respect of all obligations under the DIP Financing Agreements (collectively, the "**DIP Obligations**"), subject to the Carve Out; (vi) entering on an interim basis following an interim hearing (the "**Interim Hearing**") the Interim Order (a) authorizing the Debtor, on an interim basis, to borrow under the Ratification Agreement up to the amounts set forth in the budget approved by the DIP Lender (the "**Budget**") and subject to permitted variances to be used for the Debtor's operations in accordance with the Budget, and (b) authorizing the Debtor to use the Cash Collateral and the other Prepetition Collateral; and (vii) scheduling, pursuant to Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), a final hearing (the "**Final Hearing**") for the Court to consider entry of the Final Order authorizing and approving on a final basis the relief requested in this Motion, including without limitation, for the Debtor to utilize the DIP Financing, and for the Debtor to continue to use the Cash Collateral and the other Prepetition Collateral subject to the terms of the DIP Financing Agreements and the Final Order. In support of this Motion, the Debtor relies on the *Declaration of Jeffrey Weiss* (the "**Frist Day Declaration**") and the *DIP*

4555170.2

*Declaration of Jeffrey Weiss* (the "**DIP Declaration**"), and in further support of this Motion, the Debtor respectfully represents and set forth as follows:

## Background

1. On the date hereof (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"). The Debtor continues to operate its business and manage its properties as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in this chapter 11 case. As of the date hereof, no creditors' committee has been appointed.

2. The Debtor is a leading manufacturer and retailer of electronic nicotine delivery systems (ENDS), and is today the largest independent e-cigarette and vaping company in the United States. Additional details regarding the Debtor's business, assets, capital structure, and the circumstances leading to the filing of this case are set forth in the First Day Declaration.

3. The Debtor filed this chapter 11 case because it has concluded that it is unable to reorganize on a stand-alone basis. After months of continued loses and failed out-of-court marketing efforts and refinancing processes, the Debtor has determined that the best way to maximize value for the benefit of all interested parties is a prompt and orderly sale of its business. As more fully discussed in the First Day Declaration, which was filed contemporaneously with this Motion, the conclusion to sell substantially all the Debtor's assets was reached following a lengthy process prior to the Petition Date in which the Debtor considered and explored all reasonable strategic alternatives, including numerous rounds of out-of-court marketing and sales efforts. Additional factual background relating to the Debtor's business, capital structure, and the

commencement of this chapter 11 case is set forth in detail in the First Day Declaration and is incorporated herein by reference.

4. In order to liquidate their business as expeditiously as possible, contemporaneously with the filing of this Motion, the Debtor has filed a motion for approval of a sale, sale procedures and associated deadlines (the "Sale Motion") seeking authority to solicit bids, conduct an auction, and obtain Court approval of a sale of substantially all the Debtor's assets. The Debtor believes that an expedited sale process is necessary to limit its continued losses and obtain the highest and best offer for the Debtor's assets.

### Facts Specific to the Relief Requested

5. As described in the First Day Declaration, after a prolonged period of declining continued losses and financial distress, the Debtor has determined that an orderly sale process of all its assets will yield the greatest recovery to creditors. The DIP Financing, coupled with cash flow from post-petition operations, will permit the Debtor to fund the administration of this chapter 11 case and implement an efficient and orderly sale process within the timeframes and on the terms set forth in the DIP Financing Agreements. Without the DIP Financing, the Debtor will experience an immediate liquidity shortfall and will lack the capital necessary to liquidate in a manner that maximizes creditor recoveries. Approval of the DIP Financing is necessary to implement the proposed sale.

**I.    The Debtor's Prepetition Indebtedness**

6. <u>The Victory Park Facility</u>: On March 4, 2015, the Debtor entered into a Credit Agreement (as amended, restated, modified, supplemented, or replaced from time to time and including all ancillary and related documents, the "**Prepetition Financing Agreement**") with Victory Park Management, LLC, on behalf of the lender parties thereto (the "**Prepetition**

**Secured Lenders**"), for a $12 million revolver commitment (the "**Prepetition Revolver**") and a $10 million term commitment (the "**Prepetition Term Loan**"). The obligations under the Prepetition Financing Agreement are secured on a first priority basis in substantially all of the Debtor's assets (the "**Prepetition Collateral**") pursuant to a Pledge and Security Agreement dated March 3, 2015.

7.  On August 5, 2015, the agent under the Prepetition Financing Agreement sold, assigned, and transferred all of its rights, title, and interest under the Prepetition Financing Agreement to the DIP Lender (the "**Agent**").

8.  As of the Petition Date, the Debtor is indebted under the Prepetition Financing Agreement in the amount of $3,283,893.21 on account of the Prepetition Revolver and $16,103,731 on account of the Prepetition Term Loan.

**II.  The Debtor's Efforts to Obtain DIP Financing**

9.  In connection with the planning for this chapter 11 case, the Debtor and its advisors determined that the Debtor would require the DIP Financing to meet their ongoing liquidity needs pending the sale of substantially all its assets. Without such financing, the Debtor will not be able to liquidate in a manner that maximizes recoveries for creditors. The Debtor's ability to pay their employees and otherwise to finance its sale, is dependent on their ability to obtain and use the funds that would be made available under the DIP Financing Agreements.

10. As set forth in greater detail in the *DIP Declaration* attached as Exhibit C, in addition to seeking financing proposals from the Agent, the Debtor's pre-petition investment banker, Barclays contacted multiple potential third-party lenders, including traditional financial institution lenders and alternative lenders that are active in the debtor in possession financing market to determine whether they would be interested in providing the Debtor with alternative

debtor in possession financing. Barclays had a number of follow-up discussions with the prospective lenders to discuss the Debtor's financing needs and financial situation. Despite these efforts, however, the Debtor was unable to obtain any proposals for debtor in possession financing in the form of unsecured credit repayable as an administrative expense under section 503(b) of the Bankruptcy Code, nor under the terms of sections 364(a) or 364(b) of the Bankruptcy Code.

11. Immediately prior to the filing of this chapter 11 case, when it became evident that the Debtor may pursue a chapter 11 liquidation, the Agent confirmed to the Debtor's advisors that the Agent would not agree to a priming DIP from a third-party lender. Based on prior conversations with potential financing sources and the potential for a priming dispute, Barclays did not believe seeking additional financing proposals in connection with the liquidation scenario would result in additional interest from third-party financing sources without the support and consent of the Agent.

12. Indeed, no third-party lenders indicated that they would be willing to provide postpetition financing to the Debtor on more favorable terms than those negotiated in the Ratification Agreement. Accordingly, the Debtor's management determined, in their sound business judgment, that the liquidity provided by the DIP Financing will allow the Debtor to continue to operate its business until such time as the sale can be completed. The Debtor therefore seeks authorization from the Court to enter into the Ratification Agreement in order to obtain the DIP Financing on an interim basis and final basis.

**III.  The Ratification Agreement**

4555170.2

13. Prior to the Petition Date, the Debtor engaged in good faith, arm's-length negotiations with the DIP Lender, leading to the terms and conditions contained in Ratification Agreement. The significant terms of the Ratification Agreement are as follows:

| Local Rule Requirement | Description of Provision |
|---|---|
| **Borrowers** <br><br> (Local Rule 4001-2(a)(ii)) | NJOY, INC. |
| **Guarantors** <br><br> (Local Rule 4001-2(a)(ii)) | N/A |
| **DIP Lender** <br><br> (Local Rule 4001-2(a)(ii)) | FLFC Lending Company |
| **Administrative Agent** <br><br> (Local Rule 4001-2(a)(ii)) | FLFC Lending Company |
| **Commitment/Availability** <br><br> (Local Rule 4001-2(a)(ii)) | $6,000,000 |
| **Priming** <br><br> (Local Rule 4001-2(a)(ii)) | N/A – prepetition revolving lenders will be providing postpetition financing. |
| **Use of Proceeds** <br><br> (Local Rule 4001-2(a)(ii)) | Debtor will be using loan proceeds in accordance with the budget. |
| **Maturity Date** <br><br> (Local Rule 4001-2(a)(ii)) | December 2, 2016 |
| **Termination Date** <br><br> (Local Rule 4001-2(a)(ii)) | Earliest to occur of (i) December 2, 2016, (ii) the confirmation of a plan of reorganization or liquidation for Borrower in the Chapter 11 Case, (iii) the consummation of the sale or sales of all or substantially all of the Borrower's assets and properties or of all equity interests in Debtor, (iv) the last date Borrower is authorized to Borrow funds under the Credit Agreement pursuant to the Interim Financing Order, unless the Permanent Financing Order has been entered prior to such date, and in such event, then the last date Borrower is authorized to Borrow funds under the Credit Agreement pursuant to the Permanent Financing Order, or (v) the occurrence of an Event of Default. |
| **Interest Rate** <br><br> (Local Rule 4001-2(a)(ii)) | 13% per annum. |

| | |
|---|---|
| **Default Interest** (Local Rule 4001-2(a)(ii)) | n/a |
| **Fees** (Local Rule 4001-2(a)(ii)) | $60,000 (Section 6 of Ratification Agreement) |
| **Security** (Local Rule 4001-2(a)(ii)) | Senior priority liens in Collateral (as defined in the Ratification Agreement). |
| **Priority** (Local Rule 4001-2(a)(ii)) | Priority pursuant to 11 U.S.C. §§ 364(d); (c)(1); (c)(2); (c)(3). |
| **Adequate Protection** (Local Rule 4001-2(a)(i)(E)) | Paragraph 2.6(d)(i), (ii). Replacement liens are granted in Collateral. |
| **Cross-Collateralization** (Local Rule 4001-2(a)(i)(A)) | Section 2.1(a) of Interim Order |
| **Section 552(b)** (Local Rule 4001-2(a)(i)(E)) | Section 5.9 of Interim Order |
| **Carve Out** (Local Rule 4001-2(a)(i)(F)) | Section 2.3 of Interim Order. $25,000 for Debtor's professionals. $10,000 for committee (if any) professionals. |
| **Budget** (Local Rule 4001-2(a)(ii)) | Attached hereto as Exhibit D. |
| **Cash Collateral** (Local Rule 4001-2(a)(ii)) | Section 2.6 of Interim Order. |
| **DIP Collateral** (Local Rule 4001-2(a)(ii)) | Section 2.1 of the Interim Order. |
| **Covenants** (Local Rule 4001-2(a)(ii)) | Section 5.3 of the Ratification Agreement. Compliance with Budget. |
| **Events of Default** (Local Rule 4001-2(a)(ii)) | Section 3 of Interim Order. |
| **Release, Waivers, or Limitation of Rights** (Local Rule 4001-2(a)(i)(B), (C)) | Section 4.5 of Interim Order. |
| **Avoidance Actions** | Section 2.6(d)(i) – Adequate protection liens will only encumber |

4555170.2

| | |
|---|---|
| (Local Rule 4001-2(a)(i)(D) | Avoidance Actions upon entry of Final DIP Order. |

## Jurisdiction

14. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). The statutory predicates for the relief requested herein are sections 105, 361, 362, 363 and 364 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001 and 9014 and Local Rule 4001-2.

## Proposed Adequate Protection and Use of Cash Collateral

15. In addition to the DIP Financing, the Debtor also requires the use of the Prepetition Secured Lenders' Cash Collateral to the extent of the use of the post-petition Revolving Loan proceeds. The Agent has consented to the use of such cash collateral. The proceeds of the DIP Facility (consistent with the Budget) will provide the Debtor with the capital necessary to liquidate their assets in an orderly manner.

16. The Debtor submits that the Agent (on an interim basis until the satisfaction of the Roll-Up Obligations) and the term loan lenders are entitled to receive adequate protection as set forth in the Interim Order pursuant to sections 361, 363, and 364 of the Bankruptcy Code, for and to the extent of any postpetition diminution in the value of its interest in the Prepetition Collateral (including Cash Collateral) resulting from the Debtor's use, sale, or lease of such collateral, the imposition of the automatic stay, and the subordination to the Carve Out and the DIP Financing (collectively, the "**Diminution in Value**").

4555170.2

17.     Accordingly, the Debtor has agreed to provide the Prepetition Secured Lenders and Agent with the following adequate protection:

a. Subject only to the Carve Out, as adequate protection for the use of the DIP Collateral securing the Prepetition Financing Agreement before entry of the Interim Order, the Prepetition Secured Lenders shall receive:

   i. all products and proceeds of the Prepetition Collateral and the DIP Collateral regardless of whether such collateral came into existence prior to the Petition Date which shall be applied first, to reduce the Prepetition Revolver and second, to reduce the DIP Obligations until paid in full;

   ii. replacement liens to the extent of Diminution in Value of the Prepetition Collateral, including replacement liens on all unencumbered assets of the Debtor, which liens will be junior to the Carve Out, the DIP Liens securing the DIP Facility and Permitted Prior Liens, but such replacement liens shall not attach to Chapter 5 Avoidance Actions until the entry of the Permanent Financing Order; and

   iii. superpriority administrative expense claims with respect to all administrative expense claims and unsecured claims against the Debtor and its estate to the extent of Diminution in Value of the Prepetition Collateral, which claims will be junior to the obligations arising under the (i) DIP Liens, (ii) the DIP Superpriority Claim and (iii) the Carve Out.

18.     The proposed forms of adequate protection described above are needed for the purpose of, among other things, protecting the Prepetition Secured Lenders' claims, obligations, and interest in Prepetition Collateral from potential depreciation during the pendency of this chapter 11 case, for so long as such claims exist.

### Basis for Relief

19.     Absent the relief requested herein, the Debtor's ability to conduct an orderly sale of its assets would be jeopardized. The Debtor will be forced to cease operations immediately if it is unable to procure the funds necessary to pay postpetition wages and salaries and payroll

taxes, as well as other expenses required to maintain the Debtor's business through the liquidation.

## I. Approval Under Section 364(c) and (d) of the Bankruptcy Code

20. The Debtor proposes to obtain the DIP Financing by providing to the DIP Lender security interests and liens as set forth above pursuant to section 364(c) of the Bankruptcy Code.

21. The statutory requirement for obtaining postpetition credit under section 364(c) is a finding, made after notice and hearing, that the debtor is "unable to obtain unsecured credit allowable under section 503(b)(1) of [the Bankruptcy Code]." 11 U.S.C. § 364(c). Section 364(c) financing is appropriate when the trustee or debtor in possession is unable to obtain unsecured credit allowable as an ordinary administrative claim. See In re L.A. Dodgers LLC, 457 B.R. 308, 312 (Bankr. D. Del. 2011) (denying motion for authorization to enter into postpetition credit facility where debtors could not prove that they were unable to obtain unsecured credit allowable as an administrative expense); In re Crouse Grp., Inc., 71 B.R. 544, 549 (Bankr. E.D. Pa. 1987) (secured credit under section 364(c)(2) of the Bankruptcy Code is authorized, after notice and hearing, upon showing that unsecured credit cannot be obtained).

22. Courts have articulated a three-part test to determine whether a debtor is entitled to financing under section 364(c) of the Bankruptcy Code. Specifically, courts look to whether:

   a. the debtor is unable to obtain unsecured credit under section 364(b), i.e., by allowing a lender only an administrative claim;

   b. the credit transaction is necessary to preserve the assets of the estate; and

   c. he terms of the transaction are fair, reasonable and adequate, given the circumstances of the debtor-Debtor and the proposed lender.

4555170.2

L.A. Dodgers, 457 B.R. at 312; see In re Ames Dep't Stores, 115 B.R. 34, 37-39 (Bankr. S.D.N.Y. 1990); Aqua Assocs., 123 B.R. 192, 195-96 (Bankr. E.D. Pa. 1991). As is fully set forth below the Debtor has satisfied each of these conditions.

**II.     The Debtor Does Not Have an Alternative to the DIP Financing**

23.     As set forth above, and as the Debtor will show at the Interim Hearing, financing of the type and in the amount needed in this case was not obtainable on an unsecured basis. There were no potential sources of postpetition financing for the Debtor, avoidable on an expedited basis and on reasonable terms, because, among other reasons, third-party financiers would have been required to prime the Agent and the potential lenders approached by Barclays did not have an appetite to engage in a non-consensual priming dispute with the Agent. In these circumstances, "[t]he statute imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable." Bray v. Shenandoah Fed. Sav. & Loan Ass'n (In re Snowshoe Co.), 789 F.2d 1085, 1088 (4th Cir. 1986); see In re Phoenix Steel Corp., 39 B.R. 218, 222 (D. Del. 1984) (concluding the debtor satisfied its burden to show an inability to obtain credit on other terms through time and effort); see also Ames Dep't Stores, 115 B.R. at 37.

24.     A debtor need only demonstrate "by a good faith effort that credit was not available without" the protections afforded to potential lenders by sections 364(c) and 364(d) of the Bankruptcy Code. Snowshoe, 789 F.2d at 1088; see In re Antico Mfg. Co., 31 B.R. 103, 105 (Bankr. E.D.N.Y. 1983). Moreover, where there are few lenders likely to be able and willing to extend the necessary credit to a debtor, "it would be unrealistic and unnecessary to require [the debtor] to conduct . . . an exhaustive search for financing." In re Sky Valley, Inc., 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988), aff'd, 99 B.R. 117 (N.D. Ga. 1989). Thus, the evidence introduced at the Interim Hearing to consider the relief requested in the Interim Order will satisfy the

requirement of section 364(c) of the Bankruptcy Code that alternative credit was not available on an unsecured basis allowable as an administrative claim under section 503(b)(1) of the Bankruptcy Code.

### III. The DIP Financing is Necessary to Preserve the Assets of the Debtor's Estate

25. The Debtor needs immediate access to financing. Access to substantial credit is necessary to meet the day-to-day costs associated with liquidating the Debtor's assets, including funding for employee wages and other costs necessary to operate the Debtor's business until such time as the sale is complete. Access to sufficient cash is therefore critical to the Debtor. In the absence of immediate liquidity, many of the Debtor's employees may refuse to continue providing services to the Debtor, rendering the Debtor unable to operate its business during the sale process. A loss of confidence among employees and other interested parties in the Debtor's ability to access credit at this crucial time would have a material adverse impact on the value of the Debtor's assets in the proposed sale.

26. For these reasons, immediate access to the funds available under the Ratification Agreement is critical to the Debtor. The ongoing smooth operations of the business demands that the Debtor not be delayed in receiving the beneficial effects of the DIP Financing; any substantial delay could have the same impact as denial of this Motion.

### IV. The Terms of the Ratification Agreement Are Fair, Reasonable, and Appropriate

27. The DIP Financing reflects the exercise of the Debtor's sound and prudent business judgment. As described above, the Debtor was not able to obtain alternative financing on an unsecured basis, nor was it able to obtain any financing on terms as favorable to it as the terms negotiated with the DIP Lender. The Agent has consented to the use of cash collateral and priming liens proposed hereunder and will receive adequate protection as outlined above.

4555170.2

Because the Debtor is requesting that the Prepetition Revolver be "rolled-up" into the DIP Financing, no adequate protection need be provided to the Agent from and after the effectuation of the roll-up. In the Debtor's business judgment, the DIP Financing is the best option available for the Debtor to obtain much-needed liquidity in the circumstances of this chapter 11 case.

28. The Ratification Agreement provides that the security interests and administrative expense claims granted to the DIP Lender are subject to the Carve Out. In <u>Ames Dep't Stores</u>, 115 B.R. at 40, the bankruptcy court found that such "carve outs" are not only reasonable, but are necessary to ensure that official committees and Debtor's estate will be assured of the assistance of counsel.

29. The terms and conditions of the Ratification Agreement are fair and reasonable and were negotiated by the parties in good faith and at arm's-length. The interest rate under the Ratification Agreement is within the range of market rates and fair and reasonable in light of the credit profile of the Debtor, the nature and extent of the DIP Collateral, and the business risks associated with lending to the Debtor in this chapter 11 case. Accordingly, the Debtor submits that the DIP Lender should be accorded the benefits of section 364(e) of the Bankruptcy Code.

**V.  Application of the Business Judgment Standard**

30. As described above, after appropriate investigation and analysis, and given the exigencies of the circumstances, the Debtor's management has concluded that alternative credit of the type and in the amount required by the Debtor is not available on an unsecured basis. Bankruptcy courts routinely defer to a debtor's business judgment on most business decisions, including the decision to borrow money, unless such decision fails the arbitrary and capricious standard. See <u>Trans World Airlines, Inc. v. Travelers Int'l AG (In re Trans World Airlines, Inc.)</u>, 163 B.R. 964, 974 (Bankr. D. Del. 1994) (noting that approval of interim loan, receivables

facility, and asset-based facility "reflect[ed] sound and prudent business judgment . . . [was] reasonable under the circumstances and in the best interest of [the debtor] and its creditors"); In re After Six, Inc., 154 B.R. 876, 882 (Bankr. E.D. Pa. 1993) (debtor "is entitled to some free reign in fulfilling its perceived mission of . . . keeping an ongoing business afloat"). Indeed, "[m]ore exacting scrutiny [of the debtor's business decisions] would slow the administration of the Debtor's estate and increase its cost, interfere with the Bankruptcy Code's provision for private control of administration of the estate and threaten the court's ability to control a case impartially." Richmond Leasing Co. v. Capital Bank, N.A., 762 F.2d 1303, 1311 (5th Cir. 1985).

31. In general, a bankruptcy court defers to a debtor's business judgment regarding the need for and the proposed use of funds, unless such decision is arbitrary and capricious. In re Curlew Valley Assocs., 14 B.R. 506, 511-13 (Bankr. D. Utah 1981); see After Six, 154 B.R. at 882-83. Courts generally will not second guess a debtor's business decisions when those decisions involve "a business judgment made in good faith, upon a reasonable basis, and within the scope of [its] authority under the [Bankruptcy] Code." Curlew Valley Assocs., 14 B.R. at 513-14 (footnote omitted).

32. The Debtor has exercised sound business judgment in determining that the DIP Financing is not only appropriate, it is necessary. Furthermore, the Debtor has satisfied the legal prerequisites to borrow under the Ratification Agreement. The terms of the Ratification Agreement are fair and reasonable and are in the best interests of the Debtor's estate. Accordingly, the Debtor should be granted authority to enter into the Ratification Agreement, and borrow funds on the secured basis described above, establish that they should be granted the authority to pursuant to section 364(c) of the Bankruptcy Code, and to take the other actions contemplated by the Ratification Agreement and as requested herein.

33. Without the liquidity provided by the Ratification Agreement, the Debtor would be unable to pay suppliers, employees, and other constituencies that are essential to the orderly wind-down of the business. The Debtor's management has exercised its best business judgment in negotiating the Ratification Agreement that is presently before the Court.

## VI. Use of the Cash Collateral Should Be Approved

34. Under section 363(c)(2) of the Bankruptcy Code, a debtor may not use cash collateral unless "(a) each entity that has an interest in such cash collateral consents; or (b) the court, after notice and a hearing, authorizes such use in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2). The Debtor requires the use of cash collateral to fund their operations in accordance with the DIP Financing Agreement. Indeed, absent such relief, the Debtor's business will be brought to an immediate halt, with damaging consequences for the Debtor and its estate and creditors. The interests of the Prepetition Lenders in the Debtor's cash collateral will be protected by the adequate protection set forth above. Moreover, as noted above, the Agent has consented to the use of cash collateral. Accordingly, as part of the DIP Financing requested in this Motion, the Debtor's request to use cash collateral in the operation of their businesses and administration of this chapter 11 case should be approved.

## VII. The Proposed Adequate Protection Should Be Authorized

35. Section 363(e) of the Bankruptcy Code provides that, "on request of an entity that has an interest in property used ... or proposed to be used by a debtor in possession, the court ... shall prohibit or condition such use ... as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e). Section 361 of the Bankruptcy Code delineates the forms of adequate protection, which include periodic cash payments, additional liens, replacement liens and other forms of relief. 11 U.S.C. § 361. What constitutes adequate protection must be decided

on a case-by-case basis. See MNBank Dall., N.A. v. O'Connor (In re O'Connor), 808 F.2d 1393, 1396-97 (10th Cir. 1987); Martin v. U.S. (In re Martin), 761 F.2d 472, 474 (8th Cir. 1985); In re Shaw Indus., Inc., 300 B.R. 861, 865 (Bankr. W.D. Pa. 2003). The focus of the requirement is to protect a secured creditor from diminution in the value of its interest in the particular collateral during the period of use. See In re Swedeland Dev. Grp., Inc., 16 F.3d 552, 564 (3d Cir. 1994) ("The whole purpose of adequate protection for a creditor is to insure that the creditor receives the value for which he bargained prebankruptcy.") (internal citations omitted).

36. As noted above, as adequate protection for the interests of the Prepetition Secured Lenders, the Debtor will provide the Prepetition Secured Lenders with replacement liens, superpriority claims, and adequate protection payments. In consideration for the adequate protection provided to them, the Agent has consented to the Debtor's use of their cash collateral. Without access to the proposed DIP Financing and use of cash collateral, the Debtor's liquidity will quickly dry up and the Debtor will be forced to cease operations immediately, destroying the value of this estate to the detriment of all creditors. In contrast, the value of the interest of the Prepetition Secured Lenders and the Agent in their collateral will be preserved, if not increased, by the DIP Financing because it ensures a more orderly sale of the business.

37. The adequate protection offered to the Prepetition Secured Lenders and the Agent described above will, taken together, sufficiently protect their interest in any Prepetition Collateral. Accordingly, the adequate protection proposed here is fair and reasonable and sufficient to satisfy the requirements of sections 363(c)(2) and (e) of the Bankruptcy Code.

**VIII.   Request for Modification of Automatic Stay**

38. Section 362 of the Bankruptcy Code provides for an automatic stay upon the filing of a bankruptcy petition. The proposed Ratification Agreement contemplates a modification of the

automatic stay (to the extent applicable), to permit the exercise of all rights and remedies provided for in the Ratification Agreement upon the occurrence and during the continuation of any Event of Default, provided that prior to the exercise of any enforcement remedies against the DIP Collateral, the DIP Lender shall be required to give five (5) days' notice to the Debtor, any official unsecured creditors' committee's counsel, and the U.S. Trustee as provided for in section 3 of the proposed Interim Order. Provisions of this kind allowing for a modification of the automatic stay are typically features of postpetition debtor in possession financing facilities and, in the Debtor's business judgment, are reasonable under the present circumstances.

## IX. Request for Immediate Interim Relief

39. Bankruptcy Rules 4001(b) and 4001(c) provide that a final hearing on a motion to obtain credit may not be commenced earlier than 14 days after the service of such motion. Upon request, however, this Court is empowered to conduct a preliminary expedited hearing on the motion, and to authorize the obtaining and use of credit to the extent necessary to avoid immediate and irreparable harm to a debtor's estate pending a final hearing. In examining requests for interim relief under this rule, courts apply the same business judgment standard applicable to other business decisions. See, e.g., In re Simasko Prod. Co., 47 B.R. 444, 449 (Bankr. D. Colo. 1985). After the 14-day period, the request for financing is not limited to those amounts necessary to prevent destruction of the debtor's business. A debtor is entitled to borrow those amounts that it believes prudent in the operation of its business. See id. at 449; Ames Dep't Stores, 115 B.R. at 36.

40. Pending the Final Hearing, the Debtor requires immediate use of a portion of funds provided for in the Ratification Agreement for, among other things, the Debtor's working capital needs. It is essential that the Debtor immediately has the ability to pay for postpetition

expenses, as well as the prepetition expenses approved in the various first-day orders pending before this Court, to minimize the damage occasioned by their constrained liquidity.

41. Absent immediate use of a portion of the DIP Financing, the Debtor will be unable to pay ongoing operational expenses and will not be able to continue to make payments to key constituencies, such as employee, that will be integral to the sale of the Debtor's business. Consequently, if interim relief is not obtained, the Debtor's assets will be jeopardized immediately and irreparably harmed, to the detriment of the Debtor's estate, its creditors, and other parties in interest.

42. As noted above, the Debtor is unable to obtain unsecured credit allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code in an amount sufficient to effectuate the sale of its operations. Without the DIP Financing, the Debtor's objective of expeditiously selling its assets in an orderly manner may fail. The terms and conditions of the Ratification Agreement are fair and reasonable, and were negotiated by well-represented parties in good faith and at arm's-length. In these circumstances and, importantly, in light of the risk of possible material irreparable harm to the Debtor's operations, the Debtor respectfully submits the granting of the relief requested by this Motion is warranted.

### X. The DIP Financing Should Be Accorded the Benefits of Section 364(e)

43. Because the Ratification Agreement has been negotiated in good faith and at arm's-length and no consideration is being provided to any party for obligations arising under the Ratification Agreement, other than as disclosed therein, the Debtor requests that the Ratification Agreement be accorded the benefits of section 364(e) of the Bankruptcy Code.

## Notice

44. Notice of this Motion will be provided to: (a) the U.S. Trustee; (b) the Agent; (c) the Prepetition Secured Lenders; (d) the 20 largest unsecured creditors of the Debtor; (e) any other entity asserting recorded liens against any of the Debtor's assets, and their counsel, if known; (f) the Internal Revenue Service; and (g) the Securities and Exchange Commission in compliance with Bankruptcy Rules 4001(b) and (c) and the Local Rules. As this Motion is seeking "first-day" relief, within two days of the hearing on this Motion, the Debtor will serve copies of this Motion and any order entered in respect of this Motion as required by Local Rule 9013-1(m). The Debtor respectfully submits that, in light of the nature of the relief requested, no other or further notice need be given.

WHEREFORE, the Debtor respectfully requests that this Court enter the Interim Order, substantially in the form attached hereto as Exhibit A, granting the relief requested in this Motion on an interim basis and such other and further relief as may be just and proper.

GELLERT SCALI BUSENKELL & BROWN LLC

*/s/ Brya Keilson*
Michael Busenkell (DE 3933)
Ronald S. Gellert (DE 4259)
Brya M. Keilson (DE 4643)
1201 N. Orange Street
3rd Floor
Wilmington, DE 19801
Phone: 302-425-5800
mbusenkell@gsbblaw.com
rgellert@gsbblaw.com
bkeilson@gsbblaw.com

Proposed Counsel for Debtor NJOY, Inc. and Debtor-In-Possession

4555170.2