## Exhibit A

**(Interim Order)**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

------------------------------------------------------------ X

In re:                                                                  :    Chapter 11
                                                                            :
NJOY, INC.[1]                                                        :    Case No.  16-12076
                                                                            :
                                    Debtor.                       :
------------------------------------------------------------ X    Re:  Docket Nos. _____

**INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364, AND 507 AND FED. R. BANKR. P. 2002, 4001 AND 9014 (I) AUTHORIZING DEBTOR AND DEBTOR-IN-POSSESSION TO OBTAIN POSTPETITION FINANCING, (II) AUTHORIZING USE OF CASH COLLATERAL, (III) GRANTING LIENS AND SUPER-PRIORITY CLAIMS, (IV) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED LENDERS, (V) MODIFYING THE AUTOMATIC STAY; (VI) SCHEDULING A FINAL HEARING, AND (VII) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtor and debtor in possession (collectively, the "Debtor") pursuant to §§ 105, 361, 362, 363, 364(c)(1), 364(c)(2) and 364(c)(3), and 364(d) of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules"), and Rule 4001-2 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), *inter alia* seeking, among other things:

(1)        authorization for NJOY, Inc., as debtor and debtor-in-possession (the "Borrower") to obtain post-petition financing in the form of a revolving credit facility in accordance with the terms and conditions set forth in the Pre-Petition Credit Agreement (as defined below), as ratified and amended by that certain Ratification and Amendment Agreement dated as of the date of this Interim Order (the "Ratification Agreement") a copy of which is attached hereto as **Exhibit 1** (as amended,

---

[1]        The last four digits of the Debtor's federal tax identification number are 6013. The Debtor's mailing address and principal place of business is 15211 N. Kierland Blvd., Suite 200, Scottsdale, Arizona 85254.

supplemented or otherwise modified from time to time in accordance with the terms and conditions set forth herein, the "Credit Agreement"), by and among the Borrower, FLFC Lending Co., as administrative agent and collateral agent (together with its successors and assigns, the "Agent") and as the sole Revolving Lender party thereto (together with its successors and assigns, the "DIP Lender"), and the other Transaction Documents (as defined in the Ratification Agreement), and in accordance with this order ("Interim Order"), secured by perfected senior priority security interests in and liens on the Collateral (as defined below) pursuant to §§ 364(c)(2) and 364(c)(3), and 364(d) of the Bankruptcy Code (subject to the Carve-Out and the Permitted Liens (each as defined below));

(2)    authorization for Borrower to remit all collections, asset proceeds and payments to Agent and DIP Lender for application, or deemed application, first to all Pre-Petition Revolving Obligations (as defined below) until such obligations are fully repaid, and then to the repayment of all Post-Petition Obligations (as defined in the Ratification Agreement);

(3)    authorization for the Debtor to grant superpriority administrative claim status, pursuant to § 364(c)(1) of the Bankruptcy Code, to the Agent, for the benefit of itself and the DIP Lender, in respect of all Post-Petition Obligations;

(4)    as set forth below, subject to Section 4.1 of this Interim Order, approval of certain stipulations by the Debtor as set forth in this Interim Order in connection with the Pre-Petition Credit Agreement and the Pre-Petition Subordinate Note Documents (as each term is defined below);

(5)    as set forth below, authorization to provide adequate protection to the Agent, the DIP Lender, the Pre-Petition Term Lenders, the Pre-Petition Subordinate Note Agent and the Pre-Petition Subordinate Noteholders (each as defined below);

---

[2]    Capitalized terms used but not defined in this Order shall have the same meanings ascribed to such terms in the Ratification Agreement.

4523695.4

(6)    effective only upon entry of a Final Order (as defined below), the waiver of the Debtor's right to assert .claims to surcharge against the Collateral (as defined below) pursuant to § 506(c) of the Bankruptcy Code, to the extent set forth below;

(7)    the modification of the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of this Interim Order to the extent hereinafter set forth;

(8)    the setting of a final hearing on the Motion ("Final Hearing") to consider entry of a final order (the "Final Order") authorizing, among other things, the borrowing under the Transaction Documents on a final basis, as set forth in the Motion and the Credit Agreement filed with the Court, including the granting to Agent and DIP Lender the senior security interests and liens described above and super-priority administrative expense claims as and to the extent set forth herein; and

(9)    related relief.

The initial hearing on the Motion having been held by this Court on September [16], 2016 (the "Interim Hearing"), and upon the record made by the Debtor at the Interim Hearing, including the Motion, and the *Declaration of Jeffrey Weiss in Support of First Day Motions* (the "First Day Declaration"), the *Declaration of Jeffrey Weiss in Support of Debtor's Motion for Entry of Interim and Final Orders (i) Authorizing Postpetition Financing, (ii) Granting Liens and Providing Superpriority Administrative Expense Priority; (iii) Authorizing the Use of Chas Collateral, Granting Adequate Protection to Prepetition Secured Lenders, (v) Modifying the Automatic Stay and (VI) Scheduling a Final Hearing.* (the "DIP Declaration"); and the filings and pleadings in the above-captioned chapter 11 case (the "Case"), the Court having found that the relief requested in the Motion is in the best interests of Debtor, its estate, its creditors and other parties in interest; and appropriate notice of the Motion, the relief requested therein, and the Interim Hearing (the "Notice") was appropriate under the circumstances; and the Notice having been served by the Debtor in accordance with Bankruptcy Rule 4001 on (a) counsel to the Agent, (b) counsel for the Pre-Petition Subordinate

3

Note Agent, (c) the office of the United States Trustee (the "U.S. Trustee"), (d) the holders of the forty (40) largest unsecured claims against the Debtor's estate (the "40 Largest Unsecured Creditors"), (e) the Internal Revenue Service and applicable state taxing authorities, (f) any party that has asserted or may assert a lien in the Debtor's assets; (g) the Debtor's landlords, and (h) all parties who have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002 (collectively, the "Noticed Parties") and the opportunity for a hearing on the Motion was appropriate and no other notice need be provided; and after due deliberation sufficient cause appearing therefor;

THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:

A.      Petition.  On September [16], 2016 (the "Petition Date"), the Debtor filed a voluntary petition (the "Petition") under chapter 11 of the Bankruptcy Code.  The Debtor continues to operate its business and manage its properties as debtor in possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

B.      Disposition.  The Motion is hereby granted in accordance with the terms of this Interim Order.  Any objections to the Motion with respect to the entry of the Interim Order that have not been withdrawn, waived, resolved, or settled are hereby denied and overruled.

C.      Jurisdiction and Venue.  The Court has jurisdiction of this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.  The Motion is a "core" proceeding as defined in 28 U.S.C. §§ 157(b)(2)(A), (D) and (M).  Venue of the Case and the Motion in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

D.      Notice.  The Notice was given in the manner described in the Motion.  Under the circumstances, the Notice given by the Debtor of the Motion, the Interim Hearing and the relief granted under this Interim Order constitutes due and sufficient notice thereof and complies with Bankruptcy Rule 4001.

4

E.    Debtor's Acknowledgments and Agreements.  Without prejudice to the rights of any creditors' committee appointed in this Case under Section 1102 of the Bankruptcy Code (the "Committee") or other parties-in-interest as and to the extent set forth in Section 4.1 of this Interim Order, the Debtor admits, stipulates, acknowledges and agrees that:

(i)    Pre-Petition Loan Documents.  Prior to the commencement of the Case, Agent, the DIP Lender and the Term Lenders party to the Pre-Petition Credit Agreement (as defined below) (collectively, the "Pre-Petition Term Lenders", and together with the DIP Lender, the "Pre-Petition Lenders") made loans, advances and provided other financial accommodations to Debtor pursuant to the terms and conditions set forth in (1) the Pre-Petition Credit Agreement (as defined in the Ratification Agreement and referred to herein as the "Pre-Petition Credit Agreement"); and (2) all other agreements, documents and instruments executed and/or delivered with, to, or in favor of Agent, DIP Lender or Pre-Petition Term Lenders in connection with the Pre-Petition Credit Agreement, including, without limitation, all security agreements, notes, guarantees, mortgages, Uniform Commercial Code financing statements and all other related agreements, documents and instruments executed and/or delivered in connection therewith or related thereto (all of the foregoing, together with the Pre-Petition Credit Agreement, as all of the same have heretofore been amended, supplemented, modified, extended, renewed, restated and/or replaced at any time prior to the Petition Date, collectively, the "Pre-Petition Loan Documents").  Copies of the operative Pre-Petition Loan Documents are on file with counsel to the Debtor and available upon reasonable request.

(ii)    Pre-Petition Revolving Loan Obligations.  As of the Petition Date, the Debtor was indebted to Agent and the DIP Lender under the Pre-Petition Loan Documents in respect of Revolving Loans and all other Obligations (each as defined in the Pre-Petition Credit Agreement) relating thereto or arising in connection therewith in an aggregate outstanding amount of not less than $3,283,893.21, plus interest accrued and accruing thereon, together with

all costs, fees, expenses (including attorneys' fees and legal expenses) and other charges accrued, accruing or chargeable with respect thereto (collectively, the "Pre-Petition Revolving Obligations", as such term is further defined in the Ratification Agreement). The Pre-Petition Revolving Obligations constitute allowed, legal, valid, binding, enforceable and non-avoidable obligations of Debtor, and are not subject to any offset, defense, counterclaim, avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or any other applicable law, and Debtor does not possess, shall not assert, hereby forever release, and are forever barred from bringing any claim, counterclaim, setoff or defense of any kind, nature or description which would in any way affect the validity, enforceability and non-avoidability of any of the Pre-Petition Revolving Obligations or liens and security interest securing the same described in clause (E)(iv) below.

      (iii)      <u>Pre-Petition Term Loan Obligations</u>. As of the Petition Date, the Debtor was indebted to Agent and the Pre-Petition Term Lenders under the Pre-Petition Loan Documents in respect of Term Loans and all other Obligations (each as defined in the Pre-Petition Credit Agreement) relating thereto or arising in connection therewith in an aggregate outstanding amount of not less than $16,103,731, plus interest accrued and accruing thereon, together with all costs, fees, expenses (including attorneys' fees and legal expenses) and other charges accrued, accruing or chargeable with respect thereto (collectively, the "Pre-Petition Term Obligations", as such term is further defined in the Ratification Agreement and together with the Pre-Petition Revolving Obligations, the "Pre-Petition Obligations"). The Pre-Petition Term Obligations constitute allowed, legal, valid, binding, enforceable and non-avoidable obligations of Debtor, and are not subject to any offset, defense, counterclaim, avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or any other applicable law,

6

and Debtor does not possess, shall not assert, hereby forever release, and are forever barred from bringing any claim, counterclaim, setoff or defense of any kind, nature or description which would in any way affect the validity, enforceability and non-avoidability of any of the Pre-Petition Term Obligations or liens and security interest securing the same described in clause (E)(iv) below.

(iv)    <u>Pre-Petition Collateral</u>.  As of the Petition Date, the Pre-Petition Obligations were secured pursuant to the Pre-Petition Loan Documents by valid, perfected, enforceable and non-avoidable first-priority security interests and liens granted by Debtor to Agent, for the benefit of itself and each Pre-Petition Lender under the Pre-Petition Loan Documents, upon all of the Pre-Petition Collateral (as defined in the Ratification Agreement and hereinafter referred to as the "<u>Pre-Petition Collateral</u>"), subject only to the liens specifically permitted under Section 5.6 of the Pre-Petition Credit Agreement to the extent that such security interests, liens or encumbrances are (1) valid, perfected and non-avoidable security interests, liens or encumbrances existing as of the Petition Date, and (2) senior to and have not been or are not subject to being subordinated to Agent's and each Pre-Petition Lender's liens on and security interests in the Pre-Petition Collateral under the Pre-Petition Loan Documents or otherwise avoided, and, in each instance, only for so long as and to the extent that such encumbrances are and remain senior and outstanding (hereinafter referred to as the "<u>Permitted Liens</u>").  The Debtor does not possess and will not assert any claim, counterclaim, setoff or defense of any kind, nature or description which would in any way affect the validity, enforceability and non-avoidability of any of Agent's and Lenders' pre-petition liens, claims or security interests in the Pre-Petition Collateral.

(v)    <u>Proof of Claim</u>.  The acknowledgment by Debtor of the Pre-Petition Obligations and the liens, rights, priorities and protections granted to or in favor of Agent and each Pre-Petition Lender in respect of the Pre-Petition Collateral as set forth herein and in the Pre-Petition

7

Loan Documents shall be deemed a timely filed proof of claim on behalf of Agent and each Pre-Petition Lender in this Case.

      (vi)      <u>Pre-Petition Subordinate Note Documents</u>.  Prior to the commencement of this Case, Pre-Petition Subordinate Note Agent (as defined below) and the Pre-Petition Subordinate Noteholders (as defined below) made loans, advances and provided other financial accommodations to Debtor pursuant to the terms and conditions set forth in (a) the Convertible Note Purchase Agreement, dated as of October 16, 2015 (as amended and modified from time to time prior to the Petition Date, the "<u>Pre-Petition Subordinate Note Purchase Agreement</u>"), by and among the Pre-Petition Borrower and the noteholders party thereto (the "<u>Pre-Petition Subordinate Noteholders</u>") and Homewood NJOY Services, LLC in its capacity as administrative agent and as collateral agent (the "<u>Pre-Petition Subordinate Note Agent</u>"); and (b) all other agreements, documents and instruments executed and/or delivered with, to or in favor of the Pre-Petition Subordinate Noteholders or Pre-Petition Subordinate Note Agent in connection with the Pre-Petition Subordinate Note Agreement, including, without limitation, the Intercreditor Agreement (as defined below), all security agreements, notes, guarantees, mortgages, Uniform Commercial Code financing statements and all other related agreements, documents and instruments, including any fee letters, executed and/or delivered in connection therewith or related thereto (all the foregoing, together with the Pre-Petition Subordinate Note Purchase Agreement, as all of the same have been supplemented, modified, extended, renewed, restated and/or replaced at any time prior to the Petition Date, collectively, the "<u>Pre-Petition Subordinate Note Documents</u>").  Copies of the operative Pre-Petition Subordinate Note Documents are on file with counsel to the Debtor and available upon reasonable request.

      (vii)      <u>Pre-Petition Subordinate Note Obligations</u>.  As of the Petition Date, the Debtor was indebted to Pre-Petition Subordinate Note Agent and Pre-Petition Subordinate Noteholders under the Pre-Petition Subordinate Note Documents in respect of loans and other obligations evidenced thereby in an aggregate outstanding principal amount of not less than

8

$\underline{\hspace{2in}}$, plus interest accrued and accruing thereon, together with all costs, fees, expenses (including attorneys' fees and legal expenses) and other charges accrued, accruing or chargeable with respect thereto (collectively, the "Pre-Petition Subordinate Note Obligations"). The Pre-Petition Subordinate Note Obligations constitute allowed, legal, valid, binding, enforceable and non-avoidable obligations of Debtor, and are not subject to any offset, defense, counterclaim, avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or any other applicable law, and Debtor does not possess, shall not assert, hereby forever release, and are forever barred from bringing any claim, counterclaim, setoff or defense of any kind, nature or description which would in any way affect the validity, enforceability and non-avoidability of any of the Pre-Petition Subordinate Note Obligations, or the liens and security interests securing the same described in clause (E)(viii) below.

(viii)    Pre-Petition Subordinate Note Collateral. As of the Petition Date, the Pre-Petition Subordinate Note Obligations were secured pursuant to the Pre-Petition Subordinate Note Documents by valid, perfected, enforceable and non-avoidable security interests and liens granted by Debtor to Pre-Petition Subordinate Note Agent, for the benefit of itself and the other Pre-Petition Subordinate Noteholders under the Pre-Petition Subordinate Note Documents (the "Pre-Petition Subordinate Note Liens"), upon all of the "Collateral" as defined in the Pre-Petition Subordinate Note Documents (the "Pre-Petition Subordinate Note Collateral"), subject only to (A) the liens of Agent, the DIP Lender and the Pre-Petition Lenders in accordance with the Intercreditor Agreement (defined below); (B) all other security interests, liens or encumbrances specifically permitted under the Pre-Petition Subordinate Note Purchase Agreement to the extent that such security interests, liens or encumbrances are (1) valid, perfected and non-avoidable security interests, liens or encumbrances existing as of the Petition Date, and (2) senior or equal to and have not been or are not subject to being subordinated to Pre-Petition Subordinate Note Agent's and Pre-Petition Subordinate Noteholders' liens on and security interests in the Pre-Petition Subordinate Note Collateral under the Pre-Petition Subordinate Note Documents or otherwise avoided, and, in each instance, only for so

9

long as and to the extent that such encumbrances are and remain senior and outstanding. The Pre-Petition Subordinate Note Liens in the Pre-Petition Subordinate Note Collateral are junior and subordinate to the Agent's, DIP Lender's, and Pre-Petition Term Lenders' liens in such collateral pursuant to the Intercreditor Agreement (defined below). The Debtor does not possess and will not assert any claim, counterclaim, setoff or defense of any kind, nature or description which would in any way affect the validity, enforceability and non-avoidability of any of Pre-Petition Subordinate Note Agent's or Pre-Petition Subordinate Noteholders' Pre-Petition Subordinate Note Liens in the Pre-Petition Subordinate Note Collateral.

(ix)     Pre-Petition Subordinate Note Agent's Proof of Claim. The acknowledgment by Debtor of the Pre-Petition Subordinate Note Obligations and the liens, rights, priorities and protections granted to or in favor of Pre-Petition Subordinate Note Agent and Pre-Petition Subordinate Noteholders in respect of the Pre-Petition Subordinate Note Collateral as set forth herein and in the Pre-Petition Subordinate Note Documents shall be deemed a timely filed proof of claim on behalf of Pre-Petition Subordinate Note Agent and Pre-Petition Subordinate Noteholders in this Case.

(x)     Intercreditor and Subordination Agreement. Agent and Pre-Petition Subordinate Note Agent are parties to that certain Intercreditor and Subordination Agreement dated as of October 16, 2015 (as amended, supplemented or otherwise modified from time to time prior to the Petition Date, the "Intercreditor Agreement"), which confirms the first priority liens and claims of Agent, DIP Lender and Pre-Petition Term Lenders on the one hand in and against the Borrower and its assets and properties and the second priority liens and claims of Pre-Petition Subordinate Note Agent and Pre-Petition Subordinate Noteholders, on the other hand in and against the Borrower and its assets and properties

F.     Findings Regarding the Post-Petition Financing.

(i)     Post-Petition Financing. The Debtor has requested from each of the Agent and the DIP Lender, and the Agent and DIP Lender are willing, to extend certain loans, advances and

10

other financial accommodations on the terms and conditions set forth in this Interim Order, the Credit Agreement and the other Transaction Documents (as defined in the Ratification Agreement and referred to herein as the "Transaction Documents"), respectively.

      (ii)      Need for Post-Petition Financing. The Debtor does not have sufficient available sources of working capital, including cash collateral, to operate its business in the ordinary course of business without the financing requested in the Motion. The Debtor's ability to maintain business relationships with its vendors, suppliers and customers, to pay its employees, and to otherwise fund its operations is essential to the Debtor's continued viability as the Debtor seeks to maximize the value of the assets of the Estate (as defined below) for the benefit of all creditors of the Debtor. The ability of the Debtor to obtain sufficient working capital and liquidity through the proposed post-petition financing arrangements with the Agent and DIP Lender as set forth in this Interim Order, the Credit Agreement, and other Transaction Documents, as applicable, is vital to the preservation and maintenance of the going concern value of Debtor. Accordingly, the Debtor has an immediate need to obtain the post-petition financing in order to, among other things, permit the orderly continuation of the operation of its business, minimize the disruption of its business operations, and preserve and maximize the value of the assets of the Debtor's bankruptcy estate (as defined under § 541 of the Bankruptcy Code, the "Estate") in order to maximize the recovery to all creditors of the Estate.

      (iii)      No Credit Available on More Favorable Terms. The Debtor is unable to procure financing in the form of unsecured credit allowable as an administrative expense under §§ 364(a), 364(b), or 503(b)(1) of the Bankruptcy Code or in exchange for the grant of a superpriority administrative expense, junior liens on encumbered property of the Estate, or liens on property of the Estate not subject to a lien pursuant to § 364(c)(1), 364(c)(2) or 364(c)(3) of the Bankruptcy Code. The Debtor has been unable to procure the necessary financing on terms more

favorable, taken as a whole, than the financing offered by each of the Agent and DIP Lender pursuant to the Transaction Documents.

(iv)    <u>Budget</u>. The Debtor has prepared and delivered to Agent and DIP Lender an initial 13-week budget (as defined in the Ratification Agreement and referred to herein as the "<u>Budget</u>"). Such Budget has been thoroughly reviewed by the Debtor and its management and sets forth, among other things, the projected cash receipts and disbursements of the Debtor for the periods covered thereby. The Debtor represents that the Budget is achievable in accordance with the terms of the Transaction Documents and this Interim Order and will allow the Debtor to operate at all times during this Case. The Agent and DIP Lender are relying upon the Debtor's compliance with the Budget (subject to the variances permitted under Section 5.3(c) of the Ratification Agreement (the "<u>Permitted Variances</u>"), the other Transaction Documents, and this Interim Order in determining to enter into the post-petition financing arrangements provided for herein.

(v)    <u>Business Judgment and Good Faith Pursuant to § 364(e)</u>. The terms of the Transaction Documents and this Interim Order are fair, just and reasonable under the circumstances, are ordinary and appropriate for secured financing to debtors-in-possession, reflect the Debtor's exercise of its prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and fair consideration. The terms and conditions of the Transaction Documents and this Interim Order have been negotiated in good faith and at arms' length by and among the Debtor and Agent, with all parties being represented by counsel. Any credit extended under the terms of this Interim Order shall be deemed to have been extended in good faith by the Agent and DIP Lender, as that term is used in § 364(e) of the Bankruptcy Code.

(vi)    <u>Good Cause</u>. The relief requested in the Motion is necessary, essential and appropriate, and is in the best interest of and will benefit the Debtor, its creditors and its Estate, as its implementation will, among other things, provide the Debtor with the necessary liquidity to (1) minimize disruption to the Debtor's business and on-going operations, (2) preserve and maximize the

4523695.4

value of the Debtor's Estate for the benefit of all the Debtor's creditors, and (3) avoid immediate and irreparable harm to the Debtor, its creditors, its business, its employees, and its assets.

(vii)    <u>Immediate Entry</u>.  Sufficient cause exists for immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(c)(2).  No party appearing in this Case has filed or made an objection to the relief sought in the Motion or the entry of this Interim Order, or any objections that were made (to the extent such objections have not been withdrawn, waived, resolved, or settled) are hereby overruled.

Based upon the foregoing, and after due consideration and good cause appearing therefor;

**IT IS HEREBY ORDERED THAT:**

**Section 1.    <u>Authorization and Conditions to Financing.</u>**

1.1    <u>Motion Granted</u>.  The Motion is granted in accordance with Bankruptcy Rule 4001(c)(2) to the extent provided in this Interim Order.  Except as otherwise expressly provided in this Interim Order, any objection to the entry of this Interim Order that has not been withdrawn, waived, resolved or settled, is hereby denied and overruled on the merits.

1.2    <u>Authorization to Borrow, Guaranty, and Use Loan Proceeds</u>.  Borrower is hereby authorized and empowered to immediately borrow and obtain Revolving Loans and to incur indebtedness and other Post-Petition Obligations (as defined in the Ratification Agreement) up to an aggregate amount equal to the sum of (i) 105% of all disbursements for the Interim Financing Period (as defined below) in the "Revolving Loan Grand Total" line item of the Budget, <u>plus</u> (ii) all interest, costs, and fees, accrued or accruing under the Credit Agreement and other Transaction Documents, all pursuant to the terms and conditions of this Interim Order, the Credit Agreement, and the other Transaction Documents during the period commencing on the date of this Interim Order through and including the date of the Final Hearing (the "<u>Interim Financing Period</u>").  Subject to the terms and conditions contained in this Interim Order and the Transaction Documents, Borrower shall use the proceeds of the Loans and other credit and financial accommodations provided by Agent and DIP

Lender under the Credit Agreement and the other Transaction Documents solely for payment of expenses set forth in the Budget (subject to the Permitted Variances) and amounts owing to Agent and DIP Lender in accordance with the terms and conditions of the Transaction Documents and this Interim Order.

      1.3     <u>Financing Documents</u>

      (a)     <u>Authorization</u>.  Debtor is hereby authorized to enter into, execute, deliver, perform, and comply with all of the terms, conditions and covenants of the Credit Agreement and the other Transaction Documents.  Upon execution and delivery of the Credit Agreement and the other Transaction Documents, such agreements and documents shall constitute valid and binding obligations of the Debtor, enforceable against Debtor in accordance with the terms of such agreements, documents and this Interim Order.  No obligation, payment, transfer or grant of security under the Credit Agreement, the other Transaction Documents or this Interim Order shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under § 502(d) of the Bankruptcy Code), or be subject to any defense, reduction, setoff, recoupment or counterclaim.

      (b)     <u>Approval; Evidence of Borrowing Arrangements</u>.  All terms, conditions and covenants set forth in the Transaction Documents (including, without limitation, the Credit Agreement) are approved to the extent necessary to implement the terms and provisions of this Interim Order.  All such terms, conditions and covenants shall be sufficient and conclusive evidence of (a) the borrowing arrangements by and among Debtor, Agent and DIP Lender, and (b) Debtor's assumption and adoption of all of the terms, conditions, and covenants of the Credit Agreement and the other Transaction Documents for all purposes, including, without limitation, to the extent applicable, the payment of all Post-Petition Obligations arising thereunder, including, without limitation, all principal, interest, fees and other expenses, including, without limitation, all of Agent's

4523695.4

and DIP Lender's consultant fees, professional fees, attorney fees and legal expenses, as more fully set forth in the Transaction Documents.

(c)    Amendment.    Subject to the terms and conditions of the Credit Agreement and the other Transaction Documents, Debtor, Agent and DIP Lender may amend, modify, supplement or waive any provision of the Transaction Documents (a "DIP Loan Amendment") without further approval or order of the Court so long as (a) such DIP Loan Amendment is not material (for purposes hereof, a "material" DIP Loan Amendment shall mean any DIP Loan Amendment that operates to increase the interest rate other than as currently provided in the Transaction Documents, increase the Maximum Credit (as defined in the Ratification Agreement), add an additional early termination fee, prepayment or repayment premium or any other fee that increases yield, add specific new events of default or enlarge the nature and extent of default remedies available to Agent and DIP Lender following an event of default, or otherwise modify any terms and conditions in any of the Transaction Documents in a manner materially less favorable to Debtor) and is undertaken in good faith by Agent, DIP Lender and Debtor; (b) the Debtor provides prior written notice of the DIP Loan Amendment (the "DIP Loan Amendment Notice") to (i) the U.S. Trustee, (ii) counsel to any Committee, or in the event no such Committee is appointed at the time of such DIP Loan Amendment, the 40 Largest Unsecured Creditors, and (iii) counsel to the Pre-Petition Subordinate Note Agent; (c) the Debtor files the DIP Loan Amendment Notice with the Court; and (d) no objection to the DIP Loan Amendment is filed with the Court within three (3) business days from the later of the date the DIP Loan Amendment Notice is served or the date the DIP Loan Amendment Notice is filed with the Court in accordance with this Section. Any material DIP Loan Amendment to the Transaction Documents must be approved by the Court to be effective.

1.4    Payment of Pre-Petition Debt.    The Debtor is authorized to repay all Pre-Petition Revolving Obligations in accordance with the Credit Agreement, the other Transaction

15

Documents and this Interim Order, including, without limitation, Sections 1.5 and 1.6 of this Interim Order.

      1.5    <u>Payments and Application of Payments</u>. The Debtor is authorized to make all payments and transfers of Estate property to the Agent as provided for, permitted and/or required under the Credit Agreement and the other Transaction Documents, which payments and transfers shall not be avoidable or recoverable from the Agent or any DIP Lender under §§ 547, 548, 550, 553 or any other section of the Bankruptcy Code, or by reason of any other claim, charge, assessment, or other liability, whether by application of the Bankruptcy Code, other law or otherwise. All proceeds of the Collateral (as defined herein) received by the Agent or any DIP Lender, and any other amounts or payments received by the Agent or any DIP Lender in respect of the Post-Petition Obligations, may be applied or deemed to be applied by the Agent, in its discretion, first to the repayment in full of the Pre-Petition Revolving Obligations, and then in repayment of the Post-Petition Obligations, in accordance with this Interim Order. Without limiting the generality of the foregoing, the Debtor is authorized without further order of this Court, subject to Section 5.12 of this Interim Order, to pay or reimburse Agent and the DIP Lenders for future costs and expenses, including, without limitation, all professional fees, consultant fees and legal fees and expenses paid or incurred by the Agent and the DIP Lenders in connection with the financing transactions as provided in this Interim Order and the Transaction Documents, all of which shall be and are included as part of the principal amount of the Post-Petition Obligations and secured by the Collateral (as defined herein).

      1.6    <u>Continuation of Pre-Petition Procedures</u>. Except to the extent expressly set forth in the Transaction Documents, all pre-petition practices and procedures for the payment and collection of proceeds of the Collateral (as defined herein), the turnover of cash, the delivery of property to the Agent and the DIP Lender, including any Blocked Account (as such term is defined in the Credit Agreement), any agreements with relating to any such Blocked Account, and any other

4523695.4

similar lockbox or blocked depository bank account arrangements, are hereby approved and shall continue without interruption after the commencement of the Case.

**Section 2.**        **Post-Petition Lien; Superpriority Administrative Claim Status.**

    2.1    <u>Post-Petition Lien.</u>

    (a)    <u>Post-Petition Lien Granting.</u>  To secure the prompt payment and performance of any and all Post-Petition Obligations (as defined in the Credit Agreement) of Debtor to the Agent and DIP Lender of whatever kind, nature or description, absolute or contingent, now existing or hereafter arising, Agent, for the benefit of itself and the DIP Lender, shall have and is hereby granted, effective as of the Petition Date, valid and perfected first-priority security interests and liens, superior to all other liens, claims or security interests that any creditor of the Debtor's Estate may have (but subject to the Carve-Out (as defined below) and the Permitted Liens), in and upon all of the Collateral (as defined in the Credit Agreement and referred to herein as the "<u>Collateral</u>").  For the avoidance of doubt, solely for purposes of this Interim Order, prior to the entry of the Final Order the term "Collateral" does not include any property recovered as a result of transfers or obligations avoided or actions maintained or taken Chapter 5 of the Bankruptcy Code (the "<u>Avoidance Actions</u>").

    (b)    <u>Lien Priority in Collateral.</u>  The liens and security interests of Agent and DIP Lender granted under the Transaction Documents and this Interim Order in the Collateral securing all Post-Petition Obligations (as defined in the Credit Agreement) shall be first and senior in priority to all other interests and liens of every kind, nature and description, whether created consensually, by an order of the Court or otherwise, including, without limitation, liens or interests granted in favor of the Pre-Petition Term Lenders, the Pre-Petition Subordinate Note Agent, any third parties in conjunction with §§ 363, 364 or any other section of the Bankruptcy Code or other

applicable law; provided, however, that Agent's and DIP Lender's liens on and security interests in the Collateral shall be subject only to (a) Permitted Liens, and (b) the Carve-Out (as defined below).

(c)    <u>Right of Repayment</u>.  The right to repayment of Agent and DIP Lender granted under the Transaction Documents and this Interim Order from the sale or other disposition of the Collateral or any proceeds thereof shall be first and senior in priority to all other rights of repayment of every kind, nature and description.

(d)    <u>Post-Petition Lien Perfection</u>.  This Interim Order shall be sufficient and conclusive evidence of the priority, perfection and validity of the post-petition liens and security interests granted herein, effective as of the Petition Date, without any further act and without regard to any other federal, state or local requirements or law requiring notice, filing, registration, recording or possession of the Collateral, or other act to validate or perfect such security interest or lien, including without limitation, control agreements with any financial institution(s) party to a deposit account control agreement or holding a Blocked Account (as defined in the Credit Agreement) or other depository account consisting of Collateral (a "<u>Perfection Act</u>").  Notwithstanding the foregoing, if Agent, shall, in its sole discretion, elect for any reason to file, record or otherwise effectuate any Perfection Act, then Agent is authorized to perform such act, and the Debtor is authorized to perform such act or acts to the extent necessary or required by Agent, which act or acts shall be deemed to have been accomplished as of the date and time of entry of this Interim Order notwithstanding the date and time actually accomplished, and in such event, the subject filing or recording office is authorized to accept, file or record any document in regard to such act in accordance with applicable law.  Agent may choose to file, record or present a certified copy of this Interim Order in the same manner as a Perfection Act, which shall be tantamount to a Perfection Act, and, in such event, the subject filing or recording office is authorized to accept, file or record such certified copy of this Interim Order in accordance with applicable law.  Should Agent so choose and attempt to file, record or perform a Perfection Act, no defect or failure in connection with such

18

attempt shall in any way limit, waive or alter the validity, enforceability, attachment, or perfection of the post-petition liens and security interests granted herein by virtue of the entry of this Interim Order.

      (e)      <u>Nullifying Pre-Petition Restrictions to Post-Petition Financing</u>. Notwithstanding anything to the contrary contained in any pre-petition agreement, contract, lease, document, note or instrument to which Debtor is a party or under which any Debtor is obligated, except as otherwise permitted under the Transaction Documents, any provision that restricts, limits or impairs in any way Debtor from granting Agent security interests in or liens upon any of the Debtor's assets or properties (including, among other things, any anti-lien granting or anti-assignment clauses in any leases or other contractual arrangements to which any Debtor is a party) under the Transaction Documents or this Interim Order, as applicable, or otherwise entering into and complying with all of the terms, conditions and provisions hereof or of the Transaction Documents, shall not (a) be effective and/or enforceable against Debtor, Agent or the DIP Loan Lender, as applicable, or (b) adversely affect the validity, priority or enforceability of the liens, security interests, claims, rights, priorities and/or protections granted to Agent and DIP Lender pursuant to this Interim Order or the Transaction Documents, in each case, to the maximum extent permitted under the Bankruptcy Code and other applicable law.

      2.2      <u>Superpriority Administrative Expenses</u>. For all Post-Petition Obligations now existing or hereafter arising pursuant to this Interim Order, the Transaction Documents or otherwise, Agent, for the benefit of itself and the DIP Lender, is granted an allowed superpriority administrative claim pursuant to § 364(c)(1) of the Bankruptcy Code, having priority in right of payment over any and all other obligations, liabilities and indebtedness of Debtor (other than the Carve-Out), whether now in existence or hereafter incurred by Debtor, and over any and all administrative expenses or priority claims of the kind specified in, or ordered pursuant to, inter alia, §§ 105, 326, 328, 330, 331, 503(b), 506(c) (subject to entry of the Final Order), 507(a), 507(b), 364(c)(1), 546(c), 726, 1113 or

4523695.4

1114 of the Bankruptcy Code (other than the Carve-Out), whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed superpriority administrative claim shall be payable from and have recourse to all pre-petition and post-petition property of the Debtor and all proceeds thereof (the "DIP Loan Superpriority Claim").

      2.3    Carve-Out.

      (a)    Carve Out Expenses.  Upon Agent providing written notice of the occurrence of an Event of Default (as defined in the Ratification Agreement) to (a) the Court, (b) counsel for the Debtor, (c) counsel for the Committee (if any), and (d) the U.S. Trustee (a "Carve Out Trigger Notice"), Agent's and DIP Lender's liens, claims and security interests in the Collateral and its DIP Loan Superpriority Claim, shall each be subject only to the right of payment of the following expenses (the "Carve Out Expenses"):

      (i)    all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (c) below);

      (ii)    all reasonable fees and expenses up to $10,000 incurred by a trustee under Section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (c) below); and

      (iii)    to the extent allowed by the Bankruptcy Court at any time, whether by interim order, procedural order, or otherwise, all unpaid fees and expenses (the "Allowed Professional Fees") incurred by persons or firms retained by the Debtor or the Committee pursuant to Sections 327(a) or 1103 of the Bankruptcy Code (the "Professionals") at any time on or after the date of delivery by Agent of a Carve-Out Trigger Notice, whether allowed by the Bankruptcy Court prior to or after delivery of a Carve-Out Trigger Notice;

4523695.4

provided, that such Allowed Professional Fees incurred by (x) the Debtor or its counsel shall not at any time exceed the aggregate amount of $25,000 and (y) the Committed or its counsel shall not at any time exceed the aggregate amount of $10,000 (the "Professional Fee Carve Out").

For the avoidance of doubt, nothing herein shall be construed to impair the ability of any party to object to the fees, expenses, reimbursement or compensation described herein.

(b)    Excluded Professional Fees.    Notwithstanding anything to the contrary in this Interim Order, neither the Professional Fee Carve-Out nor the proceeds of Collateral or any Loans, or any other credit or financial accommodations provided under or in connection with the Transaction Documents shall be used to pay any Allowed Professional Fees or any other fees or expenses incurred by any Professional in connection with any of the following:

(i)    an assertion or joinder in any claim, counter-claim, action, proceeding, application, motion, objection, defense or other contested matter seeking any order, judgment, determination or similar relief: (i) challenging the legality, validity, priority, perfection, or enforceability of, invalidating, setting aside, avoiding or subordinating, in whole or in part,  (A) the Pre-Petition Revolving Obligations or Agent's and DIP Lender's liens on and security interests in the Pre-Petition Collateral in arising from or relating to the Pre-Petition Revolving Loans, (B) the Pre-Petition Term Obligations or Agent's or the Pre-Petition Term Lenders' liens on and security interests in the Pre-Petition Collateral in respect of the Pre-Petition Term Loans, (C) the Post-Petition Obligations or Agent's or DIP Lender's liens on and security interests in the Collateral, or (D) the Pre-Petition Subordinate Note Obligations or Pre-Petition Subordinate Note Agent's or Pre-Petition Subordinate Noteholders' liens on and security interests in the Pre-Petition Subordinate Note Collateral; or (ii) preventing, hindering or delaying Agent's or DIP Lenders' assertion or enforcement of any lien, claim, right or security interest or realization upon any Collateral in accordance with

4523695.4

the terms and conditions of the Credit Agreement, the Transaction Documents, and this Interim Order;

   (ii) a request to use Cash Collateral (as such term is defined in section 363 of the Bankruptcy Code), except as set forth in the Credit Agreement, the Transaction Documents, and this Interim Order, without the prior written consent of Agent in accordance with the terms and conditions of this Interim Order;

   (iii) a request for authorization to obtain debtor-in-possession financing or other financial accommodations pursuant to section 364(c) or § 364(d) of the Bankruptcy Code, other than as provided in the Credit Agreement, the Transaction Documents, and this Interim Order, without the prior written consent of Agent;

   (iv) the commencement or prosecution of any action or proceeding of any claims, causes of action or defenses against Agent, DIP Lender, any Pre-Petition Lender, or any of their respective officers, directors, employees, agents, attorneys, affiliates, successors or assigns, including, without limitation, any attempt to recover or avoid any claim or interest from Agent, any DIP Lender, Pre-Petition Lender or any of their respective officers, directors, employees, agents, attorneys, affiliates, successors or assigns under chapter 5 of the Bankruptcy Code;

   (v) the cost of investigation into any claims against Agent, DIP Lender or any other Pre-Petition Lender arising under or in connection with the Pre-Petition Loan Documents in excess of $10,000; or

   (vi) any act which has or could directly, materially and adversely modify or compromise the rights and remedies of Agent or any DIP Lender under this Interim Order, or which directly results in the occurrence of an Event of Default under any Transaction Documents, or this Interim Order.

(c)     <u>Carve Out Reserve</u>.  At Agent's discretion, Agent may, at any time and in any increment in accordance with the Credit Agreement, establish a Budget Reserve (the "<u>Professional Fee Reserve</u>") against the amount of Revolving Loans that would otherwise be available to Debtor in respect of the Professional Fee Carve Out and the other Carve Out Expenses.

(d)     <u>Trigger Date</u>.  The "<u>Trigger Date</u>" shall mean the first business day after the occurrence and continuation of an Event of Default (as defined below) and delivery by Agent of the Carve-Out Trigger Notice.

2.4     <u>Funding the Professional Fee Carve Out</u>.  Prior to the Trigger Date, Debtor shall be authorized to pay Allowed Professional Fees up to the amounts set forth in the Budget and in accordance with the Credit Agreement and this Interim Order.  Promptly following the Trigger Date, Agent shall make an advance to the Debtor in an amount equal to $35,000 (the "<u>Carve Out Advance</u>"), and the Debtor shall use the proceeds of the Carve Out Advance to fund the Allowed Professional Fees covered by the Professional Fee Carve Out and the other Carve Out Expenses subject to and in accordance with the terms of this Interim Order.  Immediately upon Agent making the Carve Out Advance, the Collateral shall not be subject to any further carve out for any cost or expenses of the Debtor's estate, and Agent's obligation to fund or otherwise ensure the payment of any Carve Out Expenses pursuant to this Interim Order shall be fully and finally satisfied and discharged, and Agent and DIP Lender shall have no obligation or responsibility to fund or otherwise ensure the payment of any Carve Out Expenses or any other professional fees or expenses of the Debtor or the Committee.

2.5     <u>Payment of Carve Out Expenses</u>.  Payment of any Carve Out Expenses, whether by or on behalf of Agent or DIP Lender, shall not and shall not be deemed to reduce the Post-Petition Obligations, and shall not and shall not be deemed to subordinate any of any of Agent's or DIP Lender's liens and security interests in the Pre-Petition Collateral, any other Collateral, the

4523695.4

Adequate Protection Superpriority Claim (as defined below), or the DIP Loan Superpriority Claim to any junior pre- or post-petition lien, interest or claim in favor of any other party. Except and to the extent set forth in Section 2.5 of this Interim Order, Agent and DIP Lender shall not, under any circumstance, be responsible for the direct payment or reimbursement of any fees or disbursements of any Professionals incurred in connection with the Case under any chapter of the Bankruptcy Code, and nothing in Section 2.3 of this Interim Order shall be construed to obligate Agent or DIP Lender in any way, to pay compensation to or to reimburse expenses of any Professional, or to ensure that the Debtor has sufficient funds to pay such compensation or reimbursement.

2.6    Use of Cash Collateral; Adequate Protection.

(a)    Authorization to Use Cash Collateral.    Subject to the terms and conditions of this Interim Order, the Credit Agreement, the Transaction Documents, and in accordance with the Budget (subject to the Permitted Variances), Borrower shall be and is hereby authorized to use the Cash Collateral (as defined in section 363 of the Bankruptcy Code) to the extent Cash Collateral is limited to proceeds of Revolving Loans extended to Debtor pursuant to this Interim Order, the Credit Agreement, and the other Transaction Documents for the period commencing on the date of this Interim Order and terminating upon the earlier of (i) the date that is the final day of the Interim Financing Period; and (ii) the date on which the Agent delivers an Enforcement Notice (as defined below) to counsel for the Debtor, counsel for the Committee (if appointed), and the U.S. Trustee, subject to the liens and security interests granted to the Agent and the DIP Lender, Pre-Petition Term Lenders, and Pre-Petition Subordinate Note Agent and Pre-Petition Subordinate Noteholders. Nothing in this Interim Order shall authorize the disposition of any assets of the Debtor or its Estate outside the ordinary course of business, or Borrower's use of such Cash Collateral or other proceeds resulting therefrom, except as expressly permitted in this Interim Order, the Transaction Documents and in accordance with the Budget (subject to the Permitted Variances).

24

4523695.4

(b)    <u>Replacement Liens</u>.  As adequate protection for the diminution in value of their interests in the Collateral on account of the Borrower's use of such Collateral, the imposition of the automatic stay and the subordination to the Carve-Out (collectively, the "<u>Diminution in Value</u>"), the Agent, for the benefit of itself and the DIP Lender, is hereby granted pursuant to §§ 361 and 363 of the Bankruptcy Code, and solely to the extent of the Diminution in Value, valid, binding, enforceable and perfected replacement liens upon and security interests in all Collateral (the "<u>Revolving Loan A/L Replacement Lien</u>").  The Revolving Loan A/L Replacement Lien shall be junior and subordinate only to (A) the Carve-Out (B) the Permitted Liens, and (C) Agent's and DIP Lenders' liens on the Collateral to secure the Post-Petition Obligations, and shall otherwise be senior to all other security interests in, liens on, or claims against any of the Collateral.

(c)    <u>Section 507(b) Priority Claims</u>.  As adequate protection for the Diminution in Value, the Agent, for the benefit of itself and DIP Lender, is hereby granted as and to the extent provided by section 507(b) of the Bankruptcy Code, and solely to the extent of the Diminution in Value, an allowed superpriority administrative expense claim in this Case and any successor bankruptcy cases (the "<u>Revolving Loan A/L Adequate Protection Superpriority Claim</u>"). The Revolving Loan A/L Adequate Protection Superpriority Claim shall be junior only to (A) the Carve-Out, and (B) the DIP Loan Superpriority Claim, and shall otherwise have priority over all administrative expense claims and unsecured claims against Debtor and its Estate now existing or hereafter arising, of any kind or nature whatsoever.

(d)    <u>Pre-Petition Term Lenders Adequate Protection</u>. Agent, for the benefit of itself and the Pre-Petition Term Lenders (collectively, the "<u>Term Loan Adequate Protection Parties</u>"), shall be granted the following protection, pursuant to sections 361, 507, and 363(e) of the Bankruptcy Code for the consent to the use of its collateral, consent to this Interim Order, and for the Diminution in Value of the security interests and liens of such party.  The Term Loan Adequate Protection Parties are granted the following adequate protection to the extent set forth

25

in subsections (i) through (iv) below (collectively, the "Term Loan Adequate Protection Obligations"):

(i)    Term Loan Adequate Protection Lien.  Agent, on behalf of the Term Loan Adequate Protection Parties, shall be granted for their benefit, effective and perfected as of the date of entry of this Interim Order and without the necessity of the execution or filing of mortgages, security agreements, pledge agreements, financing statements or other agreements, and solely to the extent of the Diminution in Value, a security interest in and lien on the Collateral (together, the "Term Loan Adequate Protection Liens"), subject and subordinate only to (i) the Carve-Out, (ii) Permitted Liens, and (iii) the liens of Agent and DIP Lender securing all Revolving Obligations arising under or in connection with the Credit Agreement and the other Transaction Documents and/or this Interim Order in and upon the Collateral, including, without limitation, the Revolving Loan A/L Replacement Lien; provided that, the Term Loan Adequate Protection Liens shall only encumber the Avoidance Actions upon entry of the Final Order.

(ii)    Pre-Petition Term Loan Adequate Protection Superpriority Claim.  Agent, on behalf of the Term Loan Adequate Protection Parties, shall be granted, solely to the extent of the Diminution in Value, a superpriority administrative expense claim pursuant to Section 507(b) of the Bankruptcy Code junior and subordinate only to the Carve-Out, DIP Loan Superpriority Claim and the Revolving Loan A/L Adequate Protection Superpriority Claim; provided, that the Term Loan Adequate Protection Parties shall not receive or retain any payments, property or other amounts in respect of such superpriority claims unless and until all Pre-Petition Revolving Obligations and all Post-Petition Obligations under the Credit Agreement and the other Transaction Documents have indefeasibly been paid in cash in full in accordance with the terms of the Credit Agreement.

4523695.4

(e)    <u>Pre-Petition Subordinate Note Agent Adequate Protection</u>. Pre-Petition Subordinate Note Agent, for the benefit of itself and the Pre-Petition Subordinate Noteholders (collectively, the <u>Pre-Petition Subordinate Note Protection Parties</u>"), shall be granted the following protection, pursuant to sections 361, 507 and 363(e) of the Bankruptcy Code for the consent to the use of its collateral, consent to the transactions contemplated by the Transaction Documents and this Interim Order, and for the Diminution in Value of the security interests and liens of such party.    The Pre-Petition Subordinate Note Adequate Protection Parties are granted the following adequate protection to the extent set forth in subsections (i) through (iv) below (collectively, the "<u>Pre-Petition Subordinate Note Protection Obligations</u>"):

(i)    <u>Pre-Petition Subordinate Note Adequate Protection Lien</u>. Pre-Petition Subordinate Note Agent, on behalf of the Pre-Petition Subordinate Note Adequate Protection Parties, shall be granted for their benefit, effective and perfected as of the date of entry of this Interim Order and without the necessity of the execution or filing of mortgages, security agreements, pledge agreements, financing statements or other agreements, and solely to the extent of the diminution in value of their interests in the Pre-Petition Subordinate Note Collateral on account of the Borrower's use of such Pre-Petition Subordinate Note Collateral, the imposition of the automatic stay and the subordination to the Carve-Out (collectively, the "<u>Pre-Petition Subordinate Note Diminution in Value</u>"), a security interest in and lien on the Pre-Petition Subordinate Note Collateral (together, the "<u>Pre-Petition Subordinate Note Adequate Protection Liens</u>"), subject and subordinate only to (i) the Carve-Out, (ii) Permitted Liens, (iii) the liens of Agent and DIP Lenders securing all Revolving Obligations arising under or in connection with the Credit Agreement, the other Transaction Documents and this Interim Order in and upon the Collateral, including, without limitation, the Revolving Loan A/L Replacement Liens; and (iv) the Term Loan Adequate Protection Liens; <u>provided that</u>,

the Pre-Petition Subordinate Note Adequate Protection Liens shall only encumber the Avoidance Actions upon the entry of the Final Order.

(ii)  <u>Pre-Petition  Subordinate  Note  Adequate  Protection  Superpriority Claim</u>.  Pre-Petition Subordinate Note Agent, on behalf of the Pre-Petition Subordinate Note Adequate Protection Parties, shall be granted, solely to the extent of the Pre-Petition Subordinate Note Diminution in Value, a superpriority administrative expense claim pursuant to Section 507(b) of the Bankruptcy Code junior and subordinate only to the (A) Carve-Out, (B) DIP Loan Superpriority Claim, (C) Revolving Loan A/L Adequate Protection Superpriority Claim, and (D) the claims under section 507(b) of the Bankruptcy Code held by Term Loan Adequate Protection Parties; <u>provided</u>, that the Pre-Petition Subordinate Note Agent and the Pre-Petition Subordinate Noteholders shall not receive or retain any payments, property or other amounts in respect of such superpriority claims unless and until all Obligations under the Credit Agreement have indefeasibly been paid in cash in full; <u>provided further</u>, that prior to the entry of the Final Order, the superpriority administrative expense claim granted to the Pre-Petition Subordinate Note Agent, on behalf of the Pre-Petition Subordinate Note Adequate Protection Parties, shall not have any recourse to the proceeds of any Avoidance Actions.

**Section 3.**     <u>**Default; Rights and Remedies; Relief from Stay**</u>.

3.1     <u>Events of Default</u>.  The occurrence of any of the following events shall constitute an "<u>Event of Default</u>" under this Interim Order: (a) Debtor's failure to perform, in any respect, any of their obligations under this Interim Order; or (b) an "Event of Default" under the Credit Agreement or any of the other Transaction Documents.

3.2     <u>Rights and Remedies upon Event of Default</u>.  Upon the occurrence of and during the continuance of an Event of Default, (a) the Debtor shall be bound by all restrictions,

prohibitions and other terms as provided in this Interim Order, the Credit Agreement and the other Transaction Documents, and (b) the Agent shall be entitled to take any act or exercise any right or remedy (subject to Section 3.4 below) as provided in this Interim Order or any Financing Document, as applicable, including, without limitation, declaring all Revolving Obligations immediately due and payable, accelerating the Revolving Obligations, ceasing to extend Revolving Loans, setting off any Revolving Obligations with Collateral or proceeds in Agent's possession, and enforcing any and all rights with respect to the Collateral. Agent and DIP Lender shall have no obligation to lend or advance any additional funds to or on behalf of Debtor, or provide any other financial accommodations to Debtor, immediately upon or after the occurrence of an Event of Default or upon the occurrence of any act, event, or condition that, with the giving of notice or the passage of time, or both, would constitute an Event of Default.

       3.3    <u>Expiration of Revolving Loan Commitment</u>. Upon the earlier of (a) the expiration of Borrower's authority to borrow and obtain other credit accommodations from Agent and DIP Lender pursuant to the terms of this Interim Order and the Transaction Documents (except if such authority shall be extended by the Court with the prior written consent of Agent, which consent shall not be implied or construed from any action, inaction or acquiescence by Agent or DIP Lender), or (b) an Event of Default set forth in Section 3.1 above, Agent and DIP Lender (x) shall have no obligation whatsoever to make or extend any loans, advances, provide any financial or credit accommodations to Debtor or permit the use of Cash Collateral and (y) may declare all of the Revolving Obligations to be immediately due and payable.

       3.4    <u>Modification of Automatic Stay</u>. The automatic stay provisions of section 362 of the Bankruptcy Code and any other restriction imposed by an order of the Court or applicable law are hereby modified without further notice, application or order of the Court to the extent necessary to permit Agent and DIP Lender to perform any act authorized or permitted under or by virtue of this Interim Order or the Transaction Documents, as applicable, including, without

limitation, (a) to implement the post-petition financing arrangements authorized by this Interim Order and pursuant to the terms of the Transaction Documents, (b) to take any act to create, validate, evidence, attach or perfect any lien, security interest, right or claim in the Collateral, (c) to assess, charge, collect, advance, deduct and receive payments with respect to the Pre-Petition Obligations or the Post-Petition Obligations, as applicable, including, without limitation, all interests, fees, costs and expenses permitted under the Transaction Documents (subject to Section 5.12 of this Interim Order) and apply such payments to the Pre-Petition Obligation or Post-Petition Obligations pursuant to the Transaction Documents and/or this Interim Order, as applicable, and (d) immediately upon the occurrence of an Event of Default, to take any action and exercise all rights and remedies provided to it by this Interim Order, the Transaction Documents or applicable law other than those rights and remedies against the Collateral as provided in the following sentence.    In addition, and without limiting the foregoing, upon the occurrence of an Event of Default and after providing five (5) business days (the "Default Notice Period") prior written notice (the "Enforcement Notice") to (i) counsel for the Debtor, (ii) counsel for the Committee (if appointed), (iii) the Pre-Petition Term Lenders, (iv) counsel for the Pre-Petition Subordinate Note Agent, and (v) the U.S. Trustee, the Agent, acting on behalf of itself and the DIP Lender, shall be entitled to take any action and exercise all rights and remedies provided to it by this Interim Order, the Transaction Documents or applicable law that Agent may deem appropriate in its sole discretion to proceed against and realize upon the Collateral or any other assets or properties of Debtor's Estate upon which the Agent, for the benefit of itself and the DIP Lender, has been or may hereafter be granted liens or security interests to obtain the full and indefeasible repayment of all Post-Petition Obligations. Notwithstanding anything to the contrary, any action that Agent is otherwise permitted to take pursuant to this Interim Order to (i) terminate the commitments under the Transaction Documents, (ii) accelerate the Revolving Loans, (iii) send blocking notices or activation notices pursuant to the terms of any deposit account control agreement, (iv) repay any amounts owing in respect of the Revolving Obligations (including, without

limitation, fees, indemnities and expense reimbursements) and (v) cash collateralize any contingent Revolving Obligations of the Debtor pursuant to the Transaction Documents, in each case, shall not require any advance notice to the Debtor.  In any hearing regarding any exercise of rights or remedies (which hearing must take place within the Default Notice Period), the only issue that may be raised by any party in opposition thereto shall be whether, in fact, an Event of Default has occurred and is continuing, and the Debtor shall not be entitled to seek relief, including, without limitation, under section 105 of the Bankruptcy Code, to the extent such relief would in any way impair or restrict the rights and remedies of the Agent or the DIP Lender set forth in this Interim Order or the Transaction Documents.

**Section 4.**     **Representations; Covenants; and Waivers.**

      4.1     Objections to Pre-Petition Obligations.

          (a)     Objections to Pre-Petition Revolving Obligations.  Notwithstanding anything to the contrary in the Interim Order, any action, claim, defense, complaint, motion or other written opposition (hereinafter, an "Objection") that seeks to object to, challenge, contest or otherwise invalidate or reduce, whether by setoff, recoupment, counterclaim, deduction, disgorgement or claim of any kind: (a) the existence, validity or amount of the Pre-Petition Revolving Obligations as of the Petition Date, or (b) the extent, legality, validity, perfection or enforceability of Agent's and DIP Lender's pre-petition liens and security interests in the Pre-Petition Collateral shall be properly filed with the Court (x) by any Committee within sixty (60) calendar days from the date of appointment of the Committee by the U.S. Trustee, or (y) by any party in interest with requisite standing within seventy-five (75) calendar days from the date of entry of this Interim Order; provided, however, that nothing herein shall permit any party to challenge the extent or validity of the Post-Petition Obligations for any disbursements in excess of the Pre-Petition Obligations.  If any such Objection is timely and properly filed and a final, non-appealable order is

31

entered by a court of competent jurisdiction sustaining and ordering some or all of the relief requested in such Objection, nothing in this Interim Order shall prevent the Court from granting appropriate relief with respect to the Pre-Petition Revolving Obligations or Agent's or DIP Lender's pre-petition liens on the Pre-Petition Collateral.  If no Objection is timely and properly filed, or if an Objection is timely and properly filed but denied, (i) the Pre-Petition Revolving Obligations shall be deemed allowed in full, shall not be subject to any setoff, recoupment, counterclaim, deduction or claim of any kind, and shall not be subject to any further objection or challenge by any party at any time, and Agent's and DIP Lender's pre-petition liens on and security interest in the Pre-Petition Collateral shall be deemed legal, valid, perfected, enforceable, and non-avoidable for all purposes and of first and senior priority, subject to only the Carve-Out and Permitted Liens, and (ii) the Agent and the DIP Lender, and each of their respective participants, agents, officers, directors, employees, attorneys, professionals, successors, and assigns (each in their respective capacities as such) shall be deemed released and discharged from any and all claims and causes of action related to or arising out of the Pre-Petition Transaction Documents with respect to the Revolving Lenders or Revolving Loans and shall not be subject to any further objection or challenge relating thereto or arising therefrom by any party at any time.  Nothing contained in this Section 4.1(a) or otherwise shall or shall be deemed or construed to impair, prejudice or waive any rights, claims or protections afforded to Agent or any DIP Lenders in connection with all post-petition Loans, and any other post-petition financial and credit accommodations provided by Agent and the DIP Lender to Debtor in reliance on section 364(e) of the Bankruptcy Code and in accordance with the terms and provisions of this Interim Order and the Transaction Documents.

(b)    Objections to Pre-Petition Term Obligations.    Notwithstanding anything to the contrary in the Interim Order, any action, claim, defense, complaint, motion or other written opposition (hereinafter, an "Term Loan Objection") that seeks to object to, challenge, contest or otherwise invalidate or reduce, whether by setoff, recoupment, counterclaim, deduction,

disgorgement or claim of any kind: (a) the existence, validity or amount of the Pre-Petition Term Obligations, or (b) the extent, legality, validity, perfection or enforceability of Agent's and Pre-Petition Term Lenders' pre-petition liens and security interests in the Pre-Petition Collateral securing the Pre-Petition Term Loans, shall be properly filed with the Court (x) by any Committee within sixty (60) calendar days from the date of appointment of the Committee by the U.S. Trustee, or (y) by any party in interest with requisite standing within seventy-five (75) calendar days from the date of entry of this Interim Order. If any such Term Loan Objection is timely and properly filed and a final, non-appealable order is entered by a court of competent jurisdiction sustaining and ordering some or all of the relief requested in such Term Loan Objection, nothing in this Interim Order shall prevent the Court from granting appropriate relief with respect to the Pre-Petition Term Obligations or Agent's or Pre-Petition Term Lenders' pre-petition liens on the Pre-Petition Term Collateral securing the Pre-Petition Term Obligations. If no Term Loan Objection is timely and properly filed, or if a Term Loan Objection is timely and properly filed but denied, (i) the Pre-Petition Term Obligations shall be deemed allowed in full, shall not be subject to any setoff, recoupment, counterclaim, deduction or claim of any kind, and shall not be subject to any further objection or challenge by any party at any time, and Agent's or Pre-Petition Term Lenders' pre-petition liens on and security interest in the Pre-Petition Term Collateral securing the repayment of the Pre-Petition Term Obligations shall be deemed legal, valid, perfected, enforceable, and non-avoidable for all purposes, and (ii) the Agent and the Pre-Petition Term Lenders, and each of their respective participants, agents, officers, directors, employees, attorneys, professionals, successors, and assigns (each in their respective capacities as such) shall be deemed released and discharged from any and all claims and causes of action related to or arising out of the Pre-Petition Transaction Documents with respect to the Pre-Petition Term Loans or Pre-Petition Term Lenders and shall not be subject to any further objection or challenge relating thereto or arising therefrom by any party at any time.

4523695.4

(c)    Objections    to    Pre-Petition    Subordinate    Note    Obligations.
Notwithstanding anything to the contrary in the Interim Order, any action, claim, defense complaint, motion or other written opposition (hereinafter, an "Subordinate Note Objection") that seeks to object to, challenge, contest or otherwise invalidate or reduce, whether by setoff, recoupment, counterclaim, deduction, disgorgement or claim of any kind: (a) the existence, validity or amount of the Pre-Petition Subordinate Note Obligations, or (b) the extent, legality, validity, perfection or enforceability of Pre-Petition Subordinate Note Agent's and Pre-Petition Subordinate Noteholders' pre-petition liens and security interests in the Pre-Petition Subordinate Note Collateral shall be properly filed with the Court (x) by any Committee within sixty (60) calendar days from the date of appointment of the Committee by the U.S. Trustee, or (y) by any party in interest with requisite standing within seventy-five (75) calendar days from the date of entry of this Interim Order.  If any such Subordinate Note Objection is timely and properly filed and a final, non-appealable order is entered by a court of competent jurisdiction sustaining and ordering some or all of the relief requested in such Subordinate Note Objection, nothing in this Interim Order shall prevent the Court from granting appropriate relief with respect to the Pre-Petition Subordinate Note Obligations or Pre-Petition Subordinate Note Agent's or Pre-Petition Subordinate Noteholders' pre-petition liens on the Pre-Petition Subordinate Note Collateral.  If no Subordinate Note Objection is timely and properly filed, or if a Subordinate Note Objection is timely and properly filed but denied, (i) the Pre-Petition Subordinate Note Obligations shall be deemed allowed in full, shall not be subject to any setoff, recoupment, counterclaim, deduction or claim of any kind, and shall not be subject to any further objection or challenge by any party at any time, and Pre-Petition Subordinate Note Agent's or Pre-Petition Subordinate Noteholders' pre-petition liens on and security interest in the Pre-Petition Subordinate Note Collateral shall be deemed legal, valid, perfected, enforceable, and non-avoidable for all purposes, and (ii) the Pre-Petition Subordinate Note Agent and the Pre-Petition Subordinate Noteholders, and each of their respective participants, agents, officers, directors, employees,

34

attorneys, professionals, successors, and assigns (each in their respective capacities as such) shall be deemed released and discharged from any and all claims and causes of action related to or arising out of the Pre-Petition Subordinate Note Documents and shall not be subject to any further objection or challenge relating thereto or arising therefrom by any party at any time.

      4.2   <u>Debtor's Waivers</u>.  At all times during this Case, and whether or not an Event of Default has occurred, the Debtor irrevocably waives any right that they may have to seek further authority (a) to use Cash Collateral of Agent and DIP Lender or of Pre-Petition Term Lenders under section 363 of the Bankruptcy Code, (b) to obtain post-petition loans or other financial accommodations pursuant to section 364(c) or 364(d) of the Bankruptcy Code, other than as provided in this Interim Order or as may be otherwise expressly permitted pursuant to the Transaction Documents, (c) to challenge the application of any payments authorized by this Interim Order as pursuant to section 506(b) of the Bankruptcy Code, or to assert that the value of the Pre-Petition Collateral is less than the Pre-Petition Revolving Obligations, (d) to propose, support or have a plan of reorganization or liquidation that does not provide for the indefeasible payment in cash in full and satisfaction of all Post-Petition Obligations (other than unmatured indemnity obligations for which claims have not been asserted) on the effective date of such plan in accordance with the terms and conditions set forth in the Credit Agreement, or (e) to seek relief under the Bankruptcy Code, including without limitation, under section 105 of the Bankruptcy Code, to the extent any such relief would in any way restrict or impair the rights and remedies of Agent or any DIP Lender as provided in this Interim Order and the Transaction Documents or Agent's or any DIP Loan Lender's exercise of such rights or remedies; <u>provided</u>, <u>however</u>, that Agent may otherwise consent in writing, but no such consent shall be implied from any other action, inaction, or acquiescence by Agent or any DIP Lender.

      4.3   <u>Section 506(c) Claims</u>.  Subject to entry of the Final Order granting such relief, no costs or expenses of administration which have or may be incurred in this Case shall be

charged against Agent or any DIP Lender, their respective claims or the Collateral pursuant to § 506(c) of the Bankruptcy Code without the prior written consent of Agent, and no such consent shall be implied from any other action, inaction or acquiescence by Agent or DIP Lender.

4.4    Collateral Rights.    Until all Revolving Obligations shall have been indefeasibly paid and satisfied in full in accordance with the terms of the Credit Agreement and the other Transaction Documents:

(a)    no other party shall foreclose or otherwise seek to enforce any junior lien or claim in Collateral or right to repayments; and

(b)    upon and after the declaration of the occurrence of an Event of Default, and subject to Agent obtaining relief from the automatic stay as provided for herein to enforce its rights and remedies against the Collateral, in connection with a liquidation of any of the Collateral, Agent (or any of its employees, agents, consultants, contractors or other professionals) shall have the right, at the sole cost and expense of Debtor, to: (i) enter upon, occupy and use any real or personal property, fixtures, equipment, leasehold interests or warehouse arrangements owned or leased by Debtor and (ii) use any and all trademarks, trade names, copyrights, licenses, patents or any other similar assets of Debtor, which are owned by or subject to a lien of any third party and which are used by Debtor in their businesses. Agent and DIP Lender will be responsible for the payment of any applicable fees, rentals, royalties or other amounts due such lessor, licensor or owner of such property for the period of time that Agent actually uses the equipment or the intellectual property (but in no event for any accrued and unpaid fees, rentals or other amounts due for any period prior to the date that Agent actually occupies or uses such assets or properties or for any fees, rentals or other amounts that may become due following the end of Agent's occupation or use).

4.5    Releases.

Upon the earlier of (a) the entry of the Final Order or (b) the entry of an order extending the Interim Financing Period beyond thirty-five (35) calendar days after the date of this Interim Order, and in each instance, subject to Section 4.1 above, in consideration of Agent, DIP Lender and Pre-Petition Term Lenders permitting Debtor to use the Pre-Petition Collateral (including Cash Collateral) and providing other credit and financial accommodations to the Debtor pursuant to the provisions of the Transaction Documents and this Interim Order, Debtor, on behalf of itself and its successors and assigns, (collectively, the "Releasors"), shall, forever release, discharge and acquit Agent, DIP Lender, and each other Revolving Lender and their respective successors and assigns, and their present and former shareholders, affiliates, subsidiaries, divisions, predecessors, directors, officers, attorneys, employees and other representatives in their respective capacities as such (collectively, the "Pre-Petition Releasees") of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, of every kind, nature and description, including, without limitation, any so-called "lender liability" claims or defenses, that Releasors had, have or hereafter can or may have against Pre-Petition Releasees as of the date hereof, in respect of events that occurred on or prior to the date hereof with respect to the Debtor, the Obligations, Transaction Documents and any Loans or other financial accommodations made by Agent and/or the DIP Lender and/or any other Revolving Lender to Debtor pursuant to the Transaction Documents. In addition, upon the repayment of all Revolving Obligations (as defined in the Credit Agreement) owed to the Agent and the DIP Lender by Debtor and termination of the rights and obligations arising under the Transaction Documents (which payment and termination shall be on terms and conditions acceptable to the Agent), the Agent and the DIP Lender shall be released from any and all obligations, liabilities, actions, duties, responsibilities and causes of action arising or occurring in connection with or related to the Transaction Documents, this Interim Order or the Final Order (including without limitation any obligation or responsibility (whether direct or indirect, absolute or contingent, due or not due, primary or secondary, liquidated or unliquidated) to pay or

4523695.4

otherwise fund the Carve-Out and/or the Professional Fee Carve-Out, on terms and conditions acceptable to the Agent, but for the avoidance of doubt, excluding any claims or causes of action for gross negligence or willful misconduct).

**Section 5.**      Other Rights and Post-Petition Obligations.

5.1      No Modification or Stay of This Interim Order. Notwithstanding (a) any stay, modification, amendment, supplement, vacating, revocation or reversal of this Interim Order, the Transaction Documents or any term hereunder or thereunder, (b) the failure to obtain a Final Order pursuant to Bankruptcy Rule 4001(c)(2), or (c) the dismissal or conversion of this Case (each, a "Subject Event"), (x) the acts taken by each of the Agent and the DIP Lender in accordance with this Interim Order, and (y) the Post-Petition Obligations incurred or arising prior to Agent's actual receipt of written notice from Debtor expressly describing the occurrence of such Subject Event shall, in each instance, be governed in all respects by the original provisions of this Interim Order, and the acts taken by Agent and DIP Lender in accordance with this Interim Order, and the liens granted to Agent and DIP Lender in the Collateral, and all other rights, remedies, privileges, and benefits in favor of Agent and DIP Lender pursuant to this Interim Order and the Transaction Documents shall remain valid and in full force and effect pursuant to section 364(e) of the Bankruptcy Code. For purposes of this Interim Order, the term "appeal", as used in section 364(e) of the Bankruptcy Code, shall be construed to mean any proceeding for reconsideration, amending, rehearing, or re-evaluating this Interim Order by this Court or any other tribunal.

5.2      Power to Waive Rights; Duties to Third Parties. Agent shall have the right to waive any of the terms, rights and remedies provided or acknowledged in this Interim Order that are in favor of Agent, DIP Lender, or Pre-Petition Term Lender (the "DIP Lender Rights"), and shall have no obligation or duty to any other party with respect to the exercise or enforcement, or failure to exercise or enforce, any DIP Lender Right(s). Any waiver by Agent of any DIP Lender Rights shall not be or constitute a continuing waiver. Any delay in or failure to exercise or enforce any DIP

Lender Right shall neither constitute a waiver of such DIP Lender Right, subject Agent or any DIP Lender to any liability to any other party, nor cause or enable any party other than the Debtor to rely upon or in any way seek to assert as a defense to any obligation owed by the Debtor to Agent or any DIP Lender.

      5.3    <u>Disposition of Collateral</u>.  Debtor shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the Collateral, other than pursuant to the terms of the Credit Agreement and the Budget, without the prior written consent of Agent (and no such consent shall be implied, from any other action, inaction or acquiescence by the Agent or DIP Lender) and, in each case, an order of this Court.

      5.4    <u>Inventory</u>.  Debtor shall not, without the prior written consent of the Agent, (a) enter into any agreement to return any inventory to any of their creditors for application against any pre-petition indebtedness under any applicable provision of section 546 of the Bankruptcy Code, or (b) consent to any creditor taking any setoff against any of its pre-petition indebtedness based upon any such return pursuant to section 553(b)(1) of the Bankruptcy Code or otherwise.

      5.5    <u>Reservation of Rights</u>.  The terms, conditions and provisions of this Interim Order are in addition to and without prejudice to the rights of Agent and DIP Lender to pursue any and all rights and remedies under the Bankruptcy Code, the Transaction Documents or any other applicable agreement or law, including, without limitation, rights to seek adequate protection and/or additional or different adequate protection, to seek relief from the automatic stay, to seek an injunction, to oppose any request for use of cash collateral or granting of any interest in the Collateral, as applicable, or priority in favor of any other party, to object to any sale of assets, and to object to applications for allowance and/or payment of compensation of Professionals or other parties seeking compensation or reimbursement from the Estate.

4523695.4

5.6     Binding Effect.

(a)     The provisions of this Interim Order and the Transaction Documents, the Post-Petition Obligations, the Revolving Loan A/L Adequate Protection Superpriority Claim, the DIP Loan Superpriority Claim and any and all rights, remedies, privileges and benefits in favor of each of the Agent and the DIP Lender provided or acknowledged in this Interim Order, and any actions taken pursuant thereto, shall be effective immediately upon entry of this Interim Order notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h) and 7062, shall continue in full force and effect, and shall survive entry of any such other order, including without limitation any order which may be entered confirming any plan of reorganization, converting the Case to any other chapter under the Bankruptcy Code, or dismissing the Case.

(b)     Any order dismissing the Case under section 1112 or otherwise shall be deemed to provide (in accordance with §§ 105 and 349 of the Bankruptcy Code) that (a) the DIP Loan Superpriority Claim and Agent's and DIP Lender's liens on and security interests in the Collateral and all other claims, liens, adequate protections and other rights granted pursuant to the terms of this Interim Order shall continue in full force and effect notwithstanding such dismissal until the Revolving Obligations are indefeasibly paid and satisfied in full, and (b) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing all such claims, liens, protections and rights.

(c)     In the event this Court modifies any of the provisions of this Interim Order or the Transaction Documents following a Final Hearing, such modifications shall not affect the rights or priorities of Agent and DIP Lender pursuant to this Interim Order with respect to the Collateral or any portion of the Revolving Obligations which arises or is incurred or is advanced prior to such modifications, and this Interim Order shall otherwise remain in full force and effect to such extent.

4523695.4

(d)    This Interim Order shall be binding upon Debtor, all parties in interest in the Case and their respective successors and assigns, including any trustee or other fiduciary appointed in the Case or any subsequently converted bankruptcy case(s) of any Debtor.  This Interim Order shall also inure to the benefit of Debtor, Agent, DIP Lender, Pre-Petition Term Lenders, Pre-Petition Subordinate Note Agent, Pre-Petition Subordinate Noteholders and each of their respective successors and assigns.

5.7    Restrictions on Cash Collateral Use, Additional Financing, Plan Treatment.

(a)    All post-petition advances, loans and other financial accommodations under the Credit Agreement and the other Transaction Documents are made in reliance on this Interim Order and there shall not at any time be entered in the Case, or in any subsequently converted case under chapter 7 of the Bankruptcy Code, any order (other than the Final Order) which (a) authorizes the use of cash collateral of Debtor in which Agent or DIP Lender have an interest, or the sale, lease, or other disposition of property of Debtor's Estate in which Agent or DIP Lender have a lien or security interest, except as expressly permitted hereunder or in the Transaction Documents, or (b) authorizes under section 364 of the Bankruptcy Code the obtaining of credit or the incurring of indebtedness secured by a lien or security interest which is equal or senior to a lien or security interest in property in which Agent or DIP Lender hold a lien or security interest, or which is entitled to priority administrative claim status which is equal or superior to that granted to Agent and DIP Lender herein; unless, in each instance (x) Agent shall have given its express prior written consent with respect thereto, no such consent being implied from any other action, inaction or acquiescence by Agent or DIP Lender, or (y) such other order requires that all Revolving Obligations shall first be indefeasibly paid and satisfied in full in accordance with the terms of the Credit Agreement and the other Transaction Documents (other than unmatured indemnity obligations for which claims have not been asserted), including, without limitation, all debts and obligations of Debtor to Agent and DIP Lender which arise or result from the obligations, loans, security interests and liens authorized

4523695.4

herein, on terms and conditions acceptable to Agent. The security interests and liens granted to or for

the benefit of Agent and DIP Lender hereunder and the rights of Agent and DIP Lender pursuant to

this Interim Order and the Transaction Documents with respect to the Revolving Obligations and the

Collateral are cumulative and shall not be altered, modified, extended, impaired, or affected by any

plan of reorganization or liquidation of Debtor and, if Agent shall expressly consent in writing that

the Post-Petition Obligations shall not be repaid in full upon confirmation thereof, shall continue

after confirmation and consummation of any such plan.

      5.8    <u>No Owner/Operator Liability</u>. Subject to the entry of the Final Order granting

such relief, neither the Agent nor DIP Lender shall be deemed to be in control of the operations of

the Debtor or to be acting as a "responsible person" or "owner or operator" with respect to the

operation or management of the Debtor (as such terms, or any similar terms, are used in the United

States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601

et seq., as amended, or any similar federal or state statute).

      5.9    <u>Marshalling</u>. Subject to entry of the Final Order granting such relief, in no

event shall Agent or DIP Lender be subject to the equitable doctrine of "marshalling" or any similar

doctrine with respect to the Collateral. Agent and DIP Lender shall each be entitled to all of the

rights and benefits of section 552(b) of the Bankruptcy Code, and, subject to entry of the Final Order,

the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to

Agent or DIP Lender with respect to proceeds, products, offspring or profits of any of the Collateral,

as applicable.

      5.10    <u>Right of Setoff</u>. To the extent any funds were on deposit with Agent as of the

Petition Date, including, without limitation, all funds deposited in, or credited to, an account of

Debtor with Agent or DIP Lender immediately prior to the filing of the Case (regardless of whether,

as of the Petition Date, such funds had been collected or made available for withdrawal by any such

Debtor), such funds (the "<u>Deposited Funds</u>") are subject to rights of setoff. By virtue of such setoff

rights, the Deposited Funds are subject to a lien in favor of Agent or the applicable DIP Lender pursuant to §§ 506(a) and 553 of the Bankruptcy Code.

5.11    Right to Credit Bid.  The Agent, on behalf of itself and the DIP Lender, shall have the right to "credit bid" the amount of its and their claims that are Revolving Obligations arising under the terms of the Transaction Documents, during any sale of all or substantially all of the Debtor's assets, including without limitation, sales occurring pursuant to section 363 of the Bankruptcy Code or included as part of any restructuring plan subject to confirmation under section 1129(b)(2)(A)(ii)-(iii) of the Bankruptcy Code.

5.12    Payment and Review of Lender Fees and Expenses.  Debtor shall pay all fees required or necessary for the Debtor's performance of its obligations under the Credit Agreement, as applicable, including, without limitation, the non-refundable payment to the Agent, the DIP Lender, and the Pre-Petition Term Lenders, as the case may be, of the reasonable fees and expenses (including without limitations professional fees and legal fees and expenses) set forth in the Transaction Documents, whether incurred before or after the Petition Date; provided, that all such fees and expenses shall be subject to a ten (10) business day period of review for the reasonableness thereof by the U.S. Trustee, the counsel for the Debtor, and the the counsel for the Committee (if any), it being understood that any statements or invoices for such fees and expenses shall not be required to be maintained in accordance with the U.S. Trustee Guidelines, nor shall any such counsel or other professional be required to file any interim or final fee applications with the Court or otherwise seek Court's approval of any such payments, unless, within such ten (10) business day period commencing on the date of delivery of such statements or invoices, the Debtor, the U.S. Trustee or the Creditors' Committee serve a written objection upon the requesting party, in which case, the Debtor shall (i) immediately upon expiration of the ten (10) business day period, commencing on the date of delivery of such statements or invoices, pay only such amounts that are not the subject of any objection and (ii) pay the balance of such statements or invoices at such time

4523695.4

and in such amount as subsequently agreed to by the requesting party and any objecting party or as otherwise ordered by the Court to be paid.

      5.13    Term; Termination.  Notwithstanding any provision of this Interim Order to the contrary, the term of the financing arrangements among Debtor, Agent and DIP Lender authorized by this Interim Order may be terminated pursuant to the terms of the Credit Agreement.

      5.14    Limited Effect.  In the event of a conflict between the terms and provisions of any of the Transaction Documents and this Interim Order, the terms and provisions of this Interim Order shall govern.

      5.15    Objections Overruled.  All objections to the entry of this Interim Order are (to the extent not withdrawn, waived, withdrawn, or settled) hereby overruled.

      5.16    Retention of Jurisdiction.  The Court retains jurisdiction and power with respect to all matters arising from or related to the implementation or interpretation of this Interim Order, the Credit Agreement, and the other Transaction Documents.

**Section 6.**    Final Hearing and Response Dates.

      The Final Hearing on the Motion pursuant to Bankruptcy Rule 4001(c)(2) is scheduled for September ___, 2016, at _____ before this Court.  The Debtor shall promptly mail copies of this Interim Order to the Noticed Parties, and to any other party that has filed a request for notices with this Court and to any Committee after same has been appointed, or such Committee's counsel, if same shall have filed a request for notice.  The Debtor may serve the Motion and the Interim Order without the exhibits attached thereto as such exhibits are voluminous and available, free of charge, at [_____].  Such notice is deemed good and sufficient and that no further notice need be given.  Any party in interest objecting to the relief sought at the Final Hearing shall serve and file written objections, which objections shall be served upon (a) proposed counsel to the Debtor, [Gellert Scali Busenkell & Brown, LLC, 1201 N. Orange Street, Suite 300, Wilmington, DE 19801, Attn: Mike Busenkell, Esq., Fax: (302)-425-5814 ]; (b) counsel for the Agent, Otterbourg, P.C., 230 Park

Avenue, New York, New York 10169-0075, Attn: Daniel F. Fiorillo, Esq. and Chad B. Simon, Esq,

Fax: (212) 682-6104; (d) counsel for the Pre-Petition Subordinate Note Agent, [Kirkland & Ellis

LLP, 300 North LaSalle, Chicago, Illinois 60654, Attn: Anh Lee, Esq., Fax: (312)-862-2200]; and

shall be filed with the Clerk of the United States Bankruptcy Court for the District of Delaware, in

each case, to allow actual receipt of the foregoing no later than _____, prevailing Eastern

time, on September ____, 2016.

Dated:  Wilmington, Delaware

        _____, 2016

_____

    UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT 1

**Credit Agreement**

4523695.4

Execution Version

## RATIFICATION AND AMENDMENT AGREEMENT

This RATIFICATION AND AMENDMENT AGREEMENT (the "**Ratification Agreement**"), dated as of September 16, 2016, is by and among NJOY, INC., a Delaware corporation, as Debtor and Debtor-in-Possession (the "**Borrower**" or "**Debtor**"), and FLFC LENDING CO., as Revolving Lender and as administrative agent for the Revolving Lenders and Term Lenders (in such capacity, the "**Agent**").

### W I T N E S S E T H:

WHEREAS, Borrower has commenced a case under Chapter 11 of the Bankruptcy Code (as defined herein) in the United States Bankruptcy Court for the District of Delaware and Borrower has retained possession of its assets and is authorized under the Bankruptcy Code to continue the operation of its businesses as a debtor-in-possession;

WHEREAS, prior to the commencement of the Chapter 11 Case (as defined below), Agent and Revolving Lenders made loans and advances and provided other financial or credit accommodations to Borrower secured by substantially all assets and properties of Borrower as set forth in the Pre-Petition Transaction Documents (as defined below);

WHEREAS, Borrower is requesting that the Bankruptcy Court enter a Financing Order (defined below) pursuant to which Agent and Revolving Lenders may make post-petition loans and advances, and provide other financial accommodations, to Borrower secured by substantially all the assets and properties of Borrower as set forth in the Financing Order and the Transaction Documents (as defined below);

WHEREAS, Borrower has requested that Agent and Revolving Lenders make post-petition loans and advances and provide other financial or credit accommodations to Borrower and make certain amendments to the Pre-Petition Credit Agreement (as defined below) and the other Pre-Petition Transaction Documents (as defined below), and Agent and Lenders are willing to do so, subject to the terms and conditions contained herein; and

WHEREAS, Borrower desires to reaffirm its obligations to Agent and Revolving Lenders pursuant to the Pre-Petition Transaction Documents and acknowledge its continuing liabilities to Agent and Revolving Lenders thereunder in order to induce Agent and Revolving Lenders to make such post-petition loans and advances, and provide other financial accommodations, to Borrower secured by substantially all the assets and properties of Borrower set forth in the Financing Order.

NOW, THEREFORE, in consideration of the foregoing, the mutual covenants and agreements contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Agent, Lenders and Debtor mutually covenant, warrant and agree as follows:

1.    DEFINITIONS.

**1.1**    Additional Definitions. As used herein, the following terms shall have the respective meanings given to them below and the Pre-Petition Credit Agreement and the other

Pre-Petition Transaction Documents shall be deemed and are hereby amended to include, in addition and not in limitation, each of the following definitions:

(a)    **"Adequate Protection Liens"** means, collectively, the adequate protection liens as each is defined in the Financing Order.

(b)    **"Bankruptcy Court"** means the United States Bankruptcy Court or the United States District Court for the District of Delaware.

(c)    **"Bankruptcy Code"** means the United States Bankruptcy Code, being Title 11 of the United States Code as enacted in 1978, as the same has heretofore been or may hereafter be amended, recodified, modified or supplemented, together with all rules, regulations and interpretations thereunder or related thereto.

(d)    **"Bankruptcy Events"** means the commencement of the Chapter 11 Case, the events and conditions leading up to the commencement of the Chapter 11 Case, the occurrence and existence of any defaults under agreements that have no effect under the terms of the Bankruptcy Code as a result of the commencement thereof.

(e)    **"Budget Reserve"** means an amount or amounts determined by Agent in its discretion to account for (i) any unpaid administrative expense claims of the Borrower or other priority claims in the Chapter 11 Case that, in Agent's determination, may require payment prior to the payment in full of all Revolving Obligations, and (ii) the amount of any liens or claims in or against the Collateral that are pari passu with or senior to any liens and claims of Agent and Revolving Lenders, each of the forgoing in an amount as determined by Agent in its discretion. The Agent shall provide the Borrower with one (1) Business Days' notice prior to the implementation of any new Budget Reserve following the Closing Date or any change in the methodology on the calculation of an existing Budget Reserve (provided, however, that failure to provide such notice shall not preclude the effectiveness of such Budget Reserve).

(f)    **"Carve Out Expenses"** shall have the meaning attributed to such term in the Financing Order.

(g)    **"Chapter 11 Case"** means the case under Chapter 11 of the Bankruptcy Code commenced by Debtor which is being administered under the Bankruptcy Code and are pending in the Bankruptcy Court.

(h)    **"Committee"** means any official committee of unsecured creditors in the Chapter 11 Case pursuant to Section 1102 of the Bankruptcy Code.

(i)    **"Credit Agreement"** means the Pre-Petition Credit Agreement as ratified, amended, supplemented and otherwise modified by the Ratification Agreement, as the same now exists or may hereafter be amended from time to time.

(j)    **"Debtor"** mean Borrower, as Debtor and Debtor-in-Possession in the Chapter 11 Case.

(k)    **"Financing Order"** means the Interim Financing Order, the Permanent Financing Order and such other orders relating thereto or authorizing the granting of credit by Agent and Lenders to Borrower on an emergency, interim or permanent basis pursuant to Section 364 of the Bankruptcy Code as may be issued or entered by the Bankruptcy Court in the Chapter 11 Case.

(l)    **"Interim Financing Order"** means, the order of the Bankruptcy Court entered in the Chapter 11 Case after an interim hearing in form and substance satisfactory to the Agent in its sole discretion, together with all extension, modifications, and amendments thereto consented to by the Agent, which, among other matters but not by way of limitation, authorizing, on an interim basis, the Borrower to execute and perform under the terms of the Pre-Petition Transaction Documents, as amended and supplemented by the terms and conditions of the Ratification Agreement.

(m)    **"Permanent Financing Order"** means, the order of the Bankruptcy Court entered in the Chapter 11 Case after a final hearing of the Bankruptcy Court, which order shall be in form and substance satisfactory to the Agent in its sole discretion and from which no appeal or motion to reconsider has been filed, together with all extensions, modifications and amendments thereto, consented to by the Agent, which among other matters, but not by way of limitation, authorizing the Borrower to obtain credit, incur the Post-Petition Obligations, and grant Liens therefor and granting super-priority expense claims to Agent and Revolving Lenders with respect to all obligations due Agent and Revolving Lenders, subject to no priority claim or administrative expenses of the Chapter 11 Case or any other entity (other than as specifically set forth in the Financing Order).

(n)    **"Petition Date"** means the date of the commencement of the Chapter 11 Case.

(o)    **"Post-Petition Collateral"** means, collectively, all now existing and hereafter acquired real and personal property of Debtor's estate, wherever located, of any kind, nature or description, including any such property in which a lien is granted to Agent pursuant to the Transaction Documents, the Financing Order or any other order entered or issued by the Bankruptcy Court, and shall include, without limitation:

(i)    all of the Pre-Petition Collateral;

(ii)    all Accounts, Deposit Accounts, Instruments, Documents, Chattel Paper (whether Tangible Chattel Paper or Electronic Chattel Paper), Goods (including Inventory, Equipment, Fixtures and Motor Vehicles), Money, Payment Intangibles, Software, customer lists and other General Intangibles and all Letter-of-Credit Rights;

(iii)    the shares of common stock and preferred stock, or partnership, membership and other ownership interests, now or hereafter owned by the Obligors (collectively, the **"Pledged Equity"**), and all certificates evidencing the same, together with, in each case, all shares, securities, monies or property representing a dividend on any of the Pledged Equity, or representing a distribution or return of capital

upon or in respect of the Pledged Equity, or resulting from a split up, revision, reclassification or other like change of the Pledged Equity or otherwise received in exchange therefor, and any subscription warrants, rights or options issued to the holders of, or otherwise in respect of, the Pledged Equity (the Pledged Equity, together with all other certificates, shares, securities, properties, ownership interests, or moneys, dividends, distributions, returns of capital subscription, warrants, rights or options as may from time to time be pledged hereunder pursuant to this clause being herein collectively called the "**Equity Collateral**");

    (iv) all Investment Property, Financial Assets and Securities Accounts not covered by the foregoing clauses (ii) and (iii);

    (v) all Intellectual Property;

    (vi) all commercial tort claims now or hereafter described on in any Transaction Document or otherwise;

    (vii) all other tangible and intangible personal property of the Obligors, including all books, correspondence, credit files, records, invoices, tapes, cards, computer runs and other papers and documents owned by the Obligors (including any held for the Obligors by any computer bureau or service company from time to time acting for the Obligors);

    (viii) effective upon entry of a Permanent Financing Order, all claims, rights, interests, assets and properties recovered by or on behalf of Borrower or any trustee of Borrower (whether in the Chapter 11 Case or any subsequent case to which any Chapter 11 Case is converted), including, without limitation, all property recovered as a result of transfers or obligations avoided or actions maintained or taken pursuant to (among others) Sections 542, 544, 545, 547, 548, 549, 550, 551, 552 and 553 of the Bankruptcy Code; and

    (ix) to the extent not covered by the foregoing clauses, all Proceeds and products in whatever form of all or any part of the other Collateral, including all rents, profits, income and benefits and all proceeds of insurance and all condemnation awards and all other compensation for any event of loss with respect to all or any part of the other Collateral (together with all rights to recover and proceed with respect to the same), and all accessions to, substitutions for and replacements of all or any part of the other Collateral.

    (p) "**Post-Petition Obligations**" means all Obligations (as defined in the Pre-Petition Credit Agreement) of Debtor arising from, related to or in connection with any Revolving Loans on and after the Petition Date together with all other Obligations due and owing to Agent (exclusive of the principal or interest owed by Borrower in respect of any Term Loan) and whether arising on or after the conversion or dismissal of the Chapter 11 Case, or before, during and after the confirmation of any plan of reorganization in the Chapter 11 Case, and whether arising under or related to the Ratification Agreement, the Credit Agreement, the

other Transaction Documents, a Financing Order, by operation of law or otherwise, and whether incurred by Debtor as principal, surety, endorser, guarantor or otherwise and including, without limitation, all principal, interest, financing charges, letter of credit fees, unused line fees, servicing fees, line increase fees, debtor-in-possession facility fees, early termination fees, other fees, commissions, costs, expenses and attorneys', accountants' and consultants' fees and expenses incurred in connection with any of the foregoing.  For the avoidance of doubt, the Post-Petition Obligations shall include that portion of the outstanding Pre-Petition Obligations owed to Agent and Revolving Lenders in connection with or related to the Revolving Loans, which have been "rolled-up" from time to time as provided in the Financing Order.

(q)     **"Pre-Petition Collateral"** means, collectively, (i) all "Collateral" as such term is defined in the Pre-Petition Credit Agreement as in effect immediately prior to the Petition Date, (ii) all "Collateral" and "Pledged Collateral" as such terms are defined in each of the other Pre-Petition Transaction Documents as in effect immediately prior to the Petition Date, and (iii) all other security for the Pre-Petition Obligations as provided in the Pre-Petition Credit Agreement and the other Pre-Petition Transaction Documents immediately prior to the Petition Date.

(r)     **"Pre-Petition Credit Agreement"** means the Credit Agreement, dated as of March 3, 2015, by and among Borrower, Lenders and Agent, as amended by the First Amendment to Credit Agreement, dated as of July 9, 2015, the Assignment Agreement, dated as of August 5, 2015, the Second Amendment to Credit Agreement, dated August 5, 2015, the Forbearance Agreement, Limited Waiver and Third Amendment to Credit Agreement (the "Forbearance Agreement"), dated September 24, 2015, the First Amendment to Forbearance Agreement and Fourth Amendment to Credit Agreement, dated September 30, 2015, the Second Amendment to Forbearance Agreement and Fifth Amendment to Credit Agreement, dated October 2, 2015, the Forbearance Extension Amendment, dated as of October 15, 2015, the Sixth Amendment to Credit Agreement, dated October 16, 2015, the Seventh Amendment to Credit Agreement, dated November 5, 2015, the Eighth Amendment to Credit Agreement, dated December 1, 2015, the Ninth Amendment to Credit Agreement, dated February 5, 2016, the Tenth Amendment to Credit Agreement, dated April 8, 2016, the Eleventh Amendment to Credit Agreement, dated as of May 6, 2016, the Twelfth Amendment to Credit Agreement, dated as of July 11, 2016, the Thirteenth Amendment to Credit Agreement, dated as of July 20, 2016, the Fourteenth Amendment to Credit Agreement dated as of August 11, 2016; the Fifteenth Amendment to Credit Agreement dated as of August 18, 2016, and the Sixteenth Amendment to Credit Agreement dated as of August 25, 2016, as in effect immediately prior to the Petition Date.

(s)     **"Pre-Petition Revolving Obligations"** means all Obligations (as such term is defined in the Pre-Petition Credit Agreement) arising at any time before the Petition Date in connection with or relating to each Revolving Loan, together with all other Obligations due and owing to Agent (exclusive of the principal or interest owed by Borrower in respect of any Term Loan) prior to the Petition Date.

(t)     **"Pre-Petition Term Obligations"** means all Obligations (as such term is defined in the Pre-Petition Credit Agreement) arising at any time before the Petition Date in connection with or relating to each Term Loan.

(u)    **"Pre-Petition Obligations"** means all Obligations (as such term is defined in the Pre-Petition Credit Agreement) arising at any time before the Petition Date.

(v)    **"Pre-Petition Transaction Documents"** means the Transaction Documents (as defined in the Pre-Petition Credit Agreement), as in effect immediately prior to the Petition Date.

(w)    **"Professionals"** means the Debtor's and any Committee's professionals, retained by either of them by final order of the Bankruptcy Court (which order has not been reversed, vacated or stayed unless such stay is no longer effective) under Sections 327, 328 or 1103(a) of the Bankruptcy Code.

(x)    **"Ratification Agreement"** means the Ratification and Amendment Agreement, dated as of September 16, 2016, by and among Borrower and Agent as the same may hereafter be amended, modified, supplemented, extended, renewed, restated or replaced.

(y)    **"Ratification Closing Date"** means the date on which all of the conditions precedent in Section 9 of the Ratification Agreement have been satisfied (or waived).

(z)    **"Revolving Obligations"** means, collectively, all Pre-Petition Revolving Obligations and all Post-Petition Obligations.

**1.2**    <u>Amendments to Definitions.</u>

(a)    <u>Agent and Lenders.</u>   All references to the terms "Agent" and "Lenders" shall include their respective successors and assigns.

(b)    <u>Bankruptcy Law.</u>   The definition of "Bankruptcy Law" in the Pre-Petition Credit Agreement is hereby deleted in its entirety and the following substituted therefor:

" **'Bankruptcy Law'** Title 11, U.S. Code, or any similar federal, foreign or state law for the relief of debtors."

(c)    <u>Borrower and Debtor.</u>   All references to the terms "Borrower" or "Debtor" in the Transaction Documents shall be deemed and each such reference is hereby amended to mean and include the Debtor, as defined herein, and its successors and assigns (including any trustee or other fiduciary hereafter appointed as Debtor's legal representative, as applicable, or with respect to Debtor or the property of the estate of Debtor whether under Chapter 11 of the Bankruptcy Code or any subsequent Chapter 7 case o and its successor upon conclusion of the Chapter 11 Case of Debtor, as the case may be).

(d)    <u>Budget.</u>   The definition of "Budget" in the Pre-Petition Credit Agreement is hereby deleted in its entirety and the following substituted therefor:

" **'Budget'** means the thirteen (13) week budget delivered to Agent in accordance with Section 5.3 of the Ratification Agreement (such initial Budget attached to the Ratification

Agreement as <u>Exhibit A</u>, in form and substance approved by the Agent in its sole discretion), together with any subsequent or amended budgets thereto delivered to Agent, in form and substance satisfactory to Agent in its sole discretion (each such subsequent budget, a "**Budget**"), in accordance with the terms and conditions of the Ratification Agreement."

(e)    <u>Cash Interest Rate</u>.  The definition of "Cash Interest Rate" in the Pre-Petition Credit Agreement is hereby deleted in its entirety and the following substituted therefor:

" '**Cash Interest Rate**' means, with respect to Revolving Loans, thirteen percent (13%) per annum."

(f)    <u>Collateral</u>.  All references to the term "Collateral" in the Credit Agreement or the other Transaction Documents, or any other term referring to the security for the Pre-Petition Obligations, shall be deemed, and each such reference is hereby amended to mean, collectively, the Pre-Petition Collateral and the Post-Petition Collateral.

(g)    <u>Current Interest Rate</u>.  The definition of "Current Interest Rate" in the Pre-Petition Credit Agreement is hereby deleted in its entirety and the following substituted therefor:

" '**Current Interest Rate**' means, with respect to Revolving Loans, a rate per annum equal to the Cash Interest Rate."

(h)    <u>Debtor</u>.  All references to Debtor, including, without limitation, to the term "Borrower" in the Credit Agreement or the other Transaction Documents shall be deemed, and each such reference is hereby amended, to mean and include the Debtor as defined herein, and its successors and assigns (including any trustee or other fiduciary hereafter appointed as its legal representative or with respect to the property of the estate of Debtor whether under Chapter 11 of the Bankruptcy Code or any subsequent Chapter 7 case and its successor upon conclusion of the Chapter 11 Case of Debtor).

(i)    <u>Transaction Documents</u>.  All references to the term "Transaction Documents" in the Credit Agreement or the other Transaction Documents shall be deemed, and each such reference is hereby amended, to include, in addition and not in limitation, the Ratification Agreement and all of the Pre-Petition Transaction Documents, as ratified, assumed and adopted by Borrower pursuant to the terms of the Ratification Agreement, as amended and supplemented thereby, and the Financing Order, as each of the same now exists or may hereafter be amended, modified, supplemented, extended, renewed, restated or replaced.

(j)    <u>Credit Agreement</u>.  All references to the term "Agreement" in the Pre-Petition Credit Agreement or the term "Credit Agreement" in the other Transaction Documents shall be deemed, and each such reference is hereby amended, to mean the Credit Agreement (as defined in the Ratification Agreement), and as ratified, assumed and adopted by Borrower pursuant to the terms hereof and the Financing Order.

(k)  _Material Adverse Effect_.  All references to the term "Material Adverse Effect," "material adverse effect" or "material adverse change" in the Credit Agreement, the Ratification Agreement or the other Transaction Documents shall be deemed, and each such reference is hereby amended, to add at the end thereof: "; _provided_, _that_, the Bankruptcy Events shall not, individually or collectively, constitute a Material Adverse Effect".

(l)  _Obligations_.  All references to the term "Obligations" in the Credit Agreement, the Ratification Agreement or the other Transaction Documents shall be deemed, and each such reference is hereby amended, to mean both the Pre-Petition Obligations and the Post-Petition Obligations.

(m)  _Permitted Liens_.  The definition of "Permitted Liens" in the Pre-Petition Credit Agreement is hereby amended by (i) deleting clauses, (c), (g), (k), (l), and (m) and substituting the term "Reserved," in each instance therefor; and (ii) adding the following clauses at the end thereof:

> ", (o) all Liens existing on the Petition Date that constituted "Permitted Liens" as defined in and under the Pre-Petition Credit Agreement to the extent such liens were legal, valid, binding, enforceable and non-avoidable as of the Petition Date, and are not otherwise subject to any defense, counterclaim, avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or any other applicable law, (p) the Adequate Protection Liens; and (q) Liens on the Collateral in respect of the Carve Out Expenses".

(n)  _Revolving Loan Maturity Date_.  The definition of "Revolving Loan Maturity Date" in the Pre-Petition Credit Agreement is hereby deleted in its entirety and the following substituted therefor:

> " '**Revolving Loan Maturity Date**' means the earliest to occur of (i) December 2, 2016, (ii) the confirmation of a plan of reorganization or liquidation for Borrower in the Chapter 11 Case, (iii) the consummation of the sale or sales of all or substantially all of the Borrower's assets and properties or of all equity interests in Debtor, (iv) the last date Borrower is authorized to Borrow funds under the Credit Agreement pursuant to the Interim Financing Order, unless the Permanent Financing Order has been entered prior to such date, and in such event, then the last date Borrower is authorized to Borrow funds under the Credit Agreement pursuant to the Permanent Financing Order, or (v) the occurrence of an Event of Default.

(o)  _Revolving Loan PIK Amount_.  The definition of "Revolving Loan PIK Amount" in the Pre-Petition Credit Agreement is hereby deleted in its entirety.

(p)  _Revolving Loan PIK Interest Rate_.  The definition of "Revolving Loan PIK Interest Rate" in the Pre-Petition Credit Agreement is hereby deleted in its entirety.

**1.3**  _Interpretation_.

(a)    For purposes of the Ratification Agreement, unless otherwise defined or amended herein, including, but not limited to, those terms used or defined in the recitals hereto, all terms used herein shall have the respective meanings assigned to such terms in the Pre-Petition Credit Agreement, as amended, supplemented or otherwise modified by the Ratification Agreement.

(b)    All references to any term in the singular shall include the plural and all references to any term in the plural shall include the singular unless the context of such usage requires otherwise.

(c)    All terms not specifically defined herein which are defined in the Uniform Commercial Code, as in effect in the State of New York as of the date hereof, shall have the meaning set forth therein, except that the term "Lien" or "lien" shall have the meaning set forth in § 101(37) of the Bankruptcy Code.

## 2.    ACKNOWLEDGMENTS.

2.1    Pre-Petition Obligations.  The Borrower hereby acknowledges, confirms and agrees that, as of September 16, 2016, Borrower is indebted to (a) Agent and Revolving Lenders in respect of all Pre-Petition Revolving Obligations in the aggregate amount of not less than $3,283,893.21, consisting of Revolving Loans to Borrower made pursuant to the Pre-Petition Transaction, together with interest accrued and accruing thereon, and (b) Agent and Term Lenders in respect of all Pre-Petition Term Obligations in the aggregate amount of not less than $16,103,731, consisting of Term Loans to Borrower made pursuant to the Pre-Petition Transaction Documents, together with interest accrued and accruing thereon, and (c) other charges now or hereafter owed by Borrower to Agent and Lenders, all of which are unconditionally owing by the Borrower to the Agent and Lenders, without offset, defense or counterclaim of any kind, nature and description whatsoever.

2.2    Acknowledgment of Security Interests.  Borrower hereby acknowledges, confirms and agrees that Agent, for the benefit of itself and the other Lenders, has and shall continue to have (a) valid, enforceable and perfected first priority and senior security interests in and liens upon all Pre-Petition Collateral heretofore granted to Agent pursuant to the Pre-Petition Transaction Documents as in effect immediately prior to the Petition Date to secure all of the Pre-Petition Obligations, and (b) valid and enforceable first priority and senior security interests in and liens upon all Post-Petition Collateral granted to Agent, for the benefit of itself and the other Lenders, under the Financing Order or hereunder or under any of the other Transaction Documents or otherwise granted to or held by Agent and Lenders, in each case, subject only to the Permitted Liens and the Carve Out Expenses (as such term is defined in the Financing Order).

2.3    Binding Effect of Documents.  Borrower hereby acknowledges, confirms and agrees that: (a) each of the Pre-Petition Transaction Documents to which it is a party prior to the Petition Date was duly executed and delivered to Agent and Lenders by Borrower and each is in full force and effect as of the date hereof, (b) the agreements and obligations of Borrower contained in the Pre-Petition Transaction Documents constitute the legal, valid and binding obligations of Borrower enforceable against it in accordance with the terms thereof, and

Borrower has no valid defense, offset or counterclaim to the enforcement of such obligations, and (c) Agent and Lenders are and shall be entitled to all of the rights, remedies and benefits provided for in (i) the Transaction Documents (subject to the entry and terms of the Financing Order) and (ii) the Financing Order.

3.    ADOPTION AND RATIFICATION.

3.1.    Borrower (a) ratifies, assumes, adopts and agrees to be bound by all of the Pre-Petition Transaction Documents to which it is a party and (b) agrees to pay all of the Pre-Petition Obligations in accordance with the terms of such Pre-Petition Transaction Documents, as supplemented and amended by the Ratification Agreement, and in accordance with the Financing Order. All of the Pre-Petition Transaction Documents are hereby incorporated herein by reference and are and shall be deemed adopted and assumed in full by Borrower, as Debtor and Debtor-in-Possession and considered as agreements between Borrower, on the one hand, and Agent and Lenders, on the other hand. Borrower hereby ratifies, restates, affirms and confirms all of the terms and conditions of the Pre-Petition Transaction Documents, as amended and supplemented pursuant hereto and the Financing Order, and Borrower, as Debtor and Debtor-in-Possession, agrees to be fully bound by the terms of the Transaction Documents.

3.2.    Notwithstanding anything in Section 3.1 of the Ratification Agreement to the contrary, the Agent and Lenders acknowledge that certain Events of Default have occurred and are continuing under the Pre-Petition Credit Agreement and the other Pre-Petition Transaction Documents, including, but not limited to, as a result of the commencement of the Chapter 11 Case and the other Bankruptcy Events (the "**Existing Defaults**"). From and after the Ratification Closing Date, for purposes of determining whether any Default or Event of Default has occurred under the Credit Agreement or any other Transaction Document, the Agent and the Lenders hereby agree that all such Existing Defaults shall be excluded from any determination of such Default or Event of Default  and only Defaults and Events of Default (as provided  in the Credit Agreement) occurring from and after the Ratification Closing Date shall constitute Defaults and Events of Default under the Credit Agreement. For the avoidance of doubt, none of the Existing Defaults shall give any right to the Agent or any Lender to exercise or enforce any of their respective rights or remedies under the Credit Agreement or the other Transaction Documents on the basis of the occurrence and/or existence of any one or more of the Existing Defaults.

4.    GRANT OF SECURITY INTEREST.

As additional collateral security for the prompt performance, observance and payment in full of all of the Revolving Obligations, Borrower, as Debtor and Debtor-in-Possession, hereby grants, pledges and assigns to the Agent, for the benefit of itself and the other Revolving Lenders, and also confirms, reaffirms and restates the prior grant to Agent, for the benefit of itself and the other Revolving Lenders of, continuing senior priority security interests in and liens upon, and rights of setoff against, all of the Collateral.

**5.**    ADDITIONAL REPRESENTATIONS, WARRANTIES AND COVENANTS.

In addition to the representations, warranties and covenants made by Borrower to Agent and Lenders under the Credit Agreement and the other Transaction Documents (in each case, for the avoidance of doubt, as amended by or provided in the Ratification Agreement) Borrower hereby represents, warrants and covenants to Agent and Revolving Lenders the following (which shall survive the execution and delivery of the Ratification Agreement), the truth and accuracy of which, or compliance with, to the extent such compliance does not violate the terms and provisions of the Bankruptcy Code, shall be a continuing condition precedent to the making of Revolving Loans by Agent and Revolving Lenders:

**5.1**    Financing Order.  Borrower shall not seek to have any Financing Order vacated, modified, reversed on appeal, or vacated or modified by any order of the Bankruptcy Court (other than as consented to by Agent).

**5.2**    Use of Proceeds.  All Revolving Loans provided by Agent or any Revolving Lender to Borrower pursuant to the Financing Order, the Credit Agreement or otherwise, shall only be used by Debtor to the extent (a) provided for in the Budget or (b) authorized by the Bankruptcy Court and consented to by the Agent for (i) general working capital needs, and (ii) the repayment of the Revolving Obligations.

**5.3**    Budget.

(a)    Borrower has prepared and delivered to Agent and Revolving Lenders a thirteen (13) week post-petition Budget.  The Budget has been thoroughly reviewed by Borrower and its management and sets forth, for the periods covered thereby, projected weekly cash receipts and cash disbursements for each week (each such week ending on Saturday) of the thirteen (13) consecutive week period commencing with the week ending September 25, 2016. Subsequent thirteen (13) week budgets shall be delivered to the Agent and Revolving Lenders, in form and substance satisfactory to the Agent and Revolving Lenders in their sole discretion, on or before the date that is twenty-one days prior to the last date of the Budget or more frequently as Agent may request in its sole discretion.  Upon approval by the Agent and Lenders, such budget shall be deemed to be the Budget for the next thirteen (13) week period.

(b)    Not later than 3:00 p.m. (Eastern time) on the Tuesday of each week commencing with the Tuesday following the first full week ending after the Petition Date, Borrower shall furnish to Agent a weekly report (the "**Budget Compliance Report**") that (i) sets forth as of the preceding Saturday of each such week on a cumulative basis from the Petition Date until the second (2nd) full week ending on a Saturday after the Petition Date and then on a rolling two (2) week basis at all times thereafter (each such period referred to herein as a "**Measurement Period**"), the actual results for the following line items set forth in the Budget: (A) total cash receipts, and (B) total cash disbursements, noting therein variances from values set forth for such periods in the Budget, and (ii) an explanation for all such variances greater than five percent (5%) in any line items or sub-line items, certified by an officer of the Borrower. Such report/reconciliation shall also note any variances with values set forth in the Budget as of the day of such report/reconciliation.

(c)    Debtor acknowledges, confirms and agrees that the following covenants shall be tested pursuant to the Budget Compliance Report for the applicable Measurement Period ending as of each Saturday, with such testing commencing on the Tuesday following the first full two (2) weeks ending after the Petition Date: (i) the actual total cash receipts shall not be less than ninety five percent (95%) of the projected total cash receipts set forth in the Budget in respect of such Measurement Period, and (ii) the actual total cash disbursements shall not be more than one hundred and five percent (105%) of the projected total cash disbursements set forth in the Budget in respect of such Measurement Period (other than with respect to any and all professional fees and expenses, which shall be tested on an aggregate basis solely with respect to such line item).

(d)    Debtor hereby confirms, acknowledges and agrees that, unless waived in writing by Agent, (i) a failure to maintain the deviations in the Budget in an amount equal to or less than the percentage set forth in Section 5.3(c) hereof shall constitute a material deviation from the Budget and an additional Event of Default (each, a "**Material Budget Deviation**") and (ii) the failure to deliver any reports with respect to any Budget, in form and substance satisfactory to Agent in its sole discretion, as provided in Section 5.3(b) hereof shall constitute an Event of Default. Notwithstanding any approval by Agent or any Revolving Lender of the Budget or any subsequent or amended Budget(s), Agent and Revolving Lenders will not, and shall not be required to, provide any Revolving Loans to Borrower pursuant to the Budget, but shall only provide Revolving Loans in accordance with the terms and conditions set forth in the Credit Agreement as amended by the Ratification Agreement, the other Transaction Documents and the Financing Order. Agent and Revolving Lenders are relying upon the Borrower's delivery of, and compliance with, the Budget in accordance with this Section 5.3 in determining to enter into the post-petition financing arrangements provided for herein.

(e)    Notwithstanding any projected amounts set forth in the Budget relating to the costs and expenses of Agent and the other Revolving Lenders that are reimbursable by Borrower or any other amounts owing by Borrower to Agent and the Revolving Lenders (including, without limitation reasonable attorneys and consulting fees and expenses) in accordance with the Credit Agreement and the other Transaction Documents, such projections shall not limit, impair, modify or waive the Debtor's obligation to pay the actual amounts due to Agent and/or the other Revolving Lenders in respect of such costs, expenses and other amounts owing to Agent and Revolving Lenders in accordance with the Credit Agreement and the other Transaction Documents and the actual amounts paid in respect of such costs, expenses and other amounts other shall not be subject to the variance compliance set forth in Section 5.3(c).

(f)    Notwithstanding anything herein to the contrary, the Budget may be updated, modified or supplemented (with the consent and/or at the request of the Agent) from time to time, and each such updated, modified or supplemented budget shall be approved by, and in form and substance satisfactory to, the Agent in its sole discretion and no such updated, modified or supplemented budget shall be effective until so approved and once so approved shall be deemed the Budget; provided, that, (i) Borrower shall not be permitted to update, modify or supplement the Budget until after the last day of the fourth (4th) full week following the Petition Date; and (ii) during the eighth (8th) week of the Budget, the Borrower shall submit a budget for the next successive thirteen week period to the Agent, which budget shall be in (A) form substantially similar to the previous initial Budget (or otherwise in form acceptable to Agent in

its sole discretion) and (B) substance acceptable to the Agent in its sole discretion; provided, further, that, in the event that the Agent and the Borrower cannot, while acting diligently, reasonably, and in good faith, agree as to an updated, modified or supplemented budget, such disagreement shall give rise to an Event of Default hereunder once the period covered by the most recent Budget has terminated. Each Budget delivered to the Agent shall be accompanied by such supporting documentation as requested by the Agent in its sole discretion. Each Budget shall be prepared in good faith based upon assumptions which the Borrower believes to be reasonable and are satisfactory to the Agent in its sole discretion.

**5.4**    <u>Sale Milestones.</u>

(a)    On or before the Petition Date, the Debtor shall file a motion, in form and substance satisfactory to the Agent, requesting approval from the Bankruptcy Court to retain a nationally-recognized investment banking firm on terms and conditions acceptable to Agent in its discretion ("**Investment Banker**") to conduct the marketing and sale process for all or substantially all of the assets of Borrower;

(b)    On or before the fifth (5th) day following the Petition Date, the Bankruptcy Court shall have entered an order, in form and substance satisfactory to Agent, authorizing the retention of the Investment Banker on terms and conditions acceptable to Agent in its discretion;

(c)    On or before the twentieth (20th) day following the Petition Date, Debtor shall obtain the entry of an order of the Bankruptcy Court, in form and substance satisfactory to Agent, (i) approving the bidding procedures for the sale of all or substantially all of the Debtor's assets in accordance with Section 363 of the Bankruptcy Code (the "**Sale**"), including, without limitation, a form of asset purchase agreement acceptable to Agent in its sole discretion, and (ii) providing that all cash proceeds generated by such Sale(s), less reasonable out of pocket fees, costs and expenses directly arising from the closing of such Sale(s), subject to approval by Agent (as defined in the Financing Order) shall be remitted to Agent for application against, and in permanent reduction of, the Revolving Obligations (the "**Bid Procedures Order**");

(d)    On or before the forty-fifth (45th) day following the Petition Date, Debtor shall conduct an auction (the "**Auction**"), in accordance with the Bid Procedures Order, if more than one bona fide offer is received meeting the conditions set forth in the Bid Procedures Order;

(e)    On or before the fifty-fifth (55th) day following the Petition Date, the Bankruptcy Court shall have entered an order (the "**Sale Order**"), which order shall provide for, among other things, distribution of sale proceeds to Agent in a minimum cash amount not less than the amount required to satisfy the Revolving Obligations owed to Agent and Revolving Lenders, and otherwise in form and substance satisfactory to Agent, approving the sale or sales of all or substantially of the Debtor's assets, on terms and conditions acceptable to Agent, and authorizing and directing that all proceeds from the Sale(s) be remitted to Agent for application against and permanent reduction of the Revolving Obligations;

(f).    On or before the sixtieth (60th) day following the Petition Date, the Debtor shall have consummated the Sale(s); and

(g)    Debtor confirms, acknowledges and agrees that notwithstanding anything to the contrary contained in the Credit Agreement, any failure to comply with the requirements set forth in this Section 5.4 shall constitute an additional immediate Event of Default under the Transaction Documents.

**5.5**    Ratification of Deposit Account Control Agreement.    To the extent Agent deems it necessary in its reasonable discretion and promptly upon Agent's request, Borrower shall promptly provide Agent with evidence, in form and substance satisfactory to Agent, that the Deposit Account Control Agreements (as defined in the Financing Order) and other deposit account arrangements provided for under the Credit Agreement and the other Transaction Documents have been ratified and amended by the parties thereto, or their respective successors in interest to reflect the commencement of the Chapter 11 Case, that Borrower, as Debtor and Debtor-in-Possession, is the successor in interest to Borrower, that the Obligations include both the Pre-Petition Obligations and the Post-Petition Obligations, that the Collateral includes both the Pre-Petition Collateral and the Post-Petition Collateral as provided for in the Ratification Agreement.

**5.6**    ERISA.    Borrower hereby represents and warrants with, to and in favor of Agent and Lenders that (a) there are no liens, security interests or encumbrances upon, in or against any assets or properties of Borrower arising under ERISA, whether held by the Pension Benefit Guaranty Corporation (the "**PBGC**") or the contributing sponsor of, or a member of the controlled group thereof, any pension benefit plan of Borrower and (b) no notice of lien has been filed by the PBGC (or any other Person) pursuant to ERISA against any assets or properties of Borrower.

**5.7**    Maximum Outstanding Loans and Letters of Credit.

(a)    Notwithstanding anything to the contrary contained in the Credit Agreement or the other Transaction Documents, Agent and Lenders shall have no obligation whatsoever to make any Loan to the Borrower to the extent that, immediately after giving effect to the making of such Loan, the then aggregate outstanding amount of all Revolving Loans would exceed at any time $6,000,000 as determined by Agent in its sole discretion.

(b)    In the event that the aggregate principal amount of all Revolving Loans outstanding exceed $6,000,000, such event shall not limit, waive or otherwise affect any rights of the Agent or the Lenders in such circumstances or on any future occasions and Borrower shall, upon demand by the Agent, which may be made at any time or from time to time, immediately repay the entire amount of any such excess(es) for which payment is demanded.  Failure to repay such amount shall constitute an Event of Default.

**6.**    DIP FACILITY FEE.

Borrower shall pay to Agent, for the account of Revolving Lenders on a pro rata basis according to their respective Revolving Commitments, a debtor-in-possession financing facility fee, in the amount of $60,000, on account of the financing provided by Agent and Revolving

Lenders to Borrower in the Chapter 11 Case, which fee shall be fully earned and due and payable on the Ratification Closing Date and which may be charged directly to the loan account of Borrower maintained by Agent or paid by the Borrower concurrently with the of the initial Loans, as provided under Section 9 of the Ratification Agreement.

7.    AMENDMENTS.

    7.1    Revolving Loans. Section 2.1(a) of the Pre-Petition Credit Agreement is hereby amended and restated in its entirety as follows:

> "(a)    Subject to the terms and conditions set forth in this Credit Agreement, each Revolving Lender agrees (severally and not jointly) to make Revolving Loans to the Borrower at any time and from time to time during the term of this Agreement in an aggregate principal amount at any one time outstanding not to exceed the lesser of:  (i) such Revolving Lender's Revolving Commitment or (ii) such Revolving Lender's pro rata share of an amount equal to (X) the aggregate amount of outstanding Revolving Loans set forth in the Budget through the week in which any request by Borrower for a Revolving Loan is made, minus (Y) any Budget Reserves. Within the foregoing limits and subject to the terms and conditions set forth in this Credit Agreement, the Borrower may borrow, prepay and reborrow Revolving Loans without premium or penalty."

    7.2    Rate of Interest. Section 2.3(a) of the Pre-Petition Credit Agreement is hereby amended by deleting the first sentence thereof in its entirety and replacing it with the following:

> "Each Revolving Loan shall bear interest on the unpaid principal amount thereof from the date issued through the date such Revolving Loan is paid in full in cash (whether upon final maturity, by redemption, prepayment, acceleration or otherwise) at the Current Interest Rate."

    7.3    Interest Payments. Section 2.3(b) of the Pre-Petition Credit Agreement is hereby amended by deleting clause (ii) thereof and replacing it with "(ii) [intentionally deleted]".

    7.4    Payments. Section 2.4(c) of the Pre-Petition Credit Agreement is hereby amended by adding the following new subsection (v) at the end of such Section:

> "(v)    Notwithstanding anything to the contrary contained in this Agreement or any of the other Transaction Documents, Agent may, in its discretion, apply any such payments or proceeds first, to the Pre-Petition Revolving Obligations until such Pre-Petition Revolving Obligations are paid and satisfied in full and second, to the Post-Petition Obligations until such Post-Petition Obligations are paid and satisfied in full."

    7.5    Repayment of Revolving Loans. The Pre-Petition Credit Agreement is hereby amended by inserting Section 2.5(e) as follows:

"(e)    **Repayment of Revolving Loans.**    Notwithstanding anything to the contrary in this Agreement, to the extent not previously paid in full in cash, all Revolving Loans shall be due and payable in full on the Revolving Loan Maturity Date, and may not be reborrowed thereafter."

7.6    <u>Corporate Existence; Power and Authority</u>.    Sections 4.1 and 4.2 of the Pre-Petition Credit Agreement are hereby amended by deleting the word "Each" at the beginning of the first and second sentences of Section 4.1 and at the beginning of first sentence of Section 4.2, and in each case inserting in replacement thereof the following: "Subject to any entry of any required orders of the Bankruptcy Court including, without limitation, the entry of the Interim Financing Order and the Permanent Financing Order, as applicable, each".

7.7    <u>Litigation</u>. Section 4.15 of the Pre-Petition Credit Agreement is hereby amended by deleting the word "Except" at the beginning of the first sentence thereof and inserting in replacement thereof the following: "Except for the Bankruptcy Events and except".

7.8    <u>Compliance with Laws</u>. Section 4.22 of the Pre-Petition Credit Agreement is hereby amended by deleting the word "Except" at the beginning of the third sentence thereof and inserting in replacement thereof the following:    "Subject to the entry of the Interim Financing Order and the Final Financing Order, as applicable, and except".

7.9    <u>Material Contracts</u>.    Section 4.40 of the Pre-Petition Credit Agreement is hereby amended by deleting such section in its entirety and replacing it with the following:

"4.40    <u>Material Contracts</u>.    <u>Schedule 4.40</u> contains a true, correct and complete list of all the Material Contracts of each Credit Party and each of its Subsidiaries, and all such Material Contracts are in full force and effect and no defaults currently exist thereunder. Other than the Bankruptcy Events, the Borrower is not in breach or in default in any material respect of or under any Material Contract and has not received any notice of the intention of any other party thereto to terminate any Material Contract, except where such breach, default or termination has not had or could not reasonably be expected to have a Material Adverse Effect or would otherwise be stayed by the filing of the Chapter 11 Case."

7.10    <u>Deliveries</u>.    Section 5.1 of the Pre-Petition Credit Agreement is hereby amended by deleting subsection (d) thereof in its entirety and replacing it with the following:

"(d)    **Borrowing Base Certificates.**    Notwithstanding anything to the contrary in the Credit Agreement or other Transaction Documents, Borrower shall, at the Borrower's sole expense, by not later than 3:00 pm (Eastern Time) on the Tuesday of the first full week following the Petition Date and on each Tuesday thereafter, deliver to Agent (i) an updated Borrowing Base Certificate together with all supporting documents and schedules as the Agent

may request in its sole discretion from time to time, (ii) an accounts receivable aging report, a list of accounts payable (including an aging report of accounts payable), and an Inventory report, and (iii) a weekly analysis of the activity in the reserve accounts of Borrowers regarding Dilution Items, in each case as of the end of such month and in form satisfactory to the Agent."

**7.11**    Incurrence of Indebtedness.    Notwithstanding anything to the contrary contained in Section 5.5 of the Credit Agreement or any other provision of the Credit Agreement or any of the other Transaction Documents, the Borrower shall not, and shall not permit any Subsidiary, after the date hereof, to, create, incur, assume, guarantee, or otherwise become directly or indirectly, liable with respect to any Indebtedness (other than (a) Permitted Indebtedness existing as of the Petition Date, (b) Indebtedness evidenced by the Credit Agreement and the other Transaction Documents and (c) Permitted Indebtedness incurred after the Petition Date, provided, that, Borrower and any Subsidiary shall only incur such Permitted Indebtedness after the Petition Date (i) in accordance with the Budget and (ii) with the prior written consent of Agent (and no such consent shall be implied, from any other action, inaction or acquiescence by Agent or any Revolving Lender).

**7.12**    Existence of Liens.    Section 5.6 of the Pre-Petition Credit Agreement is hereby amended by deleting Section 5.6 in its entirety and substituting the following therefor:

"5.6    Existence of Liens.    The Credit Parties shall not, and none of the Credit Parties shall permit any of its Subsidiaries to, directly or indirectly, allow or suffer to exist any Liens, other than (a) Permitted Liens, (b) Liens securing the Obligations, (c) Allowed Professional Fees covered by the Carve-Out and (d) any existing Liens that are unenforceable as provided under the Bankruptcy Code."

**7.13**    Reserved.

**7.14**    Budget.    Section 5.13 of the Pre-Petition Credit Agreement is hereby amended by deleting such Section in its entirety.

**7.15**    Inventory & Equipment Covenants.    Article V of the Pre-Petition Credit Agreement is hereby amended by adding the following new Section 5.29 at the end of such Article:

"Section 5.29    Inventory and Equipment.    Borrower shall not remove any Inventory or equipment from the locations set forth or permitted herein, without the prior written consent of the Agent, except for sales of Inventory and equipment in the ordinary course of Borrower's business and except to move Inventory and equipment directly from one location set forth or permitted herein to another such location and except for Inventory and equipment

shipped from the manufacturer thereof to Borrower which is in transit to the locations set forth or permitted herein."

**7.16**    Compliance with Laws.    Section 5.16 of the Pre-Petition Credit Agreement is hereby amended by deleting the word "Each" at the beginning of the first sentence thereof and inserting in replacement thereof the following:    "Except to the extent non-compliance is permitted under the Bankruptcy Code, none".

**7.17**    Events of Default.    Section 7.1 of the Pre-Petition Credit Agreement is hereby amended as follows:

(a)      Sections 7.1(a)(c), (d), (e), (n), and (o) of the Pre-Petition Credit Agreement are hereby amended by deleting each such subsection in its entirety and replacing it with "[intentionally deleted];".

(b)      Section 7.1(u) of the Pre-Petition Credit Agreement is hereby amended by deleting the word "or" at the end thereof.

(c)      Section 7.1(v) of the Pre-Petition Credit Agreement is hereby amended by inserting immediately at the beginning thereof the following phrase "other than the Bankruptcy Events,".

(d)      Section 7.1 of the Pre-Petition Credit Agreement is hereby amended by adding the following clauses at the end thereof:

"(w)    the occurrence of any condition or event which permits Agent and any Revolving Lenders to exercise any of the remedies set forth in the Financing Order, including, without limitation, any "Event of Default" (as defined in any Financing Order);

(x)    the termination or non-renewal of the Transaction Documents as provided for in any Financing Order;

(y)    Borrower suspends or discontinues all or any material part of its business, or is enjoined by any court or governmental agency from continuing to conduct all or any material part of its business, or a trustee or examiner with expanded powers is appointed for Borrower or any of its properties;

(z)    any act, condition or event occurring after the Petition Date that, in Agent's sole discretion, has or could reasonably expect to have a Material Adverse Effect;

(aa)    conversion of the Chapter 11 Case to a Chapter 7 case under the Bankruptcy Code;

(bb)  dismissal of the Chapter 11 Case or any subsequent Chapter 7 case either voluntarily or involuntarily;

(cc)  grant of a lien on or other interest in any property of Borrower, other than a Permitted Lien or a lien or encumbrance permitted by any Financing Order, which is superior to or ranks in parity with Agent's security interest in or lien upon the Collateral;

(dd)  the grant of an administrative expense claim in the Chapter 11 Case which is superior to or ranks in parity with the rights of the Agent (other than administrative expense claims permitted by any Financing Order or the Ratification Agreement);

(ee)  the failure of Borrower comply with any Financing Order or the Ratification Agreement, or any Financing Order shall be modified, reversed, revoked, remanded, stayed, rescinded, vacated or amended on appeal or by the Bankruptcy Court without the prior written consent of the Required Lenders;

(ff)  the appointment of a trustee pursuant to Sections 1104(a)(1) or 1104(a)(2) of the Bankruptcy Code;

(gg)  the appointment of an examiner with special powers pursuant to Section 1104(a) of the Bankruptcy Code;

(hh)  the filing of a plan of reorganization or liquidation by or on behalf of Borrower which does not provide for payment in full of all Obligations on the effective date thereof in accordance with the terms and conditions contained herein, unless otherwise consented to by the Agent and the Revolving Lenders;

(ii)  the confirmation of any plan of reorganization or liquidation in the Chapter 11 Case of Borrower which does not provide for payment in full of all Obligations on the effective date thereof in accordance with the terms and conditions contained herein, unless otherwise consented to by the Agent and the Revolving Lenders;

(jj)  the filing of a motion by Debtor that is not dismissed or denied within thirty (30) days after the date of filing such motion seeking, or the entry of any order permitting, recovery from any portion of the Collateral (or from Agent or any of the Revolving Lenders directly) any costs or expenses of preserving or disposing of the Collateral under section 506(c) or section 552(b) of the Bankruptcy Code (or otherwise); or

(kk)  any Material Budget Deviation, as defined in Section 5.3(d) of the Ratification Agreement."

**7.18**    Governing Law.    Section 9.2 of the Pre-Petition Credit Agreement is hereby amended by deleting the first sentence thereof in its entirety and replacing it with the following:

> "All questions concerning the construction, validity, enforcement and interpretation of this Agreement and the other Transaction Documents (unless expressly provided to the contrary in another Transaction Document in respect of such other Transaction Document) shall be governed by (i) the laws of the State of New York and (ii) to the extent applicable, the Bankruptcy Code."

**7.19**    Jurisdiction.    Section 9.2 of the Pre-Petition Credit Agreement is hereby amended by deleting the second sentence thereof in its entirety and replacing it with the following:

> "Borrower, Agent and each Revolving Lender irrevocably consent and submit to the non-exclusive jurisdiction of the Bankruptcy Court and the United States District Court for the Southern District of New York, and any appellate court from any thereof."

**8.**    RELEASE.

**8.1**    Release of Pre-Petition Claims.

(a)    Upon the earlier of (i) the entry of the Permanent Financing Order or (ii) the entry of an Order extending the term of the Interim Financing Order beyond thirty (30) calendar days after the date of the Interim Financing Order, in consideration of the agreements of Agent and Revolving Lenders contained herein and the making of any Revolving Loans by Agent and Revolving Lenders, Borrower, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, on behalf of itself and its respective successors, assigns, and other legal representatives, hereby absolutely, unconditionally and irrevocably releases, remises and forever discharges Agent, each Revolving Lender and their respective successors and assigns, and their present and former shareholders, affiliates, subsidiaries, divisions, predecessors, directors, officers, attorneys, employees and other representatives (Agent, each Revolving Lender and all such other parties being hereinafter referred to collectively as the "**Releasees**" and individually as a "**Releasee**"), of and from all demands, actions, causes of action, suits, covenants, contracts, controversies, agreements, promises, sums of money, accounts, bills, reckonings, damages and any and all other claims, counterclaims, defenses, rights of set-off, demands and liabilities whatsoever but, for the avoidance of doubt, excluding any claims or causes of action for gross negligence or willful misconduct (individually, a "**Pre-Petition Released Claim**" and collectively, "**Pre-Petition Released Claims**") of every name and nature, known or unknown, suspected or unsuspected, both at law and in equity, which Borrower, or any of its successors, assigns, or other legal representatives may now or hereafter own, hold, have or claim to have against the Releasees or any of them for, upon, or by reason of any nature, cause or thing whatsoever which arises at any time on or prior to the Ratification Closing Date, including, without limitation, for or on account of, or in relation

to, or in any way in connection with the Pre-Petition Credit Agreement, as amended and supplemented through the date hereof, and the other Transaction Documents.

(b)     Upon the earlier of (i) the entry of the Permanent Financing Order or (ii) the entry of an Order extending the term of the Interim Financing Order beyond thirty (30) calendar days after the date of the Interim Financing Order, Borrower, on behalf of itself and its successors, assigns, and other legal representatives, hereby absolutely, unconditionally and irrevocably, covenants and agrees with each Releasee that it will not sue (at law, in equity, in any regulatory proceeding or otherwise) any Releasee on the basis of any Pre-Petition Released Claim released, remised and discharged by Borrower pursuant to this Section 8.1. If Borrower violates the foregoing covenant, Borrower agrees to pay, in addition to such other damages as any Releasee may sustain as a result of such violation, all attorneys' fees and costs incurred by any Releasee as a result of such violation.

**8.2**     <u>Release of Post-Petition Claims</u>. Upon the payment in full of all of the Obligations, in consideration of the agreements of Agent and Lenders contained herein and the making of any Revolving Loans by Agent and Lenders, Borrower hereby covenants and agrees to execute and deliver in favor of Agent and Lenders a valid and binding termination and release agreement, in form and substance satisfactory to Agent. If Borrower violates such covenant, Borrower agrees to pay, in addition to such other damages as any Releasee may sustain as a result of such violation, all attorneys' fees and costs incurred by any Releasee as a result of such violation.

**8.3**     <u>Releases Generally</u>.

(a)     Borrower understands, acknowledges and agrees that the releases set forth above in Sections 8.1 and 8.2 hereof may be pleaded as a full and complete defense and may be used as a basis for an injunction against any action, suit or other proceeding which may be instituted, prosecuted or attempted in breach of the provisions of such releases.

(b)     Borrower agrees that no fact, event, circumstance, evidence or transaction which could now be asserted or which may hereafter be discovered shall affect in any manner the final and unconditional nature of the releases set forth in Section 8.1 hereof and, when made, Section 8.2 hereof.

**9.**     <u>CONDITIONS PRECEDENT</u>.

The amendments, representations and warranties, covenants, defaults and all other agreements and obligations contained in Sections 1 through 8 of the Ratification Agreement shall only become effective upon the satisfaction (or waiver) of all of the following conditions precedent (the time of such satisfaction (or waiver) referred to herein as the "**Ratification Closing Date**"):

**9.1**     as of the Petition Date, the Pre-Petition Transaction Documents shall not have been terminated;

**9.2**     Debtor shall have commenced a voluntary case under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware by no later

than September 16, 2016. Debtor shall have complied in full with the notice and other requirements of the Bankruptcy Code in a manner acceptable to Agent (and its counsel) in its sole discretion, with respect to the Interim Financing Order) and Agent shall have received such evidence thereof as it shall require in its sole discretion. All of the first day orders entered by the Bankruptcy Court at the time of the commencement of the Chapter 11 Case shall be in form and substance satisfactory to Agent in its sole discretion;

        **9.3**     no trustee or examiner with expanded powers shall have been appointed or designated with respect to Borrower, as Debtor and Debtor-in-Possession, or its respective business, properties and assets and no motion or proceeding shall be pending seeking such relief;

        **9.4**     the Interim Financing Order, in the form and substance acceptable to Agent, in all has been duly entered, is valid, subsisting and continuing and has not been vacated, reversed, or modified by any order of the Bankruptcy Court (other than as consented to by Agent) and is not subject to any pending appeal or stay;

        **9.5**     a cash management order amending and ratifying the cash management arrangements of Borrower on terms acceptable to Agent has been duly entered, is valid, subsisting and continuing and has not been vacated, reversed, or modified by any order of the Bankruptcy Court (other than as consented to by Agent) and is not subject to any pending appeal or stay;

        **9.6**     the execution and delivery of the Ratification Agreement to be delivered in connection herewith by Borrower in form and substance satisfactory to Agent;

        **9.7**     the implementation of the terms of the Ratification Agreement and the other Transaction Documents, as modified pursuant to the Ratification Agreement, all of which contains provisions, representations, warranties, covenants and Events of Default, as are satisfactory to Agent and its counsel;

        **9.8**     the receipt by Agent of the following documents, agreements, or other information: (a) the Advisor Engagement Letter;

        **9.9**     Borrower shall have complied in full with the notice and other requirements of the Bankruptcy Code and the applicable Bankruptcy Rules with respect to any relevant Financing Order in a manner prescribed by the Bankruptcy Code and the applicable Bankruptcy Rules;

        **9.10**     receipt by Agent, each in form and substance satisfactory to Agent, of (i) the initial Budget (it being understood and agreed that the Budget, as approved by the Agent and attached to the Ratification Agreement as Exhibit A, shall satisfy this condition), (ii) projected monthly balance sheets, income statements, statements of cash flows and availability of Borrower for the period through the end of the Credit Agreement, in each case as to the projections, with the results and assumptions set forth in all of such projections in form and substance satisfactory to Agent, and (iii) copies of satisfactory interim unaudited financial statements for each month ended since the last audited financial statements for which financial statements are available;

**9.11**    other than the voluntary commencement of the Chapter 11 Case, no material impairment of the priority of Agent's and Lenders' security interests in the Collateral shall have occurred from the date of the latest field examinations of Agent and Lenders to the Petition Date;

**9.12**    other than the Bankruptcy Events, no Material Adverse Effect shall have occurred since September 16, 2016;

**9.13**    none of the materials previously furnished to Agent by Borrower contain any material misstatements in, or omit to state, any material facts necessary to make the statements therein taken as a whole, in the light of the circumstances under which they were made, not misleading in any material respect;

**9.14**    Agent, for the benefit of itself and the other Lenders, shall hold perfected, first priority security interests in and liens upon the Collateral and Agent shall have received such evidence thereof as it requires; and

**9.15**    other than the Existing Defaults, no Default or Event of Default shall have occurred or be existing under any of the Transaction Documents, as modified pursuant hereto, and assumed by Borrower.

## 10.    ADDITIONAL CONDITIONS PRECEDENT TO ALL LOANS.

In addition to the satisfaction of the conditions precedent under Section 9 of the Ratification Agreement with respect to the effectiveness of the noted Sections of the Ratification Agreement and the satisfaction of the conditions precedent in Section 3.3 of the Credit Agreement with respect to all Loans and other financial accommodations available to Borrower, the following are conditions to Agent's and Revolving Lenders' obligation to extend further loans, advances or other financial accommodations to Borrower pursuant to the Credit Agreement:

**10.1**    with respect to further credit after expiration of the Interim Financing Order, on or before the expiration of the Interim Financing Order, the Bankruptcy Court shall have entered the Permanent Financing Order; neither Agent nor any Revolving Lender shall provide any Revolving Loans (or other financial accommodations) other than those authorized under the Interim Financing Order unless, on or before the expiration of the Interim Financing Order, the Permanent Financing Order shall have been entered, and there shall be no appeal or other contest with respect to either the Interim Financing Order or the Permanent Financing Order and the time to appeal to contest such order shall have expired;

**10.2**    requests for further credit shall be for purposes and in amounts in accordance with the Budget (subject to the variances permitted under Section 5.3(c) of the Ratification Agreement);

**10.3**    subject to the Financing Order, all fees and expenses required to be paid to the Agent and the Revolving Lenders pursuant to the Ratification Agreement and the Credit Agreement, as amended thereby, shall have been paid or shall be paid concurrently with the making of the Revolving Loans after the Ratification Closing Date; and

**10.4** other than the Existing Defaults, no Default or Event of Default shall have occurred or be existing under any of the Transaction Documents, as amended, supplemented or otherwise modified pursuant the Ratification Agreement and assumed by Borrower.

11. **MISCELLANEOUS.**

**11.1** <u>Amendments and Waivers</u>. Neither the Ratification Agreement nor any other instrument or document referred to herein or therein may be changed, waived, discharged or terminated orally, but only by an instrument in writing signed by the party against whom enforcement of the change, waiver, discharge or termination is sought.

**11.2** <u>Further Assurances</u>. Borrower shall, at its expense, at any time or times duly execute and deliver, or shall use its best efforts to cause to be duly executed and delivered, such further agreements, instruments and documents, and do or use its best efforts to cause to be done such further acts as may be necessary or proper in Agent's opinion to evidence, perfect, maintain and enforce the security interests of Agent, and the priority thereof, in the Collateral and to otherwise effectuate the provisions or purposes of the Ratification Agreement, any of the other Transaction Documents or the Financing Order. Upon the request of Agent, at any time and from time to time, Borrower shall, at its cost and expense, do, make, execute, deliver and record, register or file updates to the filings of Agent and Lenders with respect to the Intellectual Property with the United States Patent and Trademark Office or the United States Copyright Office, the financing statements, and other instruments, acts, pledges, assignments and transfers (or use its best efforts to cause the same to be done) and will deliver to Agent and Lenders such instruments evidencing items of Collateral as may be requested by Agent.

**11.3** <u>Headings</u>. The headings used herein are for convenience only and do not constitute matters to be considered in interpreting the Ratification Agreement.

**11.4** <u>Counterparts</u>. The Ratification Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original, but all of which shall together constitute one and the same agreement. In making proof of the Ratification Agreement, it shall not be necessary to produce or account for more than one counterpart thereof signed by each of the parties hereto. Delivery of an executed counterpart of the Ratification Agreement by telefacsimile or other means of electronic transmission shall have the same force and effect as delivery of an original executed counterpart of the Ratification Agreement. Any party delivering an executed counterpart of the Ratification Agreement by telefacsimile or other means of electronic transmission also shall deliver an original executed counterpart of the Ratification Agreement, but the failure to deliver an original executed counterpart shall not affect the validity, enforceability, and binding effect of the Ratification Agreement as to such party or any other party.

**11.5** <u>Additional Events of Default</u>. The parties hereto acknowledge, confirm and agree that the failure of Borrower to comply with any of the covenants, conditions and agreements contained herein or in any other agreement, document or instrument at any time executed by Borrower in connection herewith shall constitute an Event of Default under the Transaction Documents.

**11.6**   Costs and Expenses.   Subject to the terms of the Financing Order, Borrower shall pay to Agent and any Revolving Lender on demand all costs and expenses that Agent or any Revolving Lender pays or incurs in connection with the negotiation, preparation, consummation, administration, enforcement, and termination of the Ratification Agreement and the other Transaction Documents and the Financing Order.  Subject to the terms of the Financing Order, the foregoing shall not be construed to limit any other provisions of the Transaction Documents regarding costs and expenses to be paid by Borrower.  Subject to the terms of the Financing Order, all sums provided for in this Section 11.6 shall be part of the Obligations, shall be payable on demand, and shall accrue interest after demand for payment thereof at the highest rate of interest then payable under the Transaction Documents.  Agent is hereby irrevocably authorized to charge any amounts payable hereunder directly to any of the account(s) maintained by Agent with respect to Borrower.

**11.7**   Effectiveness.   The Ratification Agreement shall become effective upon the execution hereof by the Borrower, Agent and Lenders and the entry of the Interim Financing Order.

[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, the parties hereto have caused this Ratification Agreement to be duly executed as of the day and year first above written.


BORROWER:                             **NJOY, INC.**

                                      By:    _____
                                      Name: Jeffrey Weiss
                                      Title:   President and General Counsel


AGENT:                                **FLFC LENDING CO.,**
                                      as Agent and Revolving Lender

                                      By:    _____
                                      Name: David Heidecorn
                                      Title:   Authorized Signatory

IN WITNESS WHEREOF, the parties hereto have caused this Ratification Agreement to be duly executed as of the day and year first above written.

BORROWER:                        **NJOY, INC.**

                                 By:    _____
                                 Name: Jeffrey Weiss
                                 Title:  President and General Counsel


AGENT:                           **FLFC LENDING CO.,**
                                 as Agent and Revolving Lender

                                 By:    _____
                                 Name: David Heidecorn
                                 Title:  Authorized Signatory

EXHIBIT A
to
RATIFICATION AND AMENDMENT AGREEMENT

**Budget**

(see attached)

**NJOY Inc.**
*Bankruptcy Scenario- Availability and Revolving Loan*
*(amounts in thousands)*

September 16, 2016

| Week Ending | Pre 1 18-Sep | 1 25-Sep | 2 2-Oct | 3 9-Oct | 4 16-Oct | 5 23-Oct | 6 30-Oct | 7 6-Nov | 8 13-Nov | 9 20-Nov | 10 27-Nov | 11 4-Dec | 12 11-Dec | 13 18-Dec | Weeks 1-13 Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Opening FLFC loan balance | 3,008 | 3,283 | 4,283 | 4,660 | 5,188 | 5,471 | 5,562 | 5,602 | 5,709 | 5,795 | 5,789 | 5,791 | 5,779 | 5,787 | 3,283 |
| Net cash collections | 327 | 163 | 56 | 73 | 295 | 702 | 312 | 325 | 335 | 347 | 312 | 300 | 310 | 310 | 3,849 |
| Revolving Loans | (602) | (1,163) | (433) | (601) | (578) | (793) | (352) | (432) | (421) | (340) | (314) | (288) | (318) | (521) | (6,564) |
| Ending FLFC loan balance | 3,283 | 4,283 | 4,660 | 5,188 | 5,471 | 5,562 | 5,602 | 5,709 | 5,795 | 5,789 | 5,791 | 5,779 | 5,787 | 5,998 | 5,998 |
| **Revolving Loan details:** | | | | | | | | | | | | | | | |
| Inventory | | 390 | 76 | 122 | 186 | 118 | 93 | 128 | 33 | 44 | 60 | 61 | 61 | 28 | 1,399 |
| Freight In | | 152 | 58 | 30 | 36 | 45 | 13 | 13 | 19 | 5 | 7 | 9 | 9 | 9 | 405 |
| Fulfillment | | 50 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 350 |
| Call Center | | 12 | 12 | 12 | | | | | | | | | | | 36 |
| Customer Incentive & WG Reset Payments | | 50 | 50 | 100 | 25 | 75 | 25 | | 5 | 5 | 5 | 5 | 5 | 4 | 408 |
| Coupon Processor | | 29 | | | | | | | | | | | | | 104 |
| Customs | | 13 | | | | 57 | | | | | | | | | 120 |
| Digital Marketing | | 20 | 20 | 20 | 20 | 20 | 15 | 20 | | 17 | | | | | 85 |
| Employee Expenses | | 13 | 7 | 13 | | | | 26 | | 20 | 10 | 20 | 13 | 8 | 64 |
| Employee Insurance | | 20 | 20 | 26 | | | 15 | | | | 13 | | 10 | | 119 |
| Information Technology | | | 50 | | | | | | | | | | | | 50 |
| HMCA expenses | | 77 | 50 | | 77 | | | | 77 | | | | | | 249 |
| Insurance | | 10 | 11 | 12 | 13 | 14 | 14 | 14 | 15 | 15 | 15 | 15 | 15 | 18 | 177 |
| Loan Fees & Cash Interest | | 13 | 7 | 7 | 7 | 7 | 7 | 7 | 7 | 7 | 7 | 7 | 7 | 7 | 97 |
| Other | | 50 | 50 | 50 | 46 | 44 | 44 | 44 | 41 | 41 | 41 | 41 | 41 | 41 | 574 |
| Payroll | | | | | | | | 12 | 36 | | | | | 30 | 66 |
| Payroll - Sales Bonus | | 40 | | 40 | | | | | | | | | | 108 | 120 |
| PTO Expenses | | | | 41 | 20 | 25 | 25 | 25 | 40 | 25 | 16 | 23 | 40 | | 160 |
| Rent & Utilities | | | 10 | 12 | 15 | 73 | 15 | 16 | 17 | 17 | 35 | 23 | 16 | 34 | 159 |
| Product Testing | | 28 | | | 8 | 75 | 13 | 13 | 13 | 8 | 35 | 8 | 8 | 35 | 254 |
| Royalties | | | | | | | | | 25 | 25 | 25 | 20 | 10 | | 173 |
| Sales Tax | | | 14 | 14 | 14 | 14 | 14 | 14 | 14 | 14 | 14 | 14 | 14 | 9 | 124 |
| Temp staff | | 40 | | | | | | | | | | | | | 114 |
| Warehouse | | 35 | 35 | 35 | 35 | 35 | | 35 | 25 | 25 | | | | 13 | 165 |
| Website/Marketing | | | | | | | | | | | | | | | |
| **Operating Expenses** | | | | | | | | | | | | | | | |
| Creditors Committee and Related Expenses | | 1,042 | 378 | 546 | 523 | 643 | 302 | 383 | 362 | 291 | 265 | 249 | 274 | 379 | 5,636 |
| Investment Banking Fees | | | | | | 50 | | | | | | | | | 50 |
| KEIP program | | | | | | 50 | | | | | | | 100 | | 100 |
| Financial Advisor | | | 6 | 6 | 6 | 6 | 6 | 5 | 5 | 5 | 5 | 5 | | | 55 |
| Lawyer - Bank | | 25 | 25 | 25 | 25 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 15 | 275 |
| Lawyer - NJOY | | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 5 | 125 |
| Claims agent | | 10 | | | | | | | | | | | | | 12 |
| DIP Fee | | 60 | | | | | | | | | | | | | 60 |
| RSI | | 12 | | | | | | | | | | | | | 60 |
| US Trustee Fees | | 14 | 14 | 14 | 14 | 14 | 14 | 14 | 14 | 14 | 14 | 14 | 14 | 9 | 177 |
| Bankruptcy Related Expenses | | 121 | 55 | 55 | 55 | 150 | 50 | 49 | 59 | 49 | 49 | 49 | 44 | 13 | 23 |
| Revolving Loan Grand Total | | 1,163 | 433 | 601 | 578 | 793 | 352 | 432 | 421 | 340 | 314 | 288 | 318 | 521 | 6,564 |