UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>NJOY, INC.,[1]<br><br>    Debtor. | Chapter 11<br><br>Case No. 16-12076 (___) |

**DEBTOR'S MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS
(I) AUTHORIZING CONTINUED USE OF CASH MANAGEMENT SYSTEM, (II)
AUTHORIZING USE OF PREPETITION BANK ACCOUNTS, ACCOUNT CONTROL
AGREEMENTS, AND CERTAIN PAYMENT METHODS, AND (III) WAIVING THE
REQUIREMENTS OF 11 U.S.C. § 345(b)**

NJOY, Inc., the debtor and debtor in possession (the "**Debtor**") in the above-captioned chapter 11 case (the "**Case**"), moves the Court (the "**Motion**") for entry of interim and final orders, substantially in the forms attached as Exhibit A and Exhibit C, respectively, pursuant to sections 105, 345, 363, 364(b), and 503(b) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 2015-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), (i) authorizing the Debtor's continued use of its existing cash management system and related vendors, (ii) authorizing the Debtor to continue using prepetition bank accounts and account control agreements, and using debit, wire, and automated clearing house ("**ACH**") payments, and (iii) waiving the requirements of Bankruptcy Code section 345(b). In support of the Motion, the Debtor relies on the *Declaration of Jeffrey Weiss* (the "**First Day Declaration**") concurrently filed herewith. In further support of the Motion, the Debtor respectfully represents as follows:

---

[1] The last four digits of the Debtor's federal tax identification number are 6013. The Debtor's mailing address and principal place of business is 15211 N. Kierland Blvd., Suite 200, Scottsdale, Arizona 85254.

**Jurisdiction, Venue, and Predicates for Relief**

1. The United States Bankruptcy Court for the District of Delaware (the "**Court**") has jurisdiction over this Case and the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of the Case and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

2. Pursuant to Rule 9013-1(f) of the Local Rules, the Debtor consents to the entry of a final judgment or order with respect to the Motion if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

3. The statutory and legal predicates for the relief requested herein are sections 105, 345, 363, 364(b), and 503(b) of the Bankruptcy Code, Bankruptcy Rules 6003 and 6004, and Local Rule 2015-2.

**Background**

4. On the date hereof (the "Petition Date"), the Debtor filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor is operating its business and managing its affairs as a debtor in possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in this chapter 11 case, and no committees have been appointed or designated.

5. The Debtor is a leading manufacturer and retailer of electronic nicotine delivery systems (ENDS), and is today the largest independent e-cigarette and vaping company in the United States. Additional details regarding the Debtor's business, assets, capital structure, and the circumstances leading to the filing of this case are set forth in the First Day Declaration.

**Relief Requested**

6. By this Motion, the Debtor requests entry of interim and final orders, pursuant to Bankruptcy Code sections 105, 345, 363, 364(b), and 503(b), Bankruptcy Rules 6003 and 6004, and Local Rule 2015-2 (i) authorizing the Debtor's continued use of its existing cash management system and related vendors, (ii) authorizing the Debtor to continue using prepetition bank accounts and account control agreements, and using debit, wire, and ACH payments, (iii) waiving the requirements of Bankruptcy Code section 345(b), and (iv) granting related relief.

A. **Overview of the Debtor's Current Cash Management System**

7. In the ordinary course of its business, Debtor maintains a cash management system (the "**Cash Management System**"), which includes all activities necessary and pertinent to collecting and disbursing the Debtor's cash assets. The Cash Management System allows the Debtor to efficiently identify its cash requirements and transfer cash as needed to respond to these requirements. The Cash Management System is important to the efficient execution and achievement of the Debtor's business objectives, and, ultimately, to maximizing the value of the Debtor's estate.

8. The Cash Management System generally operates similarly to the centralized cash management systems used by other companies to manage their cash in a cost-effective, efficient manner.

9. The Cash Management System consists of bank accounts (the "**Bank Accounts**"), which are maintained at Wells Fargo Bank, N.A. Exhibit B contains a list of all of the Debtor's Bank Accounts. As discussed in greater detail below, the Debtor maintains three accounts through which it receives deposits and makes disbursements.

B. **The Bank Accounts**

10. As of the Petition Date, the Debtor maintained the following Bank Accounts:

3

   a. disbursement account [Account Number: XXXXXX1281] from which all disbursements are made;

   b. operating account [Account Number: XXXXXX9783] to which all deposits are made; and

   c. holding account that has no balance [Account Number: XXXXXX2871] and no activity.

11. The Debtor's operating account [Account Number: XXXXXX9783] is subject to a deposit account control agreement among Debtor, FLFC Lending Co. ("**Agent**") and Wells Fargo Bank, National Association (as amended, modified or supplemented from time to time on or before the Petition Date, the "**Deposit Account Control Agreement**").

12. The Debtor seeks authority to continue using the Cash Management System, including the maintenance of the Debtor's existing Bank Accounts described above and in Exhibit B and the Deposit Account Control Agreement after the Petition Date, subject to the Debtor's right to close certain Bank Accounts in its discretion and in accordance with any approved postpetition financing.

<b><u>Basis for Relief</u></b>

**A. Maintaining the Existing Cash Management System is Important to the Debtor's Ongoing Operations**

13. In light of the size and complexity of the Debtor's operations, the maintenance of the current Cash Management System is important for the preservation and enhancement of the value of the Debtor's estate.

14. The Debtor's request for authorization to continue to use the Cash Management System is consistent with section 363(c)(1) of the Bankruptcy Code, which authorizes a debtor in possession to "use property of the estate in the ordinary course of

business, without notice or a hearing." 11 U.S.C. § 363(c)(1). Section 363(c)(1) is intended to provide a debtor in possession with the flexibility to engage in the ordinary transactions required to operate its business. See, e.g., In re Roth Am., Inc., 975 F.2d 949, 952 (3d Cir. 1992); see also In re Neilson Nutraceutical, Inc., 369 B.R. 787, 796 (Bankr. D. Del. 2007). Included within the purview of section 363(c) is a debtor's ability to continue the routine transactions necessitated by its cash management system. See Amdura Nat'l Distrib. Co. v. Amdura Corp. (In re Amdura Corp.), 75 F.3d 1447, 1453 (10th Cir. 1996). Nevertheless, the Debtor brings this Motion out of an abundance of caution, to the extent any aspect of the Cash Management System could be considered as outside the ordinary course of business for purposes of section 363(c).

15. Courts in this and other districts have noted that an integrated cash management system "allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash." In re Columbia Gas Sys., Inc., 136 B.R. 930, 934 (Bankr. D. Del. 1992), rev'd on other grounds, 997 F.2d 1039 (3d Cir. 1993); see also Southmark Corp. v. Grosz (In re Southmark Corp.), 49 F.3d 1111, 1114 (5th Cir. 1995) (finding cash management system allows a debtor "to administer more efficiently and effectively its financial operations and assets"). The United States Court of Appeals for the Third Circuit has agreed, emphasizing that requiring a debtor to maintain separate accounts "would be a huge administrative burden and economically inefficient." In re Columbia Gas Sys., Inc., 997 F.2d 1039, 1061 (3d Cir. 1993). For these reasons, the Debtor should be permitted to continue to use its Cash Management System.

**B.     The Court Should Authorize the Debtor to Maintain Existing Bank Accounts and Continue to Use Existing Check Stock**

16.     The United States Trustee for the District of Delaware has set forth certain operating and reporting requirements for chapter 11 cases (the "U.S. Trustee Guidelines") that require debtors in possession to, among other things: (a) establish one debtor in possession bank account for all estate monies required for the payment of taxes, including payroll taxes; (b) close all existing bank accounts and open new debtor in possession accounts; (c) maintain a separate debtor in possession account for cash collateral; and (d) obtain checks that bear the designation "debtor in possession" and reference the bankruptcy case number and type of account on such checks.  These requirements are designed to provide a clear line of demarcation between prepetition and postpetition claims and payments, and to help protect against the inadvertent payment of prepetition claims by preventing banks from honoring checks drawn before the Petition Date.

17.     Enforcement of the U.S. Trustee Guidelines during this Case would severely disrupt the Debtor's ordinary financial operations.  Accordingly, the Debtor respectfully requests that the Court allow the Debtor to operate each of the Bank Accounts as such were maintained in the ordinary course of business before the Petition Date.

18.     In addition, the Debtor concurrently filed several motions seeking authorization to pay prepetition obligations in the ordinary course of business.  If the Debtor was required to open new accounts, the Debtor would likely be unable to timely implement the critical relief sought in those motions.  The Debtor has the ability to monitor disbursements from the Bank Accounts to ensure that only those prepetition obligations expressly approved by this Court are paid.

19. In the ordinary course of business, the Debtor uses certain pre-printed check stock. To avoid disruption of the Cash Management System and unnecessary expense, pursuant to Local Rule 2015-2(a), the Debtor requests that it be authorized to continue to use existing check stock, without reference to its status as a debtor in possession. The Debtor submits that parties in interest will not be prejudiced if the Debtor is authorized to continue to use the existing checks. The Debtor will send a notice of commencement of this chapter 11 case to all creditors. Most parties doing business with the Debtor undoubtedly will be aware of its status as a debtor in possession; thus, changing checks immediately is unnecessary and unduly burdensome.

20. Courts in this District have granted substantially similar relief in other chapter 11 cases. See, e.g., In re The Wet Seal, Inc., No. 15-10081 (CSS) (Bankr. D. Del. Feb. 5, 2015); In re Brookstone Holdings Corp., No. 14-10752 (BLS) (Bankr. D. Del. Apr. 4, 2014); In re F & H Acquisition Corp., No. 13-13220 (KG) (Bankr. D. Del. Dec. 17, 2013); In re Overseas Shipholding Group, Inc., No. 12-20000 (PJW) (Bankr. D. Del. Jan. 24, 2013); In re Vertis Holdings, Inc., No. 12-12821 (CSS) (Bankr. D. Del. Nov. 1, 2012); In re THQ Inc., No. 1213398 (MFW) (Bankr. D. Del. Dec. 20, 2012); In re Delta Petroleum Corp., No. 11-14006 (KJC) (Bankr. D. Del. Dec. 16, 2011).[2] Accordingly, similar authorization is appropriate in this chapter 11 case.

## C. The Court Should Authorize the Debtor to Continue Using Debit, Wire and ACH Payments

21. The Debtor requests that the Court grant further relief from the U.S. Trustee Guidelines to the extent they require the Debtor to make all disbursements by check. In particular, the U.S. Trustee Guidelines require that all receipts and all disbursements of estate funds must be made by check with a notation representing the reason for the disbursement.

---

[2] Copies of these orders are available upon request but have not been included because they are too voluminous.

As discussed above, in the ordinary course of business, the Debtor conducts transactions through ACH payments and other similar methods. If the Debtor's ability to conduct transactions by debit, wire, ACH payment, or other similar methods is impaired, the Debtor may be unable to perform under certain contracts, its business operations may be unnecessarily disrupted, and its estate will incur additional costs. As such, the Debtor should be permitted to continue using debit, wire, and ACH payments.

**D.    The Court Should Authorize the Banks to Continue to Maintain, Service, and Administer the Bank Accounts in the Ordinary Course of Business**

22.    The Debtor respectfully requests that the Court authorize the banks and financial institutions (the "**Banks**") at which the Bank Accounts are maintained to continue to maintain, service, and administer the Bank Accounts as accounts of the Debtor as a debtor in possession, without interruption and in the ordinary course of business. In this regard, the Banks should be authorized and directed to receive, process, honor, and pay any and all checks, ACH payments and other instructions, and drafts payable through, drawn, or directed on the Bank Accounts after the Petition Date by holders, makers, or other parties entitled to issue instructions with respect thereto.

23.    The Debtor further requests that the Court authorize the Banks to accept and honor all representations from the Debtor as to which checks, drafts, wires, or ACH payments should be honored or dishonored consistent with any order of the Court and governing law, whether such checks, drafts, wires, or ACH payments are dated before or after the Petition Date. The Debtor also requests that, to the extent a Bank honors a prepetition check or other item drawn on any account either (a) at the direction of the Debtor; (b) in a good-faith belief that the Court has authorized such prepetition check or item to be honored; or (c) as a result of an innocent mistake made despite the above-described protective measures, such Bank shall

not be deemed to be liable to the Debtor or its estate on account of such prepetition check or other item honored postpetition. The Debtor respectfully submits that such relief is reasonable and appropriate because the Banks are not in a position to independently verify or audit whether a particular item may be paid in accordance with a Court order or otherwise. The Debtor further requests that the Banks be authorized to (a) honor the Debtor's directions with respect to the opening and closing of any Bank Account, and (b) accept and hold, or invest, the Debtor's funds in accordance with the Debtor's instructions; <u>provided</u> in each case that the Debtor's Banks shall not have any liability to any party for relying on such representations.

24.     Moreover, the Debtor requests that the Court authorize (a) the Banks to charge, and the Debtor to pay or honor, both prepetition and postpetition service and other fees, costs, charges, and expenses to which the Banks are entitled under the terms and in accordance with their contractual arrangements with the Debtor, and (b) charge-back returned items to the Bank Accounts, whether such items are dated before, on, or subsequent to the Petition Date, in the ordinary course.

E.    **Cause Exists for Waiving the Deposit and Investment Guidelines under Section 345 of the Bankruptcy Code**

25.     Section 345(a) of the Bankruptcy Code authorizes such deposit or investment of the money of the estate, such as cash, as "will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment." 11 U.S.C. § 345(a). Although section 345(a) generally requires that, with respect to deposits and investments that are not "insured or guaranteed by the United States or by a department, agency or instrumentality of the United States or backed by the full faith and credit of the United States," the estate must require a bond in favor of the United States secured by the undertaking of a U.S.

Trustee approved corporate surety, the Court is permitted to dispense with this undertaking "for cause." 11 U.S.C. § 345(b).

26. The Court's ability to excuse strict performance of the requirements of section 345(b) of the Bankruptcy Code "for cause" arises from the 1994 amendments to the Bankruptcy Code. The legislative history of those amendments provides, in pertinent part, as follows:

> Section 345 of the Code governs investments of funds of bankruptcy estates. The purpose[] is to make sure that funds of a bankrupt that are obliged to creditors are invested prudently and safely with the eventual goal of being able to satisfy all claims against the bankruptcy estate. Under current law, all investments are required to be FDIC insured, collateralized or bonded. While this requirement is wise in the case of a smaller debtor with limited funds that cannot afford a risky investment to be lost, *it can work to needlessly handcuff larger, more sophisticated debtors.* This section would amend the Code to allow the courts to approve investments other than those permitted by section 345(b) for just cause, thereby overruling *In re Columbia Gas Systems, Inc.,* 33 F.3d 294 (3d Cir. 1994).

H.R. REP. NO. 103-835, at 46-47 (1994), reprinted in 1994 U.S.C.C.A.N. 3340, 3355.

27. In determining whether the "cause" standard under section 345(b) of the Bankruptcy Code has been met, courts consider a "totality of the circumstances analysis," utilizing the following factors: (a) the sophistication of the debtor's business; (b) the size of the debtor's business operations; (c) the amount of the funds involved; (d) the bank ratings (Moody's and Standard and Poor) of the financial institutions where the debtor in possession funds are held; (e) the complexity of the case; (f) the safeguards in place within the debtor's own business of insuring the safety of the funds; (g) the debtor's ability to reorganize in the face of a failure of one or more of the financial institutions; (h) the benefit to the debtor; (i) the harm, if any, to the estate; and (j) the reasonableness of the debtor's request for relief from the section 345(b) requirements in light of the overall circumstances of the case. In re Serv. Merch. Co., 240 B.R. 894, 896 (Bankr. M.D. Tex 1999).

28. The Debtor believes it is in compliance with the requirements of section 345(a) because the Bank Accounts are maintained at U.S. Trustee-approved depository institutions. Nevertheless, out of an abundance of caution, the Debtor requests (i) a waiver of the deposit and investment requirements of section 345(b) of the Bankruptcy Code to the extent that such requirements are inconsistent with the Debtor's current practices, (ii) that applicable institutions be authorized and directed to accept and hold or invest such funds at the Debtor's direction, and (iii) that applicable institutions be authorized and directed to honor the Debtor's directions with respect to the opening and closing of any Bank Account.

29. Even if the Debtor's current deposit and investment practices do not strictly comply with the approved guidelines identified in section 345 of the Bankruptcy Code, the practices nevertheless are prudent and designed to yield the maximum reasonable net return on the funds invested, taking into account the safety of such deposits.

30. In light of the foregoing, the Debtor submits that cause exists for waiver of the requirements of Bankruptcy Code section 345(b) to the extent that those requirements are inconsistent with the Debtor's current deposit and investment practices. In accordance with Local Rule 2015-2(b), the Debtor requests an interim waiver of the section 345 requirements until such time as the Court enters an order granting the relief requested in this Motion on a final basis.

### Immediate Relief is Necessary

31. Bankruptcy Rule 6003 provides that the relief requested in this Motion may be granted if the "relief is necessary to avoid immediate and irreparable harm." FED. R. BANKR. P. 6003 (2016). The Debtor submits that for the reasons already set forth herein, the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtor.

### Waiver of Any Applicable Stay

32.  The Debtor also requests that the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Id. 6004(h). As described above, the relief that the Debtor seeks in this Motion is necessary for the Debtor to operate its business without interruption and to preserve value for the estate. Accordingly, the Debtor respectfully requests that the Court waive the fourteen-day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

### Notice

33.  The Debtor will provide notice of this Motion to: (i) the Office of the United States Trustee for the District of Delaware; (ii) holders of the 20 largest unsecured claims against the Debtor; (iii) Counsel for the Debtor's Prepetition Lender; (iv) the Internal Revenue Service; (v) the United States Securities and Exchange Commission; (vi) the Banks; and (vii) all parties who have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002. As this Motion is seeking "first day" relief, within forty-eight (48) hours of the entry of an order on this Motion, the Debtor will serve copies of this Motion and any order entered in respect to this Motion as required by Local Rule 9013-1(m). In light of the nature of the relief requested herein, the Debtor submits that no other or further notice is necessary.

WHEREFORE, the Debtor respectfully requests that this Court enter interim and final orders, substantially in the forms attached as Exhibit A and Exhibit C, granting the relief requested in the Motion and such other and further relief as is just and proper.

Dated: September 16, 2016  GELLERT SCALI BUSENKELL & BROWN, LLC
Wilmington, Delaware

*/s/ Michael Busenkell*
Michael Busenkell (No. 3933)
Ronald S. Gellert (No. 4259)
Brya M. Keilson (No. 4643)
1201 N. Orange St., Ste. 300
Wilmington, Delaware 19801
Phone: (302) 425-5806
Facsimile: (302) 425-5814
Email: mbusenkell@gsbblaw.com
 rgellert@gsbblaw.com
 bkeilson@gsbblaw.com

*Proposed Attorneys for NJOY, Inc., Debtor and Debtor-in- Possession*