## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| NJOY, INC.,[1] | Case No. 16-12076 (CSS) |
| Debtor. | |

## DEBTOR'S MOTION FOR ENTRY OF
## (I) AN ORDER (A) APPROVING BID PROCEDURES
## IN CONNECTION WITH THE SALE OF
## SUBSTANTIALLY ALL, OR A SUBSET, OF THE DEBTOR'S ASSETS,
## (B) APPROVING THE FORM AND MANNER OF NOTICE THEREOF,
## (C) SCHEDULING AN AUCTION AND SALE HEARING, (D) APPROVING
## PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF
## CONTRACTS AND LEASES, AND (E) GRANTING RELATED RELIEF AND
## (II) AN ORDER (A) APPROVING THE ASSET PURCHASE AGREEMENT
## BETWEEN THE DEBTOR AND THE PURCHASER, (B) AUTHORIZING
## THE SALE OF SUBSTANTIALLY ALL, OR A SUBSET, OF THE DEBTOR'S
## ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND
## INTERESTS, (C) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF
## CONTRACTS AND LEASES, AND (D) GRANTING RELATED RELIEF

NJOY, Inc., the above-captioned debtor and debtor in possession (the "**Debtor**") moves

(the "**Motion**") this Court, pursuant to sections 105(a), 363, 364, 365, and 503 title 11 of the

United States Code (the "**Bankruptcy Code**"), Rules 2002, 6004, 6006, 9006, 9007 and 9014 of

the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rule 9013-1(f) of

the Local Rules of Bankruptcy Practice and Procedure (the "**Local Rules**"), for entry of an

order, substantially in the form attached hereto as Exhibit A (the "**Bid Procedures Order**"),

(i)(a) approving the proposed auction and bid procedures attached as **Exhibit 1** to the Bid

Procedures Order (the "**Bid Procedures**") to be employed in connection with the proposed sale

of substantially all the Debtor's assets (the "**Sale**"), (i)(b) scheduling an auction (the "**Auction**")

---

[1] The last four digits of the Debtor's federal tax identification number are 6013.  The Debtor's mailing address and principal place of business is 15211 N. Kierland Blvd., Suite 200, Scottsdale, Arizona 85254.

if the Debtor receives two or more timely and acceptable Qualified Bids (as defined below), (i)(c) scheduling a hearing to consider approval of the Sale (the "**Sale Hearing**"), (i)(d) approving the form and manner of notice thereof, and (i)(e) establishing procedures for the assumption and assignment of executory contracts and unexpired leases, including notice of proposed cure amounts; and, pursuant to Bankruptcy Code sections 105, 363, and 365 and Bankruptcy Rules 2002, 6004, and 6006, for entry of an order (ii)(a) authorizing the Sale to the Successful Bidder, after the Auction, if necessary, free and clear of liens, claims, interests and encumbrances, (ii)(b) authorizing the assumption and assignment of certain executory contracts and unexpired leases to a Successful Bidder, and (ii)(c) granting related relief. In support of this Motion, the Debtor relies on and incorporates by reference the *Declaration of Jeffrey Weiss* (the "**First Day Declaration**") and represents as follows:

### Jurisdiction and Venue

1.      This Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### Background

2.      On the date hereof (the "**Petition Date**"), the Debtor commenced its reorganization case by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtor is authorized to continue to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.      The Debtor is a leading manufacturer and retailer of electronic nicotine delivery systems (ENDS), and is today the largest independent e-cigarette and vaping company in the

United States. Additional details regarding the Debtor's business, assets, capital structure, and the circumstances leading to the filing of this case are set forth in the First Day Declaration.

4.      On March 4, 2015, the Debtor entered into a Credit Agreement (as amended, restated, modified, supplemented, or replaced from time to time and including all ancillary and related documents, the "**Prepetition Financing Agreement**") with Victory Park Management, LLC, on behalf of the lender parties thereto (the "**Prepetition Secured Lenders**"), for a $12 million revolver commitment (the "**Prepetition Revolver**") and a $10 million term commitment (the "**Prepetition Term Loan**"). The obligations under the Prepetition Financing Agreement are secured on a first priority basis in substantially all of the Debtor's assets (the "**Prepetition Collateral**") pursuant to a Pledge and Security Agreement dated March 3, 2015.

5.      On August 5, 2015, the agent under the Prepetition Financing Agreement sold, assigned, and transferred all of its rights, title, and interest under the Prepetition Financing Agreement to the DIP Lender (the "**Agent**").

6.      As of the Petition Date, the Debtor is indebted under the Prepetition Financing Agreement in the amount of $3,283,893 on account of the Prepetition Revolver and $16,103,731 on account of the Prepetition Term Loan.

7.      As described in the First Day Declaration, due to the continuing losses sustained by the Debtor's operations and the difficult regulatory environment, the Debtor pursued numerous marketing efforts to address the Debtor's operational needs and capital structure. Specifically, the Debtor subsequently hired Barclay's Capital Inc. ("**Barclays**") to act as investment advisor in January 2016.  In early 2016, Barclays explored the potential sale of the Debtor's business to strategic purchasers. To this end, Barclay's contacted thirty (30) potential purchasers.  While some parties expressed in interest in acquiring the Debtor's business and executed non-disclosure

agreements, ultimately Barclay's received no offers. Subsequently, in June 2016, Barclay's again market tested the Debtor's business by soliciting those parties who had previously expressed an interest in acquiring the Debtor's business. In total, Barclay's contacted twelve parties and five of those parties executed non-disclosure agreements to conduct due diligence, with two parties conducting substantial due diligence.

8.      The Debtor now seeks authority to market the assets to ensure that the Debtor obtains the highest or otherwise best offer for the Debtor's assets. If approved, the proposed bid procedures (the "**Bid Procedures**") will enable the Debtor to move expeditiously towards the best resolution of this case. As set forth in further detail below, the Sale, the Bid Procedures, and the related relief requested in this Motion are in the best interests of the Debtor's estate and its stakeholders. Accordingly, the Debtor requests that the Court grant this Motion.

9.      Finally, the Debtor negotiated an agreement with the Agent to obtain DIP financing during the course of this case, which should provide the Debtor with sufficient runway to execute on a value-maximizing sale process. Pursuant to the proposed order approving the DIP financing (the "**DIP Order**"), the Debtor is required to move expeditiously toward the sale milestones set forth below and in the Bid Procedures. The sale milestones are structured to allow for the Debtor's sale of substantially all of its assets to be closed as quickly as possible.

## Relief Requested

10.      By this Motion, the Debtor requests, pursuant to Bankruptcy Code sections 105, 363, 364, 365 and 503 and Bankruptcy Rules 2002, 6004, 6006, 9006, 9007 and 9014, the entry of (A) an order (i) establishing bid procedures for the Sale of the Assets; (ii) establishing procedures relating to the assumption and assignment of executory contracts and unexpired leases, (iii) approving the form and manner of sale, cure, and other related notices, and (iv)

scheduling the Auction and Sale Hearing; and (B) an order (i) approving the Sale of the Assets free and clear of all liens, claims, encumbrances and interests; (ii) approving the assumption and assignment of the relevant executory contracts and unexpired leases to the Successful Bidder; and (iii) granting related relief.

11.     The Debtor seeks entry the Bid Procedures Order:

(a)     authorizing and approving the Bid Procedures attached to the Bid Procedures Order as Exhibit 1 in connection with the sale of substantially all, or a subset, of the Debtor's Assets;

(b)     approving the form and manner of notice of an Auction and Sale Hearing with respect to the Sale, attached as Exhibit 2 to the Bid Procedures Order (the "**Sale Notice**");

(c)     scheduling the Auction and Sale Hearing;

(d)     approving procedures for the assumption and assignment of certain executory contracts and unexpired leases in connection with the Sale (collectively, the "**Contracts**"); and

(e)     granting related relief.

12.     In addition, the Debtor will seek entry of the Sale Order at the conclusion of the Sale Hearing:

(a)     authorizing and approving the Sale of the Assets to the Successful Bidder (as defined in the Bid Procedures) on the terms substantially set forth in the Successful Bid;

(b)     authorizing and approving the Sale free and clear of liens, claims, encumbrances, and other interests to the extent set forth in the Successful Bid;

(c)     authorizing the assumption and assignment of the Contracts; and

(d)     granting any related relief.

13.     The Debtor reserves the right to file and serve any supplemental pleading or declaration that the Debtor deem appropriate or necessary in its reasonable business judgment, including any pleading summarizing the competitive bidding and sale process and the results thereof, in support of its request for entry of the Sale Order before the Sale Hearing.  At

this time, there is no stalking horse with regard to any sale.  However, the Debtor specifically reserves the right to seek certain protections, including bid protections, and relief from this Court to the extent a stalking horse bidder is obtained.

## The Proposed Sale

**I.     The Contemplated Section 363 Sale.**

14.     It is critical for the Debtor to execute on its proposed Sale within the timeframe contemplated by the DIP Order. Under the DIP Order, the Debtor is required to hold a sale hearing by **November 10, 2016**, and a sale is to be consummated by **November 15, 2016**.

15.     The Debtor requests that the Court approve the following general timeline:

(a) *Contract Cure Objection Deadline*: 4:00 p.m. (ET) seven (7) calendar days from service of the Contract Notice (as defined below), as the deadline to object to the cure amounts listed in the Contract Notice;

(b) *Bid Deadline*: **12:00 p.m. (ET), on or before October 28, 2016**, as the deadline by which bids for the Assets (as well as the deposit and all other documentation required under the Bid Procedures for Qualified Bidders (as defined in the Bid Procedures)) must be actually received (the "**Bid Deadline**");

(c) *Auction*: **October 31, 2016, at 10:00 a.m. (ET)**, as the date and time the Auction, if needed, will be held at the offices of Gellert Scali Busenkell & Brown, LLC, 1201 N. Orange St., 3rd Floor, Wilmington, DE 19801;

(d) *Sale Objection Deadline*: **4:00 p.m. (ET), on November 8, 2016**, which is seven (7) calendar days after the Bid Deadline, as the deadline to object to the Sale;

(e) *Sale Hearing*: on or before **November 10, 2016, at [____:_____] [___].m. (ET)**, as the date and time for the Sale Hearing.

16.     The Debtor believes that this timeline maximizes the prospect of receiving the highest or otherwise best offer without unduly prejudicing this estate. To further ensure that the Debtor's proposed Auction and Sale process maximizes value to the benefit of the Debtor's estate, the Debtor will use the time following entry of the Bid Procedures Order to actively market the Assets in an attempt to solicit the highest or otherwise best bids. The Debtor believes

the relief requested by this Motion is in the best interests of its creditors, its other stakeholders, and all other parties.

## The Bid Procedures Order

**I.    The Bid Procedures.**

17.    To optimally and expeditiously solicit, receive, and evaluate bids in a fair and accessible manner, the Debtor has developed and proposed the Bid Procedures, attached as Exhibit 1 to the Bid Procedures Order. The following describes the salient points of the Bid Procedures and discloses certain information:[2]

- **Bid Requirements.** Subject to the rights of the Agent to credit bid, any bid by an Acceptable Bidder must be submitted in writing and determined by the Debtor, in its reasonable business judgment, to have satisfied the following requirements (as further stated in the Bid Procedures):

    *Assets and Purchase Price*: Each Bid must be a bid to purchase all or substantially all, or a subset, of the Assets, and must clearly state which liabilities of the Debtor the Acceptable Bidder is agreeing to assume. Each Bid must clearly set forth the Purchase Price to be paid, including and identifying separately any cash and non-cash components.

    *Deposit*: Each Bid must be accompanied by a cash deposit in the amount equal to ten percent (10%) of the aggregate cash purchase price of the Bid to be held in an interest-bearing escrow account to be identified and established by the Debtor (the "**Deposit**"). Any party submitting a credit bid shall not be required to post a Deposit in connection with any credit bid.

    *The Same or Better Terms*: Except as otherwise provided herein each Bid must include duly executed, non-contingent transaction documents necessary to effectuate the transactions contemplated in the Bid (the "**Bid Documents**"), which shall include either: (i) a schedule of Assumed Contracts to the extent applicable to the Bid, as well as all other material documents integral to such Bid.

    *Sources of Financing*: The Bid must indicate the source of cash consideration, including proposed funding commitments and confirm that such consideration is not

---

[2] This summary is qualified in its entirety by the Bid Procedures attached as Exhibit 1 to the Bid Procedures Order. All capitalized terms that are used in this summary but not otherwise defined herein shall have the meanings in the Bid Procedures. To the extent there are any conflicts between this summary and the Bid Procedures, the terms of the Bid Procedures shall govern.

subject to any contingencies. The Bid should include a detailed sources and uses schedule.

*Structure*: The Bid must identify the structure proposed for undertaking the Sale, including the specific Assets of the Debtor, the proposed steps to accomplish such acquisition, and any financial, legal, or tax considerations upon which the Bid's proposed structure replies.

*Tax Structure*: The Bid must specify with particularity its tax structure, including whether it is intended to be structured in a tax-free manner or if any incremental tax liabilities will be incurred by the Debtor under the Bid.

*Assumption*: The Bid must specify which, if any, of the obligations of the Debtor the Bidder proposes to assume.

- **Bid Deadline.** Each bid must be transmitted via email (in .pdf or similar format) or other means so as to be ***actually received*** by the Debtor, counsel to the Debtor, the Agent, Agent's counsel, the Committee Representatives, on or before **October 28, 2016 at 12:00 p.m. (ET)** (the "**Bid Deadline**").

- **Right to Credit Bid.** At the Auction, the Agent and DIP Lender shall have the right to credit bid all or a portion of the value of its claims within the meaning of section 363(k) of the Bankruptcy Code, in respect of, related to, or arising in connection with the Revolving Obligations. The Agent may, but shall not be required to, notify the Debtor prior to the Bid Deadline of its intent to credit bid at the Auction, and the Debtor shall take such notice into account before seeking to cancel the Auction. Any credit bid made by a Successful Bidder must include a cash component (or otherwise provide for cash) sufficient to pay the Breakup Fee and any senior liens on the collateral that is subject to the credit bid, or otherwise provide for cash sufficient to pay the Breakup Fee and cash to pay any senior liens on the collateral that is subject to the credit bid.

- **The Auction.** If the Debtor does not receive a Qualified Bid, the Debtor, in consultation with the Agent and the Committee Representatives, will not conduct the Auction.

- **Bidding Increments.** Any Overbid following any subsequent Prevailing Highest Bid shall be in increments of $250,000.

- **Back-Up Bidder.** Notwithstanding anything in the Bid Procedures to the contrary, if an Auction is conducted, the Qualified Bidder with the next-highest or otherwise second-best Qualified Bid at the Auction for the Assets, as determined by the Debtor in the exercise of its reasonable business judgment, shall be required to serve as a back-up bidder (the "**Back-Up Bidder**"), and each Qualified Bidder shall agree and be deemed to agree to be the Back-Up Bidder if so designated by the Debtor (the "**Back-Up Bid**").

- **Highest or Otherwise Best Bid.** When determining the highest or otherwise best Qualified Bid, as compared to other Qualified Bids, the Debtor, in consultation with the Agent and the Committee Representatives, may consider the following factors in addition to

any other factors that the Debtor, the Agent, and the Committee Representatives deem appropriate: (i) the amount and nature of the total consideration; (ii) the likelihood of the Bidder's ability to close a transaction and the timing thereof; (iii) the net economic effect of any changes to the value to be received by the Debtor's estate from the transaction contemplated by the Bid Documents; (iv) the timing of Bidder's proposed closing; and (v) the tax consequences of such Qualified Bid.

- **Reservation of Rights.** The Debtor reserve its rights to modify the Bid Procedures (after consultation with the Agent and the Committee Representatives) in its reasonable business judgment in any manner that will best promote the goals of the bidding process, or impose, at or prior to the Auction, additional customary terms and conditions on the sale of the Assets, including cancelling the Auction or the Sale.  Furthermore, the Agent reserves the right to reject any bid that in the aggregate is not in an amount sufficient to pay the entire amount owed by the Debtor to the Agent and DIP Lender in respect of the Revolving Obligations (as defined in the Financing Order).

18.     Importantly, the Bid Procedures recognize the Debtor's fiduciary obligations to maximize sale value, and, as such, do not impair the Debtor's ability to consider all qualified bid proposals (after consultation with the Agent and the Committee Representatives), and, as noted, preserve the Debtor's right to modify the Bid Procedures (after consultation with the Agent and the Committee Representatives) as necessary or appropriate to maximize value for the Debtor's estate.

## II.     Form and Manner of Sale Notice.

19.     On or within three (3) calendar days after entry of the Bid Procedures Order, the Debtor will cause the Sale Notice to be served on the following parties or its respective counsel, if known: (a) the United States Trustee for the District of Delaware (the "**U.S. Trustee**"); (b) counsel to any statutorily appointed committee; (c) counterparties to the Contracts (the "**Contract Counterparties**"); (d) all parties who have expressed a written interest in some or all of the Assets; (e) all parties who are known or reasonably believed, after reasonable inquiry, to have asserted any lien, encumbrance, claim, or interest in the Assets; (f) the Internal Revenue Service; (g) all applicable state and local taxing authorities; (h) all the Debtor's other creditors; (i) each governmental agency that is an interested party with respect to the Sale and transactions

proposed thereunder; (j) counsel to the Agent; and (k) all parties that have requested or that are required to receive notice pursuant to Bankruptcy Rule 2002.

20.     The Debtor submits that the Sale Notice is reasonably calculated to provide all interested parties with timely and proper notice of the proposed Sale, including: (a) the date, time, and place of the Auction (if one is held); (b) the Bid Procedures; (c) the deadline for filing objections to the Sale and entry of the Sale Order, and the date, time, and place of the Sale Hearing; (d) a reasonably specific identification of the Assets; (e) a description of the Sale as being free and clear of liens, claims, interests, and other encumbrances, with all such liens, claims, interests, and other encumbrances attaching with the same validity and priority to the Sale proceeds; and (f) notice of the proposed assumption and assignment of the Contracts to the Successful Bidder arising from the Auction, if any.[3]

21.     The Debtor further submits that notice of this Motion and the related hearing to consider entry of the Bid Procedures Order, coupled with service of the Sale Notice, the Contract Notice, and the Assumption Notice as provided for herein, constitutes good and adequate notice of the Sale in compliance with, and satisfaction of, the applicable requirements of Bankruptcy Rule 2002. The Debtor proposes that no other or further notice of the Sale shall be required. Accordingly, the Debtor requests that this Court approve the form and manner of the Sale Notice.

---

[3] Pursuant to the Bid Procedures Order, notice of the proposed assumption and assignment of the Contracts to the Successful Bidder arising from the Auction, if any, the proposed cure amounts, and the right, procedures, and deadlines for objecting, will be provided in separate notices, attached to the Bid Procedures Order as Exhibit 3 (the "**Contract Notice**") and Exhibit 4 (the "**Assumption Notice**") to be sent to the applicable Contract Counterparties.

## II.    Summary of the Assumption Procedures.

22.    The Debtor is also seeking approval of certain procedures to facilitate the fair and orderly assumption and assignment of the Contracts in connection with the Sale (the "**Assumption Procedures**"). Because the Bid Procedures Order sets forth the Assumption Procedures in detail, they are not restated in this Motion. Generally, however, the Assumption Procedures: (a) outline the process by which the Debtor will serve notice to all Contract Counterparties regarding the proposed assumption and assignment and related cure amounts, if any, informing such parties of its right and the procedures to object thereto; and (b) establish objection and other relevant deadlines and the manner for resolving disputes relating to the assumption and assignment of the Contracts to the extent necessary. The Successful Bidder would retain the absolute right to decide which contracts and leases it would want to assume, with the remaining others likely to be rejected by the Debtor pursuant to separate motion.

<u>**Basis for Relief**</u>

## I.    The Relief Sought in the Bid Procedures Order Is in the Best Interests of the Debtor's Estate and Should Be Approved.

23.    Courts have made clear that a debtor's business judgment is entitled to substantial deference with respect to the procedures to be used in selling an estate's assets. <u>See</u> <u>In re Schipper</u>, 933 F.2d 513, 515 (7th Cir. 1991) ("Under Section 363, the debtor in possession can sell property of the estate . . . if he has an 'articulated business justification'"); <u>In re Martin</u>, 91 F.3d 389, 395 (3d Cir. 1996); <u>In re Montgomery Ward Holding Corp.</u>, 242 B.R. 147, 153 (D. Del. 1999); <u>In re Integrated Res., Inc.</u>, 147 B.R. 650, 656–7 (S.D.N.Y. 1992) (noting that bidding procedures that have been negotiated by a trustee are to be reviewed according to the deferential

"business judgment" standard, under which such procedures and arrangements are "presumptively valid").

24.     The paramount goal in any proposed sale of property of the estate is to maximize the proceeds received by the estate. See In re Edwards, 228 B.R. 552, 561 (Bankr. E.D. Pa. 1998) ("The purpose of procedural bidding orders is to facilitate an open and fair public sale designed to maximize value for the estate."); see also Food Barn Stores, Inc., 107 F.3d at 564–65 (in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand"); Integrated Res., 147 B.R. at 659 ("[I]t is a well-established principle of bankruptcy law that the objective of the bankruptcy rules and the trustee's duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate.").

25.     To that end, courts uniformly recognize that procedures intended to enhance competitive bidding are consistent with the goal of maximizing the value received by the estate and therefore are appropriate in the context of bankruptcy transactions. See Integrated Res., 147 B.R. at 659 (bidding procedures "are important tools to encourage bidding and to maximize the value of the debtor's assets"); In re Fin. News Network, Inc., 126 B.R. 152, 156 (Bankr. S.D.N.Y. 1991) ("court-imposed rules for the disposition of assets . . . [should] provide an adequate basis for comparison of offers, and [should] provide for a fair and efficient resolution of bankrupt estate"); In re 995 Fifth Ave. Assoc., L.P., 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989) (holding that the business judgment standard protects break-up fees and other provisions negotiated in good faith).

26.     The Debtor believes that the proposed Bid Procedures will promote active bidding from seriously interested parties and will elicit the highest or otherwise best offers available for the Assets. The proposed Bid Procedures will allow the Debtor to conduct the Sale in a

controlled, fair, and open fashion that will encourage participation by financially capable bidders who will offer the best value for the Assets and who can demonstrate the ability to close a transaction. Specifically, the Bid Procedures contemplate an open auction process with minimum barriers to entry and provide potential bidding parties with sufficient time to perform due diligence and acquire the information necessary to submit a timely and well-informed bid.

27.     At the same time, the Bid Procedures provide the Debtor with a robust opportunity to consider competing bids and select the highest or otherwise best offer for the completion of the Sale. As such, creditors of the Debtor's estate can be assured that the consideration obtained will be fair and reasonable and at or above market.

28.     The Debtor submits that the proposed Bid Procedures will encourage competitive bidding, are appropriate under the relevant standards governing auction proceedings and bidding incentives in bankruptcy proceedings, and are consistent with other procedures utilized in other cases. See In re Quicksilver Res., Inc., No. 15-10585 (Bankr. D. Del. Oct. 6, 2015); In re Source Home Entm't, LLC, No. 14-11553 (Bankr. D. Del. July 21, 2014); In re Ultimate Escapes Holdings, LLC, No. 10-12915 (Bankr. D. Del. Oct. 8, 2010); In re PTC Alliance Corp., No. 09-13395 (Bankr. D. Del. Nov. 6, 2009); In re Hayes Lemmerz Int'l, Inc., No. 09-11655 (Bankr. D. Del. Sept. 22, 2009); In re VeraSun Energy Corp., No. 08-12606 (Bankr. D. Del. Feb. 19, 2009).

**II.     The Form and Manner of the Sale Notice Should Be Approved.**

29.     Pursuant to Bankruptcy Rule 2002(a), the Debtor is required to provide creditors with 21 days' notice of the Sale Hearing. Pursuant to Bankruptcy Rule 2002(c), such notice must include the time and place of the Auction and the Sale Hearing and the deadline for filing any objections to the relief requested herein.

30.     As noted above, within three (3) calendar days of entry of the Bid Procedures Order, the Debtor will serve the Sale Notice upon the following parties or its respective counsel, if known: (a) the U.S. Trustee; (b) any statutorily appointed committee; (c) the Contract Counterparties; (d) all parties who have expressed a written interest in some or all of the Assets; (e) all parties who are known or reasonably believed, after reasonable inquiry, to have asserted any lien, encumbrance, claim, or other interest in the Assets; (f) the Internal Revenue Service; (g) all applicable state and local taxing authorities; (h) all the Debtor's other creditors; (i) each governmental agency that is an interested party with respect to the Sale and transactions proposed thereunder; and (j) any party that has requested notice pursuant to Bankruptcy Rule 2002.

31.     The Debtor submits that notice of this Motion and the related hearing to consider entry of the Bid Procedures Order, coupled with service of the Sale Notice, the Contract Notice, and the Assumption Notice constitutes good and adequate notice of the Sale in compliance with, and satisfaction of, the applicable requirements of Bankruptcy Rule 2002. Accordingly, the Debtor requests that this Court approve the form and manner of the Sale Notice.

### III.     The Assumption Procedures Are Appropriate and Should Be Approved.

32.     As set forth above, the Sale contemplates the assumption and assignment of the Contracts to the Successful Bidder arising from the Auction, if any. In connection with this process, the Debtor believes it is necessary to establish a process by which: (a) the Debtor and Contract Counterparties can reconcile cure obligations, if any, in accordance with section 365 of the Bankruptcy Code; and (b) such counterparties can object to the assumption and assignment of the Contracts and/or related cure amounts (the "**Assumption Procedures**").

14

33.     As set forth in the Bid Procedures Order, the Debtor also requests that any party that fails to object to the proposed assumption and assignment of any Contract be deemed to consent to the assumption and assignment of the applicable Contract pursuant to section 365 of the Bankruptcy Code on the terms set forth in the Sale Order, along with the cure amounts identified in the Contract Notice. See In re Tabone, Inc., 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (by not objecting to sale motion, creditor deemed to consent); In re Gabel, 61 B.R. 661, 667 (Bankr. W.D. La. 1985) (same).

34.     The Debtor believes that the Assumption Procedures are fair and reasonable, provide sufficient notice to the Contract Counterparties, and provide certainty to all parties in interest regarding its obligations and rights in respect thereof. Accordingly, the Debtor requests the Court approve the Assumption Procedures set forth in the Bid Procedures Order.

35.     The Debtor is, pursuant to the Assumption Procedures, preparing for a potential Successful Bidder to assume all Contracts at its discretion. Prior to the Auction, the Debtor will send a schedule of proposed assumed contracts and cure amounts to all affected parties.  The ultimate selection of the Contracts will be determined by the Successful Bidder and any listing of any Contract as assumed on any list or for purposes of determining any cure amount is not final until so under the Assumption Procedures.  The Debtor reserves any and all rights for Contracts not so assumed and assigned pursuant to the Assumption Procedures, and may reject those Contracts or leases subject to further order of this Court.

**IV.     The Sale Should Be Approved as an Exercise of Sound Business Judgment.**

36.     Section 363(b)(1) of the Bankruptcy Code provides that a debtor, "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). A sale of the debtor's assets should be authorized pursuant to

section 363 of the Bankruptcy Code if a sound business purpose exists for the proposed transaction. See Martin, 91 F.3d at 395 ("Under Section 363, the debtor in possession can sell property of the estate . . . if he has an 'articulated business justification' . . . ."); Schipper, 933 F.2d at 515; In re Lionel Corp., 722 F.2d 1063, 1070 (2d Cir. 1983); In re Telesphere Commc's, Inc., 179 B.R. 544, 552 (Bankr. N.D. Ill. 1999).

37.    Once the debtor articulate a valid business justification, "[t]he business judgment rule 'is a presumption that in making the business decision the directors of a corporation acted on an informed basis, in good faith, and in the honest belief that the action was in the best interests of the company." In re S.N.A. Nut Co., 186 B.R. 98, 102 (Bankr. N.D. Ill 1995); see In re Filene's Basement, LLC, 11-13511 (KJC), 2014 WL 1713416, at *12 (Bankr. D. Del. Apr. 29, 2014) ("If a valid business justification exists, then a strong presumption follows that the agreement at issue was negotiated in good faith and is in the best interests of the estate."); Integrated Res., 147 B.R. at 656; In re Johns-Manville Corp., 60 B.R. 612, 615–16 (Bankr. S.D.N.Y. 1986) ("a presumption of reasonableness attaches to a Debtor's management decisions.").

### a. A Sound Business Purpose Exists for the Sale.

38.    As set forth above, the Debtor has a sound business justification for selling the Assets. First, the Debtor believes the Sale will maximize the Assets' going-concern value by allowing a party to bid on business assets that would have substantially less value on a stand-alone basis. Moreover, because the Debtor anticipates the assumption of certain of the Debtor's Contracts, it will result in payment in full for a number of the Debtor's creditors.

39.    Second, the sale of the Assets will be subject to competing bids, enhancing the Debtor's ability to receive the highest or otherwise best value for the Assets. Consequently, the

ultimately successful bid, after being subject to a "market check" in the form of the Auction, will constitute, in the Debtor's reasonable business judgment, the highest or otherwise best offer for the Assets and will provide a greater recovery for its estate than any known or practicably available alternative. See, e.g., In re Trans World Airlines, Inc., No. 01-00056, 2001 WL 1820326, at *4 (Bankr. D. Del. 2001) (stating, while a "section 363(b) sale transaction does not require an auction procedure," "the auction procedure has developed over the years as an effective means for producing an arm's length fair value transaction.").

40.    Third, as set forth above, the Debtor commenced a marketing effort prior to the Petition Date to maximize the value of the Assets. In particular, the Debtor pursued various sources of refinancing of the obligations owed to the Prepetition Secured Lenders and potential sales of the assets of, and/or equity interests in, the Debtor. Thus, the Assets have already been market tested and will be further tested through the Bid Procedures and Auction.

41.    Thus, the Debtor submits that the Successful Bidder's Purchase Agreement (a "**Purchase Agreement**") will constitute the highest or otherwise best offer for the Assets and will provide a greater recovery for the Debtor's estate than would be provided by any other available alternative. As such, the Debtor's determination to sell the Assets through an Auction process and subsequently to enter into the Successful Bidder's Purchase Agreement will be a valid and sound exercise of the Debtor's business judgment. The Debtor will submit evidence at the Sale Hearing to support these conclusions. Therefore, the Debtor requests that the Court make a finding that the proposed sale of the Assets is a proper exercise of the Debtor's business judgment and is rightly authorized.

**b.    Adequate and Reasonable Notice of the Sale Will Be Provided.**

42.     As described above, the Sale Notice: (a) will be served in a manner that provides at least 21 days' notice of the deadline for objecting to the Sale and the date, time, and location of the Sale Hearing; (b) informs parties in interest of the deadlines for objecting to the Sale or the assumption and assignment of the Contracts; and (c) otherwise includes all information relevant to parties interested in or affected by the Sale. Significantly, the form and manner of the Sale Notice will have been approved by this Court pursuant to the Bid Procedures Order after notice and a hearing before it is served on parties in interest.

### c.  The Sale and Purchase Price Reflects a Fair Value Transaction.

43.     It is well-settled that, where there is a court-approved auction process, a full and fair price is presumed to have been obtained for the assets sold, as the best way to determine value is exposure to the market. See Bank of Am. Nat'l Trust & Sav. Ass'n. v. 203 N. LaSalle St. P'ship, 526 U.S. 434, 457 (1999); Trans World Airlines, 2001 WL 1820326, *4 (stating, while a "section 363(b) sale transaction does not require an auction procedure," "the auction procedure has developed over the years as an effective means for producing an arm's length fair value transaction.").

44.     Moreover, as noted above, even as the Debtor moves forward with the Sale, the Debtor will continue to market the Assets and solicit other offers consistent with the Bid Procedures, including, for example, by contacting previously solicited parties, continuing to provide acceptable bidders with access to requested information, considering a variety of alternative transaction structures, and otherwise assisting the Debtor with all efforts to increase transaction value. In this way, the number of bidders that are eligible to participate in a competitive Auction process will be maximized.

### d.  The Sale Has Been Proposed in Good Faith and Without Collusion

45.     The Debtor requests that the Court find the Successful Bidder arising from the Auction, if any, are entitled to the benefits and protections provided by section 363(m) of the Bankruptcy Code in connection with the sale of the Assets.

46.     Section 363(m) of the Bankruptcy Code provides:

[t]he reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease or property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

47.     Section 363(m) of the Bankruptcy Code thus protects the purchaser of assets sold pursuant to section 363 of the Bankruptcy Code from the risk that it will lose its interest in the purchased assets if the order allowing the sale is reversed on appeal, as long as such purchaser leased or purchased the assets in "good faith." While the Bankruptcy Code does not define "good faith," courts have held that a purchaser shows its good faith through the integrity of its conduct during the course of the sale proceedings, finding that where there is a lack of such integrity, a good-faith finding may not be made. See In re Abbotts Dairies of Pa., Inc., 788 F.2d 143, 147 (3d Cir. 1986) ("Typically, the misconduct that would destroy a [buyer's] good faith status at a judicial sale involves fraud, collusion between the [proposed buyer] and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders."); In re Andy Frain Srvs., Inc., 798 F.2d 1113 (7th Cir. 1986) (same); In re Sasson Jeans, Inc., 90 B.R. 608, 610 (S.D.N.Y. 1988) (same); In re Andy Frain Services, Inc., 798 F.2d 1113 (7th Cir. 1986); See In re Trism, 328 F.3d 1003, 1006 (8th Cir. 2003).

48.     The Debtor submits that any Successful Bidder arising from the Auction, is or will be "good faith purchasers" within the meaning of section 363(m) of the Bankruptcy Code, and the APA would be good-faith agreements on arms'-length terms entitled to the protections of

section 363(m) of the Bankruptcy Code.[4] First, as set forth in more detail above, the consideration to be received by the Debtor would be substantial, fair, and reasonable. Second, there is no indication of any "fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders" or similar conduct that would cause or permit the Sale or APA to be avoided under section 363(n) of the Bankruptcy Code. And, with respect to potential bidders, the Bid Procedures are designed to ensure that no party is able to exert undue influence over the process. Accordingly, the Debtor believes that any Successful Bidder arising from the Auction, if any.

### e.    The Sale Should be Approved "Free and Clear" Under Section 363(f).

49.    Section 363(f) of the Bankruptcy Code permits a debtor to sell property free and clear of another party's interest in the property if: (a) applicable nonbankruptcy law permits such a free and clear sale; (b) the holder of the interest consents; (c) the interest is a lien and the sale price of the property exceeds the value of all liens on the property; (d) the interest is the subject of a bona fide dispute; or (e) the holder of the interest could be compelled in a legal or equitable proceeding to accept a monetary satisfaction of its interest. See 11 U.S.C. § 363(f).

50.    Section 363(f) is drafted in the disjunctive. Thus, satisfaction of any of the requirements enumerated therein will suffice to warrant the Debtor's sale of the Assets free and clear of all interests (i.e., all liens, claims, rights, interests, charges, or encumbrances), except with respect to any interests that may be assumed liabilities under the applicable Purchase Agreement. See In re Kellstrom Indus., Inc., 282 B.R. 787, 793 (Bankr. D. Del. 2002)

---

[4] The Debtor believes that a finding of good faith within the meaning of section 363(m) of the Bankruptcy Code will be appropriate for any Successful Bidder arising from the Auction. Pursuant to the Bid Procedures, any Successful Bidder will have had to present a proposal in accordance with the Bid Procedures. In addition, the Debtor will not choose, after consultation with the Agents and the Committee Representatives, as the Successful Bidder or Back-Up Bidder (as defined in the Bid Procedures) any entity whose good faith under section 363(m) of the Bankruptcy Code can reasonably be doubted, and will be prepared to present the Court with sufficient evidence to allow the Court to find that the "good faith" standard of section 363(m) of the Bankruptcy Code has been satisfied.

("[I]f any of the five conditions are met, the debtor has the authority to conduct the sale free and clear of all liens.").

51.     The Debtor submits that any interest that will not be an assumed liability satisfies or will satisfy at least one of the five conditions of section 363(f) of the Bankruptcy Code, and that any such interest will be adequately protected by either being paid in full at the time of closing, or by having it attach to the net proceeds of the Sale, subject to any claims and defenses the Debtor may possess. The Debtor accordingly requests authority to convey the Assets to the Successful Bidder arising from the Auction, if any, free and clear of all liens, claims, rights, interests, charges, and encumbrances, with any such liens, claims, rights, interests, charges, and encumbrances to attach to the proceeds of the Sale.

### f.  Credit Bidding Should Be Authorized Under Section 363(k) of the Bankruptcy Code.

52.     A secured creditor is allowed to "credit bid" the amount of its claim in a sale. Section 363(k) of the Bankruptcy Code provides, in relevant part, that unless the court for cause orders otherwise, the holder of a claim secured by property that is the subject of the sale "may bid at such sale, and, if the holder of such claim purchases such property, such holder may offset such claim against the purchase price of such property." 11 U.S.C. § 363(k). Even if a secured creditor is undersecured as determined in accordance with section 506(a) of the Bankruptcy Code, section 363(k) allows such secured creditor to bid the total face value of its claim and does not limit the credit bid to the claim's economic value. See In re Submicron Sys. Corp., 432 F.3d 448, 459-60 (3d Cir. 2006) (explaining that "[i]t is well settled among district court and bankruptcy courts that creditors can bid the full face value of its secured claims under section 363(k)").

53.     Absent cause for restricting credit bidding, courts have consistently ruled in favor of reserving a secured creditor's right to credit bid its claim. See Source Home Entm't, LLC, No. 14-11553 (Bankr. D. Del. July 21, 2014) (order approving bid procedures which authorized parties with secured claims to credit bid); In re PTC Alliance Corp., No. 09-13395 (Bankr. D. Del. Nov. 6, 2009) (order authorizing, but not directing, the administrative DIP Lender to credit bid).

54.     Thus, the Agent should be entitled to credit bid at the Auction as set forth in the Bid Procedures.

**V.     The Assumption and Assignment of the Contracts Should Be Approved.**

   **a.  The Assumption and Assignment of the Contracts Reflects the Debtor's Reasonable Business Judgment.**

55.     To facilitate and effectuate the sale of the Assets, the Debtor is seeking authority to assign or transfer the Contracts to the Successful Bidder arising from the Auction, to the extent required by such bidders.

56.     Section 365 of the Bankruptcy Code authorizes a debtor to assume and/or assign its executory contracts and unexpired leases, subject to the approval of the court, provided that the defaults under such contracts and leases are cured and adequate assurance of future performance is provided. The Debtor's decision to assume or reject an executory contract or unexpired lease must only satisfy the "business judgment rule" and will not be subject to review unless such decision is clearly an unreasonable exercise of such judgment. See Grp. of Institutional Invs. v. Chicago, Milwaukee, St. Paul & Pac. Ry. Co., 318 U.S. 523 (1943) (applying Bankr. Act section 77(b), predecessor to Bankruptcy Code section 365, and rejecting test of whether executory contract was burdensome in favor of whether rejection is within debtor's business judgment); Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp., 872 F.2d 36,

40 (3d Cir. 1989) (describing deference to a debtor's business judgment as "breathing space afforded [to] the debtor to consider whether to reject or assume executory contracts under the Code."); In re Network Access Solutions, Corp., 330 B.R. 67, 75 (Bankr. D. Del. 2005) ("The standard for approving the assumption of an executory contract is the business judgment rule"); In re Exide Techs., 340 B.R. 222, 239 (Bankr. D. Del. 2006) ("The propriety of a decision to reject an executory contract is governed by the business judgment standard").

57.     Here, the Court should approve the decision to assume and assign the Assumed Contracts in connection with the Sale as a sound exercise of the Debtor's business judgment: First, the Assumed Contracts are necessary to operate the Assets and, as such, they are essential to inducing the best offer for the Assets. Second, it is unlikely that any purchaser would want to acquire the Assets unless a significant number of the contracts and leases needed to manage the day-to-day operations were included in the transaction. Finally, the Assumed Contracts will be assumed and assigned though the process approved by the Court pursuant to the Bid Procedures Order and, thus, will be reviewed by key constituents in these Chapter 11 Case.

58.     Accordingly, the Debtor submits that the assumption and assignment of the Assumed Contracts by way of the Assumption Procedures should be approved as an exercise of its business judgment.

**b.  Defaults Under the Assumed Contracts Will Be Cured Through the Sale.**

59.     Upon finding that a debtor has exercised its business judgment in determining that assuming an executory contract is in the best interest of its estate, courts must then evaluate whether the assumption meets the requirements of section 365(b) of the Bankruptcy Code, specifically that a debtor (a) cure, or provide adequate assurance of promptly curing, prepetition defaults in the executory contract, (b) compensate parties for pecuniary losses arising therefrom,

and (c) provide adequate assurance of future performance thereunder. This section "attempts to strike a balance between two sometimes competing interests, the right of the contracting non-debtor to get the performance it bargained for and the right of the debtor's creditors to get the benefit of the debtor's bargain." In re Luce Indus., Inc., 8 B.R. 100, 107 (Bankr. S.D.N.Y. 1980).

60.    The Debtor submits that the statutory requirements of section 365(b)(1)(A) of the Bankruptcy Code will be promptly satisfied because the Bid Procedures Order (once approved) provides a clear process by which to resolve disputes over cure amounts or other defaults, the Debtor is confident that if defaults exist that must be cured, such cure will be achieved fairly, efficiently, and properly, consistent with the Bankruptcy Code and with due respect to the rights of non-debtor parties.

### c. Non-Debtor Parties Will Be Adequately Assured of Future Performance.

61.    Similarly, the Debtor submits that the third requirement of section 365(b) of the Bankruptcy Code—adequate assurance of future performance—is also satisfied given the facts and circumstances present here. "The phrase 'adequate assurance of future performance' adopted from section 2-609(1) of the Uniform Commercial Code, is to be given a practical, pragmatic construction based upon the facts and circumstances of each case." In re U.L. Radio Corp., 19 B.R. 537, 542 (Bankr. S.D.N.Y. 1982). Although no single solution will satisfy every case, "the required assurance will fall considerably short of an absolute guarantee of performance." In re Prime Motor Inns, Inc., 166 B.R. 993, 997 (Bankr. S.D. Fla. 1994). Among other things, adequate assurance may be given by demonstrating the assignee's financial health and experience in managing the type of enterprise or property assigned. See In re Bygaph, Inc., 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (adequate assurance of future performance present

where a prospective assignee has financial resources and has expressed a willingness to devote sufficient funding to a business to give it a strong likelihood of succeeding).

62.    The Debtor believes that it can and will demonstrate that the requirements for assumption and assignment of the Assumed Contracts to the Successful Bidder arising from the Auction will be satisfied. As required by the Bid Procedures, the Debtor will evaluate the financial wherewithal of potential bidders before designating such party a Qualified Bidder (*e.g.*, financial credibility, willingness, and ability of the interested party to perform under the Assumed Contracts) and will demonstrate such financial wherewithal, willingness, and ability to perform under the Assumed Contracts assigned to the Successful Bidder arising from the Auction. Further, the Assumption Procedures provide the Court and other interested parties with ample opportunity to evaluate and, if necessary, challenge the ability of the Successful Bidder arising from the Auction to provide adequate assurance of future performance and object to the assumption of the Assumed Contracts or proposed cure amounts. The Court therefore should have a sufficient basis to authorize the Debtor to reject or assume and assign the Assumed Contracts as set forth in an APA.

## VI.    Relief Under Bankruptcy Rules 6004(h) and 6006(d) Is Appropriate.

63.    Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of fourteen days after the entry of the order, unless the court orders otherwise." Additionally, Bankruptcy Rule 6006(d) provides that an "order authorizing the trustee to assign an executory contract or unexpired lease . . . is stayed until the expiration of fourteen days after the entry of the order, unless the court orders otherwise." The Debtor requests that the Sale Order be effective immediately upon its entry by providing that the fourteen-day stays under Bankruptcy Rules 6004(h) and 6006(d) are waived.

64.     The purpose of Bankruptcy Rules 6004(h) and 6006(d) is to provide sufficient time for an objecting party to appeal before an order can be implemented. See Advisory Comm. Notes to Fed. R. Bankr. P. 6004(h) & 6006(d). Although Bankruptcy Rules 6004(h) and 6006(d) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the fourteen-day stay period, the leading treatise on bankruptcy suggests that the fourteen-day stay should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to procedure." 10 COLLIER ON BANKRUPTCY ¶ 6004.10 (15th rev. ed. 2006). Furthermore, if an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time actually necessary to file such appeal. Id.  The Debtor note that similar requests to waive the stay imposed under Bankruptcy Rules 6004(h) are routinely granted. See, e.g., In re Bakers Footwear Grp. Inc., No. 12-49658 (CER) (Bankr. E.D. Mo. Nov. 1, 2012); In re ContinentalAFA Dispensing Co., No. 08-45921 (KAS) (Bankr. E.D. Mo. Nov. 12, 2008); In re the Great Atlantic & Pacific Tea Co., Inc., Case No. 15-23007 (SCC) (Bankr. S.D.N.Y. Aug. 11, 2015); In re Delia's, Inc., Case No. 14-23678 (RDD) (Bankr. S.D.N.Y. Feb. 10, 2015); In re Midway Games Inc., Case No. 09-10465 (KG) (Bankr. D. Del. June 3, 2009); In re Nortel Networks Inc., et al., Case No. 09-10138 (Bankr. D. Del. Mar. 3, 2009).

65.     To maximize the value received for the Assets, the Debtor seeks to close the Sale as soon as possible after the Sale Hearing. Accordingly, the Debtor hereby request that the Court waive the fourteen-day stay period under Bankruptcy Rules 6004(h) and 6006(d).

**Notice**

66.     Notice of this Motion has been given to: (a) the Agent, along with its respective counsel; (b) all parties who have expressed a written interest in some or all of the Assets; (c) all

parties who are known or reasonably believed, after reasonable inquiry, to have asserted any lien, encumbrance, claim, or interest in the Assets; (d) the Office of the United States Trustee for the District of Delaware; (e) the Debtor's 20 largest unsecured creditors; (f) the Internal Revenue Service; (g) the Securities and Exchange Commission; and (h) the United States Attorney's Office for the District of Delaware. In light of the nature of the relief requested, the Debtor submits that no further notice is necessary.

## **No Prior Request**

67.     No prior request for the relief sought in this Motion has been made to this or any other Court in connection with these Chapter 11 Case.

WHEREFORE, the Debtor requests that the Court: (i) enter an the Bid Procedures Order, substantially in the form attached as Exhibit A, (ii) at the conclusion of the Sale Hearing, enter the Sale Order, substantial in the form attached as Exhibit B; and (iii) grant such other relief as is necessary.

Dated:  September 20, 2016
 Wilmington, Delaware

GELLERT SCALI BUSENKELL & BROWN, LLC

*/s/ Michael Busenkell*
Michael Busenkell (No. 3933)
Ronald S. Gellert (No. 4259)
Brya M. Keilson (No. 4643)
1201 North Orange Street , Suite 300
Wilmington, Delaware 19801
Telephone: (302) 425-5800
Facsimile:  (302) 425-5814
Email: mbusenkell@gsbblaw.com

*Proposed Attorneys for NJOY, Inc., Debtor and Debtor-in- Possession*

## Exhibit A

**(Bid Procedures Order)**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| NJOY, INC.,[5] | Case No. 16-12076 (CSS) |
| Debtor. | |

**ORDER (A) APPROVING BID PROCEDURES IN CONNECTION WITH THE SALE
OF SUBSTANTIALLY ALL, OR A SUBSET, OF THE DEBTOR'S ASSETS,
(B) APPROVING THE FORM AND MANNER OF NOTICE THEREOF,
(C) SCHEDULING AN AUCTION AND A SALE HEARING, (D) APPROVING
PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT
OF CONTRACTS AND LEASES, AND (E) GRANTING RELATED RELIEF**

Upon the Motion[6] of the Debtor for entry of an order (this "**Order**"), (a) authorizing and approving the bid procedures attached hereto as **Exhibit 1** (the "**Bid Procedures**"), (b) approving the Breakup Fee in connection with the sale of certain assets of the Debtor (the "**Assets**"), (c) approving the form and manner of notice of the Auction and the Sale Hearing with respect to the Debtor's Assets, and (d) scheduling an Auction and a Sale Hearing; it appearing that the relief requested is in the best interests of the Debtor's estate, its creditors, and other parties in interest; the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; notice of the Motion having been adequate and appropriate under the circumstances; and after due deliberation and sufficient cause appearing therefor, **THE COURT FINDS THAT:**

---

[5] The last four digits of the Debtor's federal tax identification number are 6013.  The Debtor's mailing address and principal place of business is 15211 N. Kierland Blvd., Suite 200, Scottsdale, Arizona 85254.

[6] All capitalized times not defined in this Order shall have the meanings ascribed to them in the Motion.

A.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.      This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in this district and in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C.      The bases for the relief requested in the Motion are: (i) sections 105, 363, 365, 503, and 507 of the Bankruptcy Code, 11 U.S.C. §§ 101–1532 (the "**Bankruptcy Code**"); (ii) Rules 2002(a)(2), 6004, 6006, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"); and (iii) 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure  (the "**Local Rules**").

D.      Notice of the Motion has been given to: (i) the Office of the United States Trustee for the District of Delaware; (ii) proposed counsel to any statutorily appointed committee; (iii) counsel for the Agent for the Debtor's prepetition secured lenders (collectively, the "**Lenders**" and individually, a "**Lender**"); (iv) the United States Attorney's Office for the District of Delaware; (v) the Internal Revenue Service; (vi) the office of the attorneys general for the states in which the Debtor operates; (vii) the Securities and Exchange Commission; (viii) all parties who have expressed a written interest in some or all of the Assets; (ix) all known holders of liens, encumbrances, and other claims secured by the Assets; (x) each governmental agency that is an interested party with respect to the Sale; and (xi) any party that has requested notice pursuant to Bankruptcy Rule 2002. Notice of the Motion was adequate and sufficient under the

circumstances of this case, and such notice complied with all of the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

E.      The Debtor has articulated good and sufficient reasons for this Court to: (i) approve the Bid Procedures; (ii) schedule the Auction and Sale Hearing and approve the manner of notice of the Auction and Sale Hearing; and (iii) approve the procedures for the assumption and assignment of the Contracts, including notice of proposed cure amounts. The relief granted herein is in the best interests of the Debtor, its estate and creditors, and other parties in interest.

F.      The Bid Procedures and the APA were negotiated by the parties at arms' length and in good faith by the Debtor and the Successful Bidder.

G.      ***Assumption and Assignment Procedures.*** The Motion, this Order, and the assumption and assignment procedures set forth herein are reasonably calculated to provide counterparties to any Contracts to be assumed by the Debtor and assigned to the Successful Bidder with proper notice of the intended assumption and assignment of its Contracts, the procedures in connection therewith, and any cure amounts relating thereto.

H.      ***Sale Notice.*** The sale notice, substantially in the form attached as <u>Exhibit 2</u> (the "**Sale Notice**"), is reasonably calculated to provide interested parties with timely and proper notice of the proposed sale, including, without limitation: (i) the date, time, and place of the Auction (if one is held); (ii) the Bid Procedures; (iii) the deadline for filing objections to the Sale and entry of the Sale Order, and the date, time, and place of the Sale Hearing; (iv) reasonably specific identification of the Assets to be sold; (vi) a description of the Sale as being free and clear of liens, claims, encumbrances, and other interests (except as set forth in the applicable Purchase Agreement), with all such liens, claims, encumbrances, and other interests attaching

with the same validity and priority to the Sale proceeds; (vii) notice of the proposed assumption and assignment of Contracts to the Successful Bidder pursuant to the APA, and no other or further notice of the sale shall be required.

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.      The Motion is **GRANTED** as provided below.

2.      All objections to the relief requested in the Motion that have not been withdrawn, waived, or settled as announced to the Court at the hearing on the Motion or by stipulation filed with the Court, are overruled.

**I.      Important Dates and Deadlines.**

3.      *Sale Hearing*. The Sale Hearing shall commence on or before **_____, 2016, at 10:00 a.m. (ET)** before the Honorable _____ at Courtroom No. ___, 824 N. Market St., Wilmington, Delaware 19801. Upon entry of this Order, the Debtor is authorized to perform any obligations of the Debtor set forth in the APA or other applicable Purchase Agreement that are intended to be performed prior to the Sale Hearing or entry of the Sale Order. The Sale Hearing may be adjourned by announcement in open Court or on the Court's calendar without any further notice required.

4.      *Sale Objection Deadline*. Objections, if any, to the Sale must be made **on or before _____, 2016 at 12:00 p.m. (ET)** (the "**Sale Objection Deadline**"). Objections must: (a) be in writing; (b) conform to the applicable provisions of the Bankruptcy Rules and the Local Rules; (c) state with particularity the legal and factual basis for the objection and the specific grounds therefor; and (d) be filed with the Court and served so as to be *actually received* no later than the Sale Objection Deadline by the following parties (the "**Notice Parties**"): (i)

counsel to the Debtor; (ii) counsel to any statutorily appointed committee; (ii) the United States Trustee; (iii) counsel to the Successful Bidder; and (iv) counsel to the Agent.

5.      A party's failure to timely file or make an objection in accordance with this Order shall forever bar the assertion of any objection to the Motion, entry of the Sale Order, and/or consummation of the Sale with the Successful Bidder pursuant to the applicable Purchase Agreement, including the assumption and assignment of the Contracts to the Successful Bidder pursuant to the applicable Purchase Agreement, and shall be deemed to constitute any such party's consent to entry of the Sale Order and consummation of the Sale and all transactions related thereto, including, without limitation, such assumption and assignment.

6.      ***Bid Deadline***. The deadline by which all Bids for the Debtor's Assets must be ***actually received*** by the parties specified in the Bid Procedures is **12:00 p.m. (ET), on _____, 2016** (the "**Bid Deadline**").

7.      *Auction*. **_____, 2016 at 10:00 a.m. (ET)**, is the date and time the Auction, if one is needed. Such Auction will be held at the offices of counsel to the Debtor: Gellert Scali Busenkell & Brown, LLC, 1201 N. Orange St., 3rd Floor, Wilmington, DE 19801, or such later time on such day or other place as the Debtor shall notify the Notice Parties and all Qualified Bidders who have submitted Qualified Bids. As set forth more fully in the Bid Procedures, only Qualified Bidders shall be permitted to participate at the Auction.

## II.     Auction, Bid Procedures, and Related Relief.

8.      The Bid Procedures, substantially in the form attached hereto as Exhibit 1, are approved in its entirety, and the Bid Procedures shall govern the submission, receipt, and analysis of all Bids relating to the proposed sale of the Assets. Any party desiring to bid on the

Assets shall comply with the Bid Procedures and this Order. The Debtor is authorized to take any and all actions necessary to implement the Bid Procedures.

9.      If the Debtor receives one or more Qualified Bids from Qualified Bidders, then the Debtor shall conduct the Auction in accordance with the Bid Procedures.

10.     Each bidder participating at the Auction shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the Sale, as set forth in the Bid Procedures, the Auction shall be conducted openly, and the Auction shall be transcribed or videotaped.

11.     At the Auction, the Agent, on behalf of itself and the Lenders, shall have the right to credit bid all or a portion of the value of its claims within the meaning of section 363(k) of the Bankruptcy Code.

12.     Any credit bid must include a cash component (or otherwise provide cash) sufficient to pay the Breakup Fee and all senior liens on the collateral that is subject to the credit bid.

13.     So long as acceptable to each of the Agent in its reasonable discretion, and in consultation with the Committee Representatives, the Debtor may (a) determine which Qualified Bid is the highest or otherwise best offer; (b) reject at any time before entry of an Order of the Bankruptcy Court approving the Successful Bid, any Bid that, in the discretion of the Debtor, is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code or the Bid Procedures, or (iii) contrary to the best interests of the Debtor's estate and its creditors; and (c) at or before the conclusion of the Auction, may impose such other terms and conditions upon Qualified Bidders as the Debtor, in consultation with the Agent and the

Committee Representatives, determine to be in the best interests of the Debtor's estate in this case.

14.     No person or entity shall be entitled to any expense reimbursement, break-up fees, "topping," termination, or other similar fee or payment, and by submitting a bid, such person or entity is deemed to have waived its right to request or to file with this court any request for expense reimbursement or any fee of any nature, whether by virtue of section 503(b) of the Bankruptcy Code or otherwise.

**III.     Assumption and Assignment Procedures.**

15.     The following procedures regarding the assumption and assignment of the Contracts in connection with the Sale are approved to the extent set forth herein, and shall govern the assumption and assignment of all Contracts proposed to be assumed by the Debtor pursuant to section 365(b) of the Bankruptcy Code and assigned to the Successful Bidder pursuant to section 365(f) of the Bankruptcy Code under the APA or other applicable Purchase Agreement.

16.     ***Notices for Contracts.*** On or before _____, 2016, the Debtor shall serve on all non-Debtor counterparties to any Contract (the "**Contract Notice Parties**") that may be assumed by the Debtor and assigned to the Successful Bidder a "**Contract Notice**," substantially in the form attached as Exhibit 3, that identifies, to the extent applicable: (a) the Contract that may be assumed and assigned; (b) the name of the non-Debtor counterparty to such Contract; (c) the Debtor's asserted cure amount for such Contract if it becomes assumed and assigned; (d) the deadline by which any such Contract counterparty must file an objection (each, a "**Contract Objection**") to the proposed cure amount, assumption and assignment, or adequate assurance; (e) identifying the Successful Bidder; and (f) providing Contract counterparties with the

Successful Bidder's assurance of future performance; *provided* that the presence of a Contract on a Contract Notice does not constitute an admission that such Contract is an executory contract or unexpired lease; *provided, further*, that the presence of a Contract on the Contract Notice or Assumption Notice shall not prevent the Debtor from subsequently withdrawing such request for assumption or rejecting such Contract at any time before such Contract is actually assumed and assigned pursuant to an Order of the Court. Such Contract Notice shall be without prejudice to the Successful Bidder's rights under Section _____ of the APA to subsequently exclude such items from assumption and assignment or add additional items. As soon as practicable after the Bid Deadline, the Debtor shall file with the Court and serve on the Contract Notice Parties who are parties to a Contract to be assumed and assigned a further notice substantially in the form attached as Exhibit 4 (the "**Assumption Notice**") identifying all Qualified Bidders each of whom will be permitted to participate in the Auction, stating which Contracts may be assumed and assigned, and providing such parties with the Qualified Bidders' assurance of future performance. To the extent the Debtor subsequently identify prior to the Sale Hearing any additional Contracts to be assumed by the Debtor and assigned to the Successful Bidder, the Debtor shall serve on any counterparty to such Contract the Contract Notice and/or Assumption Notice, as applicable, along with the Successful Bidder's assurance of future performance, as soon as practicable. Such counterparty shall have seven (7) days from service of the Contract Notice and/or Assumption Notice, as applicable, to file an objection to the proposed cure amount or assumption and assignment of its Contract in accordance with the procedures set forth herein.

17.      ***Objections to Assumption of Contracts.*** Any non-Debtor counterparty to a Contract who objects to the cure or assignment of its Contracts (the "**Objecting Party**") shall file Contract Objections pursuant to the following procedures:

- ***Contract Objection***. All Contract Objections to the cure amounts listed in the Contract Notice, the Debtor's ability to assign a Contract, or adequate assurance of future performance solely by the Successful Bidder shall be filed with the Court by 4:00 p.m. (ET) seven (7) days from service of the Contract Notice or any amendment or supplement to the Contract Notice.

- ***Supplemental Adequate Assurance Objection***. All Contract Objections to adequate assurance of future performance of Contracts by any Successful Bidder shall be filed with the Court at or prior to the Sale Hearing; *provided* that for parties identified on any supplemental Assumption Notice issued by the Debtor after the initial Assumption Notice, such parties shall have seven (7) days from service of such notice to file such Contract Objection.

- ***No Objection***. If no Objection is received in accordance with the deadlines set forth above, such counterparty: (a) shall be deemed to have consented to the cure amounts and assumption and assignment of its Contract to the Successful Bidder; (b) shall be forever barred, estopped, and enjoined from asserting any additional cure amount under the Contracts; and (c) shall be forever barred from objecting to the assignment of the Contracts to the Successful Bidder or the adequacy of the Successful Bidder's assurance of future performance.

- ***Resolution Period***. If any timely filed Contract Objection cannot be resolved by the Successful Bidder and the Objecting Party, the Court shall resolve such Contract Objection prior to assumption and assignment of such designated Contract, and upon entry of an order by the Court resolving such Contract Objection, the assignment, if approved by the Court, shall be deemed effective as of the date such Objecting Party receives the Assumption Notice. To the extent that any Contract Objection cannot be resolved by the parties, such Contract shall be assumed and assigned only upon satisfactory resolution of the Contract Objection, to be determined in the Successful Bidder's reasonable discretion, and until such time as the Contract Objection can be resolved, the Contract shall be conditionally assumed and assigned pending a resolution of the Contract Objection after notice and a hearing.

- ***Form of Objections***. Contract Objections must: (a) be in writing; (b) state with specificity the nature of such objection and alleged cure amount, including applicable and appropriate documentation in support of such alleged cure amount; and (c) comply with the Bankruptcy Rules and the Local Rules.

## IV.    Sale Hearing Notice.

18.    The Sale Notice is hereby approved. On or within three (3) calendar days following entry of this Order, the Debtor shall cause the Sale Notice to be served on: (a) the United States Trustee; (b) counsel to any statutorily appointed committee; (c) counterparties to the Contracts (the "**Contract Counterparties**"); (d) all parties who have expressed a written interest in some or all of the Assets; (e) all parties who are known or reasonably believed, after

reasonable inquiry, to have asserted any lien, encumbrance, claim, or interest in the Assets; (f) the Internal Revenue Service; (g) all applicable state and local taxing authorities; (h) each governmental agency that is an interested party with respect to the Sale and transactions proposed thereunder; (i) counsel to the Agent; (j) the 20 largest unsecured creditors of the Debtor; (k) the landlords of the Debtor; and (l) all parties that have requested or that are required to receive notice pursuant to Bankruptcy Rule 2002.

**V.    Miscellaneous.**

19.    Notwithstanding anything to the contrary contained in this Order or otherwise: (i) the right of the Agent and DIP Lender to consent to the sale of any portion of their collateral, including, without limitation, any Assets, on terms and conditions acceptable to Agent and the DIP Lender, shall be expressly reserved and not modified, waived or impaired in any way by this Order, (ii) all cash proceeds generated from the sale of any Assets shall be paid to Agent upon the closing of such sale for application against the obligations owing by the Debtor to Agent and the DIP Lender, in such order and manner as Agent shall determine, until such time as all such obligations have been fully repaid and satisfied in full in accordance with the terms and conditions of the Financing Order and the Loan Documents (as defined in the Financing Order), (iii) the Debtor shall consult with Agent and the Committee prior to employing any additional procedures rules at any Auction, (iv) the right of Agent and the DIP Lender to credit bid an amount equal to the Revolving Obligations (as defined in the Financing Order) shall extend to all or any portion of the Assets constituting its collateral, (v) Agent and DIP Lender shall be entitled to submit a credit bid in an amount up to the full amount the secured claims of Agent and the DIP Lender arising in connection with or relating to the Revolving Obligations, and shall not be

required to include a cash portion in any credit bid to fund the fees and expenses of the Debtor's professionals or any other party in interest.

20.     Notwithstanding anything to the contrary contained in this Order or otherwise, nothing in this Order shall amend, modify, or impair any provision of the Financing Order, or the rights of Debtor, Agent of the DIP Lender thereunder.

21.     The Debtor is authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

22.     The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

23.     The Debtor is not required to comply with any state or local bulk transfer laws or requirements in connection with the Sale.

24.     This Order shall be binding on the Debtor, including any chapter 7 or chapter 11 trustee or other fiduciary appointed for the Debtor's estate.

25.     To the extent any of the deadlines set forth in this Bid Procedures Order do not comply with the Local Rules, such Local Rules are waived and the terms of this Bid Procedures Order shall govern.

26.     Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 6006(d), 7062, 9014 or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

27.     The Court shall retain jurisdiction over this order and any interpretation of it.

Dated: _____, 2016                    _____
Wilmington, Delaware                            United States Bankruptcy Judge

## Exhibit 1

**Bid Procedures**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| NJOY, INC.,[1] | Case No. 16-12076 (CSS) |
| Debtor. | |

**BID PROCEDURES FOR THE SALE OF CERTAIN OF THE DEBTOR'S ASSETS**

On _____, 2016, the Debtor entered into an asset purchase agreement (the "**APA**") with _____ (the "**Successful Bidder**") pursuant to which the Successful Bidder proposes to purchase, acquire, and take assignment and delivery of, free and clear of all liens, claims, encumbrances, and other interests (except as otherwise provided in the APA), substantially all of the assets of the Debtor (the "**Assets**").

On _____, the United States Bankruptcy Court for the District of Delaware (the "**Court**") entered an order approving these bid procedures (these "**Bid Procedures**," and such order, the "**Bid Procedures Order**"),[2] in the Debtor's chapter 11 case (the "**Chapter 11 Case**"). The Bankruptcy Court will have jurisdiction with respect to any dispute that may arise with respect to these Bid Procedures.

These Bid Procedures set forth the process by which the Debtor is authorized to conduct an auction for the sale (the "**Sale**") of the Assets.

The Debtor selected the Successful Bid (as defined below) after a pre-petition sale marketing process. After announcing the Successful Bid, the Debtor will conduct a round of open bidding and solicit higher and better offers for the Assets (the "**Open Bidding Process**") culminating in an auction intended to obtain a higher or otherwise best bid for the Assets (the "**Auction**").

**I.    Submissions to the Debtor**

All submissions to the Debtor required to be made under these Bid Procedures must be directed to each the following persons unless otherwise provided (collectively, the "**Debtor's Representatives**"):

**Debtor.** NJOY, Inc., 15211 N. Kierland Blvd., Suite 200, Scottsdale, Arizona 85254, Attn: _____ (_____).

---

[1] The last four digits of the Debtor's federal tax identification number are 6013.  The Debtor's mailing address and principal place of business is 15211 N. Kierland Blvd., Suite 200, Scottsdale, Arizona 85254.

[2] Capitalized terms not defined in these Bid Procedures shall have the meanings ascribed to them in the Bid Procedures Order.

**Counsel.** Counsel to the Debtor, Gellert Scali Busenkell & Brown, LLC, 1201 N. Orange St., 3rd Floor, Wilmington, DE 19801, Attn: Michael Busenkell (mbusenkell@gsbblaw.com) and Ronald S. Gellert (rgellert@gsbblaw.com).

**Investment Banker.** _____

**Financial Advisor.** _____.

The Debtor's Representatives shall promptly send all such submissions to the Agent (as defined below) and the Committee (as defined below).

## II.    Participation Requirements.

### a.    Potential Bidders.

To participate in the bidding process or otherwise be considered for any purpose under these Bid Procedures, other than any Agent which may wish to submit a credit bid, a person or entity interested in consummating the Sale (a "**Potential Bidder**") must deliver or have previously delivered, if determined to be necessary by the Debtor in its sole discretion by no later than five (5) business days prior to the Bid Deadline:

1. an executed confidentiality agreement on terms acceptable to the Debtor (a "**Confidentiality Agreement**"); and

2. preliminary proof by the Potential Bidder of its financial capacity to close a proposed transaction, which may include financial statements of, or verified financial commitments obtained by, the Potential Bidder (or, if the Potential Bidder is an entity formed for the purpose of acquiring the Assets, the party that will bear liability for a breach), the adequacy of which will be assessed by the Debtor and its advisors in consultation with the Agent and the Committee.

## III.    Notice of Acceptable Bidder.

The Debtor's advisors will notify each Potential Bidder whether such Potential Bidder has submitted adequate documentation so that such Potential Bidder may submit a Bid (each, an "**Acceptable Bidder**"); *provided* that the Debtor shall consult with FLFC Lending Co. as Agent on behalf of the lenders under the prepetition Credit Agreement (the "**Agent**") and any statutorily appointed committee (the "**Committee**") in the event they believe that a Potential Bidder does not constitute an Acceptable Bidder. Notwithstanding anything herein to the contrary, the Debtor reserves the right to work with Potential Bidders to aggregate partial Bids into a consolidated Acceptable Bid prior to the Acceptable Bid Deadline. The Agent is deemed an Acceptable Bidder and a Qualified Bidder.

## IV.    Obtaining Due Diligence Access.

Only Acceptable Bidders shall be eligible to receive due diligence information and access to non-public information regarding the Debtor. The Debtor will provide to each Acceptable

Bidder reasonable due diligence information, as requested by such Acceptable Bidder in writing, as soon as reasonably practicable after such request. The due diligence period will end on the Bid Deadline (as defined herein) and subsequent to the Bid Deadline the Debtor shall have no obligation to furnish any due diligence information.

In connection with the provision of due diligence information to Acceptable Bidders, the Debtor shall not furnish any confidential information relating to the Assets, liabilities of the Debtor, or the Sale to any person except to an Acceptable Bidder or to such Acceptable Bidder's duly authorized representatives to the extent provided in the applicable Confidentiality Agreement.

The Debtor and its advisors shall coordinate all reasonable requests from Acceptable Bidders for additional information and due diligence access; ***provided*** that the Debtor may decline to provide such information to Acceptable Bidders who, at such time and in the Debtor's reasonable business judgment, after consultation with the Agent and the Committee, have not established, or who have raised doubt, that such Acceptable Bidder intends in good faith to, or has the capacity to, consummate the Sale.

**All due diligence requests must be directed to _____ as set forth above.**

### a.  Communications with Qualified Bidders.

Notwithstanding anything to the contrary in these Bid Procedures, all substantive direct communications with Qualified Bidders shall be through the Debtor's Representatives.

### b.  Due Diligence from Qualified Bidders.

Each Qualified Bidder shall comply with all reasonable requests for additional information and due diligence access requested by the Debtor or its advisors regarding the ability of such Qualified Bidder to consummate its contemplated transaction. Failure by a Qualified Bidder to comply with such reasonable requests for additional information and due diligence access may be a basis for the Debtor to determine, after consultation with the Agent and the Committee, that such bidder is no longer a Qualified Bidder or that a bid made by such bidder is not a Qualified Bid.

## V.  Committee and Agent Access and Information.

The Debtor and the Debtor's Representatives shall regularly consult with, and make the same information that is provided to Acceptable Bidders and the Debtor available to the Agent and representatives of the Committee, including but not limited to the Committee's professionals (the "**Committee Representatives**").

The Debtor and its advisors and representatives will reasonably and promptly consult with the Agent and the Committee Representatives with respect to negotiations with Acceptable Bidders and Qualified Bidders, the terms and conditions of draft agreements with Acceptable Bidders and Qualified Bidders, and the progress of the Open Bidding Process and the Auction.

The Debtor shall also provide the Agent and the Committee Representatives with relevant information the Debtor receive relating to any Bidders or Bids, including, but not limited to, information regarding the identity of all Potential Bidders, Acceptable Bidders, and Qualified Bidders (as defined below), the terms and conditions of any Bid, the structure (including, without limitation, the proposed tax structure) and form of consideration of any Bid, other information related to the Bid Requirements, and any other information necessary for the Agent and the Committee Representatives to evaluate the Bids (the "**Bid Information**").

## VI.    Due Diligence from Acceptable Bidders and Confidentiality.

If an Acceptable Bidder proposes to use its own or an affiliate's securities as all or part of the financial consideration in its Bid or otherwise makes a Bid that would make relevant the Debtor or its creditors' need for information from the Bidder concerning the Bidder, the Acceptable Bidder shall comply with all reasonable requests for information from the Debtor and its advisors and representatives regarding the Acceptable Bidder (the "**Bidder Due  Diligence Information**," and together with any other Bid Information provided by the Bidder, the "**Bidder Confidential Information**"). The Acceptable Bidder may request that the Debtor enter into a confidentiality agreement, if the Debtor has not done so, with respect to the Bidder Due Diligence Information satisfactory to the Debtor and the Acceptable Bidder. Failure by an Acceptable Bidder to comply with reasonable requests for information may be a basis for the Debtor and its advisors and representatives to determine, after consultation with the Agent and the Committee that such bidder no longer qualifies as an Acceptable Bidder.

The Debtor, the Agent, and the Committee Representatives, and each of its respective advisors and representatives, shall be obligated to maintain in confidence any Bidder Confidential Information in accordance with any applicable confidentiality agreement, except as otherwise set forth in these Bid Procedures. Each recipient of Bidder Confidential Information agrees to use, and to instruct its advisors and representatives to use, such Bidder Confidential Information only in connection with the evaluation of Bids during the Bidding Process or otherwise in connection with the Chapter 11 Case or in accordance with the terms of any applicable confidentiality agreement.

Notwithstanding the foregoing and the provisions contained in any applicable confidentiality agreement, the Debtor and the Debtor's Representatives, the Agent and the Committee Representatives may disclose Bidder Confidential Information, as applicable: (a) with the prior written consent of such Bidder and the Debtor; (b) to the Committee Representatives (who may share such information with members of the Committee pursuant to the terms of the Committee's bylaws); (c) to the applicable Bidder; (d) in accordance with the Open Bidding Process as set forth in sections VI and VII of these Bid Procedures; (e) to the Agent; and (f) as otherwise required or allowed by any applicable confidentiality agreement with respect to a particular Bidder or other agreement, law, court or other governmental order, or regulation, including, as appropriate, to regulatory agencies.

## VII.    Bid Requirements.

Subject to the rights of the Agent to credit bid, any proposal, solicitation, or offer (each, a "**Bid**"), shall be in cash, must be submitted by an Acceptable Bidder, and must be submitted on

or before the Bid Deadline, in writing and determined by the Debtor, in its reasonable business judgment, and in consultation with the Agent and the Committee Representatives, to have satisfied the following requirements (collectively, the "**Bid Requirements**").

### a. Consideration and Structure.

i. *Total Consideration*. The Bid must identify the form and amount of the total consideration to be provided to the Debtor in cash (the "**Bid Value**").

ii. *Consolidated Bids.* Bids must identify whether or not the Acceptable Bidder is willing to aggregate its Bid into an acceptable consolidated Acceptable Bid with other Potential Bidders as set forth in Section II(b), above.

iii. *Minimum Bid*. The aggregate cash consideration proposed by each Bid must equal, or exceed, the sum of (i) the Bid Value in the Successful Bid; plus (ii) the Initial Minimum Overbid (defined below). In the case of a credit bid, such bid must contain a cash component sufficient to satisfy in full in cash senior liens on the collateral subject to the credit bid.

iv. *Deposit*. Each Bid, other than the Bid of the Successful Bidder (the "**Successful Bid**"), must be accompanied by a cash deposit in an amount not less than ten percent (10%) of the aggregate cash purchase price of the Bid to be held in an interest-bearing escrow account to be identified and established by the Debtor (the "**Deposit**"). No deposit shall be required for a credit bid.

v. *Same or Better Terms*. Except as otherwise provided herein, each Bid, must, in the Debtor's business judgment and in consultation with the Agent and Committee Representatives, be on terms the same as or better than the terms of the APA. Each Bid must include non-contingent transaction documents necessary to effectuate the transactions contemplated in the Bid (the "**Bid Documents**"), which shall include either: (i) a schedule of Assumed Contracts (pursuant to the APA) to the extent applicable to the Bid, and a copy of the APA clearly marked to show all changes requested by the Acceptable Bidder (including those related to the Purchase Price and Assets to be acquired by such Acceptable Bidder), as well as all other material documents integral to such Bid

vi. *Sources of Financing*. The Bid must indicate the source of cash consideration, including proposed funding commitments and confirm that such consideration is not subject to any contingencies. The Bid should include a detailed sources and uses schedule.

vii. *Structure*. The Bid must identify the structure proposed for undertaking the Sale, including the specific assets of the Debtor, the proposed steps to accomplish such acquisition, and any financial, legal, or tax considerations upon which the Bid's proposed structure relies.

viii. ***Tax Structure.*** The Bid must specify with particularity its tax structure, including whether it is intended to be structured in a tax-free manner or if any incremental tax liabilities will be incurred by the Debtor under the Bid.

ix. ***Assumption.*** The Bid must specify which, if any, of the obligations of the Debtor the Bidder proposes to assume.

## VI. Other Requirements.

a. ***Binding and Irrevocable.*** The Bid must by its terms remain binding and irrevocable until fifteen (15) days after the date of selection of the Successful Bid, subject to extension by the Debtor for up to fifteen (15) days in the event that any necessary or advisable regulatory approval has not been received as of such date; *provided* that if the Bid is not selected as the Successful Bid or Back-Up Bid, the Bid may be revoked after approval of such Successful Bid by the Bankruptcy Court.

b. ***Regulatory Approvals and Covenants.*** Each Bid must describe in detail (a) the efforts that each party must utilize in connection with seeking and obtaining all regulatory approvals required to complete the Sale and (b) any limitations on the Bidder's obligation to take all actions necessary or advisable to obtain such regulatory approvals.

c. ***Employees.*** The Bid must detail the treatment of the employees of the Debtor and its subsidiaries.

d. ***Conditions to Closing.*** The Bid must identify with particularity each and every condition to Closing.

e. ***No Financing, Approval, or Diligence Outs.*** The Bid must not be conditioned on obtaining any of the following: (a) financing; (b) board of directors or other similar approval; or (c) the outcome or completion of a due diligence review by the Acceptable Bidder.

f. ***Due Diligence Acknowledgement.*** The Bid must include a written acknowledgement and representation that the Bidder: (a) has had an opportunity to conduct any and all due diligence regarding the Sale before making its offer; (b) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Sale in making its Bid; and (c) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, regarding the Sale or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the Bidder's proposed form of definitive agreement.

g. ***No Collusion.*** The Bidder must acknowledge in writing (a) that it has not engaged in any collusion with respect to any Bids or the Sale, specifying that it did not

agree with any Bidders or Potential Bidders to control price; and (b) agree not to engage in any collusion with respect to any Bids, the Auction, or the Sale.

h. ***Good Faith Offer.*** The Bid must constitute a good faith, bona fide offer to consummate the Sale.

i. ***Identification Information.*** The Bidder must fully disclose the identity of each entity or person that will be consummating the Sale or otherwise participating in connection with such Bid, and the complete terms of any such participation, along with sufficient evidence that the Bidder and each such entity is legally empowered, by power of attorney or otherwise, to complete the Sale on the terms contemplated by the parties.

j. ***Consent to Jurisdiction.*** The Bidder must submit to the jurisdiction of the Bankruptcy Court and waive any right to a jury trial in connection with any disputes relating to Debtor's qualification of Bids, the Auction, the construction and enforcement of these Bid Procedures, and the Sale documents and the Closing, as applicable.

k. ***Disclaimer of Fees.*** Each Bid must disclaim any right to receive a fee analogous to a break-up fee, expense reimbursement, termination fee, or any other similar form of compensation. For the avoidance of doubt, no Qualified Bidder (as defined herein), other than the Successful Bidder, will be permitted to request, nor be granted by the Debtor, at any time, whether as part of the Auction or otherwise, a break-up fee, expense reimbursement, termination fee, or any other similar form of compensation, and by submitting its Bid is agreeing to refrain from and waive any assertion or request for reimbursement on any basis, including under section 503(b) of the Bankruptcy Code.

## VII.   Open Bid Requirements.

The Debtor will only consider Bids during the Open Bidding Process from Acceptable Bidders that satisfy the Bid Requirements. Multiple Bids will be permitted during the Open Bidding Process. In addition, Acceptable Bidders during the Open Bidding Process must satisfy the following requirements (the "**Open Bid Requirements**").

a. ***Minimum Value.*** The Bid must provide for Bid Value equal to at least: (i) the Bid Value set forth in the Successful Bid, plus (ii) $_____ (the "**Initial Minimum Overbid**").

b. ***Documentation.*** The Bid must include a marked version of the APA.

c. ***No Other Bid Protections.*** A Bid may not propose any bid protections.

Bids submitted during the Open Bidding Process and fulfilling all of the Bid Requirements and Open Bid Requirements may, at the Debtor's discretion, in consultation with the Agent and the Committee Representatives, be deemed to be "**Qualified Bids**," and those parties submitting Qualified Bids may, at the Debtor's discretion, in consultation with the Agent

and the Committee Representatives, be deemed to be "**Qualified Bidders**." To be eligible to be selected as a Qualified Bidder, a Bidder must be an Acceptable Bidder and must submit a Bid that is **actually received** no later than **12:00 p.m. (ET) on _____, 2016 2016** (the "**Bid Deadline**") by each of the Debtor's Representatives. Acceptable Bidders that do not submit a Bid by the Bid Deadline will not be eligible to be selected as Qualified Bidders.

By no later than **12:00 p.m. (ET) on _____, 2016**, the Debtor shall determine which Acceptable Bidders are Qualified Bidders after consultation with the Agent and the Committee's Representatives, and will notify the Acceptable Bidders whether Bids submitted constitute Qualified Bids so as to enable such Qualified Bidders to bid at the Auction. Any Bid that is not deemed a Qualified Bid shall not be considered by the Debtor. The Successful Bid shall constitute a Qualified Bid.

## VIII.   Auction.

If the Debtor receives a Qualified Bid, the Debtor will conduct the Auction to determine the Successful Bidder with respect to the Debtor's Assets.

No later than **12:00 p.m. (ET) on _____, 2016**, the Debtor will notify all Qualified Bidders of the highest or otherwise best Qualified Bid, as determined in the Debtor's reasonable business judgment, in consultation with the Agent and the Committee Representatives (the "**Baseline Bid**"), and provide copies of the Bid Documents supporting the Baseline Bid to all Qualified Bidders, the Agent and the Committee Representatives. The determination of which Qualified Bid constitutes the Baseline Bid and which Qualified Bid constitutes the Successful Bid shall take into account any factors the Debtor, in consultation with the Agent and the Committee Representatives, reasonably deem relevant to the value of the Qualified Bid to the Debtor's estate, including, among other things: (a) the number, type, and nature of any changes to the APA requested by the Qualified Bidder (if and as applicable), including the type and amount of Assets sought and Assumed Obligations to be assumed in the Bid; (b) the total cash consideration; (c) the likelihood of the Bidder's ability to close a transaction, the conditions thereto, and the timing thereof; (d) the net economic effect of any changes to the value to be received by the Debtor's estate from the transaction contemplated by the Bid Documents; and (e) the tax consequences of such Qualified Bid (collectively, the "**Bid Assessment Criteria**"); *provided* that the Debtor, with the Agent's prior written consent, may allow Qualified Bid's to include cash equivalents or other forms of value acceptable to the Agent.

The Auction shall take place at **10:00 a.m. (ET) on _____, 2016**, at the offices of Gellert Scali Busenkell & Brown, LLC, 1201 N. Orange St., 3rd Floor, Wilmington, DE 19801, or such later date and time as selected by the Debtor. The Auction shall be conducted in a timely fashion according to the following procedures.

### a.   The Debtor Shall Conduct the Auction.

The Debtor and its professionals shall direct and preside over the Auction, in consultation with the Agent and the Committee Representatives. At the start of the Auction, the Debtor shall describe the terms of the Baseline Bid. All incremental Bids made thereafter must be Overbids (as defined herein) and shall be made and received on an open basis, and all material terms of

each Overbid shall be fully disclosed to all other Qualified Bidders. The Debtor shall maintain a written transcript of all Bids made and announced at the Auction, including the Baseline Bid, all Overbids, and the Successful Bid.

Only Qualified Bidders, the Agent, and the Committee Representatives, and its respective legal and financial advisors, shall be entitled to attend the Auction, and the Qualified Bidders shall appear at the Auction in person and may speak or bid themselves or through duly authorized representatives. Only Qualified Bidders shall be entitled to bid at the Auction.

### b.  Terms of Overbids.

"**Overbid**" means any cash bid made at the Auction by a Qualified Bidder subsequent to the Debtor's announcement of the Baseline Bid. Each Overbid must comply with the following conditions.

i.  *Minimum Overbid Increment*. Any Overbid following the Initial Minimum Overbid or following any subsequent Prevailing Highest Bid (as defined below) shall be in increments in cash of $_____ (the "**Overbid Increment**").

ii.  *Conclusion of Each Overbid Round*. Upon the solicitation of each round of Overbids, the Debtor, following consultation with the Agent and the Committee Representatives, may announce a deadline (as the Debtor may, in its business judgment, after consultation with the Agent and the Committee, extend from time to time, the "**Overbid Round Deadline**") by which time any Overbids must be submitted to the Debtor.

iii.  *Overbid Alterations*. Each Overbid must contain the Overbid Increment and may contain alterations, modifications, additions, or deletions of any terms of the Bid no less favorable to the Debtor's estate, or the allocation of value to the Agent, than any prior Qualified Bid or Overbid, as determined in the Debtor's reasonable business judgment, following consultation with the Agent and the Committee Representatives, but shall otherwise comply with the terms of these Bid Procedures.

iv.  *Announcing Highest Bid*. Subsequent to each Overbid Round Deadline, the Debtor shall announce whether the Debtor has identified, an Overbid as being higher or otherwise better than the Initial Minimum Overbid, in the initial Overbid round, or, in subsequent rounds, the Overbid previously designated by the Debtor as the prevailing highest or otherwise best Bid (the "**Prevailing Highest Bid**"). The Debtor shall describe to all Qualified Bidders the material terms of any new Overbid designated by the Debtor as the Prevailing Highest Bid as well as the value attributable by the Debtor to such Prevailing Highest Bid based on, among other things, the Bid Assessment Criteria.

### c.  Consideration of Overbids.

The Debtor reserve the right, in its reasonable business judgment, and in consultation with the Agent and the Committee Representatives, to adjourn the Auction one or more times to,

among other things (i) facilitate discussions between the Debtor and Qualified Bidders, (ii) allow Qualified Bidders to consider how they wish to proceed, and (iii) provide Qualified Bidders the opportunity to provide the Debtor with such additional evidence as the Debtor, in its reasonable business judgment, after consultation with the Agent and the Committee, may require, that the Qualified Bidder has sufficient internal resources or has received sufficient non-contingent debt and/or equity funding commitments to consummate the proposed transaction at the prevailing Overbid amount.

### d. Closing the Auction.

The Auction shall continue until there is only one Qualified Bid that the Debtor determines, in its reasonable business judgment and in consultation with the Agent and the Committee Representatives, to be the highest or otherwise best Qualified Bid for the Assets. Such Qualified Bid shall be declared the "**Successful Bid**," and such Qualified Bidder, the "**Successful Bidder**" and at which point the Auction will be closed. The Auction shall not close unless and until all Qualified Bidders have been given a reasonable opportunity to submit an Overbid at the Auction to the then Prevailing Highest Bid. Such acceptance by the Debtor of the Successful Bid is conditioned upon approval by the Court of the Successful Bid.

For the avoidance of doubt, nothing in these Bid Procedures shall prevent the Debtor from exercising its respective fiduciary duties under applicable law.

As soon as reasonably practicable after closing the Auction, the Debtor shall cause the Bid Documents for the Successful Bid and Back-Up Bid (defined below) to be filed with the Court.

### e. No Collusion; Good-Faith *Bona Fide* Offer.

Each Qualified Bidder participating at the Auction will be required to confirm on the record at the Auction that (i) it has not engaged in any collusion with respect to the Sale or bidding (including that it has no agreement with any other Bidder or Qualified Bidder to control the price) and (ii) its Qualified Bid is a good-faith *bona fide* offer and it intends to consummate the proposed transaction if selected as the Successful Bidder.

## IX. Back-Up Bidder.

a. Notwithstanding anything in these Bid Procedures to the contrary, if an Auction is conducted, the Qualified Bidder with the next-highest or otherwise second-best Qualified Bid at the Auction for the Assets, as determined by the Debtor in the exercise of its reasonable business judgment and in consultation with the Agent and the Committee Representatives (the "**Back-Up Bid**"), shall be required to serve as a back-up bidder (the "**Back-Up Bidder**"), and each Qualified Bidder shall agree and be deemed to agree to be the Back-Up Bidder if so designated by the Debtor; *provided*, that in no event will the Agent that submits a credit bid be required to serve as the Back-Up Bidder.

b. The identity of the Back-Up Bidder and the amount and material terms of the Qualified Bid of the Back-Up Bidder shall be announced by the Debtor, at the

conclusion of the Auction at the same time the Debtor announce the identity of the Successful Bidder. The Back-Up Bidder shall be required to keep its Qualified Bid (or if the Back-Up Bidder submits one or more Overbids at the Auction, its final Overbid) open and irrevocable until the closing of the transaction with the Successful Bidder. The Back-Up Bidder's Deposit shall be held in escrow until the closing of the transaction with the Successful Bidder.

**c.** If a Successful Bidder fails to consummate the approved transactions contemplated by its Successful Bid, the Debtor, in consultation with the Agent and the Committee Representatives, may select the Back-Up Bidder as the Successful Bidder, and such Back-Up Bidder shall be deemed a Successful Bidder for all purposes. The Debtor will be authorized, but not required, to consummate all transactions contemplated by the Bid of such Back-Up Bidder without further order of the Court or notice to any party. In such case, the defaulting Successful Bidder's Deposit shall be forfeited to the Debtor, and the Debtor specifically reserve the right to seek all available remedies against the defaulting Successful Bidder, including with respect to specific performance.

## X.    Highest or Otherwise Best Bid.

When determining the highest or otherwise best Qualified Bid, as compared to other Qualified Bids, the Debtor, in consultation with the Agent and the Committee Representatives, may consider the following factors in addition to any other factors that the Debtor, the Agent, and the Committee Representatives deem appropriate: (a) the number, type, and nature of any changes to the APA requested by the Qualified Bidder (if and as applicable), including the type and amount of Assets sought and obligations to be assumed in the Bid; (b) the amount and nature of the total consideration; (c) the likelihood of the Bidder's ability to close a transaction and the timing thereof; (d) the net economic effect of any changes to the value to be received by the Debtor's estate from the transaction contemplated by the Bid Documents; and (e) the tax consequences of such Qualified Bid.

## XI.    Rights to Credit Bid.

At the Auction, the Agent shall have the right to credit bid all or a portion of the value of its claims within the meaning of section 363(k) of the Bankruptcy Code. The Agent may, but shall not be required to, notify the Debtor prior to the Bid Deadline of its intent to credit bid at the Auction, and the Debtor shall take such notice into account before seeking to cancel the Auction.

Any credit bid made by a Successful Bidder must include a cash component (or otherwise provide for cash) sufficient to pay the Breakup Fee and any senior liens on the collateral that is subject to the credit bid, or otherwise provide for cash sufficient to pay the Breakup Fee and cash to pay any senior liens on the collateral that is subject to the credit bid.

## XII.    Reservation of Rights.

The Debtor reserves its rights to modify these Bid Procedures in its reasonable business judgment, in consultation with the Agent and the Committee Representatives, in any manner that will best promote the goals of the bidding process, or impose, at or prior to the Auction,

additional customary terms and conditions on the sale of the Assets, including, without limitation: (a) extending the deadlines set forth in these Bid Procedures; (b) with the consent of the Agent, adjourning the Auction at the Auction and/or adjourning the Sale Hearing (as defined below) in open court without further notice; (c) adding procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction; (d) canceling the Auction; and (e) rejecting any or all Bids or Qualified Bids.

**XIII.    Consent to Jurisdiction.**

All Qualified Bidders at the Auction shall be deemed to have consented to the jurisdiction of the Court and waived any right to a jury trial in connection with any disputes relating to the Auction, the construction and enforcement of these Bid Procedures, and/or the Bid Documents, as applicable.

**XIV.    Sale Hearing.**

A hearing to consider approval of the Sale of all or substantially all or a subset of the Debtor's Assets to the Successful Bidder is held) (the "**Sale Hearing**") is currently scheduled to take place on _____, 2016, at_____.m. (ET), before the Honorable _____ at Courtroom No. 824 N. Market St., Wilmington, Delaware 19801.

**The Sale Hearing may be continued to a later date by the Debtor, with the prior written consent of the Agent, by sending notice prior to, or making an announcement at, the Sale Hearing. No further notice of any such continuance will be required to be provided to any party.**

At the Sale Hearing, the Debtor shall present the Successful Bid to the Court for approval.

**XV.    Return of Deposit.**

The Deposit of the Successful Bidder shall be applied to the purchase price of such transaction at closing. The Deposits for each Qualified Bidder shall be held in one or more accounts on terms acceptable to the Debtor and the Agent in its respective sole discretion and shall be returned (other than with respect to the Successful Bidder, and the Back-Up Bidder) on or within three (3) business days after the Auction.

If a Successful Bidder fails to consummate a proposed transaction because of a breach by such Successful Bidder, the Debtor will not have any obligation to return the Deposit deposited by such Successful Bidder, which may be retained by the Debtor as liquidated damages, in addition to any and all rights, remedies, or causes of action that may be available to the Debtor, and the Debtor shall be free to consummate the proposed transaction with the applicable Back-Up Bidder without the need for an additional hearing or order of the Court.

**XVI.    Fiduciary Out.**

Nothing in these Bid Procedures shall require the board of directors or such similar governing body of the Debtor to take any action, or to refrain from taking any action, with

respect to these Bid Procedures, to the extent such board of directors, board of managers, or such similar governing body determines, or based on the advice of counsel, that taking such action, or refraining from taking such action, as applicable, is required to comply with applicable law or its fiduciary obligations.

Dated:  September 20, 2016          GELLERT SCALI BUSENKELL & BROWN, LLC
 Wilmington, Delaware

                                    */s/ Michael Busenkell*
                                    Michael Busenkell (No. 3933)
                                    Ronald S. Gellert (No. 4259)
                                    Brya M. Keilson (No. 4643)
                                    1201 North Orange Street , Suite 300
                                    Wilmington, Delaware 19801
                                    Telephone: (302) 425-5800
                                    Facsimile:  (302) 425-5814
                                    Email:  mbusenkell@gsbblaw.com
                                            rgellert@gsbblaw.com
                                            bkeilson@gsbblaw.com

                                    *Proposed Attorneys for NJOY, Inc., Debtor and
                                    Debtor-in- Possession*

13

## Exhibit 2

**Sale Notice**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| NJOY, INC.,[1] | Case No. 16-12076 (CSS) |
| Debtor. | |

**NOTICE OF SALE BY AUCTION AND SALE HEARING**

**PLEASE TAKE NOTICE** that on _____, 2016, the above-captioned debtor and debtor in possession (the "**Debtor**") filed the _Debtor's Motion for Entry of (I) An Order (A) Approving Bid Procedures in Connection with the Sale of Substantially All of the Debtor's Assets, (B) Approving The Form And Manner of Notice Thereof, and (C) Scheduling an Auction and Sale Hearing, (D) Approving Procedures for the Assumption and Assignment of Contracts, and (E) Granting Related Relief and (II) An Order (A) Approving the Asset Purchase Agreement Between the Debtor and the Purchaser, and (B) Authorizing The Sale Of Substantially All Of The Debtor's Assets Free and Clear Of Liens, Claims, Encumbrances, and Interests, (C) Authoring the Assumption and Assignment of Contracts and Leases, and (D) Granting Related Relief_ [Docket No. ____] (the "**Sale Motion**")[2] with the United States Bankruptcy Court for the District of Delaware (the "**Court**") seeking, among other things, entry of an order (the "**Sale Order**") authorizing and approving: (a) the sale of substantially all of the Debtor's assets (the "**Assets**") to _____ (the "**Successful Bidder**") free and clear of liens, claims, encumbrances, and other interests, with all such liens, claims, encumbrances, and other interests attaching with the same validity and priority to the sale proceeds, except as set forth in the APA and subject to higher or otherwise better offers (the "**Sale**"); and (b) procedures for the assumption and assignment of executory contracts and unexpired leases (collectively, the "**Contracts**"). Please note that all capitalized terms used but not defined herein shall have the meanings set forth in the Sale Motion.

**PLEASE TAKE FURTHER NOTICE** that the Debtor is soliciting offers for the purchase of the Assets of the Debtor consistent with the Bid Procedures (the "**Bid Procedures**") approved by the Court by entry of an order on _____, 2016 [Docket No. _____] (the "**Bid Procedures Order**"). **All interested bidders should carefully read the Bid Procedures and Bid Procedures Order.** To the extent that there are any inconsistencies between this notice and the Bid Procedures or Bid Procedures Order, the Bid Procedures or Bid Procedures Order, as applicable, shall govern in all respects.

---

[1] The last four digits of the Debtor's federal tax identification number are 6013.  The Debtor's mailing address and principal place of business is 15211 N. Kierland Blvd., Suite 200, Scottsdale, Arizona 85254.

[2] Capitalized terms not otherwise defined herein shall have the same meaning as in the Sale Motion.

**PLEASE TAKE FURTHER NOTICE** that, if the Debtor receive qualified competing bids within the requirements and time frame specified by the Bid Procedures, the Debtor will conduct an auction (the "**Auction**") of the Assets on **_____, 2016 at 10:00 a.m. (ET)** at the offices of Gellert Scali Busenkell & Brown, LLC, 1201 N. Orange St., 3rd Floor, Wilmington, DE 19801 (or at any other location as the Debtor may hereafter designate on proper notice).

**PLEASE TAKE FURTHER NOTICE** that the Debtor will seek approval of the Sale at a hearing scheduled to commence on or before **_____, 2016 at ___:___ .m. (ET)** (the "**Sale Hearing**") before the Honorable _____, United States Bankruptcy Judge for the Bankruptcy Court for the District of Delaware, at Courtroom No. ___, 824 N. Market St., Wilmington, DE 19801.

**PLEASE TAKE FURTHER NOTICE** that, except as otherwise set forth in the Bid Procedures Order with respect to any objections to proposed cure amounts or the assumption and assignment of Contracts, objections to the relief requested in the Sale Motion ***must***: (a) be in writing; (b) conform to the applicable provisions of the Bankruptcy Rules and the Local Rules; (c) state with particularity the legal and factual basis for the objection and the specific grounds therefor; and (d) be filed with the Court and served so as to be ***actually received*** by **12:00 p.m. (ET) on or before _____, 2016** by the following parties (the "**Notice Parties**"):

| Counsel to the Debtor | Counsel to FLFC Lending Co. |
|---|---|
| Gellert Scali Busenkell & Brown, LLC<br>1201 N. Orange St.<br>3rd Floor<br>Wilmington, Delaware 19801<br>Attn: Michael Busenkell<br>mbusenkell@gsbblaw.com | Otterbourg PC<br>230 Park Avenue<br>New York, New York 10169-0075<br>Attn: Daniel F. Fiorillo & Chad B. Simon<br>dfiorillo@otterbourg.com<br>csimon@otterbourg.com |
| **Counsel to** | **The United States Trustee** |
|  | Office of the United States Trustee for the District of Delaware<br>J. Caleb Boggs Building<br>844 King Street<br>Suite 2207<br>Lockbox 35<br>Wilmington, Delaware 19801 |

## CONSEQUENCES OF FAILING TO TIMELY MAKE AN OBJECTION

**ANY PARTY OR ENTITY WHO FAILS TO TIMELY MAKE AN OBJECTION TO THE SALE ON OR BEFORE THE SALE OBJECTION DEADLINE IN ACCORDANCE WITH THE BID PROCEDURES ORDER SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION TO THE SALE, INCLUDING WITH RESPECT TO THE TRANSFER OF THE DEBTOR'S ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, EXCEPT AS SET FORTH IN THE APPLICABLE PURCHASE AGREEMENT.**

## NO SUCCESSOR OR TRANSFEREE LIABILITY

The APA and proposed Sale Order provide that the Successful Bidder will have no responsibility for, and the Assets will be sold free and clear of, any successor liability, including the following: (a) any liability or other obligation of the Debtor's estate or related to the Assets other than as expressly set forth in the applicable Purchase Agreement; or (b) any claims against the Debtor, its estate, or any of its predecessors or affiliates. Except as expressly provided in the Sale Order or the applicable Purchase Agreement, the Successful Bidder shall have no liability whatsoever with respect to the Debtor's estate's (or its predecessors' or affiliates') respective businesses or operations or any of the Debtor's estate's (or its predecessors' or affiliates') obligations (as described below, "**Successor or Transferee Liability**") based, in whole or part, directly or indirectly, on any theory of successor or vicarious liabilities of any kind or character, including, but not limited to, any theory of antitrust, environmental, successor or transferee liability, labor law, *de facto* merger, or substantial continuity, whether known or unknown as of the Closing Date (as defined in the applicable Purchase Agreement), now existing or hereafter arising, whether asserted or unasserted, fixed or contingent, liquidated or unliquidated with respect to the Debtor or any obligations of the Debtor arising prior to the closing of the Sale, including, but not limited to, liabilities on account of any taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to the operation of any of the Assets prior to the closing of the Sale.

**PLEASE TAKE FURTHER NOTICE** that copies of the Sale Motion, Bid Procedures, and Bid Procedures Order, as well as all related exhibits, including the APA and the proposed Sale Order, and additional information are available: (a) upon request to _____ (the notice and claims agent retained in these Chapter 11 Case) by calling _____; (b) by visiting the website maintained in these Chapter 11 Case at _____ or (c) for a fee via PACER by visiting https://ecf.deb.uscourts.gov/.

Dated:                                            GELLERT SCALI BUSENKELL & BROWN, LLC
 Wilmington, Delaware

                                                  */s/ Michael Busenkell*
                                                  Michael Busenkell (No. 3933)
                                                  Ronald S. Gellert (No. 4259)
                                                  Brya M. Keilson (No. 4643)
                                                  1201 North Orange Street , Suite 300
                                                  Wilmington, Delaware 19801
                                                  Telephone: (302) 425-5800
                                                  Facsimile:  (302) 425-5814
                                                  Email: mbusenkell@gsbblaw.com
                                                              rgellert@gsbblaw.com
                                                              bkeilson@gsbblaw.com


                                                  *Proposed Attorneys for NJOY, Inc., Debtor and
                                                  Debtor-in- Possession*

3

## **Exhibit 3**

**Contract Notice**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| NJOY, INC.,[1] | Case No. 16-12076 (CSS) |
| Debtor. | |

## NOTICE OF SALE BY AUCTION AND SALE HEARING

**PLEASE TAKE NOTICE** that on _____ 2016, the above-captioned debtor and debtor in possession (the "**Debtor**") filed the *Debtor's Motion for Entry of (I) An Order (A) Approving Bid Procedures in Connection with the Sale of Substantially All of the Debtor's Assets, (B) Approving The Form And Manner of Notice Thereof, and (C) Scheduling an Auction and Sale Hearing, (D) Approving Procedures for the Assumption and Assignment of Contracts, and (E) Granting Related Relief and (II) An Order (A) Approving the Asset Purchase Agreement Between the Debtor and the Purchaser, and (B) Authorizing The Sale Of Substantially All Of The Debtor's Assets Free and Clear Of Liens, Claims, Encumbrances, and Interests, (C) Authoring the Assumption and Assignment of Contracts and Leases, and (D) Granting Related Relief* [Docket No. ____] (the "**Sale Motion**") with the United States Bankruptcy Court for the District of Delaware (the "**Court**") seeking, among other things, entry of an order (the "**Sale Order**") authorizing and approving: (a) the sale of substantially all of the Debtor's assets (the "**Assets**") to _____ (the "**Successful Bidder**") free and clear of liens, claims, encumbrances, and other interests, with all such liens, claims, encumbrances, and other interests attaching with the same validity and priority to the sale proceeds, except as set forth in the APA and subject to higher or otherwise better offers (the "**Sale**"); and (b) procedures for the assumption and assignment of executory contracts and unexpired leases (collectively, the "**Contracts**"). Please note that all capitalized terms used but not defined herein shall have the meanings set forth in the Sale Motion.

**PLEASE TAKE FURTHER NOTICE** that on _____, 2016, the Court entered an order [Docket No. ____] (the "**Bid Procedures Order**") granting certain of the relief sought in the Sale Motion, including, among other things, approving: (a) the Bid Procedures (the "**Bid Procedures**") for the Sale of the Assets; and (b) procedures for the assumption and assignment of the Contracts (the "**Assumption Procedures**").

**PLEASE TAKE FURTHER NOTICE** that the Debtor will seek approval of the Sale at a hearing scheduled to commence on or before **_____, 2016, at ___:___ .m. (ET)** (the "**Sale Hearing**") before the Honorable _____, United States Bankruptcy Judge for the

---

[1] The last four digits of the Debtor's federal tax identification number are 6013. The Debtor's mailing address and principal place of business is 15211 N. Kierland Blvd., Suite 200, Scottsdale, Arizona 85254.

1

Bankruptcy Court for the District of Delaware, at Courtroom No. _____, 824 N. Market St., Wilmington, DE 19801.

**PLEASE TAKE FURTHER NOTICE** that upon the closing of the Sale, the Debtor intends to assume and assign to the Successful Bidder arising from the Auction (as defined in the Bid Procedures Order), the Contracts and Leases and any modifications thereto (collectively, the "**Assigned Contracts**") set forth on <u>Exhibit A</u> attached hereto, subject to (a) the Successful Bidder's right to designate additional Contracts as Assigned Contracts or remove certain Contracts from the list of Assigned Contracts pursuant to Section _____ of the APA or (b) any similar right of any other Successful Bidder arising from the Auction. In addition, the cure amounts, if any, necessary for the assumption and assignment of the Assigned Contracts (the "**Cure Amounts**") are set forth on <u>Exhibit A</u> attached hereto.

**PLEASE TAKE FURTHER NOTICE** that the Debtor has evaluated the financial wherewithal of the Successful Bidder (*e.g.*, financial credibility, willingness, and ability of the interested party to perform under the Contracts) and believes that the Successful Bidder's financial health, agreement to pay cure amounts related to the Assigned Contracts, and commitment to pay obligations as they come due satisfies the requirements of adequate assurance of future performance under section 365(f)(2)(B) of the Bankruptcy Code.

**PLEASE TAKE FURTHER NOTICE** that, after the Bid Deadline has occurred, the Debtor will separately identify the Contracts designated for assumption and assignment by each Qualified Bidder and furnish adequate assurance information demonstrating the ability of each Qualified Bidder to comply with the requirements of adequate assurance of future performance under section 365(f)(2)(B) of the Bankruptcy Code, including, without limitation, each Qualified Bidder's financial wherewithal and willingness to perform under the Assigned Contracts.

### Obtaining Additional Information

Copies of the Sale Motion, Bid Procedures, and Bid Procedures Order, as well as all related exhibits, including the proposed Sale Order, are available: (a) upon request to _____ (the notice and claims agent retained in these Chapter 11 Case) by calling _____; (b) by visiting the website maintained in these Chapter 11 Case at _____; or (c) for a fee via PACER by visiting https://ecf.deb.uscourts.gov/.

You may obtain additional information concerning the above-captioned Chapter 11 Case at the website maintained in these Chapter 11 Case at _____.

### Filing Assumption and Assignment Objections

Pursuant to the Assumption Procedures, objections to the proposed assumption and assignment of an Assigned Contract, including any objection relating to the Cure Amount and/or adequate assurance of future performance (collectively, a "**Contract Objection**"), must: (a) be in writing; (b) state with specificity the nature of such objection and alleged Cure Amount, including applicable and appropriate documentation in support of such alleged Cure Amount; (c) comply with the Bankruptcy Rules and the Local Rules; (d) for Contract Objections to any Cure Amount set forth on <u>Exhibit A</u> attached hereto or to the assumption and assignment of an

Assigned Contract to the Successful Bidder, be filed with the Court and served so as to be *actually received* by **4:00 p.m. (ET) seven days from service of this notice**; and (e) for Contract Objections to the adequate assurance of future performance by a Qualified Bidder, be filed with the Court and served so as to be *actually received* at or prior to the Sale Hearing, which is scheduled on or before _____, 2016, at ___:___.m. (ET).

Any timely filed Contract Objections made prior to the Sale Hearing will be considered at the Sale Hearing, or another date agreed to by the parties, and must be served on the following parties:

| Counsel to the Debtor | Counsel to FLFC Lending Co. |
|---|---|
| Gellert Scali Busenkell & Brown, LLC<br>1201 N. Orange St.<br>3rd Floor<br>Wilmington, Delaware 19801<br>Attn: Michael Busenkell<br>mbusenkell@gsbblaw.com | Otterbourg PC<br>230 Park Avenue<br>New York, New York 10169-0075<br>Attn: Daniel F. Fiorillo & Chad B. Simon<br>dfiorillo@otterbourg.com<br>csimon@otterbourg.com |
| **Counsel to** | **The United States Trustee** |
| | Office of the United States Trustee for the District of Delaware<br>J. Caleb Boggs Building<br>844 King Street<br>Suite 2207<br>Lockbox 35<br>Wilmington, Delaware 19801 |

If any timely filed Contract Objection cannot be resolved by the Successful Bidder arising from the Auction, if any, and the objecting party, the Court shall resolve such Contract Objection prior to assumption and assignment of such designated Contract, and upon entry of an order by the Court resolving such Contract Objection, the assignment, if approved by the Court, shall be deemed effective as of the date such objecting party receives the Assumption Notice. To the extent that any Contract Objection cannot be resolved by the parties, such Contract shall be assumed and assigned only upon satisfactory resolution of the Contract Objection, to be determined in the reasonable discretion of the Successful Bidder arising from the Auction, if any, and until such time as the Contract Objection can be resolved, the Contract shall be conditionally assumed and assigned pending a resolution of the Contract Objection after notice and a hearing.

<u>**CONSEQUENCES OF FAILING TO TIMELY FILE AND SERVE AN OBJECTION**</u>

**ANY COUNTERPARTY TO AN ASSIGNED CONTRACT WHO FAILS TO TIMELY FILE AND SERVE AN OBJECTION TO THE PROPOSED ASSUMPTION AND ASSIGNMENT OF AN ASSIGNED CONTRACT AND/OR THE CURE AMOUNT SET FORTH ON <u>EXHIBIT A</u> ATTACHED HERETO IN ACCORDANCE WITH THE BID PROCEDURES ORDER AND THE ASSUMPTION PROCEDURES SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION TO THE ASSUMPTION AND ASSIGNMENT OF THE ASSIGNED CONTRACT AND/OR THE CURE AMOUNT SET FORTH ON <u>EXHIBIT A</u> ATTACHED HERETO, INCLUDING**

**ASSERTING ADDITIONAL CURE AMOUNTS WITH RESPECT TO THE ASSIGNED CONTRACT RELATING TO ANY PERIOD PRIOR TO THE TIME OF ASSUMPTION AND ASSIGNMENT.**


Dated:  September 20, 2016   GELLERT SCALI BUSENKELL & BROWN, LLC
 Wilmington, Delaware

         */s/ Michael Busenkell*
         Michael Busenkell (No. 3933)
         Ronald S. Gellert (No. 4259)
         Brya M. Keilson (No. 4643)
         1201 North Orange Street , Suite 300
         Wilmington, Delaware 19801
         Telephone: (302) 425-5800
         Facsimile:  (302) 425-5814
         Email: mbusenkell@gsbblaw.com
             rgellert@gsbblaw.com
             bkeilson@gsbblaw.com

         *Proposed Attorneys for NJOY, Inc., Debtor and Debtor-in- Possession*

4

## Exhibit A

**Assigned Contracts**

**Assigned Contracts**[1]

| Debtor | Counterparty | Description of Assigned Contract or Lease | Cure Amount |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

---

[1] The presence of a contract or lease on this Exhibit A does not constitute an admission by the Debtor that such contract is an executory contract or such lease is an unexpired lease pursuant to section 365 of the Bankruptcy Code or any other applicable law, and the Debtor reserves all rights to withdraw any proposed assumption and assignment or to reject any contract or lease at any time before such contract or lease is assumed and assigned pursuant to an order of the Court.

### Exhibit 4

**Assumption Notice**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| NJOY, INC.,[1] | Case No. 16-12076 (CSS) |
| Debtor. | |

## NOTICE OF PROPOSED ASSIGNMENT OF
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**PLEASE TAKE NOTICE** that on _____, 2016, the above-captioned debtor and debtor in possession (the "**Debtor**") filed the *Debtor's Motion for Entry of (I) An Order (A) Approving Bid Procedures in Connection with the Sale of Substantially All of the Debtor's Assets, (B) Approving The Form And Manner of Notice Thereof, and (C) Scheduling an Auction and Sale Hearing, (D) Approving Procedures for the Assumption and Assignment of Contracts, and (E) Granting Related Relief and (II) An Order (A) Approving the Asset Purchase Agreement Between the Debtor and the Purchaser, and (B) Authorizing The Sale Of Substantially All Of The Debtor's Assets Free and Clear Of Liens, Claims, Encumbrances, and Interests, (C) Authoring the Assumption and Assignment of Contracts and Leases, and (D) Granting Related Relief* [Docket No. _____] (the "**Sale Motion**") with the United States Bankruptcy Court for the District of Delaware (the "**Court**") seeking, among other things, entry of an order (the "**Sale Order**") authorizing and approving: (a) the sale of substantially all of the Debtor's assets (the "**Assets**") to _____ (the "**Successful Bidder**") free and clear of liens, claims, encumbrances, and other interests, with all such liens, claims, encumbrances, and other interests attaching with the same validity and priority to the sale proceeds, except as set forth in the APA and subject to higher or otherwise better offers (the "**Sale**"); and (b) procedures for the assumption and assignment of executory contracts and unexpired leases (collectively, the "**Contracts**"). Please note that all capitalized terms used but not defined herein shall have the meanings set forth in the Sale Motion.

**PLEASE TAKE FURTHER NOTICE** that on _____, 2016, the Court entered an order [Docket No. ____] (the "**Bid Procedures Order**") granting certain of the relief sought in the Sale Motion, including, among other things, approving: (a) the Bid Procedures (the "**Bid Procedures**") for the Sale of the Assets; and (b) procedures for the assumption and assignment of the Contracts (the "**Assumption Procedures**").

**PLEASE TAKE FURTHER NOTICE** that, accordingly, pursuant to the Assumption Procedures and by this written notice, the Debtor notifies you that it has determined, in the exercise of its business judgment, that the Contracts and any modifications thereto set forth on

---

[1] The last four digits of the Debtor's federal tax identification number are 6013. The Debtor's mailing address and principal place of business is 15211 N. Kierland Blvd., Suite 200, Scottsdale, Arizona 85254.

<u>Exhibit A</u> attached hereto (collectively, the "**Assigned Contracts**") shall be assumed and assigned to the Successful Bidder, subject to the Successful Bidder's payment of the cure amounts set forth on <u>Exhibit A</u>, or such other cure amounts that are agreed to by the parties.

     **PLEASE TAKE FURTHER NOTICE** that, as set forth more fully at Section _____ of the APA, the Successful Bidder has the right under certain circumstances to designate additional Contracts and Leases as Assigned Contracts or remove certain Contracts from the list of Assigned Contracts prior to Closing (as defined in the APA).

     **PLEASE TAKE FURTHER NOTICE** that, copies of the Sale Motion, Bid Procedures, and Bid Procedures Order, as well as all related exhibits, including the APA and the proposed Sale Order, are available: (a) upon request to _____ (the notice and claims agent retained in these Chapter 11 Case) by calling _____; (b) by visiting the website maintained in these Chapter 11 Case at _____; or (c) for a fee via PACER by visiting https://ecf.deb.uscourts.gov/.

     **PLEASE TAKE FURTHER NOTICE** that you may obtain additional information concerning the above-captioned Chapter 11 Case at the website maintained in these Chapter 11 Case at _____.

     **PLEASE TAKE FURTHER NOTICE** that, except as otherwise provided by the Bid Procedures Order, the time for filing objections to (a) the cure amounts related to the Assigned Contracts, (b) the Debtor's ability to assume and assign any Assigned Contract, and (c) adequate assurance of future performance by the assumption and assignment to the Successful Bidder has passed and no further notice or action is necessary with respect to such matters.

Dated:  September 20, 2016
 Wilmington, Delaware

GELLERT SCALI BUSENKELL & BROWN, LLC

*/s/ Michael Busenkell*
Michael Busenkell (No. 3933)
Ronald S. Gellert (No. 4259)
Brya M. Keilson (No. 4643)
1201 North Orange Street , Suite 300
Wilmington, Delaware 19801
Telephone: (302) 425-5800
Facsimile:  (302) 425-5814
Email: mbusenkell@gsbblaw.com
     rgellert@gsbblaw.com
     bkeilson@gsbblaw.com

*Proposed Attorneys for NJOY, Inc., Debtor and Debtor-in- Possession*

**<u>Exhibit A</u>**

**Assigned Contracts**

**Assigned Contracts**[1]

| Debtor | Counterparty | Description of Assigned Contract or Lease | Cure Amount |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

---

[1] The presence of a contract or lease on this Exhibit A does not constitute an admission by the Debtor that such contract is an executory contract or such lease is an unexpired lease pursuant to section 365 of the Bankruptcy Code or any other applicable law, and the Debtor reserves all rights to withdraw any proposed assumption and assignment or to reject any contract or lease at any time before such contract or lease is assumed and assigned pursuant to an order of the Court.

**<u>Exhibit B</u>**

**(Sale Order)**

[To be filed prior to the Sale Hearing]