## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------- X
In re:                                          :    Chapter 11
                                                :
NJOY, INC.[1]                                   :    Case No. 16-12076 (CSS)
                                                :
                      Debtor.                   :
-------------------------------------------------------- X    **Re: Docket Nos. 2, 4**

**INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364, AND 507 AND FED. R. BANKR. P. 2002, 4001 AND 9014 (I) AUTHORIZING DEBTOR AND DEBTOR-IN-POSSESSION TO OBTAIN POSTPETITION FINANCING, (II) AUTHORIZING USE OF CASH COLLATERAL, (III) GRANTING LIENS AND SUPER-PRIORITY CLAIMS, (IV) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED LENDERS, (V) MODIFYING THE AUTOMATIC STAY; (VI) SCHEDULING A FINAL HEARING, AND (VII) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtor and debtor in possession (collectively, the "Debtor") pursuant to §§ 105, 361, 362, 363, 364(c)(1), 364(c)(2) and 364(c)(3), and 364(d) of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules"), and Rule 4001-2 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), *inter alia* seeking, among other things:

(1)    authorization for NJOY, Inc., as debtor and debtor-in-possession (the "Borrower") to obtain post-petition financing in the form of a revolving credit facility in accordance with the terms and conditions set forth in the Pre-Petition Credit Agreement (as defined below), as ratified and amended by that certain Ratification and Amendment Agreement dated as of the date

---

[1]    The last four digits of the Debtor's federal tax identification number are 6013. The Debtor's mailing address and principal place of business is 15211 N. Kierland Blvd., Suite 200, Scottsdale, Arizona 85254.

[2]    Capitalized terms used but not defined in this Order shall have the same meanings ascribed to such terms in the Ratification Agreement.

of this Interim Order (the "Ratification Agreement") a copy of which is attached hereto as **Exhibit 1** (as amended, supplemented or otherwise modified from time to time in accordance with the terms and conditions set forth herein, the "Credit Agreement"), by and among the Borrower, FLFC Lending Co., as administrative agent and collateral agent (together with its successors and assigns, the "Agent") and as the sole Revolving Lender party thereto (together with its successors and assigns, the "DIP Lender"), and the other Transaction Documents (as defined in the Ratification Agreement), and in accordance with this order ("Interim Order"), secured by perfected senior priority security interests in and liens on the Collateral (as defined below) pursuant to §§ 364(c)(2) and 364(c)(3), and 364(d) of the Bankruptcy Code (subject to the Carve-Out and the Permitted Liens (each as defined below));

(2)    authorization for Borrower to remit all collections, asset proceeds and payments to Agent and DIP Lender for application, or deemed application, first to all Pre-Petition Revolving Obligations (as defined below) until such obligations are fully repaid, and then to the repayment of all Post-Petition Obligations (as defined in the Ratification Agreement);

(3)    authorization for the Debtor to grant superpriority administrative claim status, pursuant to § 364(c)(1) of the Bankruptcy Code, to the Agent, for the benefit of itself and the DIP Lender, in respect of all Post-Petition Obligations;

(4)    as set forth below, subject to Section  4.1 of this Interim Order, approval of certain stipulations by the Debtor as set forth in this Interim Order in connection with the Pre-Petition Credit Agreement and the Pre-Petition Subordinate Note Documents (as each term is defined below);

(5)    as set forth below, authorization to provide adequate protection to the Agent, the DIP Lender, the Pre-Petition Term Lenders, the Pre-Petition Subordinate Note Agent and the Pre-Petition Subordinate Noteholders (each as defined below);

(6)    effective only upon entry of a Final Order (as defined below), the waiver of the Debtor's right to assert claims to surcharge against the Collateral (as defined below) pursuant to § 506(c) of the Bankruptcy Code, to the extent set forth below;

(7)    the modification of the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of this Interim Order to the extent hereinafter set forth;

(8)    the setting of a final hearing on the Motion ("Final Hearing") to consider entry of a final order (the "Final Order") authorizing, among other things, the borrowing under the Transaction Documents on a final basis, as set forth in the Motion and the Credit Agreement filed with the Court, including the granting to Agent and DIP Lender the senior security interests and liens described above and super-priority administrative expense claims as and to the extent set forth herein; and

(9) .    related relief.

The initial hearing on the Motion having been held by this Court on September 20, 2016 (the "Interim Hearing"), and upon the record made by the Debtor at the Interim Hearing, including the Motion, and the *Declaration of Jeffrey Weiss in Support of First Day Motions* (the "First Day Declaration"), the *Declaration of Jeffrey Weiss in Support of Debtor's Motion for Entry of Interim and Final Orders (i) Authorizing Postpetition Financing, (ii) Granting Liens and Providing Superpriority Administrative Expense Priority; (iii) Authorizing the Use of Chas Collateral, Granting Adequate Protection to Prepetition Secured Lenders, (v) Modifying the*

*Automatic Stay and (VI) Scheduling a Final Hearing.* (the "DIP Declaration"); and the filings and pleadings in the above-captioned chapter 11 case (the "Case"), the Court having found that the relief requested in the Motion is in the best interests of Debtor, its estate, its creditors and other parties in interest; and notice of the Motion, the relief requested therein, and the Interim Hearing (the "Notice") having been served by the Debtor in accordance with Bankruptcy Rule 4001 on (a) counsel to the Agent, (b) counsel for the Pre-Petition Subordinate Note Agent, (c) the office of the United States Trustee (the "U.S. Trustee"), (d) the holders of the forty (40) largest unsecured claims against the Debtor's estate (the "40 Largest Unsecured Creditors"), (e) the Internal Revenue Service and applicable state taxing authorities, (f) any party that has asserted or may assert a lien in the Debtor's assets; (g) the Debtor's landlords, and (h) all parties who have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002 (collectively, the "Noticed Parties"); and after due deliberation sufficient cause appearing therefor;

THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:

A.  Petition.  On September 16, 2016 (the "Petition Date"), the Debtor filed a voluntary petition (the "Petition") under chapter 11 of the Bankruptcy Code.  The Debtor continues to operate its business and manage its properties as debtor in possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

B.  Disposition.  The Motion is hereby granted in accordance with the terms of this Interim Order.  Any objections to the Motion with respect to the entry of the Interim Order that have not been withdrawn, waived, resolved, or settled are hereby denied and overruled.

C.   <u>Jurisdiction and Venue</u>.   The Court has jurisdiction of this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.   The Motion is a "core" proceeding as defined in 28 U.S.C. §§ 157(b)(2)(A), (D) and (M).   Venue of the Case and the Motion in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

D.   <u>Notice</u>.   The Notice was given in the manner described in the Motion pursuant to Bankruptcy Rule 4001.

E.   <u>Debtor's Acknowledgments and Agreements</u>.   Without prejudice to the rights of any creditors' committee appointed in this Case under Section 1102 of the Bankruptcy Code (the "<u>Committee</u>") or other parties-in-interest as and to the extent set forth in Section 4.1 of this Interim Order, the Debtor admits, stipulates, acknowledges and agrees that:

(i)   <u>Pre-Petition Loan Documents</u>.   Prior to the commencement of the Case, Agent, the DIP Lender and the Term Lenders party to the Pre-Petition Credit Agreement (as defined below) (collectively, the "<u>Pre-Petition Term Lenders</u>", and together with the DIP Lender, the "<u>Pre-Petition Lenders</u>") made loans, advances and provided other financial accommodations to Debtor pursuant to the terms and conditions set forth in (1) the Pre-Petition Credit Agreement (as defined in the Ratification Agreement and referred to herein as the "<u>Pre-Petition Credit Agreement</u>"); and (2) all other agreements, documents and instruments executed and/or delivered with, to, or in favor of Agent, DIP Lender or Pre-Petition Term Lenders in connection with the Pre-Petition Credit Agreement, including, without limitation, all security agreements, notes, guarantees, mortgages, Uniform Commercial Code financing statements and all other related agreements, documents and instruments executed and/or delivered in connection therewith or related thereto (all of the foregoing, together with the Pre-Petition Credit Agreement, as all of the same have heretofore been amended, supplemented, modified, extended, renewed, restated

and/or replaced at any time prior to the Petition Date, collectively, the "Pre-Petition Loan Documents"). Copies of the operative Pre-Petition Loan Documents are on file with counsel to the Debtor and available upon reasonable request.

(ii)     Pre-Petition Revolving Loan Obligations. As of the Petition Date, the Debtor was indebted to Agent and the DIP Lender under the Pre-Petition Loan Documents in respect of Revolving Loans and all other Obligations (each as defined in the Pre-Petition Credit Agreement) relating thereto or arising in connection therewith in an aggregate outstanding amount of not less than $3,283,893.21, plus interest accrued and accruing thereon, together with all costs, fees, expenses (including attorneys' fees and legal expenses) and other charges accrued, accruing or chargeable with respect thereto (collectively, the "Pre-Petition Revolving Obligations", as such term is further defined in the Ratification Agreement). The Pre-Petition Revolving Obligations constitute allowed, legal, valid, binding, enforceable and non-avoidable obligations of Debtor, and are not subject to any offset, defense, counterclaim, avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or any other applicable law, and Debtor does not possess, and subject to entry of the Final Order, shall not assert, hereby forever release, and are forever barred from bringing any claim, counterclaim, setoff or defense of any kind, nature or description which would in any way affect the validity, enforceability and non-avoidability of any of the Pre-Petition Revolving Obligations or liens and security interest securing the same described in clause (E)(iv) below.

(iii)     Pre-Petition Term Loan Obligations. As of the Petition Date, the Debtor was indebted to Agent and the Pre-Petition Term Lenders under the Pre-Petition Loan Documents in respect of Term Loans and all other Obligations (each as defined in the Pre-Petition Credit Agreement) relating thereto or arising in connection therewith in an aggregate

outstanding amount of not less than $16,103,731, plus interest accrued and accruing thereon, together with all costs, fees, expenses (including attorneys' fees and legal expenses) and other charges accrued, accruing or chargeable with respect thereto (collectively, the "Pre-Petition Term Obligations", as such term is further defined in the Ratification Agreement and together with the Pre-Petition Revolving Obligations, the "Pre-Petition Obligations"). The Pre-Petition Term Obligations constitute allowed, legal, valid, binding, enforceable and non-avoidable obligations of Debtor, and are not subject to any offset, defense, counterclaim, avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or any other applicable law, and Debtor does not possess, and subject to entry of the Final Order, shall not assert, hereby forever release, and are forever barred from bringing any claim, counterclaim, setoff or defense of any kind, nature or description which would in any way affect the validity, enforceability and non-avoidability of any of the Pre-Petition Term Obligations or liens and security interest securing the same described in clause (E)(iv) below.

(iv)     Pre-Petition Collateral.   As of the Petition Date, the Pre-Petition Obligations were secured pursuant to the Pre-Petition Loan Documents by valid, perfected, enforceable and non-avoidable first-priority security interests and liens granted by Debtor to Agent, for the benefit of itself and each Pre-Petition Lender under the Pre-Petition Loan Documents, upon all of the Pre-Petition Collateral (as defined in the Ratification Agreement and hereinafter referred to as the "Pre-Petition Collateral"), subject only to the liens specifically permitted under Section 5.6 of the Pre-Petition Credit Agreement to the extent that such security interests, liens or encumbrances are (1) valid, perfected and non-avoidable security interests, liens or encumbrances existing as of the Petition Date, and (2) senior to and have not been or are not subject to being subordinated to Agent's and each Pre-Petition Lender's liens on and security

interests in the Pre-Petition Collateral under the Pre-Petition Loan Documents or otherwise avoided, and, in each instance, only for so long as and to the extent that such encumbrances are and remain senior and outstanding (hereinafter referred to as the "Permitted Liens"). The Debtor does not possess and will not assert any claim, counterclaim, setoff or defense of any kind, nature or description which would in any way affect the validity, enforceability and non-avoidability of any of Agent's and Lenders' pre-petition liens, claims or security interests in the Pre-Petition Collateral.

(v)        Proof of Claim.   The acknowledgment by Debtor of the Pre-Petition Obligations and the liens, rights, priorities and protections granted to or in favor of Agent and each Pre-Petition Lender in respect of the Pre-Petition Collateral as set forth herein and in the Pre-Petition Loan Documents shall be deemed a timely filed proof of claim on behalf of Agent and each Pre-Petition Lender in this Case.

(vi)       Pre-Petition Subordinate Note Documents.  Prior to the commencement of this Case, Pre-Petition Subordinate Note Agent (as defined below) and the Pre-Petition Subordinate Noteholders (as defined below) made loans, advances and provided other financial accommodations to Debtor pursuant to the terms and conditions set forth in (a) the Convertible Note Purchase Agreement, dated as of October 16, 2015 (as amended and modified from time to time prior to the Petition Date, the "Pre-Petition Subordinate Note Purchase Agreement"), by and among the Pre-Petition Borrower and the noteholders party thereto (the "Pre-Petition Subordinate Noteholders") and Homewood NJOY Services, LLC in its capacity as administrative agent and as collateral agent (the "Pre-Petition Subordinate Note Agent"); and (b) all other agreements, documents and instruments executed and/or delivered with, to or in favor of the Pre-Petition Subordinate Noteholders or Pre-Petition Subordinate Note Agent in connection

with the Pre-Petition Subordinate Note Agreement, including, without limitation, the
Intercreditor Agreement (as defined below), all security agreements, notes, guarantees,
mortgages, Uniform Commercial Code financing statements and all other related agreements,
documents and instruments, including any fee letters, executed and/or delivered in connection
therewith or related thereto (all the foregoing, together with the Pre-Petition Subordinate Note
Purchase Agreement, as all of the same have been supplemented, modified, extended, renewed,
restated and/or replaced at any time prior to the Petition Date, collectively, the "Pre-Petition
Subordinate Note Documents").    Copies of the operative Pre-Petition Subordinate Note
Documents are on file with counsel to the Debtor and available upon reasonable request.

(vii)    Pre-Petition Subordinate Note Obligations.    As of the Petition Date, the
Debtor was indebted to Pre-Petition Subordinate Note Agent and Pre-Petition Subordinate
Noteholders under the Pre-Petition Subordinate Note Documents in respect of loans and other
obligations evidenced thereby in an aggregate outstanding principal amount of not less than
$19,614,700, plus interest accrued and accruing thereon, together with all costs, fees, expenses
(including attorneys' fees and legal expenses) and other charges accrued, accruing or chargeable
with respect thereto (collectively, the "Pre-Petition Subordinate Note Obligations"). The Pre-
Petition Subordinate Note Obligations constitute allowed, legal, valid, binding, enforceable and
non-avoidable obligations of Debtor, and are not subject to any offset, defense, counterclaim,
avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or any other
applicable law, and Debtor does not possess, and subject to entry of the Final Order, shall not
assert, hereby forever release, and are forever barred from bringing any claim, counterclaim,
setoff or defense of any kind, nature or description which would in any way affect the validity,

enforceability and non-avoidability of any of the Pre-Petition Subordinate Note Obligations, or the liens and security interests securing the same described in clause (E)(viii) below.

(viii)        <u>Pre-Petition Subordinate Note Collateral</u>.  As of the Petition Date, the Pre-Petition Subordinate Note Obligations were secured pursuant to the Pre-Petition Subordinate Note Documents by valid, perfected, enforceable and non-avoidable security interests and liens granted by Debtor to Pre-Petition Subordinate Note Agent, for the benefit of itself and the other Pre-Petition Subordinate Noteholders under the Pre-Petition Subordinate Note Documents (the "<u>Pre-Petition Subordinate Note Liens</u>"), upon all of the "Collateral" as defined in the Pre-Petition Subordinate Note Documents (the "<u>Pre-Petition Subordinate Note Collateral</u>"), subject only to (A) the liens of Agent, the DIP Lender and the Pre-Petition Lenders in accordance with the Intercreditor Agreement (defined below); (B) all other security interests, liens or encumbrances specifically permitted under the Pre-Petition Subordinate Note Purchase Agreement to the extent that such security interests, liens or encumbrances are (1) valid, perfected and non-avoidable security interests, liens or encumbrances existing as of the Petition Date, and (2) senior or equal to and have not been or are not subject to being subordinated to Pre-Petition Subordinate Note Agent's and Pre-Petition Subordinate Noteholders' liens on and security interests in the Pre-Petition Subordinate Note Collateral under the Pre-Petition Subordinate Note Documents or otherwise avoided, and, in each instance, only for so long as and to the extent that such encumbrances are and remain senior and outstanding.  The Pre-Petition Subordinate Note Liens in the Pre-Petition Subordinate Note Collateral are junior and subordinate to the Agent's, DIP Lender's, and Pre-Petition Term Lenders' liens in such collateral pursuant to the Intercreditor Agreement (defined below).  The Debtor does not possess and will not assert any claim, counterclaim, setoff or defense of any kind, nature or description which would in any way affect

the validity, enforceability and non-avoidability of any of Pre-Petition Subordinate Note Agent's or Pre-Petition Subordinate Noteholders' Pre-Petition Subordinate Note Liens in the Pre-Petition Subordinate Note Collateral.

(ix)    Pre-Petition Subordinate Note Agent's Proof of Claim.    The acknowledgment by Debtor of the Pre-Petition Subordinate Note Obligations and the liens, rights, priorities and protections granted to or in favor of Pre-Petition Subordinate Note Agent and Pre-Petition Subordinate Noteholders in respect of the Pre-Petition Subordinate Note Collateral as set forth herein and in the Pre-Petition Subordinate Note Documents shall be deemed a timely filed proof of claim on behalf of Pre-Petition Subordinate Note Agent and Pre-Petition Subordinate Noteholders in this Case.

(x)    Intercreditor and Subordination Agreement.    Agent and Pre-Petition Subordinate Note Agent are parties to that certain Intercreditor and Subordination Agreement dated as of October 16, 2015 (as amended, supplemented or otherwise modified from time to time prior to the Petition Date, the "Intercreditor Agreement"), which confirms the first priority liens and claims of Agent, DIP Lender and Pre-Petition Term Lenders on the one hand in and against the Borrower and its assets and properties and the second priority liens and claims of Pre-Petition Subordinate Note Agent and Pre-Petition Subordinate Noteholders, on the other hand in and against the Borrower and its assets and properties

F.    Findings Regarding the Post-Petition Financing.

(i)    Post-Petition Financing.    The Debtor has requested from each of the Agent and the DIP Lender, and the Agent and DIP Lender are willing, to extend certain loans, advances and other financial accommodations on the terms and conditions set forth in this Interim Order,

the Credit Agreement and the other Transaction Documents (as defined in the Ratification Agreement and referred to herein as the "Transaction Documents"), respectively.

(ii)    Need for Post-Petition Financing.  The Debtor does not have sufficient available sources of working capital, including cash collateral, to operate its business in the ordinary course of business without the financing requested in the Motion.  The Debtor's ability to maintain business relationships with its vendors, suppliers and customers, to pay its employees, and to otherwise fund its operations is essential to the Debtor's continued viability as the Debtor seeks to maximize the value of the assets of the Estate (as defined below) for the benefit of all creditors of the Debtor.  The ability of the Debtor to obtain sufficient working capital and liquidity through the proposed post-petition financing arrangements with the Agent and DIP Lender as set forth in this Interim Order, the Credit Agreement, and other Transaction Documents, as applicable, is vital to the preservation and maintenance of the going concern value of Debtor.  Accordingly, the Debtor has an immediate need to obtain the post-petition financing in order to, among other things, permit the orderly continuation of the operation of its business, minimize the disruption of its business operations, and preserve and maximize the value of the assets of the Debtor's bankruptcy estate (as defined under § 541 of the Bankruptcy Code, the "Estate") in order to maximize the recovery to all creditors of the Estate.

(iii)    No Credit Available on More Favorable Terms.  The Debtor is unable to procure financing in the form of unsecured credit allowable as an administrative expense under §§ 364(a), 364(b), or 503(b)(1) of the Bankruptcy Code or in exchange for the grant of a superpriority administrative expense, junior liens on encumbered property of the Estate, or liens on property of the Estate not subject to a lien pursuant to § 364(c)(1), 364(c)(2) or 364(c)(3) of the Bankruptcy Code.  The Debtor has been unable to procure the necessary financing on terms

more favorable, taken as a whole, than the financing offered by each of the Agent and DIP Lender pursuant to the Transaction Documents.

(iv)    Budget.  The Debtor has prepared and delivered to Agent and DIP Lender an initial 13-week budget (as defined in the Ratification Agreement and referred to herein as the "Budget").  Such Budget has been thoroughly reviewed by the Debtor and its management and sets forth, among other things, the projected cash receipts and disbursements of the Debtor for the periods covered thereby.  The Debtor represents that the Budget is achievable in accordance with the terms of the Transaction Documents and this Interim Order and will allow the Debtor to operate at all times during this Case.  The Agent and DIP Lender are relying upon the Debtor's compliance with the Budget (subject to the variances permitted under Section 5.3(c) of the Ratification Agreement (the "Permitted Variances"), the other Transaction Documents, and this Interim Order in determining to enter into the post-petition financing arrangements provided for herein.

(v)    Business Judgment and Good Faith Pursuant to § 364(e).  The terms of the Transaction Documents and this Interim Order are fair, just and reasonable under the circumstances, are ordinary and appropriate for secured financing to debtors-in-possession, reflect the Debtor's exercise of its prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and fair consideration.  The terms and conditions of the Transaction Documents and this Interim Order have been negotiated in good faith and at arms' length by and among the Debtor and Agent, with all parties being represented by counsel.  Any credit extended under the terms of this Interim Order shall be deemed to have been extended in good faith by the Agent and DIP Lender, as that term is used in § 364(e) of the Bankruptcy Code.

(vi)      <u>Good Cause</u>.  The relief requested in the Motion is necessary, essential and appropriate, and is in the best interest of and will benefit the Debtor, its creditors and its Estate, as its implementation will, among other things, provide the Debtor with the necessary liquidity to (1) minimize disruption to the Debtor's business and on-going operations, (2) preserve and maximize the value of the Debtor's Estate for the benefit of all the Debtor's creditors, and (3) avoid immediate and irreparable harm to the Debtor, its creditors, its business, its employees, and its assets.

(vii)      <u>Immediate Entry</u>.  Sufficient cause exists for immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(c)(2).  No party appearing in this Case has filed or made an objection to the relief sought in the Motion or the entry of this Interim Order, or any objections that were made (to the extent such objections have not been withdrawn, waived, resolved, or settled) are hereby overruled.

Based upon the foregoing, and after due consideration and good cause appearing therefor;

**IT IS HEREBY ORDERED THAT:**

**Section 1.**    **<u>Authorization and Conditions to Financing.</u>**

1.1    <u>Motion Granted</u>.  The Motion is granted as set forth herein, in accordance with Bankruptcy Rule 4001(c)(2) to the extent provided in this Interim Order.  Except as otherwise expressly provided in this Interim Order, any objection to the entry of this Interim Order that has not been withdrawn, waived, resolved or settled, is hereby denied and overruled on the merits.

1.2    <u>Authorization to Borrow, Guaranty, and Use Loan Proceeds</u>.  Borrower is hereby authorized and empowered to immediately borrow and obtain Revolving Loans and to incur indebtedness and other Post-Petition Obligations (as defined in the Ratification Agreement) up to an aggregate amount equal to the sum of (i) 105% of all disbursements for the Interim

Financing Period (as defined below) in the "Revolving Loan Grand Total" line item of the Budget, plus (ii) all interest, costs, and fees, accrued or accruing under the Credit Agreement and other Transaction Documents, all pursuant to the terms and conditions of this Interim Order, the Credit Agreement, and the other Transaction Documents during the period commencing on the date of this Interim Order through and including the date of the Final Hearing (the "Interim Financing Period"). Subject to the terms and conditions contained in this Interim Order and the Transaction Documents, Borrower shall use the proceeds of the Loans and other credit and financial accommodations provided by Agent and DIP Lender under the Credit Agreement and the other Transaction Documents solely for payment of expenses set forth in the Budget (subject to the Permitted Variances) and amounts owing to Agent and DIP Lender in accordance with the terms and conditions of the Transaction Documents and this Interim Order.

    1.3    <u>Financing Documents</u>

    (a)    <u>Authorization</u>. Debtor is hereby authorized to enter into, execute, deliver, perform, and comply with all of the terms, conditions and covenants of the Credit Agreement and the other Transaction Documents. Upon execution and delivery of the Credit Agreement and the other Transaction Documents, such agreements and documents shall constitute valid and binding obligations of the Debtor, enforceable against Debtor in accordance with the terms of such agreements, documents and this Interim Order. No obligation, payment, transfer or grant of security under the Credit Agreement, the other Transaction Documents or this Interim Order shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under § 502(d) of the Bankruptcy Code), or be subject to any defense, reduction, setoff, recoupment or counterclaim.

(b)    <u>Approval; Evidence of Borrowing Arrangements</u>.    All terms, conditions and covenants set forth in the Transaction Documents (including, without limitation, the Credit Agreement) are approved to the extent necessary to implement the terms and provisions of this Interim Order.  All such terms, conditions and covenants shall be sufficient and conclusive evidence of (a) the borrowing arrangements by and among Debtor, Agent and DIP Lender, and (b) Debtor's assumption and adoption of all of the terms, conditions, and covenants of the Credit Agreement and the other Transaction Documents for all purposes, including, without limitation, to the extent applicable, the payment of all Post-Petition Obligations arising thereunder, including, without limitation, all principal, interest, fees and other expenses, including, without limitation, all of Agent's and DIP Lender's consultant fees, professional fees, attorney fees and legal expenses, as more fully set forth in the Transaction Documents.

(c)    <u>Amendment</u>.    Subject to the terms and conditions of the Credit Agreement and the other Transaction Documents, Debtor, Agent and DIP Lender may amend, modify, supplement or waive any provision of the Transaction Documents (a "<u>DIP Loan Amendment</u>") without further approval or order of the Court so long as (a) such DIP Loan Amendment is not material (for purposes hereof, a "material" DIP Loan Amendment shall mean any DIP Loan Amendment that operates to increase the interest rate other than as currently provided in the Transaction Documents, increase the Maximum Credit (as defined in the Ratification Agreement), add an additional early termination fee, prepayment or repayment premium or any other fee that increases yield, add specific new events of default or enlarge the nature and extent of default remedies available to Agent and DIP Lender following an event of default, or otherwise modify any terms and conditions in any of the Transaction Documents in a manner materially less favorable to Debtor) and is undertaken in good faith by Agent, DIP

Lender and Debtor; (b) the Debtor provides prior written notice of the DIP Loan Amendment (the "DIP Loan Amendment Notice") to (i) the U.S. Trustee, (ii) counsel to any Committee, or in the event no such Committee is appointed at the time of such DIP Loan Amendment, the 40 Largest Unsecured Creditors, and (iii) counsel to the Pre-Petition Subordinate Note Agent; (c) the Debtor files the DIP Loan Amendment Notice with the Court; and (d) no objection to the DIP Loan Amendment is filed with the Court within three (3) business days from the later of the date the DIP Loan Amendment Notice is served or the date the DIP Loan Amendment Notice is filed with the Court in accordance with this Section.  Any material DIP Loan Amendment to the Transaction Documents must be approved by the Court to be effective.

      1.4    <u>Payment of Pre-Petition Debt</u>.  The Debtor is authorized to repay all Pre-Petition Revolving Obligations in accordance with the Credit Agreement, the other Transaction Documents and this Interim Order, including, without limitation, Sections 1.5 and 1.6 of this Interim Order.

      1.5    <u>Payments and Application of Payments</u>.  Subject to the provisions of Section 4.1 of this Interim Order, the Debtor is authorized to make all payments and transfers of Estate property to the Agent as provided for, permitted and/or required under the Credit Agreement and the other Transaction Documents, which payments and transfers shall not be avoidable or recoverable from the Agent or any DIP Lender under §§ 547, 548, 550, 553 or any other section of the Bankruptcy Code, or by reason of any other claim, charge, assessment, or other liability, whether by application of the Bankruptcy Code, other law or otherwise.  All proceeds of the Collateral (as defined herein) received by the Agent or any DIP Lender, and any other amounts or payments received by the Agent or any DIP Lender in respect of the Post-Petition Obligations, may be applied or deemed to be applied by the Agent, in its discretion, first

to the repayment in full of the Pre-Petition Revolving Obligations, and then in repayment of the Post-Petition Obligations, in accordance with this Interim Order. Without limiting the generality of the foregoing, the Debtor is authorized without further order of this Court, subject to Section 5.12 of this Interim Order, to pay or reimburse Agent and the DIP Lenders for future costs and expenses, including, without limitation, all professional fees, consultant fees and legal fees and expenses paid or incurred by the Agent and the DIP Lenders in connection with the financing transactions as provided in this Interim Order and the Transaction Documents, all of which shall be and are included as part of the principal amount of the Post-Petition Obligations and secured by the Collateral (as defined herein).

1.6     Continuation of Pre-Petition Procedures. Subject to the Cash Management Order, and except to the extent expressly set forth in the Transaction Documents, all pre-petition practices and procedures for the payment and collection of proceeds of the Collateral (as defined herein), the turnover of cash, the delivery of property to the Agent and the DIP Lender, including any Blocked Account (as such term is defined in the Credit Agreement), any agreements with relating to any such Blocked Account, and any other similar lockbox or blocked depository bank account arrangements, are hereby approved and shall continue without interruption after the commencement of the Case.

**Section 2.     Post-Petition Lien; Superpriority Administrative Claim Status.**

2.1     Post-Petition Lien.

(a)     Post-Petition Lien Granting. To secure the prompt payment and performance of any and all Post-Petition Obligations (as defined in the Credit Agreement) of Debtor to the Agent and DIP Lender of whatever kind, nature or description, absolute or contingent, now existing or hereafter arising, Agent, for the benefit of itself and the DIP Lender,

shall have and is hereby granted, effective as of the Petition Date, valid and perfected first-priority security interests and liens, superior to all other liens, claims or security interests that any creditor of the Debtor's Estate may have (but subject to the Carve-Out (as defined below) and the Permitted Liens), in and upon all of the Collateral (as defined in the Credit Agreement and referred to herein as the "Collateral").  For the avoidance of doubt, solely for purposes of this Interim Order, prior to the entry of the Final Order the term "Collateral" does not include any property recovered as a result of transfers or obligations avoided or actions maintained or taken Chapter 5 of the Bankruptcy Code (the "Avoidance Actions").

(b)     Lien Priority in Collateral.  The liens and security interests of Agent and DIP Lender granted under the Transaction Documents and this Interim Order in the Collateral securing all Post-Petition Obligations (as defined in the Credit Agreement) shall be first and senior in priority to all other interests and liens of every kind, nature and description, whether created consensually, by an order of the Court or otherwise, including, without limitation, liens or interests granted in favor of the Pre-Petition Term Lenders, the Pre-Petition Subordinate Note Agent, any third parties in conjunction with §§ 363, 364 or any other section of the Bankruptcy Code or other applicable law; provided, however, that Agent's and DIP Lender's liens on and security interests in the Collateral shall be subject only to (a) Permitted Liens, and (b) the Carve-Out (as defined below).

(c)     Right of Repayment.  The right to repayment of Agent and DIP Lender granted under the Transaction Documents and this Interim Order from the sale or other disposition of the Collateral or any proceeds thereof shall be first and senior in priority to all other rights of repayment of every kind, nature and description.

(d)    <u>Post-Petition Lien Perfection.</u>    This Interim Order shall be sufficient and conclusive evidence of the priority, perfection and validity of the post-petition liens and security interests granted herein, effective as of the Petition Date, without any further act and without regard to any other federal, state or local requirements or law requiring notice, filing, registration, recording or possession of the Collateral, or other act to validate or perfect such security interest or lien, including without limitation, control agreements with any financial institution(s) party to a deposit account control agreement or holding a Blocked Account (as defined in the Credit Agreement) or other depository account consisting of Collateral (a "Perfection Act"). Notwithstanding the foregoing, if Agent, shall, in its sole discretion, elect for any reason to file, record or otherwise effectuate any Perfection Act, then Agent is authorized to perform such act, and the Debtor is authorized to perform such act or acts to the extent necessary or required by Agent, which act or acts shall be deemed to have been accomplished as of the date and time of entry of this Interim Order notwithstanding the date and time actually accomplished, and in such event, the subject filing or recording office is authorized to accept, file or record any document in regard to such act in accordance with applicable law. Agent may choose to file, record or present a certified copy of this Interim Order in the same manner as a Perfection Act, which shall be tantamount to a Perfection Act, and, in such event, the subject filing or recording office is authorized to accept, file or record such certified copy of this Interim Order in accordance with applicable law. Should Agent so choose and attempt to file, record or perform a Perfection Act, no defect or failure in connection with such attempt shall in any way limit, waive or alter the validity, enforceability, attachment, or perfection of the post-petition liens and security interests granted herein by virtue of the entry of this Interim Order.

(e)  <u>Nullifying Pre-Petition Restrictions to Post-Petition Financing</u>. Notwithstanding anything to the contrary contained in any pre-petition agreement, contract, lease, document, note or instrument to which Debtor is a party or under which any Debtor is obligated, except as otherwise permitted under the Transaction Documents, any provision that restricts, limits or impairs in any way Debtor from granting Agent security interests in or liens upon any of the Debtor's assets or properties (including, among other things, any anti-lien granting or anti-assignment clauses in any leases or other contractual arrangements to which any Debtor is a party) under the Transaction Documents or this Interim Order, as applicable, or otherwise entering into and complying with all of the terms, conditions and provisions hereof or of the Transaction Documents, shall not (a) be effective and/or enforceable against Debtor, Agent or the DIP Loan Lender, as applicable, or (b) adversely affect the validity, priority or enforceability of the liens, security interests, claims, rights, priorities and/or protections granted to Agent and DIP Lender pursuant to this Interim Order or the Transaction Documents, in each case, to the maximum extent permitted under the Bankruptcy Code and other applicable law.

2.2  <u>Superpriority Administrative Expenses</u>.  For all Post-Petition Obligations now existing or hereafter arising pursuant to this Interim Order, the Transaction Documents or otherwise, Agent, for the benefit of itself and the DIP Lender, is granted an allowed superpriority administrative claim pursuant to § 364(c)(1) of the Bankruptcy Code, having priority in right of payment over any and all other obligations, liabilities and indebtedness of Debtor (other than the Carve-Out), whether now in existence or hereafter incurred by Debtor, and over any and all administrative expenses or priority claims of the kind specified in, or ordered pursuant to, inter alia, §§ 105, 326, 328, 330, 331, 503(b), 506(c) (subject to entry of the Final Order), 507(a), 507(b), 364(c)(1), 546(c), 726, 1113 or 1114 of the Bankruptcy Code (other than the Carve-Out),

whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed superpriority administrative claim shall be payable from and have recourse to all pre-petition and post-petition property of the Debtor and all proceeds thereof (the "DIP Loan Superpriority Claim").

      2.3   Carve-Out.

      (a)   Carve Out Expenses.  Upon Agent providing written notice of the occurrence of an Event of Default (as defined in the Ratification Agreement) to (a) the Court, (b) counsel for the Debtor, (c) counsel for the Committee (if any), and (d) the U.S. Trustee (a "Carve Out Trigger Notice"), Agent's and DIP Lender's liens, claims and security interests in the Collateral and its DIP Loan Superpriority Claim, shall each be subject only to the right of payment of the following expenses (the "Carve Out Expenses"):

      (i)   all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (c) below);

      (ii)   all reasonable fees and expenses up to $10,000 incurred by a trustee under Section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (c) below); and

      (iii)   to the extent allowed by the Bankruptcy Court at any time, whether by interim order, procedural order, or otherwise, all unpaid fees and expenses (the "Allowed Professional Fees") incurred by persons or firms retained by the Debtor or the Committee pursuant to Sections 327(a) or 1103 of the Bankruptcy Code (the "Professionals") at any time on or after the date of delivery by Agent of a Carve-Out

Trigger Notice, whether allowed by the Bankruptcy Court prior to or after delivery of a Carve-Out Trigger Notice; provided, that such Allowed Professional Fees incurred by (x) the Debtor or its counsel shall not at any time exceed the aggregate amount of $25,000 and (y) the Committee or its counsel shall not at any time exceed the aggregate amount of $10,000 (the "Professional Fee Carve Out").

For the avoidance of doubt, nothing herein shall be construed to impair the ability of any party to object to the fees, expenses, reimbursement or compensation described herein.

(b)    Excluded Professional Fees.    Notwithstanding anything to the contrary in this Interim Order, neither the Professional Fee Carve-Out nor the proceeds of Collateral or any Loans, or any other credit or financial accommodations provided under or in connection with the Transaction Documents shall be used to pay any Allowed Professional Fees or any other fees or expenses incurred by any Professional in connection with any of the following:

(i)    an assertion or joinder in any claim, counter-claim, action, proceeding, application, motion, objection, defense or other contested matter seeking any order, judgment, determination or similar relief: (i) challenging the legality, validity, priority, perfection, or enforceability of, invalidating, setting aside, avoiding or subordinating, in whole or in part, (A) the Pre-Petition Revolving Obligations or Agent's and DIP Lender's liens on and security interests in the Pre-Petition Collateral in arising from or relating to the Pre-Petition Revolving Loans, (B) the Pre-Petition Term Obligations or Agent's or the Pre-Petition Term Lenders' liens on and security interests in the Pre-Petition Collateral in respect of the Pre-Petition Term Loans, (C) the Post-Petition Obligations or Agent's or DIP Lender's liens on and security interests in the

Collateral, or (D) the Pre-Petition Subordinate Note Obligations or Pre-Petition Subordinate Note Agent's or Pre-Petition Subordinate Noteholders' liens on and security interests in the Pre-Petition Subordinate Note Collateral; or (ii) preventing, hindering or delaying Agent's or DIP Lenders' assertion or enforcement of any lien, claim, right or security interest or realization upon any Collateral in accordance with the terms and conditions of the Credit Agreement, the Transaction Documents, and this Interim Order;

        (ii)    a request to use Cash Collateral (as such term is defined in section 363 of the Bankruptcy Code), except as set forth in the Credit Agreement, the Transaction Documents, and this Interim Order, without the prior written consent of Agent in accordance with the terms and conditions of this Interim Order;

        (iii)    a request for authorization to obtain debtor-in-possession financing or other financial accommodations pursuant to section 364(c) or § 364(d) of the Bankruptcy Code, other than as provided in the Credit Agreement, the Transaction Documents, and this Interim Order, without the prior written consent of Agent;

        (iv)    the commencement or prosecution of any action or proceeding of any claims, causes of action or defenses against Agent, DIP Lender, any Pre-Petition Lender, or any of their respective officers, directors, employees, agents, attorneys, affiliates, successors or assigns, including, without limitation, any attempt to recover or avoid any claim or interest from Agent, any DIP Lender, Pre-Petition Lender or any of their respective officers, directors, employees, agents, attorneys, affiliates, successors or assigns under chapter 5 of the Bankruptcy Code; or

(v)    the cost of investigation into any claims against Agent, DIP Lender or any other Pre-Petition Lender arising under or in connection with the Pre-Petition Loan Documents in excess of $10,000.

(c)    <u>Carve Out Reserve</u>.  At Agent's discretion, Agent may, at any time and in any increment in accordance with the Credit Agreement, establish a Budget Reserve (the "<u>Professional Fee Reserve</u>") against the amount of Revolving Loans that would otherwise be available to Debtor in respect of the Professional Fee Carve Out and the other Carve Out Expenses.

(d)    <u>Trigger Date</u>.  The "<u>Trigger Date</u>" shall mean the first business day after the occurrence and continuation of an Event of Default (as defined below) and delivery by Agent of the Carve-Out Trigger Notice.


2.4    <u>Funding the Professional Fee Carve Out</u>.  Prior to the Trigger Date, Debtor shall be authorized to pay Allowed Professional Fees up to the amounts set forth in the Budget and in accordance with the Credit Agreement and this Interim Order.  Promptly following the Trigger Date, Agent shall make an advance to the Debtor in an amount equal to $35,000 (the "<u>Carve Out Advance</u>"), and the Debtor shall use the proceeds of the Carve Out Advance to fund the Allowed Professional Fees covered by the Professional Fee Carve Out and the other Carve Out Expenses subject to and in accordance with the terms of this Interim Order.  The payment of any obligations arising pursuant to 28 U.S.C. § 1930 shall not be limited by the Carve Out Advance. Immediately upon Agent making the Carve Out Advance, the Collateral shall not be subject to any further carve out for any cost or expenses of the Debtor's estate, and Agent's obligation to fund or otherwise ensure the payment of any Carve Out Expenses pursuant to this

Interim Order shall be fully and finally satisfied and discharged, and Agent and DIP Lender shall have no obligation or responsibility to fund or otherwise ensure the payment of any Carve Out Expenses or any other professional fees or expenses of the Debtor or the Committee.

2.5    Payment of Carve Out Expenses.  Payment of any Carve Out Expenses, whether by or on behalf of Agent or DIP Lender, shall not and shall not be deemed to reduce the Post-Petition Obligations, and shall not and shall not be deemed to subordinate any of any of Agent's or DIP Lender's liens and security interests in the Pre-Petition Collateral, any other Collateral, the Adequate Protection Superpriority Claim (as defined below), or the DIP Loan Superpriority Claim to any junior pre- or post-petition lien, interest or claim in favor of any other party.  Except and to the extent set forth in Section 2.5 of this Interim Order, Agent and DIP Lender shall not, under any circumstance, be responsible for the direct payment or reimbursement of any fees or disbursements of any Professionals incurred in connection with the Case under any chapter of the Bankruptcy Code, and nothing in Section 2.3 of this Interim Order shall be construed to obligate Agent or DIP Lender in any way, to pay compensation to or to reimburse expenses of any Professional, or to ensure that the Debtor has sufficient funds to pay such compensation or reimbursement.

2.6    Use of Cash Collateral; Adequate Protection.

(a)    Authorization to Use Cash Collateral.  Subject to the terms and conditions of this Interim Order, the Credit Agreement, the Transaction Documents, and in accordance with the Budget (subject to the Permitted Variances), Borrower shall be and is hereby authorized to use the Cash Collateral (as defined in section 363 of the Bankruptcy Code) to the extent Cash Collateral is limited to proceeds of Revolving Loans extended to Debtor pursuant to this Interim Order, the Credit Agreement, and the other Transaction Documents for

the period commencing on the date of this Interim Order and terminating upon the earlier of (i) the date that is the final day of the Interim Financing Period; and (ii) the date on which the Agent delivers an Enforcement Notice (as defined below) to counsel for the Debtor, counsel for the Committee (if appointed), and the U.S. Trustee, subject to the liens and security interests granted to the Agent and the DIP Lender, Pre-Petition Term Lenders, and Pre-Petition Subordinate Note Agent and Pre-Petition Subordinate Noteholders. Nothing in this Interim Order shall authorize the disposition of any assets of the Debtor or its Estate outside the ordinary course of business, or Borrower's use of such Cash Collateral or other proceeds resulting therefrom, except as expressly permitted in this Interim Order, the Transaction Documents and in accordance with the Budget (subject to the Permitted Variances).

(b)    Replacement Liens.  As adequate protection for the diminution in value of their interests in the Collateral on account of the Borrower's use of such Collateral, the imposition of the automatic stay and the subordination to the Carve-Out (collectively, the "Diminution in Value"), the Agent, for the benefit of itself and the DIP Lender, is hereby granted pursuant to §§ 361 and 363 of the Bankruptcy Code, and solely to the extent of the Diminution in Value, valid, binding, enforceable and perfected replacement liens upon and security interests in all Collateral (the "Revolving Loan A/L Replacement Lien").  The Revolving Loan A/L Replacement Lien shall be junior and subordinate only to (A) the Carve-Out (B) the Permitted Liens, and (C) Agent's and DIP Lenders' liens on the Collateral to secure the Post-Petition Obligations, and shall otherwise be senior to all other security interests in, liens on, or claims against any of the Collateral.

(c)    Section 507(b) Priority Claims.  As adequate protection for the Diminution in Value, the Agent, for the benefit of itself and DIP Lender, is hereby granted as and

to the extent provided by section 507(b) of the Bankruptcy Code, and solely to the extent of the Diminution in Value, an allowed superpriority administrative expense claim in this Case and any successor bankruptcy cases (the "Revolving Loan A/L Adequate Protection Superpriority Claim"). The Revolving Loan A/L Adequate Protection Superpriority Claim shall be junior only to (A) the Carve-Out, and (B) the DIP Loan Superpriority Claim, and shall otherwise have priority over all administrative expense claims and unsecured claims against Debtor and its Estate now existing or hereafter arising, of any kind or nature whatsoever.

(d)    Pre-Petition Term Lenders Adequate Protection. Agent, for the benefit of itself and the Pre-Petition Term Lenders (collectively, the "Term Loan Adequate Protection Parties"), shall be granted the following protection, pursuant to sections 361, 507, and 363(e) of the Bankruptcy Code for the consent to the use of its collateral, consent to this Interim Order, and for the Diminution in Value of the security interests and liens of such party. The Term Loan Adequate Protection Parties are granted the following adequate protection to the extent set forth in subsections (i) through (iv) below (collectively, the "Term Loan Adequate Protection Obligations"):

(i)    Term Loan Adequate Protection Lien. Agent, on behalf of the Term Loan Adequate Protection Parties, shall be granted for their benefit, effective and perfected as of the date of entry of this Interim Order and without the necessity of the execution or filing of mortgages, security agreements, pledge agreements, financing statements or other agreements, and solely to the extent of the Diminution in Value, a security interest in and lien on the Collateral (together, the "Term Loan Adequate Protection Liens"), subject and subordinate only to (i) the Carve-Out, (ii) Permitted Liens, and (iii) the liens of Agent and DIP Lender securing all Revolving Obligations

arising under or in connection with the Credit Agreement and the other Transaction Documents and/or this Interim Order in and upon the Collateral, including, without limitation, the Revolving Loan A/L Replacement Lien; provided that, the Term Loan Adequate Protection Liens shall only encumber the Avoidance Actions upon entry of the Final Order.

        (ii)    Pre-Petition Term Loan Adequate Protection Superpriority Claim.  Agent, on behalf of the Term Loan Adequate Protection Parties, shall be granted, solely to the extent of the Diminution in Value, a superpriority administrative expense claim pursuant to Section 507(b) of the Bankruptcy Code junior and subordinate only to the Carve-Out, DIP Loan Superpriority Claim and the Revolving Loan A/L Adequate Protection Superpriority Claim; provided, that the Term Loan Adequate Protection Parties shall not receive or retain any payments, property or other amounts in respect of such superpriority claims unless and until all Pre-Petition Revolving Obligations and all Post-Petition Obligations under the Credit Agreement and the other Transaction Documents have indefeasibly been paid in cash in full in accordance with the terms of the Credit Agreement.

        (e)    Pre-Petition Subordinate Note Agent Adequate Protection. Pre-Petition Subordinate Note Agent, for the benefit of itself and the Pre-Petition Subordinate Noteholders (collectively, the Pre-Petition Subordinate Note Protection Parties"), shall be granted the following protection, pursuant to sections 361, 507 and 363(e) of the Bankruptcy Code for the consent to the use of its collateral, consent to the transactions contemplated by the Transaction Documents and this Interim Order, and for the Diminution in Value of the security interests and liens of such party.  The Pre-Petition Subordinate Note Adequate Protection Parties

are granted the following adequate protection to the extent set forth in subsections (i) through (iv) below (collectively, the "Pre-Petition Subordinate Note Protection Obligations"):

        (i)    Pre-Petition Subordinate Note Adequate Protection Lien. Pre-Petition Subordinate Note Agent, on behalf of the Pre-Petition Subordinate Note Adequate Protection Parties, shall be granted for their benefit, effective and perfected as of the date of entry of this Interim Order and without the necessity of the execution or filing of mortgages, security agreements, pledge agreements, financing statements or other agreements, and solely to the extent of the diminution in value of their interests in the Pre-Petition Subordinate Note Collateral on account of the Borrower's use of such Pre-Petition Subordinate Note Collateral, the imposition of the automatic stay and the subordination to the Carve-Out (collectively, the "Pre-Petition Subordinate Note Diminution in Value"), a security interest in and lien on the Pre-Petition Subordinate Note Collateral (together, the "Pre-Petition Subordinate Note Adequate Protection Liens"), subject and subordinate only to (i) the Carve-Out, (ii) Permitted Liens, (iii) the liens of Agent and DIP Lenders securing all Revolving Obligations arising under or in connection with the Credit Agreement, the other Transaction Documents and this Interim Order in and upon the Collateral, including, without limitation, the Revolving Loan A/L Replacement Liens; and (iv) the Term Loan Adequate Protection Liens; provided that, the Pre-Petition Subordinate Note Adequate Protection Liens shall only encumber the Avoidance Actions upon the entry of the Final Order.

        (ii)    Pre-Petition Subordinate Note Adequate Protection Superpriority Claim. Pre-Petition Subordinate Note Agent, on behalf of the Pre-Petition Subordinate Note Adequate Protection Parties, shall be granted, solely to the extent of the

Pre-Petition Subordinate Note Diminution in Value, a superpriority administrative expense claim pursuant to Section 507(b) of the Bankruptcy Code junior and subordinate only to the (A) Carve-Out, (B) DIP Loan Superpriority Claim, (C) Revolving Loan A/L Adequate Protection Superpriority Claim, and (D) the claims under section 507(b) of the Bankruptcy Code held by Term Loan Adequate Protection Parties; provided, that the Pre-Petition Subordinate Note Agent and the Pre-Petition Subordinate Noteholders shall not receive or retain any payments, property or other amounts in respect of such superpriority claims unless and until all Obligations under the Credit Agreement have indefeasibly been paid in cash in full; provided further, that prior to the entry of the Final Order, the superpriority administrative expense claim granted to the Pre-Petition Subordinate Note Agent, on behalf of the Pre-Petition Subordinate Note Adequate Protection Parties, shall not have any recourse to the proceeds of any Avoidance Actions.

      (iii)    <u>Financial Reporting to Pre-Petition Subordinate Note Adequate Protection Parties</u>.  Debtor shall provide to the Pre-Petition Subordinate Note Agent copies of (a) the Budget Compliance Report, (b) any Borrowing Base Certificates, and (c) any similar financial information substantially contemporaneous with the Debtor's submission of such financial reports to the Agent.

**Section 3.**      <u>**Default; Rights and Remedies; Relief from Stay.**</u>

      3.1    <u>Events of Default</u>.  The occurrence of any of the following events shall constitute an "<u>Event of Default</u>" under this Interim Order: (a) Debtor's failure to perform, in any respect, any of their obligations under this Interim Order; or (b) an "Event of Default" under the Credit Agreement or any of the other Transaction Documents.

3.2 <u>Rights and Remedies upon Event of Default</u>.  Upon the occurrence of and during the continuance of an Event of Default, (a) the Debtor shall be bound by all restrictions, prohibitions and other terms as provided in this Interim Order, the Credit Agreement and the other Transaction Documents, and (b) the Agent shall be entitled to take any act or exercise any right or remedy (subject to Section 3.4 below) as provided in this Interim Order or any Financing Document, as applicable, including, without limitation, declaring all Revolving Obligations immediately due and payable, accelerating the Revolving Obligations, ceasing to extend Revolving Loans, setting off any Revolving Obligations with Collateral or proceeds in Agent's possession, and enforcing any and all rights with respect to the Collateral.  Agent and DIP Lender shall have no obligation to lend or advance any additional funds to or on behalf of Debtor, or provide any other financial accommodations to Debtor, immediately upon or after the occurrence of an Event of Default or upon the occurrence of any act, event, or condition that, with the giving of notice or the passage of time, or both, would constitute an Event of Default.

3.3 <u>Expiration of Revolving Loan Commitment</u>.  Upon the earlier of (a) the expiration of Borrower's authority to borrow and obtain other credit accommodations from Agent and DIP Lender pursuant to the terms of this Interim Order and the Transaction Documents (except if such authority shall be extended by the Court with the prior written consent of Agent, which consent shall not be implied or construed from any action, inaction or acquiescence by Agent or DIP Lender), or (b) an Event of Default set forth in Section 3.1 above, Agent and DIP Lender (x) shall have no obligation whatsoever to make or extend any loans, advances, provide any financial or credit accommodations to Debtor or permit the use of Cash Collateral and (y) may declare all of the Revolving Obligations to be immediately due and

payable.  Agent and DIP Lender shall provide notice of the occurrence of an event specified in clauses (a) or (b) above to the Notice Parties.

        3.4    <u>Modification of Automatic Stay</u>.  The automatic stay provisions of section 362 of the Bankruptcy Code and any other restriction imposed by an order of the Court or applicable law are hereby modified without further notice, application or order of the Court to the extent necessary to permit Agent and DIP Lender to perform any act authorized or permitted under or by virtue of this Interim Order or the Transaction Documents, as applicable, including, without limitation, (a) to implement the post-petition financing arrangements authorized by this Interim Order and pursuant to the terms of the Transaction Documents, (b) to take any act to create, validate, evidence, attach or perfect any lien, security interest, right or claim in the Collateral, (c) to assess, charge, collect, advance, deduct and receive payments with respect to the Pre-Petition Obligations or the Post-Petition Obligations, as applicable, including, without limitation, all interests, fees, costs and expenses permitted under the Transaction Documents (subject to Section 5.12 of this Interim Order) and apply such payments to the Pre-Petition Obligation or Post-Petition Obligations pursuant to the Transaction Documents and/or this Interim Order, as applicable, and (d) immediately upon the occurrence of an Event of Default, to take any action and exercise all rights and remedies provided to it by this Interim Order, the Transaction Documents or applicable law other than those rights and remedies against the Collateral as provided in the following sentence.  In addition, and without limiting the foregoing, upon the occurrence of an Event of Default and after providing five (5) business days (the "<u>Default Notice Period</u>") prior written notice (the "<u>Enforcement Notice</u>") to (i) counsel for the Debtor, (ii) counsel for the Committee (if appointed), (iii) the Pre-Petition Term Lenders, (iv) counsel for the Pre-Petition Subordinate Note Agent, and (v) the U.S. Trustee, the Agent, acting

on behalf of itself and the DIP Lender, shall be entitled to take any action and exercise all rights and remedies provided to it by this Interim Order, the Transaction Documents or applicable law that Agent may deem appropriate in its sole discretion to proceed against and realize upon the Collateral or any other assets or properties of Debtor's Estate upon which the Agent, for the benefit of itself and the DIP Lender, has been or may hereafter be granted liens or security interests to obtain the full and indefeasible repayment of all Post-Petition Obligations. Notwithstanding anything to the contrary, any action that Agent is otherwise permitted to take pursuant to this Interim Order to (i) terminate the commitments under the Transaction Documents, (ii) accelerate the Revolving Loans, (iii) send blocking notices or activation notices pursuant to the terms of any deposit account control agreement, (iv) repay any amounts owing in respect of the Revolving Obligations (including, without limitation, fees, indemnities and expense reimbursements) and (v) cash collateralize any contingent Revolving Obligations of the Debtor pursuant to the Transaction Documents, in each case, shall not require any advance notice to the Debtor.

**Section 4.**      **Representations; Covenants; and Waivers.**

      4.1      Objections to Pre-Petition Obligations.

           (a)      Objections      to      Pre-Petition      Revolving      Obligations. Notwithstanding anything to the contrary in the Interim Order, any action, claim, defense, complaint, motion or other written opposition (hereinafter, an "Objection") that seeks to object to, challenge, contest or otherwise invalidate or reduce, whether by setoff, recoupment, counterclaim, deduction, disgorgement or claim of any kind: (a) the existence, validity or amount of the Pre-Petition Revolving Obligations as of the Petition Date, or (b) the extent, legality, validity, perfection or enforceability of Agent's and DIP Lender's pre-petition liens and security

interests in the Pre-Petition Collateral shall be properly filed with the Court (x) by any Committee (or a Chapter 7 trustee in the event this Case is converted to a Chapter 7 proceeding prior to the time period in which the Committee may file an Objection) within sixty (60) calendar days from the date of appointment of the Committee by the U.S. Trustee, or (y) by any party in interest with requisite standing within seventy-five (75) calendar days from the date of entry of this Interim Order; provided, however, that nothing herein shall permit any party to challenge the extent or validity of the Post-Petition Obligations for any disbursements in excess of the Pre-Petition Obligations. If any such Objection is timely and properly filed and a final, non-appealable order is entered by a court of competent jurisdiction sustaining and ordering some or all of the relief requested in such Objection, nothing in this Interim Order shall prevent the Court from granting appropriate relief with respect to the Pre-Petition Revolving Obligations or Agent's or DIP Lender's pre-petition liens on the Pre-Petition Collateral. If no Objection is timely and properly filed, or if an Objection is timely and properly filed but denied, (i) the Pre-Petition Revolving Obligations shall be deemed allowed in full, shall not be subject to any setoff, recoupment, counterclaim, deduction or claim of any kind, and shall not be subject to any further objection or challenge by any party at any time, and Agent's and DIP Lender's pre-petition liens on and security interest in the Pre-Petition Collateral shall be deemed legal, valid, perfected, enforceable, and non-avoidable for all purposes and of first and senior priority, subject to only the Carve-Out and Permitted Liens, and (ii) the Agent and the DIP Lender, and each of their respective participants, agents, officers, directors, employees, attorneys, professionals, successors, and assigns (each in their respective capacities as such) shall be deemed released and discharged from any and all claims and causes of action related to or arising out of the Pre-Petition Transaction Documents with respect to the Revolving Lenders or Revolving Loans and

shall not be subject to any further objection or challenge relating thereto or arising therefrom by any party at any time.  Nothing contained in this Section 4.1(a) or otherwise shall or shall be deemed or construed to impair, prejudice or waive any rights, claims or protections afforded to Agent or any DIP Lenders in connection with all post-petition Loans, and any other post-petition financial and credit accommodations provided by Agent and the DIP Lender to Debtor in reliance on section 364(e) of the Bankruptcy Code and in accordance with the terms and provisions of this Interim Order and the Transaction Documents.

    (b) <u>Objections to Pre-Petition Term Obligations</u>.  Notwithstanding anything to the contrary in the Interim Order, any action, claim, defense, complaint, motion or other written opposition (hereinafter, an "<u>Term Loan Objection</u>") that seeks to object to, challenge, contest or otherwise invalidate or reduce, whether by setoff, recoupment, counterclaim, deduction, disgorgement or claim of any kind: (a) the existence, validity or amount of the Pre-Petition Term Obligations, or (b) the extent, legality, validity, perfection or enforceability of Agent's and Pre-Petition Term Lenders' pre-petition liens and security interests in the Pre-Petition Collateral securing the Pre-Petition Term Loans, shall be properly filed with the Court (x) by any Committee (or a Chapter 7 trustee in the event this Case is converted to a Chapter 7 proceeding prior to the time period in which the Committee may file an Objection) within sixty (60) calendar days from the date of appointment of the Committee by the U.S. Trustee, or (y) by any party in interest with requisite standing within seventy-five (75) calendar days from the date of entry of this Interim Order.  If any such Term Loan Objection is timely and properly filed and a final, non-appealable order is entered by a court of competent jurisdiction sustaining and ordering some or all of the relief requested in such Term Loan Objection, nothing in this Interim Order shall prevent the Court from granting appropriate relief with respect to the

Pre-Petition Term Obligations or Agent's or Pre-Petition Term Lenders' pre-petition liens on the Pre-Petition Term Collateral securing the Pre-Petition Term Obligations. If no Term Loan Objection is timely and properly filed, or if a Term Loan Objection is timely and properly filed but denied, (i) the Pre-Petition Term Obligations shall be deemed allowed in full, shall not be subject to any setoff, recoupment, counterclaim, deduction or claim of any kind, and shall not be subject to any further objection or challenge by any party at any time, and Agent's or Pre-Petition Term Lenders' pre-petition liens on and security interest in the Pre-Petition Term Collateral securing the repayment of the Pre-Petition Term Obligations shall be deemed legal, valid, perfected, enforceable, and non-avoidable for all purposes, and (ii) the Agent and the Pre-Petition Term Lenders, and each of their respective participants, agents, officers, directors, employees, attorneys, professionals, successors, and assigns (each in their respective capacities as such) shall be deemed released and discharged from any and all claims and causes of action related to or arising out of the Pre-Petition Transaction Documents with respect to the Pre-Petition Term Loans or Pre-Petition Term Lenders and shall not be subject to any further objection or challenge relating thereto or arising therefrom by any party at any time.

(c)    Objections to Pre-Petition Subordinate Note Obligations. Notwithstanding anything to the contrary in the Interim Order, any action, claim, defense complaint, motion or other written opposition (hereinafter, an "Subordinate Note Objection") that seeks to object to, challenge, contest or otherwise invalidate or reduce, whether by setoff, recoupment, counterclaim, deduction, disgorgement or claim of any kind: (a) the existence, validity or amount of the Pre-Petition Subordinate Note Obligations, or (b) the extent, legality, validity, perfection or enforceability of Pre-Petition Subordinate Note Agent's and Pre-Petition Subordinate Noteholders' pre-petition liens and security interests in the Pre-Petition Subordinate

Note Collateral shall be properly filed with the Court (x) by any Committee (or a Chapter 7 trustee in the event this Case is converted to a Chapter 7 proceeding prior to the time period in which the Committee may file an Objection) within sixty (60) calendar days from the date of appointment of the Committee by the U.S. Trustee, or (y) by any party in interest with requisite standing within seventy-five (75) calendar days from the date of entry of this Interim Order. If any such Subordinate Note Objection is timely and properly filed and a final, non-appealable order is entered by a court of competent jurisdiction sustaining and ordering some or all of the relief requested in such Subordinate Note Objection, nothing in this Interim Order shall prevent the Court from granting appropriate relief with respect to the Pre-Petition Subordinate Note Obligations or Pre-Petition Subordinate Note Agent's or Pre-Petition Subordinate Noteholders' pre-petition liens on the Pre-Petition Subordinate Note Collateral. If no Subordinate Note Objection is timely and properly filed, or if a Subordinate Note Objection is timely and properly filed but denied, (i) the Pre-Petition Subordinate Note Obligations shall be deemed allowed in full, shall not be subject to any setoff, recoupment, counterclaim, deduction or claim of any kind, and shall not be subject to any further objection or challenge by any party at any time, and Pre-Petition Subordinate Note Agent's or Pre-Petition Subordinate Noteholders' pre-petition liens on and security interest in the Pre-Petition Subordinate Note Collateral shall be deemed legal, valid, perfected, enforceable, and non-avoidable for all purposes, and (ii) the Pre-Petition Subordinate Note Agent and the Pre-Petition Subordinate Noteholders, and each of their respective participants, agents, officers, directors, employees, attorneys, professionals, successors, and assigns (each in their respective capacities as such) shall be deemed released and discharged from any and all claims and causes of action related to or arising out of the Pre-Petition

Subordinate Note Documents and shall not be subject to any further objection or challenge relating thereto or arising therefrom by any party at any time.

4.2    Debtor's Waivers.    At all times during this Case, and whether or not an Event of Default has occurred, the Debtor waives any right that they may have to seek further authority (a) to use Cash Collateral of Agent and DIP Lender or of Pre-Petition Term Lenders under section 363 of the Bankruptcy Code, (b) to obtain post-petition loans or other financial accommodations pursuant to section 364(c) or 364(d) of the Bankruptcy Code, other than as provided in this Interim Order or as may be otherwise expressly permitted pursuant to the Transaction Documents, (c) to challenge the application of any payments authorized by this Interim Order as pursuant to section 506(b) of the Bankruptcy Code, or to assert that the value of the Pre-Petition Collateral is less than the Pre-Petition Revolving Obligations, (d) to propose, support or have a plan of reorganization or liquidation that does not provide for the indefeasible payment in cash in full and satisfaction of all Post-Petition Obligations (other than unmatured indemnity obligations for which claims have not been asserted) on the effective date of such plan in accordance with the terms and conditions set forth in the Credit Agreement, or (e) to seek relief under the Bankruptcy Code, including without limitation, under section 105 of the Bankruptcy Code, to the extent any such relief would in any way restrict or impair the rights and remedies of Agent or any DIP Lender as provided in this Interim Order and the Transaction Documents or Agent's or any DIP Loan Lender's exercise of such rights or remedies; provided, however, that Agent may otherwise consent in writing, but no such consent shall be implied from any other action, inaction, or acquiescence by Agent or any DIP Lender.

4.3    Section 506(c) Claims.    Subject to entry of the Final Order granting such relief, no costs or expenses of administration which have or may be incurred in this Case shall be

charged against Agent or any DIP Lender, their respective claims or the Collateral pursuant to § 506(c) of the Bankruptcy Code without the prior written consent of Agent, and no such consent shall be implied from any other action, inaction or acquiescence by Agent or DIP Lender.

4.4    Collateral Rights.    Until all Revolving Obligations shall have been indefeasibly paid and satisfied in full in accordance with the terms of the Credit Agreement and the other Transaction Documents:

(a)    no other party shall foreclose any junior lien or claim in Collateral or right to repayments; and

(b)    upon and after the declaration of the occurrence of an Event of Default, and subject to Agent obtaining relief from the automatic stay as provided for herein to enforce its rights and remedies against the Collateral, in connection with a liquidation of any of the Collateral, Agent (or any of its employees, agents, consultants, contractors or other professionals) shall have the right, at the sole cost and expense of Debtor, to: (i) enter upon, occupy and use any real or personal property, fixtures, equipment, leasehold interests or warehouse arrangements owned or leased by Debtor and (ii) use any and all trademarks, trade names, copyrights, licenses, patents or any other similar assets of Debtor, which are owned by or subject to a lien of any third party and which are used by Debtor in their businesses.  Agent and DIP Lender will be responsible for the payment of any applicable fees, rentals, royalties or other amounts due such lessor, licensor or owner of such property for the period of time that Agent actually uses the equipment or the intellectual property (but in no event for any accrued and unpaid fees, rentals or other amounts due for any period prior to the date that Agent actually

occupies or uses such assets or properties or for any fees, rentals or other amounts that may become due following the end of Agent's occupation or use).

4.5    Releases.

Upon the entry of the Final Order, subject to Section 4.1 above, in consideration of Agent, DIP Lender and Pre-Petition Term Lenders permitting Debtor to use the Pre-Petition Collateral (including Cash Collateral) and providing other credit and financial accommodations to the Debtor pursuant to the provisions of the Transaction Documents and this Interim Order, Debtor, on behalf of itself and its successors and assigns, (collectively, the "Releasors"), shall, forever release, discharge and acquit Agent, DIP Lender, and each other Revolving Lender and their respective successors and assigns, and their present and former shareholders, affiliates, subsidiaries, divisions, predecessors, directors, officers, attorneys, employees and other representatives in their respective capacities as such (collectively, the "Pre-Petition Releasees") of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, of every kind, nature and description, including, without limitation, any so-called "lender liability" claims or defenses, that Releasors had, have or hereafter can or may have against Pre-Petition Releasees as of the date hereof, in respect of events that occurred on or prior to the date hereof with respect to the Debtor, the Obligations, Transaction Documents and any Loans or other financial accommodations made by Agent and/or the DIP Lender and/or any other Revolving Lender to Debtor pursuant to the Transaction Documents.  In addition, upon the repayment of all Revolving Obligations (as defined in the Credit Agreement) owed to the Agent and the DIP Lender by Debtor and termination of the rights and obligations arising under the Transaction Documents (which payment and termination shall be on terms and conditions acceptable to the Agent), the Agent

and the DIP Lender shall be released from any and all obligations, liabilities, actions, duties, responsibilities and causes of action arising or occurring in connection with or related to the Transaction Documents, this Interim Order or the Final Order (including without limitation any obligation or responsibility (whether direct or indirect, absolute or contingent, due or not due, primary or secondary, liquidated or unliquidated) to pay or otherwise fund the Carve-Out and/or the Professional Fee Carve-Out, on terms and conditions acceptable to the Agent, but for the avoidance of doubt, excluding any claims or causes of action for gross negligence or willful misconduct).

**Section 5.**      <u>Other Rights and Post-Petition Obligations</u>.

       5.1      <u>No Modification or Stay of This Interim Order</u>.  Notwithstanding (a) any stay, modification, amendment, supplement, vacating, revocation or reversal of this Interim Order, the Transaction Documents or any term hereunder or thereunder, (b) the failure to obtain a Final Order pursuant to Bankruptcy Rule 4001(c)(2), or (c) the dismissal or conversion of this Case (each, a "<u>Subject Event</u>"), (x) the acts taken by each of the Agent and the DIP Lender in accordance with this Interim Order, and (y) the Post-Petition Obligations incurred or arising prior to Agent's actual receipt of written notice from Debtor expressly describing the occurrence of such Subject Event shall, in each instance, be governed in all respects by the original provisions of this Interim Order, and the acts taken by Agent and DIP Lender in accordance with this Interim Order, and the liens granted to Agent and DIP Lender in the Collateral, and all other rights, remedies, privileges, and benefits in favor of Agent and DIP Lender pursuant to this Interim Order and the Transaction Documents shall remain valid and in full force and effect pursuant to section 364(e) of the Bankruptcy Code.  For purposes of this Interim Order, the term "appeal", as used in section 364(e) of the Bankruptcy Code, shall be construed to mean any

proceeding for reconsideration, amending, rehearing, or re-evaluating this Interim Order by this Court or any other tribunal.

       5.2     <u>Power to Waive Rights; Duties to Third Parties</u>.  Agent shall have the right to waive any of the terms, rights and remedies provided or acknowledged in this Interim Order that are in favor of Agent, DIP Lender, or Pre-Petition Term Lender (the "<u>DIP Lender Rights</u>"), and shall have no obligation or duty to any other party with respect to the exercise or enforcement, or failure to exercise or enforce, any DIP Lender Right(s).  Any waiver by Agent of any DIP Lender Rights shall not be or constitute a continuing waiver.  Any delay in or failure to exercise or enforce any DIP Lender Right shall neither constitute a waiver of such DIP Lender Right, subject Agent or any DIP Lender to any liability to any other party, nor cause or enable any party other than the Debtor to rely upon or in any way seek to assert as a defense to any obligation owed by the Debtor to Agent or any DIP Lender.

       5.3     <u>Disposition of Collateral</u>.  Debtor shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the Collateral, other than pursuant to the terms of the Credit Agreement and the Budget, without the prior written consent of Agent (and no such consent shall be implied, from any other action, inaction or acquiescence by the Agent or DIP Lender) and, in each case, an order of this Court.

       5.4     <u>Inventory</u>.  Debtor shall not, without the prior written consent of the Agent, which consent shall not be unreasonably withheld, (a) enter into any agreement to return any inventory to any of their creditors for application against any pre-petition indebtedness under any applicable provision of section 546 of the Bankruptcy Code, or (b) consent to any creditor taking any setoff against any of its pre-petition indebtedness based upon any such return pursuant to section 553(b)(1) of the Bankruptcy Code or otherwise.

5.5    <u>Reservation of Rights</u>.    The terms, conditions and provisions of this Interim Order are in addition to and without prejudice to the rights of Agent and DIP Lender to pursue any and all rights and remedies under the Bankruptcy Code, the Transaction Documents or any other applicable agreement or law, including, without limitation, rights to seek adequate protection and/or additional or different adequate protection, to seek relief from the automatic stay, to seek an injunction, to oppose any request for use of cash collateral or granting of any interest in the Collateral, as applicable, or priority in favor of any other party, to object to any sale of assets, and to object to applications for allowance and/or payment of compensation of Professionals or other parties seeking compensation or reimbursement from the Estate.

5.6    <u>Binding Effect</u>.

(a)    The provisions of this Interim Order and the Transaction Documents, the Post-Petition Obligations, the Revolving Loan A/L Adequate Protection Superpriority Claim, the DIP Loan Superpriority Claim and any and all rights, remedies, privileges and benefits in favor of each of the Agent and the DIP Lender provided or acknowledged in this Interim Order, and any actions taken pursuant thereto, shall be effective immediately upon entry of this Interim Order notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h) and 7062, shall continue in full force and effect, and shall survive entry of any such other order, including without limitation any order which may be entered confirming any plan of reorganization, converting the Case to any other chapter under the Bankruptcy Code, or dismissing the Case.

(b)    Any order dismissing the Case under section 1112 or otherwise shall be deemed to provide (in accordance with §§ 105 and 349 of the Bankruptcy Code) that (a) the DIP Loan Superpriority Claim and Agent's and DIP Lender's liens on and security interests

in the Collateral and all other claims, liens, adequate protections and other rights granted pursuant to the terms of this Interim Order shall continue in full force and effect notwithstanding such dismissal until the Revolving Obligations are indefeasibly paid and satisfied in full, and (b) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing all such claims, liens, protections and rights.

(c)     In the event this Court modifies any of the provisions of this Interim Order or the Transaction Documents following a Final Hearing, such modifications shall not affect the rights or priorities of Agent and DIP Lender pursuant to this Interim Order with respect to the Collateral or any portion of the Revolving Obligations which arises or is incurred or is advanced prior to such modifications, and this Interim Order shall otherwise remain in full force and effect to such extent.

(d)     This Interim Order shall be binding upon Debtor, all parties in interest in the Case and their respective successors and assigns, including any trustee or other fiduciary appointed in the Case or any subsequently converted bankruptcy case(s) of any Debtor. This Interim Order shall also inure to the benefit of Debtor, Agent, DIP Lender, Pre-Petition Term Lenders, Pre-Petition Subordinate Note Agent, Pre-Petition Subordinate Noteholders and each of their respective successors and assigns.

5.7     Restrictions on Cash Collateral Use, Additional Financing, Plan Treatment.

(a)     All post-petition advances, loans and other financial accommodations under the Credit Agreement and the other Transaction Documents are made in reliance on this Interim Order and there shall not at any time be entered in the Case, or in any subsequently converted case under chapter 7 of the Bankruptcy Code, any order (other than the

Final Order) which (a) authorizes the use of cash collateral of Debtor in which Agent or DIP Lender have an interest, or the sale, lease, or other disposition of property of Debtor's Estate in which Agent or DIP Lender have a lien or security interest, except as expressly permitted hereunder or in the Transaction Documents, or (b) authorizes under section 364 of the Bankruptcy Code the obtaining of credit or the incurring of indebtedness secured by a lien or security interest which is equal or senior to a lien or security interest in property in which Agent or DIP Lender hold a lien or security interest, or which is entitled to priority administrative claim status which is equal or superior to that granted to Agent and DIP Lender herein; unless, in each instance (x) Agent shall have given its express prior written consent with respect thereto, no such consent being implied from any other action, inaction or acquiescence by Agent or DIP Lender, or (y) such other order requires that all Revolving Obligations shall first be indefeasibly paid and satisfied in full in accordance with the terms of the Credit Agreement and the other Transaction Documents (other than unmatured indemnity obligations for which claims have not been asserted), including, without limitation, all debts and obligations of Debtor to Agent and DIP Lender which arise or result from the obligations, loans, security interests and liens authorized herein, on terms and conditions acceptable to Agent. The security interests and liens granted to or for the benefit of Agent and DIP Lender hereunder and the rights of Agent and DIP Lender pursuant to this Interim Order and the Transaction Documents with respect to the Revolving Obligations and the Collateral are cumulative and shall not be altered, modified, extended, impaired, or affected by any plan of reorganization or liquidation of Debtor and, if Agent shall expressly consent in writing that the Post-Petition Obligations shall not be repaid in full upon confirmation thereof, shall continue after confirmation and consummation of any such plan.

5.8     No Owner/Operator Liability.  Subject to the entry of the Final Order granting such relief, neither the Agent nor DIP Lender shall be deemed to be in control of the operations of the Debtor or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtor (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 et seq., as amended, or any similar federal or state statute).

5.9     Marshalling.  Subject to entry of the Final Order granting such relief, in no event shall Agent or DIP Lender be subject to the equitable doctrine of "marshalling" or any similar doctrine with respect to the Collateral.  Agent and DIP Lender shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and, subject to entry of the Final Order, the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to Agent or DIP Lender with respect to proceeds, products, offspring or profits of any of the Collateral, as applicable.

5.10     Right of Setoff.  To the extent any funds were on deposit with Agent as of the Petition Date, including, without limitation, all funds deposited in, or credited to, an account of Debtor with Agent or DIP Lender immediately prior to the filing of the Case (regardless of whether, as of the Petition Date, such funds had been collected or made available for withdrawal by any such Debtor), such funds (the "Deposited Funds") are subject to rights of setoff.  By virtue of such setoff rights, the Deposited Funds are subject to a lien in favor of Agent or the applicable DIP Lender pursuant to §§ 506(a) and 553 of the Bankruptcy Code.

5.11     Right to Credit Bid.  The Agent, on behalf of itself and the DIP Lender, shall have the right, upon entry of the Final Order, to "credit bid" the amount of its and their claims that are Revolving Obligations arising under the terms of the Transaction Documents,

during any sale of all or substantially all of the Debtor's assets, including without limitation, sales occurring pursuant to section 363 of the Bankruptcy Code or included as part of any restructuring plan subject to confirmation under section 1129(b)(2)(A)(ii)-(iii) of the Bankruptcy Code.

      5.12   Payment and Review of Lender Fees and Expenses. Debtor shall pay all fees required or necessary for the Debtor's performance of its obligations under the Credit Agreement, as applicable, including, without limitation, the non-refundable payment to the Agent, the DIP Lender, and the Pre-Petition Term Lenders, as the case may be, of the reasonable fees and expenses (including without limitations professional fees and legal fees and expenses) set forth in the Transaction Documents, whether incurred before or after the Petition Date; provided, that all such fees and expenses shall be subject to a ten (10) business day period of review for the reasonableness thereof by the U.S. Trustee, the counsel for the Debtor, and the the counsel for the Committee (if any), it being understood that any statements or invoices for such fees and expenses shall not be required to be maintained in accordance with the U.S. Trustee Guidelines, nor shall any such counsel or other professional be required to file any interim or final fee applications with the Court or otherwise seek Court's approval of any such payments, unless, within such ten (10) business day period commencing on the date of delivery of such statements or invoices, the Debtor, the U.S. Trustee or the Creditors' Committee serve a written objection upon the requesting party, in which case, the Debtor shall (i) immediately upon expiration of the ten (10) business day period, commencing on the date of delivery of such statements or invoices, pay only such amounts that are not the subject of any objection and (ii) pay the balance of such statements or invoices at such time and in such amount as subsequently

agreed to by the requesting party and any objecting party or as otherwise ordered by the Court to be paid.

      5.13   <u>Term; Termination</u>.  Reserved.

      5.14   <u>Limited Effect</u>.  In the event of a conflict between the terms and provisions of any of the Transaction Documents and this Interim Order, the terms and provisions of this Interim Order shall govern.

      5.15   <u>Objections Overruled</u>.  All objections to the entry of this Interim Order are (to the extent not withdrawn, waived, withdrawn, or settled) hereby overruled.

      5.16   <u>Retention of Jurisdiction</u>.  The Court retains jurisdiction and power with respect to all matters arising from or related to the implementation or interpretation of this Interim Order, the Credit Agreement, and the other Transaction Documents.

**Section 6.**   <u>Final Hearing and Response Dates.</u>

      The Final Hearing on the Motion pursuant to Bankruptcy Rule 4001(c)(2) is scheduled for October 7, 2016, at 10:00 a.m., prevailing Eastern time, before this Court.  The Debtor shall promptly mail copies of this Interim Order to the Noticed Parties, and to any other party that has filed a request for notices with this Court and to any Committee after same has been appointed, or such Committee's counsel, if same shall have filed a request for notice.  The Debtor may serve the Motion and the Interim Order without the exhibits attached thereto as such exhibits are voluminous and available, free of charge, at http://www.upshotservices.com/njoy.  Such notice is deemed good and sufficient and that no further notice need be given.  Any party in interest objecting to the relief sought at the Final Hearing shall serve and file written objections, which objections shall be served upon (a) proposed counsel to the Debtor, Gellert Scali Busenkell & Brown, LLC, 1201 N. Orange Street, Suite 300, Wilmington, DE 19801, Attn: Mike Busenkell, Esq., Fax: (302)-425-5814; (b) counsel for the Agent, Otterbourg, P.C., 230 Park Avenue, New

York, New York 10169-0075, Attn: Daniel F. Fiorillo, Esq. and Chad B. Simon, Esq, Fax: (212)

682-6104; (c) counsel for the Pre-Petition Subordinate Note Agent, Kirkland & Ellis LLP, 300

North LaSalle, Chicago, Illinois 60654, Attn: David Eaton, Esq., Fax: (312)-862-2200; and (d)

the Office of the United States Trustee, c/o David Buchbinder, Esq., 844 King St., Ste. 2207,

Lockbox #35, Wilmington, DE  19801-0035; and shall be filed with the Clerk of the United

States Bankruptcy Court for the District of Delaware, in each case, to allow actual receipt of the

foregoing no later than 4:00 p.m., prevailing Eastern time, on September 30, 2016.


Dated: Wilmington, Delaware

      9/21, 2016

                            THE HONORABLE CHRISTOPHER S. SONTCHI
                            UNITED STATES BANKRUPTCY JUDGE