# EXHIBIT 1

**Credit Agreement**

## RATIFICATION AND AMENDMENT AGREEMENT

This RATIFICATION AND AMENDMENT AGREEMENT (the "**Ratification Agreement**"), dated as of September 16, 2016, is by and among NJOY, INC., a Delaware corporation, as Debtor and Debtor-in-Possession (the "**Borrower**" or "**Debtor**"), and FLFC LENDING CO., as Revolving Lender and as administrative agent for the Revolving Lenders and Term Lenders (in such capacity, the "**Agent**").

W I T N E S S E T H:

WHEREAS, Borrower has commenced a case under Chapter 11 of the Bankruptcy Code (as defined herein) in the United States Bankruptcy Court for the District of Delaware and Borrower has retained possession of its assets and is authorized under the Bankruptcy Code to continue the operation of its businesses as a debtor-in-possession;

WHEREAS, prior to the commencement of the Chapter 11 Case (as defined below), Agent and Revolving Lenders made loans and advances and provided other financial or credit accommodations to Borrower secured by substantially all assets and properties of Borrower as set forth in the Pre-Petition Transaction Documents (as defined below);

WHEREAS, Borrower is requesting that the Bankruptcy Court enter a Financing Order (defined below) pursuant to which Agent and Revolving Lenders may make post-petition loans and advances, and provide other financial accommodations, to Borrower secured by substantially all the assets and properties of Borrower as set forth in the Financing Order and the Transaction Documents (as defined below);

WHEREAS, Borrower has requested that Agent and Revolving Lenders make post-petition loans and advances and provide other financial or credit accommodations to Borrower and make certain amendments to the Pre-Petition Credit Agreement (as defined below) and the other Pre-Petition Transaction Documents (as defined below), and Agent and Lenders are willing to do so, subject to the terms and conditions contained herein; and

WHEREAS, Borrower desires to reaffirm its obligations to Agent and Revolving Lenders pursuant to the Pre-Petition Transaction Documents and acknowledge its continuing liabilities to Agent and Revolving Lenders thereunder in order to induce Agent and Revolving Lenders to make such post-petition loans and advances, and provide other financial accommodations, to Borrower secured by substantially all the assets and properties of Borrower set forth in the Financing Order.

NOW, THEREFORE, in consideration of the foregoing, the mutual covenants and agreements contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Agent, Lenders and Debtor mutually covenant, warrant and agree as follows:

1.    DEFINITIONS.

1.1    Additional Definitions. As used herein, the following terms shall have the respective meanings given to them below and the Pre-Petition Credit Agreement and the other

Pre-Petition Transaction Documents shall be deemed and are hereby amended to include, in addition and not in limitation, each of the following definitions:

> (a) **"Adequate Protection Liens"** means, collectively, the adequate protection liens as each is defined in the Financing Order.

> (b) **"Bankruptcy Court"** means the United States Bankruptcy Court or the United States District Court for the District of Delaware.

> (c) **"Bankruptcy Code"** means the United States Bankruptcy Code, being Title 11 of the United States Code as enacted in 1978, as the same has heretofore been or may hereafter be amended, recodified, modified or supplemented, together with all rules, regulations and interpretations thereunder or related thereto.

> (d) **"Bankruptcy Events"** means the commencement of the Chapter 11 Case, the events and conditions leading up to the commencement of the Chapter 11 Case, the occurrence and existence of any defaults under agreements that have no effect under the terms of the Bankruptcy Code as a result of the commencement thereof.

> (e) **"Budget Reserve"** means an amount or amounts determined by Agent in its discretion to account for (i) any unpaid administrative expense claims of the Borrower or other priority claims in the Chapter 11 Case that, in Agent's determination, may require payment prior to the payment in full of all Revolving Obligations, and (ii) the amount of any liens or claims in or against the Collateral that are pari passu with or senior to any liens and claims of Agent and Revolving Lenders, each of the forgoing in an amount as determined by Agent in its discretion. The Agent shall provide the Borrower with one (1) Business Days' notice prior to the implementation of any new Budget Reserve following the Closing Date or any change in the methodology on the calculation of an existing Budget Reserve (provided, however, that failure to provide such notice shall not preclude the effectiveness of such Budget Reserve).

> (f) **"Carve Out Expenses"** shall have the meaning attributed to such term in the Financing Order.

> (g) **"Chapter 11 Case"** means the case under Chapter 11 of the Bankruptcy Code commenced by Debtor which is being administered under the Bankruptcy Code and are pending in the Bankruptcy Court.

> (h) **"Committee"** means any official committee of unsecured creditors in the Chapter 11 Case pursuant to Section 1102 of the Bankruptcy Code.

> (i) **"Credit Agreement"** means the Pre-Petition Credit Agreement as ratified, amended, supplemented and otherwise modified by the Ratification Agreement, as the same now exists or may hereafter be amended from time to time.

> (j) **"Debtor"** mean Borrower, as Debtor and Debtor-in-Possession in the Chapter 11 Case.

(k)    "**Financing Order**" means the Interim Financing Order, the Permanent Financing Order and such other orders relating thereto or authorizing the granting of credit by Agent and Lenders to Borrower on an emergency, interim or permanent basis pursuant to Section 364 of the Bankruptcy Code as may be issued or entered by the Bankruptcy Court in the Chapter 11 Case.

(l)    "**Interim Financing Order**" means, the order of the Bankruptcy Court entered in the Chapter 11 Case after an interim hearing in form and substance satisfactory to the Agent in its sole discretion, together with all extension, modifications, and amendments thereto consented to by the Agent, which, among other matters but not by way of limitation, authorizing, on an interim basis, the Borrower to execute and perform under the terms of the Pre-Petition Transaction Documents, as amended and supplemented by the terms and conditions of the Ratification Agreement.

(m)    "**Permanent Financing Order**" means, the order of the Bankruptcy Court entered in the Chapter 11 Case after a final hearing of the Bankruptcy Court, which order shall be in form and substance satisfactory to the Agent in its sole discretion and from which no appeal or motion to reconsider has been filed, together with all extensions, modifications and amendments thereto, consented to by the Agent, which among other matters, but not by way of limitation, authorizing the Borrower to obtain credit, incur the Post-Petition Obligations, and grant Liens therefor and granting super-priority expense claims to Agent and Revolving Lenders with respect to all obligations due Agent and Revolving Lenders, subject to no priority claim or administrative expenses of the Chapter 11 Case or any other entity (other than as specifically set forth in the Financing Order).

(n)    "**Petition Date**" means the date of the commencement of the Chapter 11 Case.

(o)    "**Post-Petition Collateral**" means, collectively, all now existing and hereafter acquired real and personal property of Debtor's estate, wherever located, of any kind, nature or description, including any such property in which a lien is granted to Agent pursuant to the Transaction Documents, the Financing Order or any other order entered or issued by the Bankruptcy Court, and shall include, without limitation:

(i)    all of the Pre-Petition Collateral;

(ii)    all Accounts, Deposit Accounts, Instruments, Documents, Chattel Paper (whether Tangible Chattel Paper or Electronic Chattel Paper), Goods (including Inventory, Equipment, Fixtures and Motor Vehicles), Money, Payment Intangibles, Software, customer lists and other General Intangibles and all Letter-of-Credit Rights;

(iii)    the shares of common stock and preferred stock, or partnership, membership and other ownership interests, now or hereafter owned by the Obligors (collectively, the "**Pledged Equity**"), and all certificates evidencing the same, together with, in each case, all shares, securities, monies or property representing a dividend on any of the Pledged Equity, or representing a distribution or return of capital

upon or in respect of the Pledged Equity, or resulting from a split up, revision, reclassification or other like change of the Pledged Equity or otherwise received in exchange therefor, and any subscription warrants, rights or options issued to the holders of, or otherwise in respect of, the Pledged Equity (the Pledged Equity, together with all other certificates, shares, securities, properties, ownership interests, or moneys, dividends, distributions, returns of capital subscription, warrants, rights or options as may from time to time be pledged hereunder pursuant to this clause being herein collectively called the "**Equity Collateral**");

   (iv) all Investment Property, Financial Assets and Securities Accounts not covered by the foregoing clauses (ii) and (iii);

   (v) all Intellectual Property;

   (vi) all commercial tort claims now or hereafter described on in any Transaction Document or otherwise;

   (vii) all other tangible and intangible personal property of the Obligors, including all books, correspondence, credit files, records, invoices, tapes, cards, computer runs and other papers and documents owned by the Obligors (including any held for the Obligors by any computer bureau or service company from time to time acting for the Obligors);

   (viii) effective upon entry of a Permanent Financing Order, all claims, rights, interests, assets and properties recovered by or on behalf of Borrower or any trustee of Borrower (whether in the Chapter 11 Case or any subsequent case to which any Chapter 11 Case is converted), including, without limitation, all property recovered as a result of transfers or obligations avoided or actions maintained or taken pursuant to (among others) Sections 542, 544, 545, 547, 548, 549, 550, 551, 552 and 553 of the Bankruptcy Code; and

   (ix) to the extent not covered by the foregoing clauses, all Proceeds and products in whatever form of all or any part of the other Collateral, including all rents, profits, income and benefits and all proceeds of insurance and all condemnation awards and all other compensation for any event of loss with respect to all or any part of the other Collateral (together with all rights to recover and proceed with respect to the same), and all accessions to, substitutions for and replacements of all or any part of the other Collateral.

   (p) "**Post-Petition Obligations**" means all Obligations (as defined in the Pre-Petition Credit Agreement) of Debtor arising from, related to or in connection with any Revolving Loans on and after the Petition Date together with all other Obligations due and owing to Agent (exclusive of the principal or interest owed by Borrower in respect of any Term Loan) and whether arising on or after the conversion or dismissal of the Chapter 11 Case, or before, during and after the confirmation of any plan of reorganization in the Chapter 11 Case, and whether arising under or related to the Ratification Agreement, the Credit Agreement, the

other Transaction Documents, a Financing Order, by operation of law or otherwise, and whether incurred by Debtor as principal, surety, endorser, guarantor or otherwise and including, without limitation, all principal, interest, financing charges, letter of credit fees, unused line fees, servicing fees, line increase fees, debtor-in-possession facility fees, early termination fees, other fees, commissions, costs, expenses and attorneys', accountants' and consultants' fees and expenses incurred in connection with any of the foregoing. For the avoidance of doubt, the Post-Petition Obligations shall include that portion of the outstanding Pre-Petition Obligations owed to Agent and Revolving Lenders in connection with or related to the Revolving Loans, which have been "rolled-up" from time to time as provided in the Financing Order.

(q)     "**Pre-Petition Collateral**" means, collectively, (i) all "Collateral" as such term is defined in the Pre-Petition Credit Agreement as in effect immediately prior to the Petition Date, (ii) all "Collateral" and "Pledged Collateral" as such terms are defined in each of the other Pre-Petition Transaction Documents as in effect immediately prior to the Petition Date, and (iii) all other security for the Pre-Petition Obligations as provided in the Pre-Petition Credit Agreement and the other Pre-Petition Transaction Documents immediately prior to the Petition Date.

(r)     "**Pre-Petition Credit Agreement**" means the Credit Agreement, dated as of March 3, 2015, by and among Borrower, Lenders and Agent, as amended by the First Amendment to Credit Agreement, dated as of July 9, 2015, the Assignment Agreement, dated as of August 5, 2015, the Second Amendment to Credit Agreement, dated August 5, 2015, the Forbearance Agreement, Limited Waiver and Third Amendment to Credit Agreement (the "Forbearance Agreement"), dated September 24, 2015, the First Amendment to Forbearance Agreement and Fourth Amendment to Credit Agreement, dated September 30, 2015, the Second Amendment to Forbearance Agreement and Fifth Amendment to Credit Agreement, dated October 2, 2015, the Forbearance Extension Amendment, dated as of October 15, 2015, the Sixth Amendment to Credit Agreement, dated October 16, 2015, the Seventh Amendment to Credit Agreement, dated November 5, 2015, the Eighth Amendment to Credit Agreement, dated December 1, 2015, the Ninth Amendment to Credit Agreement, dated February 5, 2016, the Tenth Amendment to Credit Agreement, dated April 8, 2016, the Eleventh Amendment to Credit Agreement, dated as of May 6, 2016, the Twelfth Amendment to Credit Agreement, dated as of July 11, 2016, the Thirteenth Amendment to Credit Agreement, dated as of July 20, 2016, the Fourteenth Amendment to Credit Agreement dated as of August 11, 2016; the Fifteenth Amendment to Credit Agreement dated as of August 18, 2016, and the Sixteenth Amendment to Credit Agreement dated as of August 25, 2016, as in effect immediately prior to the Petition Date.

(s)     "**Pre-Petition Revolving Obligations**" means all Obligations (as such term is defined in the Pre-Petition Credit Agreement) arising at any time before the Petition Date in connection with or relating to each Revolving Loan, together with all other Obligations due and owing to Agent (exclusive of the principal or interest owed by Borrower in respect of any Term Loan) prior to the Petition Date.

(t)     "**Pre-Petition Term Obligations**" means all Obligations (as such term is defined in the Pre-Petition Credit Agreement) arising at any time before the Petition Date in connection with or relating to each Term Loan.

(u)    **"Pre-Petition Obligations"** means all Obligations (as such term is defined in the Pre-Petition Credit Agreement) arising at any time before the Petition Date.

(v)    **"Pre-Petition Transaction Documents"** means the Transaction Documents (as defined in the Pre-Petition Credit Agreement), as in effect immediately prior to the Petition Date.

(w)    **"Professionals"** means the Debtor's and any Committee's professionals, retained by either of them by final order of the Bankruptcy Court (which order has not been reversed, vacated or stayed unless such stay is no longer effective) under Sections 327, 328 or 1103(a) of the Bankruptcy Code.

(x)    **"Ratification Agreement"** means the Ratification and Amendment Agreement, dated as of September 16, 2016, by and among Borrower and Agent as the same may hereafter be amended, modified, supplemented, extended, renewed, restated or replaced.

(y)    **"Ratification Closing Date"** means the date on which all of the conditions precedent in Section 9 of the Ratification Agreement have been satisfied (or waived).

(z)    **"Revolving Obligations"** means, collectively, all Pre-Petition Revolving Obligations and all Post-Petition Obligations.

**1.2**    Amendments to Definitions.

(a)    Agent and Lenders.  All references to the terms "Agent" and "Lenders" shall include their respective successors and assigns.

(b)    Bankruptcy Law.  The definition of "Bankruptcy Law" in the Pre-Petition Credit Agreement is hereby deleted in its entirety and the following substituted therefor:

" **'Bankruptcy Law'** Title 11, U.S. Code, or any similar federal, foreign or state law for the relief of debtors."

(c)    Borrower and Debtor.  All references to the terms "Borrower" or "Debtor" in the Transaction Documents shall be deemed and each such reference is hereby amended to mean and include the Debtor, as defined herein, and its successors and assigns (including any trustee or other fiduciary hereafter appointed as Debtor's legal representative, as applicable, or with respect to Debtor or the property of the estate of Debtor whether under Chapter 11 of the Bankruptcy Code or any subsequent Chapter 7 case o and its successor upon conclusion of the Chapter 11 Case of Debtor, as the case may be).

(d)    Budget.  The definition of "Budget" in the Pre-Petition Credit Agreement is hereby deleted in its entirety and the following substituted therefor:

" **'Budget'** means the thirteen (13) week budget delivered to Agent in accordance with Section 5.3 of the Ratification Agreement (such initial Budget attached to the Ratification

Agreement as <u>Exhibit A</u>, in form and substance approved by the Agent in its sole discretion), together with any subsequent or amended budgets thereto delivered to Agent, in form and substance satisfactory to Agent in its sole discretion (each such subsequent budget, a "**Budget**"), in accordance with the terms and conditions of the Ratification Agreement."

       (e)    <u>Cash Interest Rate</u>. The definition of "Cash Interest Rate" in the Pre-Petition Credit Agreement is hereby deleted in its entirety and the following substituted therefor:

       " '**Cash Interest Rate**' means, with respect to Revolving Loans, thirteen percent (13%) per annum."

       (f)    <u>Collateral</u>. All references to the term "Collateral" in the Credit Agreement or the other Transaction Documents, or any other term referring to the security for the Pre-Petition Obligations, shall be deemed, and each such reference is hereby amended to mean, collectively, the Pre-Petition Collateral and the Post-Petition Collateral.

       (g)    <u>Current Interest Rate</u>. The definition of "Current Interest Rate" in the Pre-Petition Credit Agreement is hereby deleted in its entirety and the following substituted therefor:

       " '**Current Interest Rate**' means, with respect to Revolving Loans, a rate per annum equal to the Cash Interest Rate."

       (h)    <u>Debtor</u>. All references to Debtor, including, without limitation, to the term "Borrower" in the Credit Agreement or the other Transaction Documents shall be deemed, and each such reference is hereby amended, to mean and include the Debtor as defined herein, and its successors and assigns (including any trustee or other fiduciary hereafter appointed as its legal representative or with respect to the property of the estate of Debtor whether under Chapter 11 of the Bankruptcy Code or any subsequent Chapter 7 case and its successor upon conclusion of the Chapter 11 Case of Debtor).

       (i)    <u>Transaction Documents</u>. All references to the term "Transaction Documents" in the Credit Agreement or the other Transaction Documents shall be deemed, and each such reference is hereby amended, to include, in addition and not in limitation, the Ratification Agreement and all of the Pre-Petition Transaction Documents, as ratified, assumed and adopted by Borrower pursuant to the terms of the Ratification Agreement, as amended and supplemented thereby, and the Financing Order, as each of the same now exists or may hereafter be amended, modified, supplemented, extended, renewed, restated or replaced.

       (j)    <u>Credit Agreement</u>. All references to the term "Agreement" in the Pre-Petition Credit Agreement or the term "Credit Agreement" in the other Transaction Documents shall be deemed, and each such reference is hereby amended, to mean the Credit Agreement (as defined in the Ratification Agreement), and as ratified, assumed and adopted by Borrower pursuant to the terms hereof and the Financing Order.

(k) <u>Material Adverse Effect</u>. All references to the term "Material Adverse Effect," "material adverse effect" or "material adverse change" in the Credit Agreement, the Ratification Agreement or the other Transaction Documents shall be deemed, and each such reference is hereby amended, to add at the end thereof: "; <u>provided</u>, <u>that</u>, the Bankruptcy Events shall not, individually or collectively, constitute a Material Adverse Effect".

(l) <u>Obligations</u>. All references to the term "Obligations" in the Credit Agreement, the Ratification Agreement or the other Transaction Documents shall be deemed, and each such reference is hereby amended, to mean both the Pre-Petition Obligations and the Post-Petition Obligations.

(m) <u>Permitted Liens</u>. The definition of "Permitted Liens" in the Pre-Petition Credit Agreement is hereby amended by (i) deleting clauses, (c), (g), (k), (l), and (m) and substituting the term "Reserved," in each instance therefor; and (ii) adding the following clauses at the end thereof:

> ", (o) all Liens existing on the Petition Date that constituted "Permitted Liens" as defined in and under the Pre-Petition Credit Agreement to the extent such liens were legal, valid, binding, enforceable and non-avoidable as of the Petition Date, and are not otherwise subject to any defense, counterclaim, avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or any other applicable law, (p) the Adequate Protection Liens; and (q) Liens on the Collateral in respect of the Carve Out Expenses".

(n) <u>Revolving Loan Maturity Date</u>. The definition of "Revolving Loan Maturity Date" in the Pre-Petition Credit Agreement is hereby deleted in its entirety and the following substituted therefor:

> " '**Revolving Loan Maturity Date**' means the earliest to occur of (i) December 2, 2016, (ii) the confirmation of a plan of reorganization or liquidation for Borrower in the Chapter 11 Case, (iii) the consummation of the sale or sales of all or substantially all of the Borrower's assets and properties or of all equity interests in Debtor, (iv) the last date Borrower is authorized to Borrow funds under the Credit Agreement pursuant to the Interim Financing Order, unless the Permanent Financing Order has been entered prior to such date, and in such event, then the last date Borrower is authorized to Borrow funds under the Credit Agreement pursuant to the Permanent Financing Order, or (v) the occurrence of an Event of Default.

(o) <u>Revolving Loan PIK Amount</u>. The definition of "Revolving Loan PIK Amount" in the Pre-Petition Credit Agreement is hereby deleted in its entirety.

(p) <u>Revolving Loan PIK Interest Rate</u>. The definition of "Revolving Loan PIK Interest Rate" in the Pre-Petition Credit Agreement is hereby deleted in its entirety.

**1.3** <u>Interpretation</u>.

(a)     For purposes of the Ratification Agreement, unless otherwise defined or amended herein, including, but not limited to, those terms used or defined in the recitals hereto, all terms used herein shall have the respective meanings assigned to such terms in the Pre-Petition Credit Agreement, as amended, supplemented or otherwise modified by the Ratification Agreement.

(b)     All references to any term in the singular shall include the plural and all references to any term in the plural shall include the singular unless the context of such usage requires otherwise.

(c)     All terms not specifically defined herein which are defined in the Uniform Commercial Code, as in effect in the State of New York as of the date hereof, shall have the meaning set forth therein, except that the term "Lien" or "lien" shall have the meaning set forth in § 101(37) of the Bankruptcy Code.

## 2.    ACKNOWLEDGMENTS.

**2.1**    <u>Pre-Petition Obligations</u>.    The Borrower hereby acknowledges, confirms and agrees that, as of September 16, 2016, Borrower is indebted to (a) Agent and Revolving Lenders in respect of all Pre-Petition Revolving Obligations in the aggregate amount of not less than $3,283,893.21, consisting of Revolving Loans to Borrower made pursuant to the Pre-Petition Transaction, together with interest accrued and accruing thereon, and (b) Agent and Term Lenders in respect of all Pre-Petition Term Obligations in the aggregate amount of not less than $16,103,731, consisting of Term Loans to Borrower made pursuant to the Pre-Petition Transaction Documents, together with interest accrued and accruing thereon, and (c) other charges now or hereafter owed by Borrower to Agent and Lenders, all of which are unconditionally owing by the Borrower to the Agent and Lenders, without offset, defense or counterclaim of any kind, nature and description whatsoever.

**2.2**    <u>Acknowledgment of Security Interests</u>.    Borrower hereby acknowledges, confirms and agrees that Agent, for the benefit of itself and the other Lenders, has and shall continue to have (a) valid, enforceable and perfected first priority and senior security interests in and liens upon all Pre-Petition Collateral heretofore granted to Agent pursuant to the Pre-Petition Transaction Documents as in effect immediately prior to the Petition Date to secure all of the Pre-Petition Obligations, and (b) valid and enforceable first priority and senior security interests in and liens upon all Post-Petition Collateral granted to Agent, for the benefit of itself and the other Lenders, under the Financing Order or hereunder or under any of the other Transaction Documents or otherwise granted to or held by Agent and Lenders, in each case, subject only to the Permitted Liens and the Carve Out Expenses (as such term is defined in the Financing Order).

**2.3**    <u>Binding Effect of Documents</u>.    Borrower hereby acknowledges, confirms and agrees that: (a) each of the Pre-Petition Transaction Documents to which it is a party prior to the Petition Date was duly executed and delivered to Agent and Lenders by Borrower and each is in full force and effect as of the date hereof, (b) the agreements and obligations of Borrower contained in the Pre-Petition Transaction Documents constitute the legal, valid and binding obligations of Borrower enforceable against it in accordance with the terms thereof, and

Borrower has no valid defense, offset or counterclaim to the enforcement of such obligations, and (c) Agent and Lenders are and shall be entitled to all of the rights, remedies and benefits provided for in (i) the Transaction Documents (subject to the entry and terms of the Financing Order) and (ii) the Financing Order.

3.    ADOPTION AND RATIFICATION.

3.1.    Borrower (a) ratifies, assumes, adopts and agrees to be bound by all of the Pre-Petition Transaction Documents to which it is a party and (b) agrees to pay all of the Pre-Petition Obligations in accordance with the terms of such Pre-Petition Transaction Documents, as supplemented and amended by the Ratification Agreement, and in accordance with the Financing Order.  All of the Pre-Petition Transaction Documents are hereby incorporated herein by reference and hereby are and shall be deemed adopted and assumed in full by Borrower, as Debtor and Debtor-in-Possession and considered as agreements between Borrower, on the one hand, and Agent and Lenders, on the other hand.  Borrower hereby ratifies, restates, affirms and confirms all of the terms and conditions of the Pre-Petition Transaction Documents, as amended and supplemented pursuant hereto and the Financing Order, and Borrower, as Debtor and Debtor-in-Possession, agrees to be fully bound by the terms of the Transaction Documents.

3.2.    Notwithstanding anything in Section 3.1 of the Ratification Agreement to the contrary, the Agent and Lenders acknowledge that certain Events of Default have occurred and are continuing under the Pre-Petition Credit Agreement and the other Pre-Petition Transaction Documents, including, but not limited to, as a result of the commencement of the Chapter 11 Case and the other Bankruptcy Events (the "**Existing Defaults**").  From and after the Ratification Closing Date, for purposes of determining whether any Default or Event of Default has occurred under the Credit Agreement or any other Transaction Document, the Agent and the Lenders hereby agree that all such Existing Defaults shall be excluded from any determination of such Default or Event of Default  and only Defaults and Events of Default (as provided  in the Credit Agreement) occurring from and after the Ratification Closing Date shall constitute Defaults and Events of Default under the Credit Agreement.  For the avoidance of doubt, none of the Existing Defaults shall give any right to the Agent or any Lender to exercise or enforce any of their respective rights or remedies under the Credit Agreement or the other Transaction Documents on the basis of the occurrence and/or existence of any one or more of the Existing Defaults.

4.    GRANT OF SECURITY INTEREST.

As additional collateral security for the prompt performance, observance and payment in full of all of the Revolving Obligations, Borrower, as Debtor and Debtor-in-Possession, hereby grants, pledges and assigns to the Agent, for the benefit of itself and the other Revolving Lenders, and also confirms, reaffirms and restates the prior grant to Agent, for the benefit of itself and the other Revolving Lenders of, continuing senior priority security interests in and liens upon, and rights of setoff against, all of the Collateral.

**5.**    ADDITIONAL REPRESENTATIONS, WARRANTIES AND COVENANTS.

In addition to the representations, warranties and covenants made by Borrower to Agent and Lenders under the Credit Agreement and the other Transaction Documents (in each case, for the avoidance of doubt, as amended by or provided in the Ratification Agreement) Borrower hereby represents, warrants and covenants to Agent and Revolving Lenders the following (which shall survive the execution and delivery of the Ratification Agreement), the truth and accuracy of which, or compliance with, to the extent such compliance does not violate the terms and provisions of the Bankruptcy Code, shall be a continuing condition precedent to the making of Revolving Loans by Agent and Revolving Lenders:

**5.1**    Financing Order.  Borrower shall not seek to have any Financing Order vacated, modified, reversed on appeal, or vacated or modified by any order of the Bankruptcy Court (other than as consented to by Agent).

**5.2**    Use of Proceeds.  All Revolving Loans provided by Agent or any Revolving Lender to Borrower pursuant to the Financing Order, the Credit Agreement or otherwise, shall only be used by Debtor to the extent (a) provided for in the Budget or (b) authorized by the Bankruptcy Court and consented to by the Agent for (i) general working capital needs, and (ii) the repayment of the Revolving Obligations.

**5.3**    Budget.

(a)    Borrower has prepared and delivered to Agent and Revolving Lenders a thirteen (13) week post-petition Budget.  The Budget has been thoroughly reviewed by Borrower and its management and sets forth, for the periods covered thereby, projected weekly cash receipts and cash disbursements for each week (each such week ending on Saturday) of the thirteen (13) consecutive week period commencing with the week ending September 25, 2016. Subsequent thirteen (13) week budgets shall be delivered to the Agent and Revolving Lenders, in form and substance satisfactory to the Agent and Revolving Lenders in their sole discretion, on or before the date that is twenty-one days prior to the last date of the Budget or more frequently as Agent may request in its sole discretion.  Upon approval by the Agent and Lenders, such budget shall be deemed to be the Budget for the next thirteen (13) week period.

(b)    Not later than 3:00 p.m. (Eastern time) on the Tuesday of each week commencing with the Tuesday following the first full week ending after the Petition Date, Borrower shall furnish to Agent a weekly report (the "**Budget Compliance Report**") that (i) sets forth as of the preceding Saturday of each such week on a cumulative basis from the Petition Date until the second (2nd) full week ending on a Saturday after the Petition Date and then on a rolling two (2) week basis at all times thereafter (each such period referred to herein as a "**Measurement Period**"), the actual results for the following line items set forth in the Budget: (A) total cash receipts, and (B) total cash disbursements, noting therein variances from values set forth for such periods in the Budget, and (ii) an explanation for all such variances greater than five percent (5%) in any line items or sub-line items, certified by an officer of the Borrower. Such report/reconciliation shall also note any variances with values set forth in the Budget as of the day of such report/reconciliation.

(c)     Debtor acknowledges, confirms and agrees that the following covenants shall be tested pursuant to the Budget Compliance Report for the applicable Measurement Period ending as of each Saturday, with such testing commencing on the Tuesday following the first full two (2) weeks ending after the Petition Date: (i) the actual total cash receipts shall not be less than ninety five percent (95%) of the projected total cash receipts set forth in the Budget in respect of such Measurement Period, and (ii) the actual total cash disbursements shall not be more than one hundred and five percent (105%) of the projected total cash disbursements set forth in the Budget in respect of such Measurement Period (other than with respect to any and all professional fees and expenses, which shall be tested on an aggregate basis solely with respect to such line item).

(d)     Debtor hereby confirms, acknowledges and agrees that, unless waived in writing by Agent, (i) a failure to maintain the deviations in the Budget in an amount equal to or less than the percentage set forth in Section 5.3(c) hereof shall constitute a material deviation from the Budget and an additional Event of Default (each, a "**Material Budget Deviation**") and (ii) the failure to deliver any reports with respect to any Budget, in form and substance satisfactory to Agent in its sole discretion, as provided in Section 5.3(b) hereof shall constitute an Event of Default. Notwithstanding any approval by Agent or any Revolving Lender of the Budget or any subsequent or amended Budget(s), Agent and Revolving Lenders will not, and shall not be required to, provide any Revolving Loans to Borrower pursuant to the Budget, but shall only provide Revolving Loans in accordance with the terms and conditions set forth in the Credit Agreement as amended by the Ratification Agreement, the other Transaction Documents and the Financing Order. Agent and Revolving Lenders are relying upon the Borrower's delivery of, and compliance with, the Budget in accordance with this Section 5.3 in determining to enter into the post-petition financing arrangements provided for herein.

(e)     Notwithstanding any projected amounts set forth in the Budget relating to the costs and expenses of Agent and the other Revolving Lenders that are reimbursable by Borrower or any other amounts owing by Borrower to Agent and the Revolving Lenders (including, without limitation reasonable attorneys and consulting fees and expenses) in accordance with the Credit Agreement and the other Transaction Documents, such projections shall not limit, impair, modify or waive the Debtor's obligation to pay the actual amounts due to Agent and/or the other Revolving Lenders in respect of such costs, expenses and other amounts owing to Agent and Revolving Lenders in accordance with the Credit Agreement and the other Transaction Documents and the actual amounts paid in respect of such costs, expenses and other amounts other shall not be subject to the variance compliance set forth in Section 5.3(c).

(f)     Notwithstanding anything herein to the contrary, the Budget may be updated, modified or supplemented (with the consent and/or at the request of the Agent) from time to time, and each such updated, modified or supplemented budget shall be approved by, and in form and substance satisfactory to, the Agent in its sole discretion and no such updated, modified or supplemented budget shall be effective until so approved and once so approved shall be deemed the Budget; provided, that, (i) Borrower shall not be permitted to update, modify or supplement the Budget until after the last day of the fourth (4th) full week following the Petition Date; and (ii) during the eighth (8th) week of the Budget, the Borrower shall submit a budget for the next successive thirteen week period to the Agent, which budget shall be in (A) form substantially similar to the previous initial Budget (or otherwise in form acceptable to Agent in

its sole discretion) and (B) substance acceptable to the Agent in its sole discretion; provided, further, that, in the event that the Agent and the Borrower cannot, while acting diligently, reasonably, and in good faith, agree as to an updated, modified or supplemented budget, such disagreement shall give rise to an Event of Default hereunder once the period covered by the most recent Budget has terminated. Each Budget delivered to the Agent shall be accompanied by such supporting documentation as requested by the Agent in its sole discretion. Each Budget shall be prepared in good faith based upon assumptions which the Borrower believes to be reasonable and are satisfactory to the Agent in its sole discretion.

### 5.4   Sale Milestones.

(a)   On or before the Petition Date, the Debtor shall file a motion, in form and substance satisfactory to the Agent, requesting approval from the Bankruptcy Court to retain a nationally-recognized investment banking firm on terms and conditions acceptable to Agent in its discretion ("**Investment Banker**") to conduct the marketing and sale process for all or substantially all of the assets of Borrower;

(b)   On or before the fifth (5th) day following the Petition Date, the Bankruptcy Court shall have entered an order, in form and substance satisfactory to Agent, authorizing the retention of the Investment Banker on terms and conditions acceptable to Agent in its discretion;

(c)   On or before the twentieth (20th) day following the Petition Date, Debtor shall obtain the entry of an order of the Bankruptcy Court, in form and substance satisfactory to Agent, (i) approving the bidding procedures for the sale of all or substantially all of the Debtor's assets in accordance with Section 363 of the Bankruptcy Code (the "Sale"), including, without limitation, a form of asset purchase agreement acceptable to Agent in its sole discretion, and (ii) providing that all cash proceeds generated by such Sale(s), less reasonable out of pocket fees, costs and expenses directly arising from the closing of such Sale(s), subject to approval by Agent (as defined in the Financing Order) shall be remitted to Agent for application against, and in permanent reduction of, the Revolving Obligations (the "**Bid Procedures Order**");

(d)   On or before the forty-fifth (45th) day following the Petition Date, Debtor shall conduct an auction (the "**Auction**"), in accordance with the Bid Procedures Order, if more than one bona fide offer is received meeting the conditions set forth in the Bid Procedures Order;

(e)   On or before the fifty-fifth (55th) day following the Petition Date, the Bankruptcy Court shall have entered an order (the "**Sale Order**"), which order shall provide for, among other things, distribution of sale proceeds to Agent in a minimum cash amount not less than the amount required to satisfy the Revolving Obligations owed to Agent and Revolving Lenders, and otherwise in form and substance satisfactory to Agent, approving the sale or sales of all or substantially of the Debtor's assets, on terms and conditions acceptable to Agent, and authorizing and directing that all proceeds from the Sale(s) be remitted to Agent for application against and permanent reduction of the Revolving Obligations;

(f).    On or before the sixtieth (60th) day following the Petition Date, the Debtor shall have consummated the Sale(s); and

(g)    Debtor confirms, acknowledges and agrees that notwithstanding anything to the contrary contained in the Credit Agreement, any failure to comply with the requirements set forth in this Section 5.4 shall constitute an additional immediate Event of Default under the Transaction Documents.

**5.5**    Ratification of Deposit Account Control Agreement.    To the extent Agent deems it necessary in its reasonable discretion and promptly upon Agent's request, Borrower shall promptly provide Agent with evidence, in form and substance satisfactory to Agent, that the Deposit Account Control Agreements (as defined in the Financing Order) and other deposit account arrangements provided for under the Credit Agreement and the other Transaction Documents have been ratified and amended by the parties thereto, or their respective successors in interest to reflect the commencement of the Chapter 11 Case, that Borrower, as Debtor and Debtor-in-Possession, is the successor in interest to Borrower, that the Obligations include both the Pre-Petition Obligations and the Post-Petition Obligations, that the Collateral includes both the Pre-Petition Collateral and the Post-Petition Collateral as provided for in the Ratification Agreement.

**5.6**    ERISA.    Borrower hereby represents and warrants with, to and in favor of Agent and Lenders that (a) there are no liens, security interests or encumbrances upon, in or against any assets or properties of Borrower arising under ERISA, whether held by the Pension Benefit Guaranty Corporation (the "**PBGC**") or the contributing sponsor of, or a member of the controlled group thereof, any pension benefit plan of Borrower and (b) no notice of lien has been filed by the PBGC (or any other Person) pursuant to ERISA against any assets or properties of Borrower.

**5.7**    Maximum Outstanding Loans and Letters of Credit.

(a)    Notwithstanding anything to the contrary contained in the Credit Agreement or the other Transaction Documents, Agent and Lenders shall have no obligation whatsoever to make any Loan to the Borrower to the extent that, immediately after giving effect to the making of such Loan, the then aggregate outstanding amount of all Revolving Loans would exceed at any time $6,000,000 as determined by Agent in its sole discretion.

(b)    In the event that the aggregate principal amount of all Revolving Loans outstanding exceed $6,000,000, such event shall not limit, waive or otherwise affect any rights of the Agent or the Lenders in such circumstances or on any future occasions and Borrower shall, upon demand by the Agent, which may be made at any time or from time to time, immediately repay the entire amount of any such excess(es) for which payment is demanded.  Failure to repay such amount shall constitute an Event of Default.

**6.**    DIP FACILITY FEE.

Borrower shall pay to Agent, for the account of Revolving Lenders on a pro rata basis according to their respective Revolving Commitments, a debtor-in-possession financing facility fee, in the amount of $60,000, on account of the financing provided by Agent and Revolving

Lenders to Borrower in the Chapter 11 Case, which fee shall be fully earned and due and payable on the Ratification Closing Date and which may be charged directly to the loan account of Borrower maintained by Agent or paid by the Borrower concurrently with the of the initial Loans, as provided under Section 9 of the Ratification Agreement.

7.    AMENDMENTS.

    7.1    Revolving Loans.  Section 2.1(a) of the Pre-Petition Credit Agreement is hereby amended and restated in its entirety as follows:

> "(a)    Subject to the terms and conditions set forth in this Credit Agreement, each Revolving Lender agrees (severally and not jointly) to make Revolving Loans to the Borrower at any time and from time to time during the term of this Agreement in an aggregate principal amount at any one time outstanding not to exceed the lesser of:  (i) such Revolving Lender's Revolving Commitment or (ii) such Revolving Lender's pro rata share of an amount equal to (X) the aggregate amount of outstanding Revolving Loans set forth in the Budget through the week in which any request by Borrower for a Revolving Loan is made, minus (Y) any Budget Reserves.  Within the foregoing limits and subject to the terms and conditions set forth in this Credit Agreement, the Borrower may borrow, prepay and reborrow Revolving Loans without premium or penalty."

    7.2    Rate of Interest.  Section 2.3(a) of the Pre-Petition Credit Agreement is hereby amended by deleting the first sentence thereof in its entirety and replacing it with the following:

> "Each Revolving Loan shall bear interest on the unpaid principal amount thereof from the date issued through the date such Revolving Loan is paid in full in cash (whether upon final maturity, by redemption, prepayment, acceleration or otherwise) at the Current Interest Rate."

    7.3    Interest Payments.  Section 2.3(b) of the Pre-Petition Credit Agreement is hereby amended by deleting clause (ii) thereof and replacing it with "(ii) [intentionally deleted]".

    7.4    Payments.  Section 2.4(c) of the Pre-Petition Credit Agreement is hereby amended by adding the following new subsection (v) at the end of such Section:

> "(v)    Notwithstanding anything to the contrary contained in this Agreement or any of the other Transaction Documents, Agent may, in its discretion, apply any such payments or proceeds first, to the Pre-Petition Revolving Obligations until such Pre-Petition Revolving Obligations are paid and satisfied in full and second, to the Post-Petition Obligations until such Post-Petition Obligations are paid and satisfied in full."

    7.5    Repayment of Revolving Loans.  The Pre-Petition Credit Agreement is hereby amended by inserting Section 2.5(e) as follows:

"(e)  **Repayment of Revolving Loans.**    Notwithstanding anything to the contrary in this Agreement, to the extent not previously paid in full in cash, all Revolving Loans shall be due and payable in full on the Revolving Loan Maturity Date, and may not be reborrowed thereafter."

**7.6**    Corporate Existence; Power and Authority.    Sections 4.1 and 4.2 of the Pre-Petition Credit Agreement are hereby amended by deleting the word "Each" at the beginning of the first and second sentences of Section 4.1 and at the beginning of first sentence of Section 4.2, and in each case inserting in replacement thereof the following: "Subject to any entry of any required orders of the Bankruptcy Court including, without limitation, the entry of the Interim Financing Order and the Permanent Financing Order, as applicable, each".

**7.7**    Litigation. Section 4.15 of the Pre-Petition Credit Agreement is hereby amended by deleting the word "Except" at the beginning of the first sentence thereof and inserting in replacement thereof the following: "Except for the Bankruptcy Events and except".

**7.8**    Compliance with Laws. Section 4.22 of the Pre-Petition Credit Agreement is hereby amended by deleting the word "Except" at the beginning of the third sentence thereof and inserting in replacement thereof the following:  "Subject to the entry of the Interim Financing Order and the Final Financing Order, as applicable, and except".

**7.9**    Material Contracts.  Section 4.40 of the Pre-Petition Credit Agreement is hereby amended by deleting such section in its entirety and replacing it with the following:

"4.40  Material Contracts.  Schedule 4.40 contains a true, correct and complete list of all the Material Contracts of each Credit Party and each of its Subsidiaries, and all such Material Contracts are in full force and effect and no defaults currently exist thereunder. Other than the Bankruptcy Events, the Borrower is not in breach or in default in any material respect of or under any Material Contract and has not received any notice of the intention of any other party thereto to terminate any Material Contract, except where such breach, default or termination has not had or could not reasonably be expected to have a Material Adverse Effect or would otherwise be stayed by the filing of the Chapter 11 Case."

**7.10**    Deliveries.  Section 5.1 of the Pre-Petition Credit Agreement is hereby amended by deleting subsection (d) thereof in its entirety and replacing it with the following:

"(d)  **Borrowing Base Certificates.**   Notwithstanding anything to the contrary in the Credit Agreement or other Transaction Documents, Borrower shall, at the Borrower's sole expense, by not later than 3:00 pm (Eastern Time) on the Tuesday of the first full week following the Petition Date and on each Tuesday thereafter, deliver to Agent (i) an updated Borrowing Base Certificate together with all supporting documents and schedules as the Agent

may request in its sole discretion from time to time, (ii) an accounts receivable aging report, a list of accounts payable (including an aging report of accounts payable), and an Inventory report, and (iii) a weekly analysis of the activity in the reserve accounts of Borrowers regarding Dilution Items, in each case as of the end of such month and in form satisfactory to the Agent."

**7.11**   Incurrence of Indebtedness.   Notwithstanding anything to the contrary contained in Section 5.5 of the Credit Agreement or any other provision of the Credit Agreement or any of the other Transaction Documents, the Borrower shall not, and shall not permit any Subsidiary, after the date hereof, to, create, incur, assume, guarantee, or otherwise become directly or indirectly, liable with respect to any Indebtedness (other than (a) Permitted Indebtedness existing as of the Petition Date, (b) Indebtedness evidenced by the Credit Agreement and the other Transaction Documents and (c) Permitted Indebtedness incurred after the Petition Date, provided, that, Borrower and any Subsidiary shall only incur such Permitted Indebtedness after the Petition Date (i) in accordance with the Budget and (ii) with the prior written consent of Agent (and no such consent shall be implied, from any other action, inaction or acquiescence by Agent or any Revolving Lender).

**7.12**   Existence of Liens.   Section 5.6 of the Pre-Petition Credit Agreement is hereby amended by deleting Section 5.6 in its entirety and substituting the following therefor:

"5.6   Existence of Liens.   The Credit Parties shall not, and none of the Credit Parties shall permit any of its Subsidiaries to, directly or indirectly, allow or suffer to exist any Liens, other than (a) Permitted Liens, (b) Liens securing the Obligations, (c) Allowed Professional Fees covered by the Carve-Out and (d) any existing Liens that are unenforceable as provided under the Bankruptcy Code."

**7.13**   Reserved.

**7.14**   Budget.   Section 5.13 of the Pre-Petition Credit Agreement is hereby amended by deleting such Section in its entirety.

**7.15**   Inventory & Equipment Covenants.   Article V of the Pre-Petition Credit Agreement is hereby amended by adding the following new Section 5.29 at the end of such Article:

"Section 5.29 Inventory and Equipment.   Borrower shall not remove any Inventory or equipment from the locations set forth or permitted herein, without the prior written consent of the Agent, except for sales of Inventory and equipment in the ordinary course of Borrower's business and except to move Inventory and equipment directly from one location set forth or permitted herein to another such location and except for Inventory and equipment

shipped from the manufacturer thereof to Borrower which is in transit to the locations set forth or permitted herein."

      7.16   <u>Compliance with Laws</u>.   Section 5.16 of the Pre-Petition Credit Agreement is hereby amended by deleting the word "Each" at the beginning of the first sentence thereof and inserting in replacement thereof the following:   "Except to the extent non-compliance is permitted under the Bankruptcy Code, none".

      7.17   <u>Events of Default</u>.  Section 7.1 of the Pre-Petition Credit Agreement is hereby amended as follows:

      (a)     Sections 7.1(a)(c), (d), (e), (n), and (o) of the Pre-Petition Credit Agreement are hereby amended by deleting each such subsection in its entirety and replacing it with "[intentionally deleted];".

      (b)     Section 7.1(u) of the Pre-Petition Credit Agreement is hereby amended by deleting the word "or" at the end thereof.

      (c)     Section 7.1(v) of the Pre-Petition Credit Agreement is hereby amended by inserting immediately at the beginning thereof the following phrase "other than the Bankruptcy Events,".

      (d)     Section 7.1 of the Pre-Petition Credit Agreement is hereby amended by adding the following clauses at the end thereof:

      "(w)  the occurrence of any condition or event which permits Agent and any Revolving Lenders to exercise any of the remedies set forth in the Financing Order, including, without limitation, any "Event of Default" (as defined in any Financing Order);

      (x)  the termination or non-renewal of the Transaction Documents as provided for in any Financing Order;

      (y)  Borrower suspends or discontinues all or any material part of its business, or is enjoined by any court or governmental agency from continuing to conduct all or any material part of its business, or a trustee or examiner with expanded powers is appointed for Borrower or any of its properties;

      (z)  any act, condition or event occurring after the Petition Date that, in Agent's sole discretion, has or could reasonably expect to have a Material Adverse Effect;

      (aa)  conversion of the Chapter 11 Case to a Chapter 7 case under the Bankruptcy Code;

(bb)  dismissal of the Chapter 11 Case or any subsequent Chapter 7 case either voluntarily or involuntarily;

(cc)  grant of a lien on or other interest in any property of Borrower, other than a Permitted Lien or a lien or encumbrance permitted by any Financing Order, which is superior to or ranks in parity with Agent's security interest in or lien upon the Collateral;

(dd)  the grant of an administrative expense claim in the Chapter 11 Case which is superior to or ranks in parity with the rights of the Agent (other than administrative expense claims permitted by any Financing Order or the Ratification Agreement);

(ee)  the failure of Borrower comply with any Financing Order or the Ratification Agreement, or any Financing Order shall be modified, reversed, revoked, remanded, stayed, rescinded, vacated or amended on appeal or by the Bankruptcy Court without the prior written consent of the Required Lenders;

(ff)   the appointment of a trustee pursuant to Sections 1104(a)(1) or 1104(a)(2) of the Bankruptcy Code;

(gg)  the appointment of an examiner with special powers pursuant to Section 1104(a) of the Bankruptcy Code;

(hh)  the filing of a plan of reorganization or liquidation by or on behalf of Borrower which does not provide for payment in full of all Obligations on the effective date thereof in accordance with the terms and conditions contained herein, unless otherwise consented to by the Agent and the Revolving Lenders;

(ii)   the confirmation of any plan of reorganization or liquidation in the Chapter 11 Case of Borrower which does not provide for payment in full of all Obligations on the effective date thereof in accordance with the terms and conditions contained herein, unless otherwise consented to by the Agent and the Revolving Lenders;

(jj)  the filing of a motion by Debtor that is not dismissed or denied within thirty (30) days after the date of filing such motion seeking, or the entry of any order permitting, recovery from any portion of the Collateral (or from Agent or any of the Revolving Lenders directly) any costs or expenses of preserving or disposing of the Collateral under section 506(c) or section 552(b) of the Bankruptcy Code (or otherwise); or

(kk)  any Material Budget Deviation, as defined in Section 5.3(d) of the Ratification Agreement."

**7.18** <u>Governing Law</u>.  Section 9.2 of the Pre-Petition Credit Agreement is hereby amended by deleting the first sentence thereof in its entirety and replacing it with the following:

> "All questions concerning the construction, validity, enforcement and interpretation of this Agreement and the other Transaction Documents (unless expressly provided to the contrary in another Transaction Document in respect of such other Transaction Document) shall be governed by (i) the laws of the State of New York and (ii) to the extent applicable, the Bankruptcy Code."

**7.19** <u>Jurisdiction</u>.  Section 9.2 of the Pre-Petition Credit Agreement is hereby amended by deleting the second sentence thereof in its entirety and replacing it with the following:

> "Borrower, Agent and each Revolving Lender irrevocably consent and submit to the non-exclusive jurisdiction of the Bankruptcy Court and the United States District Court for the Southern District of New York, and any appellate court from any thereof."

**8.**     <u>RELEASE</u>.

**8.1**     <u>Release of Pre-Petition Claims</u>.

(a)     Upon the earlier of (i) the entry of the Permanent Financing Order or (ii) the entry of an Order extending the term of the Interim Financing Order beyond thirty (30) calendar days after the date of the Interim Financing Order, in consideration of the agreements of Agent and Revolving Lenders contained herein and the making of any Revolving Loans by Agent and Revolving Lenders, Borrower, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, on behalf of itself and its respective successors, assigns, and other legal representatives, hereby absolutely, unconditionally and irrevocably releases, remises and forever discharges Agent, each Revolving Lender and their respective successors and assigns, and their present and former shareholders, affiliates, subsidiaries, divisions, predecessors, directors, officers, attorneys, employees and other representatives (Agent, each Revolving Lender and all such other parties being hereinafter referred to collectively as the "**Releasees**" and individually as a "**Releasee**"), of and from all demands, actions, causes of action, suits, covenants, contracts, controversies, agreements, promises, sums of money, accounts, bills, reckonings, damages and any and all other claims, counterclaims, defenses, rights of set-off, demands and liabilities whatsoever but, for the avoidance of doubt, excluding any claims or causes of action for gross negligence or willful misconduct (individually, a "**Pre-Petition Released Claim**" and collectively, "**Pre-Petition Released Claims**") of every name and nature, known or unknown, suspected or unsuspected, both at law and in equity, which Borrower, or any of its successors, assigns, or other legal representatives may now or hereafter own, hold, have or claim to have against the Releasees or any of them for, upon, or by reason of any nature, cause or thing whatsoever which arises at any time on or prior to the Ratification Closing Date, including, without limitation, for or on account of, or in relation

to, or in any way in connection with the Pre-Petition Credit Agreement, as amended and supplemented through the date hereof, and the other Transaction Documents.

(b)     Upon the earlier of (i) the entry of the Permanent Financing Order or (ii) the entry of an Order extending the term of the Interim Financing Order beyond thirty (30) calendar days after the date of the Interim Financing Order, Borrower, on behalf of itself and its successors, assigns, and other legal representatives, hereby absolutely, unconditionally and irrevocably, covenants and agrees with each Releasee that it will not sue (at law, in equity, in any regulatory proceeding or otherwise) any Releasee on the basis of any Pre-Petition Released Claim released, remised and discharged by Borrower pursuant to this Section 8.1. If Borrower violates the foregoing covenant, Borrower agrees to pay, in addition to such other damages as any Releasee may sustain as a result of such violation, all attorneys' fees and costs incurred by any Releasee as a result of such violation.

**8.2**     <u>Release of Post-Petition Claims</u>. Upon the payment in full of all of the Obligations, in consideration of the agreements of Agent and Lenders contained herein and the making of any Revolving Loans by Agent and Lenders, Borrower hereby covenants and agrees to execute and deliver in favor of Agent and Lenders a valid and binding termination and release agreement, in form and substance satisfactory to Agent. If Borrower violates such covenant, Borrower agrees to pay, in addition to such other damages as any Releasee may sustain as a result of such violation, all attorneys' fees and costs incurred by any Releasee as a result of such violation.

**8.3**     <u>Releases Generally</u>.

(a)     Borrower understands, acknowledges and agrees that the releases set forth above in Sections 8.1 and 8.2 hereof may be pleaded as a full and complete defense and may be used as a basis for an injunction against any action, suit or other proceeding which may be instituted, prosecuted or attempted in breach of the provisions of such releases.

(b)     Borrower agrees that no fact, event, circumstance, evidence or transaction which could now be asserted or which may hereafter be discovered shall affect in any manner the final and unconditional nature of the releases set forth in Section 8.1 hereof and, when made, Section 8.2 hereof.

**9.**     <u>CONDITIONS PRECEDENT</u>.

The amendments, representations and warranties, covenants, defaults and all other agreements and obligations contained in Sections 1 through 8 of the Ratification Agreement shall only become effective upon the satisfaction (or waiver) of all of the following conditions precedent (the time of such satisfaction (or waiver) referred to herein as the "**Ratification Closing Date**"):

**9.1**     as of the Petition Date, the Pre-Petition Transaction Documents shall not have been terminated;

**9.2**     Debtor shall have commenced a voluntary case under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware by no later

than September 16, 2016. Debtor shall have complied in full with the notice and other requirements of the Bankruptcy Code in a manner acceptable to Agent (and its counsel) in its sole discretion, with respect to the Interim Financing Order) and Agent shall have received such evidence thereof as it shall require in its sole discretion. All of the first day orders entered by the Bankruptcy Court at the time of the commencement of the Chapter 11 Case shall be in form and substance satisfactory to Agent in its sole discretion;

        **9.3**    no trustee or examiner with expanded powers shall have been appointed or designated with respect to Borrower, as Debtor and Debtor-in-Possession, or its respective business, properties and assets and no motion or proceeding shall be pending seeking such relief;

        **9.4**    the Interim Financing Order, in the form and substance acceptable to Agent, in all has been duly entered, is valid, subsisting and continuing and has not been vacated, reversed, or modified by any order of the Bankruptcy Court (other than as consented to by Agent) and is not subject to any pending appeal or stay;

        **9.5**    a cash management order amending and ratifying the cash management arrangements of Borrower on terms acceptable to Agent has been duly entered, is valid, subsisting and continuing and has not been vacated, reversed, or modified by any order of the Bankruptcy Court (other than as consented to by Agent) and is not subject to any pending appeal or stay;

        **9.6**    the execution and delivery of the Ratification Agreement to be delivered in connection herewith by Borrower in form and substance satisfactory to Agent;

        **9.7**    the implementation of the terms of the Ratification Agreement and the other Transaction Documents, as modified pursuant to the Ratification Agreement, all of which contains provisions, representations, warranties, covenants and Events of Default, as are satisfactory to Agent and its counsel;

        **9.8**    the receipt by Agent of the following documents, agreements, or other information: (a) the Advisor Engagement Letter;

        **9.9**    Borrower shall have complied in full with the notice and other requirements of the Bankruptcy Code and the applicable Bankruptcy Rules with respect to any relevant Financing Order in a manner prescribed by the Bankruptcy Code and the applicable Bankruptcy Rules;

        **9.10**    receipt by Agent, each in form and substance satisfactory to Agent, of (i) the initial Budget (it being understood and agreed that the Budget, as approved by the Agent and attached to the Ratification Agreement as Exhibit A, shall satisfy this condition), (ii) projected monthly balance sheets, income statements, statements of cash flows and availability of Borrower for the period through the end of the Credit Agreement, in each case as to the projections, with the results and assumptions set forth in all of such projections in form and substance satisfactory to Agent, and (iii) copies of satisfactory interim unaudited financial statements for each month ended since the last audited financial statements for which financial statements are available;

**9.11**    other than the voluntary commencement of the Chapter 11 Case, no material impairment of the priority of Agent's and Lenders' security interests in the Collateral shall have occurred from the date of the latest field examinations of Agent and Lenders to the Petition Date;

**9.12**    other than the Bankruptcy Events, no Material Adverse Effect shall have occurred since September 16, 2016;

**9.13**    none of the materials previously furnished to Agent by Borrower contain any material misstatements in, or omit to state, any material facts necessary to make the statements therein taken as a whole, in the light of the circumstances under which they were made, not misleading in any material respect;

**9.14**    Agent, for the benefit of itself and the other Lenders, shall hold perfected, first priority security interests in and liens upon the Collateral and Agent shall have received such evidence thereof as it requires; and

**9.15**    other than the Existing Defaults, no Default or Event of Default shall have occurred or be existing under any of the Transaction Documents, as modified pursuant hereto, and assumed by Borrower.

## 10.    ADDITIONAL CONDITIONS PRECEDENT TO ALL LOANS.

In addition to the satisfaction of the conditions precedent under Section 9 of the Ratification Agreement with respect to the effectiveness of the noted Sections of the Ratification Agreement and the satisfaction of the conditions precedent in Section 3.3 of the Credit Agreement with respect to all Loans and other financial accommodations available to Borrower, the following are conditions to Agent's and Revolving Lenders' obligation to extend further loans, advances or other financial accommodations to Borrower pursuant to the Credit Agreement:

**10.1**    with respect to further credit after expiration of the Interim Financing Order, on or before the expiration of the Interim Financing Order, the Bankruptcy Court shall have entered the Permanent Financing Order; neither Agent nor any Revolving Lender shall provide any Revolving Loans (or other financial accommodations) other than those authorized under the Interim Financing Order unless, on or before the expiration of the Interim Financing Order, the Permanent Financing Order shall have been entered, and there shall be no appeal or other contest with respect to either the Interim Financing Order or the Permanent Financing Order and the time to appeal to contest such order shall have expired;

**10.2**    requests for further credit shall be for purposes and in amounts in accordance with the Budget (subject to the variances permitted under Section 5.3(c) of the Ratification Agreement);

**10.3**    subject to the Financing Order, all fees and expenses required to be paid to the Agent and the Revolving Lenders pursuant to the Ratification Agreement and the Credit Agreement, as amended thereby, shall have been paid or shall be paid concurrently with the making of the Revolving Loans after the Ratification Closing Date; and

       **10.4**    other than the Existing Defaults, no Default or Event of Default shall have occurred or be existing under any of the Transaction Documents, as amended, supplemented or otherwise modified pursuant the Ratification Agreement and assumed by Borrower.

**11.**    <u>MISCELLANEOUS</u>.

       **11.1**    <u>Amendments and Waivers</u>.  Neither the Ratification Agreement nor any other instrument or document referred to herein or therein may be changed, waived, discharged or terminated orally, but only by an instrument in writing signed by the party against whom enforcement of the change, waiver, discharge or termination is sought.

       **11.2**    <u>Further Assurances</u>.  Borrower shall, at its expense, at any time or times duly execute and deliver, or shall use its best efforts to cause to be duly executed and delivered, such further agreements, instruments and documents, and do or use its best efforts to cause to be done such further acts as may be necessary or proper in Agent's opinion to evidence, perfect, maintain and enforce the security interests of Agent, and the priority thereof, in the Collateral and to otherwise effectuate the provisions or purposes of the Ratification Agreement, any of the other Transaction Documents or the Financing Order.  Upon the request of Agent, at any time and from time to time, Borrower shall, at its cost and expense, do, make, execute, deliver and record, register or file updates to the filings of Agent and Lenders with respect to the Intellectual Property with the United States Patent and Trademark Office or the United States Copyright Office, the financing statements, and other instruments, acts, pledges, assignments and transfers (or use its best efforts to cause the same to be done) and will deliver to Agent and Lenders such instruments evidencing items of Collateral as may be requested by Agent.

       **11.3**    <u>Headings</u>.  The headings used herein are for convenience only and do not constitute matters to be considered in interpreting the Ratification Agreement.

       **11.4**    <u>Counterparts</u>.  The Ratification Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original, but all of which shall together constitute one and the same agreement.  In making proof of the Ratification Agreement, it shall not be necessary to produce or account for more than one counterpart thereof signed by each of the parties hereto.  Delivery of an executed counterpart of the Ratification Agreement by telefacsimile or other means of electronic transmission shall have the same force and effect as delivery of an original executed counterpart of the Ratification Agreement.  Any party delivering an executed counterpart of the Ratification Agreement by telefacsimile or other means of electronic transmission also shall deliver an original executed counterpart of the Ratification Agreement, but the failure to deliver an original executed counterpart shall not affect the validity, enforceability, and binding effect of the Ratification Agreement as to such party or any other party.

       **11.5**    <u>Additional Events of Default</u>.  The parties hereto acknowledge, confirm and agree that the failure of Borrower to comply with any of the covenants, conditions and agreements contained herein or in any other agreement, document or instrument at any time executed by Borrower in connection herewith shall constitute an Event of Default under the Transaction Documents.

**11.6** <u>Costs and Expenses</u>.    Subject to the terms of the Financing Order, Borrower shall pay to Agent and any Revolving Lender on demand all costs and expenses that Agent or any Revolving Lender pays or incurs in connection with the negotiation, preparation, consummation, administration, enforcement, and termination of the Ratification Agreement and the other Transaction Documents and the Financing Order.  Subject to the terms of the Financing Order, the foregoing shall not be construed to limit any other provisions of the Transaction Documents regarding costs and expenses to be paid by Borrower.  Subject to the terms of the Financing Order, all sums provided for in this Section 11.6 shall be part of the Obligations, shall be payable on demand, and shall accrue interest after demand for payment thereof at the highest rate of interest then payable under the Transaction Documents.  Agent is hereby irrevocably authorized to charge any amounts payable hereunder directly to any of the account(s) maintained by Agent with respect to Borrower.

**11.7** <u>Effectiveness</u>.  The Ratification Agreement shall become effective upon the execution hereof by the Borrower, Agent and Lenders and the entry of the Interim Financing Order.

[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, the parties hereto have caused this Ratification Agreement to be duly executed as of the day and year first above written.

BORROWER:                    **NJOY, INC.**

By: _____
Name: Jeffrey Weiss
Title:   President and General Counsel


AGENT:                       **FLFC LENDING CO.,**
                             as Agent and Revolving Lender

By: _____
Name: David Heidecorn
Title:   Authorized Signatory

IN WITNESS WHEREOF, the parties hereto have caused this Ratification Agreement to be duly executed as of the day and year first above written.

BORROWER:                                    **NJOY, INC.**

                                             By:  _____
                                             Name: Jeffrey Weiss
                                             Title:   President and General Counsel

AGENT:                                       **FLFC LENDING CO.,**
                                             as Agent and Revolving Lender

                                             By:  _____
                                             Name: David Heidecorn
                                             Title:   Authorized Signatory

EXHIBIT A
to
RATIFICATION AND AMENDMENT AGREEMENT

**Budget**

(see attached)

**NJOY Inc.**
**Bankruptcy Scenario - Availability and Revolving Loan**
*(amounts in thousands)*

September 16, 2016

| | Pre 1 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | Weeks 1 - 13 Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Week Ending** | 18-Sep | 25-Sep | 2-Oct | 9-Oct | 16-Oct | 23-Oct | 30-Oct | 6-Nov | 13-Nov | 20-Nov | 27-Nov | 4-Dec | 11-Dec | 18-Dec | |
| Opening FLFC loan balance | 3,008 | 3,283 | 4,283 | 4,660 | 5,188 | 5,471 | 5,562 | 5,602 | 5,709 | 5,795 | 5,789 | 5,791 | 5,779 | 5,787 | 3,283 |
| Net cash collections | (327) | (163) | (56) | (73) | (295) | (702) | (312) | (325) | (335) | (347) | (312) | (310) | (310) | (310) | (3,849) |
| Revolving Loans | 602 | 1,163 | 433 | 601 | 578 | 793 | 352 | 432 | 421 | 340 | 314 | 298 | 318 | 521 | 6,564 |
| Ending FLFC loan balance | 3,283 | 4,283 | 4,660 | 5,188 | 5,471 | 5,562 | 5,602 | 5,709 | 5,795 | 5,789 | 5,791 | 5,779 | 5,787 | 5,998 | 5,998 |
| **Revolving Loan details:** | | | | | | | | | | | | | | | |
| Inventory | 380 | 360 | 76 | 122 | 186 | 118 | 93 | 128 | 33 | 44 | 60 | 61 | 61 | 28 | 1,399 |
| Freight In | 152 | 58 | 58 | 30 | 96 | 45 | 13 | 13 | 19 | 5 | 7 | 9 | 9 | 9 | 405 |
| Fulfillment | 50 | 50 | 25 | 25 | 25 | 23 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 350 |
| Call Center | 12 | 12 | | | | | | | | | | | | | 36 |
| Coupon Processor | 29 | | | | | | | | | | | | | | 64 |
| Customer Incentive & WG Reset Payments | 50 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 408 |
| Customs | 13 | | | 100 | 20 | | 15 | 20 | 10 | 17 | 10 | 20 | 10 | | 104 |
| Digital Marketing | 20 | 7 | 20 | | | | | 26 | | 20 | 10 | | | | 120 |
| Employee Expenses | | 7 | | 26 | | 57 | | | | | | | | | 85 |
| Employee Insurance | | 20 | | 13 | | | 33 | | | | | | | | 64 |
| Information Technology | 20 | | 26 | | | | | | | 10 | 13 | 20 | 10 | | 119 |
| HNCA expenses | | 50 | | | | | | | | | | | | | 50 |
| Insurance | 77 | | | | 77 | | | 44 | 77 | | | | | 18 | 249 |
| Loan Fees & Cash Interest | 10 | 11 | 12 | 13 | 14 | 14 | 14 | 7 | 15 | 15 | 15 | 15 | 15 | 15 | 177 |
| Other | 13 | 7 | 7 | 7 | 7 | 7 | 7 | 7 | 7 | 7 | 7 | 7 | 7 | 7 | 574 |
| Payroll | 50 | 50 | 50 | 40 | 46 | 44 | 44 | 41 | 41 | 41 | 41 | 41 | 41 | 41 | 574 |
| Payroll - Sales Bonus | | | | | | | | 12 | 36 | | | | | 30 | 66 |
| PTO Expenses | | 40 | | 40 | | | | | 40 | | | | 40 | | 120 |
| Product Testing | 40 | | | 41 | 20 | 25 | 25 | 25 | | 25 | | 23 | | | 160 |
| Rent & Utilities | | 10 | 41 | 12 | 15 | 73 | 16 | 16 | 17 | 17 | 16 | | 16 | 108 | 159 |
| Royalties | 28 | | | | | 75 | | | | | | | | | 254 |
| Sales Tax | 40 | 8 | 8 | 8 | 8 | 13 | 13 | 13 | 13 | 8 | 35 | 23 | 8 | 34 | 173 |
| Temp staff | 40 | 8 | 8 | 8 | | | | | | | | | 8 | 35 | 124 |
| Warehouse | 35 | | | 40 | | | | | 25 | 25 | | | | 8 | 114 |
| Website/Marketing | | | 35 | 35 | 35 | | 35 | | | | | | | 9 | 165 |
| **Operating Expenses** | 1,042 | 378 | 546 | 523 | 643 | 302 | 383 | 362 | 291 | 265 | 249 | 274 | 274 | 379 | 5,636 |
| Creditors Committee and Related Expenses | | | | | | | | | | | | | | | 165 |
| Investment Banking Fees | 50 | | | | 50 | | | | | | | | | | 50 |
| KEIP program | | | | | 50 | | | | | | | | | | 50 |
| Financial Advisor | | | | | | | | | | | | | | 100 | 100 |
| Lawyer - Bank | | 6 | 6 | 6 | 6 | 6 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | | 55 |
| Lawyer - NJOY | 25 | 25 | 25 | 25 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 15 | 275 |
| Claims agent | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 5 | 125 |
| DTP Fee | 12 | | | | | | | | | | | | | | 12 |
| RSI | 60 | | | | | | | | | | | | | | 60 |
| US Trustee Fees | 14 | 14 | 14 | 14 | 14 | 14 | 14 | 14 | 14 | 14 | 14 | 14 | 14 | 9 | 177 |
| **Bankruptcy Related Expenses** | 121 | 55 | 55 | 55 | 150 | 50 | 49 | 59 | 49 | 49 | 49 | 44 | 44 | 142 | 927 |
| **Revolving Loan Grand Total** | 1,163 | 433 | 601 | 578 | 793 | 352 | 432 | 421 | 340 | 314 | 298 | 318 | 521 | | 6,564 |