**THE UNITED BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>NJOY, INC.,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 16-12076 (CSS)<br><br>**Objection Deadline: March 23, 2017 at 4:00 p.m. ET**<br>**Hearing Date:  April 11, 2017 at 10:00 a.m. ET** |

**MOTION OF OFFICIAL COMMITTEE OF UNSECURED
CREDITORS FOR AUTHORITY TO PROSECUTE CERTAIN
CLAIMS OF THE DEBTOR'S ESTATE**

The Official Committee of Unsecured Creditors (the "Committee") appointed in the case of the above-captioned debtor and debtor in possession (the "Debtor"), by and through its counsel, hereby moves this Court (the "Motion") for the entry of an order authorizing the Committee to prosecute certain claims of the Debtor's estate, as more fully described below.

**PRELIMINARY STATEMENT**

1.     In accordance with its fiduciary duties to unsecured creditors in this case, following its appointment, the Committee began an investigation of claims that the Debtor's estate may hold against third parties.  As a result of this investigation, which is ongoing, the Committee has identified certain potential claims against certain parties receiving prepetition funds as well as potential claims against the Debtor's director.  These viable claims stem from prepetition transactions involving the Debtor, various creditors of the Debtor and certain directors.  Taken together, these transactions made it impossible for the Debtor to be profitable and continue operating in the long term.  In order to preserve its rights, the Committee, with the

---

[1] The last four digits of the Debtor's federal tax identification number are 6013.  The Debtor's mailing address and principal place of business is 15211 N. Kierland Blvd., Suite 200, Scottsdale, Arizona 85254.

ACTIVE\44551914.v2-3/8/17

consent of the Debtor, files this Motion seeking standing to bring claims of the Debtor's estate to undo and remedy the harms caused by the pre-petition actions of the Debtor.

## BACKGROUND

2.      On September 16, 2016, (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code").

3.      On the Petition Date, the Debtor filed the *Declaration of Jeffrey Weiss, Interim President and General Counsel, In Support of First Day Motions* (the "Weiss Declaration") [D.I. 4].

4.      Since the Petition Date, the Debtor continues to operate its business and manage its properties as debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      No trustee or examiner has been appointed or requested in the Debtor's chapter 11 case.

6.      On September 28, 2016, the United States Trustee appointed the Committee as the statutory fiduciary for the Debtor's unsecured creditors pursuant to section 1102(a)(1) of the Bankruptcy Code [D.I. 64].

7.      On October 26, 2016, an order approving Fox Rothschild LLP as counsel to the Committee was entered, *nunc pro tunc* to September 27, 2016 [D.I. 196].

8.      According to the Debtor, it is the leading independent manufacturer and distributor of electronic nicotine delivery systems (ENDS)- primarily e-cigarettes and vaping products – in the United States, selling its products directly to major wholesalers, distributors and retailers.  Weiss *Declaration*, ¶ 8.

9. On September 20, 2016, Debtor filed its Motion For Sale of Property Free and Clear of Liens Pursuant to §363(f) (the "Sale Motion") [D.I. 18]. The Sale Motion sought to sell substantially all of Debtor's assets.

10. After negotiations with a number of parties, and an auction held on November 2, 2016 (the "Auction"), NJOY Acquisition LLC was deemed the successful bidder [D.I. 218].

11. On November 15, 2016, the Asset Purchase Agreement between the Debtor and NJOY Acquisition (the "APA") and the Sale to NJOY Acquisition was approved by the Court [D.I. 259].

12. Closing on the Sale took place on February 16, 2017 [D.I. 399].

13. Pursuant to the APA, the Debtor retained certain assets that were not sold to NJOY Acquisition. Such assets included certain bankruptcy avoidance actions (the "Avoidance Action Claims") and director and officer liability claims (the "D&O Claims" and with the Avoidance Action Claims, the "Retained Claims") as set forth more fully in Sections 2.2(e) and (f) of the APA.

14. In its capacity as a fiduciary to unsecured creditors of the Debtor's estate, the Committee is in the process of investigating, on an on-going basis, the Retained Claims the Debtor's estate holds against third parties and identifying certain Retained Claims that appear meritorious.

15. The Retained Claims are premised upon causes of action that include, but are not limited to, the following: (i) preferential transfer and fraudulent conveyance under Sections 544, 547 and 548 of the Bankruptcy Code and their state law equivalents; and (ii) breach of fiduciary duties (good faith, care and loyalty). Additional causes of action may become known as the Committee's investigation continues.

ACTIVE\44551914.v2-3/8/17

16. The Debtor has concluded that it will not prosecute the Retained Claims because some of the Retained Claims are against its officers and directors.

17. Because the Committee arguably does not have standing to bring the Retained Claims on its own absent a Court order, the Committee has sought and received the Debtor's consent to initiating, filing, prosecuting, litigating to judgment and/or settling the Retained Claims on behalf of the estate, and now seeks an Order of this Court granting the Committee standing to prosecute the Retained Claims. Attached hereto as **Exhibit A** is the Stipulation between the Debtor and the Committee granting the Committee the authority to prosecute the Retained Claims (the "Stipulation").

## JURISDICTION AND VENUE

18. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of this Motion is a core proceeding pursuant to 28 U.S.C. §157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

19. The statutory predicates for the relief requested in this Motion are sections 1103(c)(5) and 1109(b) of the Bankruptcy Code.

## RELIEF REQUESTED

20. By this Motion, the Committee seeks the entry of an Order pursuant to sections 1103(c)(5) and 1109(b) of the Bankruptcy Code for authority to prosecute the Retained Claims on behalf of the Debtor's estate.

## **LEGAL ARGUMENT**

21. The Committee should be authorized to prosecute an action or actions on behalf of the Debtor's estate to pursue state and/or federal causes of action based on breach of fiduciary duty and other causes of action identified above. While the Bankruptcy Code does not expressly confer power on creditors' committees to pursue claims on behalf of a debtor's estate, the Third Circuit, in *In re Cybergenics Corp.* held that a bankruptcy court may authorize a party in interest, such as a creditors' committee, to pursue litigation on behalf of the estate in the debtor's stead when the debtor fails or refuses to do so. 330 F.3d 548, 568 (3d Cir. 2003); *see also* 7 Collier on Bankruptcy, ¶¶1109.05 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) (hereinafter "Collier").

22. This authority stems from sections 1103(c)(5), 1109(b) and 105(a) of the Bankruptcy Code, and ensures that where the debtor-in-possession unreasonably fails to pursue a claim for the benefit of the estate, or cannot do so effectively because of conflicts of interest, the creditors' committee will fill its shoes and prosecute the claim as the representative of the estate. *See Cybergenics*, 330 F.3d at 577; *see also In re Caldor Corp.*, 303 F.3d 161, 166 n.2 (2d Cir. 2002); *In re Commodore Int'l Ltd.*, 262 F.3d 96, 100 (2d Cir. 2001); *Fogel v. Zell*, 221 F.3d 955, 966 (7th Cir. 2000); *In re Bumper Sales Inc.*, 907 F.2d 1430, 1433-34 (4th Cir. 1990); *Louisiana World Exposition v. Federal Ins. Co.*, 858 F.2d 233, 247 (5th Cir. 1988).

23. A debtor is obligated to maximize the value of its estate for the benefit of its creditors. *See Commodity Futures Trading Comm'n v. Weintraub,* 471 U.S. 343, 352 (1985) ("The trustee is accountable for all property received, and has the duty to maximize the value of the estate.") (internal citations and quotation omitted). Accordingly, a debtor is duty bound to pursue claims and defenses that will increase the value of its estate. *See, e.g., Commodore Intl,* 262 F.3d at 99 ("[The debtor-in-possession] has an obligation to pursue all actions that are in the

5
ACTIVE\44551914.v2-3/8/17

best interests of creditors and the estate.") *(citing In re Spaulding Composites Co.,* 207 B.R. 899, 904 (B.A.P. 9th Cir. 1997)); *Louisiana World,* 858 F.2d at 249 ("If a valid -- and potentially profitable -- cause of action exists . . . which the debtor-in-possession may assert on behalf of the corporation, *all* creditors are harmed when the debtor-in-possession refuses to pursue it. The value of the estate is not maximized and the ultimate recovery of all creditors is diminished.") (emphasis in original).

24. Where a debtor is unable or unwilling to fulfill its statutory obligation to maximize the value of its estate, "[t]he practice of authorizing the prosecution of actions on behalf of an estate by committees, . . . upon a showing that such is in the interests of the estate, is one of long standing, and nearly universally recognized." *In re Adelphia Commc'ns Corp.,* 330 B.R. 364, 373 (Bankr. S.D.N.Y. 2005) (citations omitted). This "provides creditors and other stakeholders with the comfort that potentially valuable (and sometimes critical) claims on behalf of the estate will be prosecuted -- without requiring bankruptcy judges to . . . resort[] to much more draconian or ineffective mechanisms to ensure the prosecution of those claims, with the destruction to going concern value and creditor recoveries that would frequently be the result." *Id.* Indeed, "[T]he primary purpose of the [creditors'] committee is to represent the interests of all general unsecured creditors and to maximize distribution to them." *In re Life Serv. Sys., Inc.*, 279 B.R. 504, 510 (Bankr. W.D. Pa. 2002), *rev'd on other grounds*, 327 B.R. 561 (W.D. Pa. 2005).

25. Thus, this Court has authority under the Bankruptcy Code to designate the Committee as the estate representative for purposes of prosecuting the Retained Claims, which belong to the estate and to individual creditors that are enforceable derivatively by the estate. *See Cybergenics*, 330 F.3d at 566-68.

26. Ample reason exists here to delegate authority for framing and prosecuting the Retained Claims to the Committee. First, the Debtor possesses actual and potential conflicts of

6

interest regarding the Retained Claims and has made clear that it will not prosecute them. Further, the Debtor has recognized its conflicts and consented to standing for the Committee to bring the Retained Claims. [*See* Stipulation].

27. The Third Circuit has not established any rigid test for determining whether a committee should be authorized to pursue a particular claim. Ultimately, the issue is whether such an authorization would "effect the result the Code was designed to obtain," *i.e.,* maximizing the value of the estate and promoting its recovery of wrongfully or fraudulently transferred property so that creditors can recover their claims against it. *Cybergenics,* 330 F.3d at 568-69. To make the judgment necessary to achieve that result, "a generally-accepted test has developed through a series of cases to determine whether an action may be maintained." *In re G-I Holdings, Inc.,* 313 B.R. 612, 628 (Bankr. D.N.J. 2004), *vacated in part on other grounds,* 2006 U.S. Dist. LEXIS 45510 (D.N.J. June 21, 2005) (citing 7 **Collier on Bankruptcy** 1103.05[6][a]. That test has embodied various forms, but generally, the factors are similar. *See In re iPCS, Inc.,* 297 B.R. 283, 290 (Bankr. N.D. Ga. 2003) ("The courts that have considered the question of whether to allow a party to exercise derivative standing have crafted a variety of tests, most of which result in consideration of the same factors.").

28. A committee may be granted standing to commence an action on behalf of the debtor where: "1) a demand has been made upon the statutorily authorized party to take action; 2) the demand is declined; 3) a colorable claim that would benefit the estate if successful exists, based on a cost-benefit analysis performed by the court; and 4) the inaction is an abuse of discretion *(i.e.,* unjustified) in light of the debtor-in-Possession's duties in a Chapter 11 case." *G-I Holdings,* 313 B.R. at 628 *(citing Canadian Pac. Forest Prods. Ltd. v. J. D. Irving, Ltd. (In re Gibson Group, Inc.),* 66 F.3d 1436, 1446 (6th Cir. 1995). *See also In re STN Enters.,* 779 F.2d

7

901, 905 (2d Cir. 1985) (bankruptcy court's approval of a committee's prosecution of litigation on behalf of a debtor that failed to pursue the litigation is appropriate when the committee presents a colorable claim for relief that, upon appropriate proof, would support recovery, and the litigation is likely to benefit the debtor's estate); *In re Yes! Ent. Corp. (Infinity Investors Ltd. v. Kingsborough),* 316 B.R. 141, 145 (Bankr. D. Del. 2004).

29. "[T]he overall 'fairness' concept of bankruptcy laws mandates that the debtor's transactions should not pass without examination." *In re America's Hobby Ctr.,* 223 B.R. 275, 281 (Bankr. S.D.N.Y. 1998) (quotation omitted). Thus, it has long been the case that "the vast majority of bankruptcy court decisions have authorized Committees to institute actions for reluctant DIPs[.]" *In re Nicolet, Inc.,* 80 B.R. 733, 738 (Bankr. E.D. Pa. 1987). The liberality of the cases granting such authority has led one bankruptcy court to conclude that the Third Circuit would "determine that a Committee could maintain an action on behalf of a DIP as long as the claim had *any* merit and the DIP was, *for any reason at all or for no reason,* failing to maintain the action in prompt fashion." *Nicolet,* 80 B.R. at 738 (emphasis added).

30. The Retained Claims are against insiders of the Debtor, among others, and therefore it is obvious that, at least with respect to the D&O Claims, the Debtor has a conflict of interest and would not bring an action against the Debtor's directors or officers.

31. It is necessary and beneficial to the Debtor's bankruptcy estate that the Retained Claims be pursued at this time to ensure that the Debtor's bankruptcy case is fairly and efficiently resolved. Further, the Committee anticipates that, pursuant to a confirmed liquidating plan, the payments to the unsecured creditors will come from the proceeds of the litigation of the Retained Claims.

32. As set forth above, the Committee seeks authority to pursue a number of colorable claims to recover significant value for the estates. The benefits of litigating the Retained Claims amply justifies their cost.

33. Finally, the Committee is best suited to undertake pursuit of the Retained Claims because its advisors have become familiar with the Debtor's business, as well as the facts and circumstances that gave rise to the Retained Claims. It will clearly be more cost-effective for the Committee to pursue the litigation against the Defendants rather than a trustee or any other party. *See Tenn. Valley Steel Corp.,* 183 B.R. at 807 (noting that the Committee is the real party-in-interest with the unsecured creditors being motivated to initiate and pursue this matter by the opportunity to share in the proceeds). Accordingly, this Court can and should authorize the Committee, as the representative of the Debtor's estate, to pursue the Retained Claims and all other appropriate claims against the Defendants. The Court need not and cannot, on this standing Motion, decide the ultimate merits of the proposed Claims. The question now is simply whether the Committee should be allowed to preserve and pursue these claims in the face of the conflict Debtors' management would have in pursuing those claims. Accordingly, the Committee's Motion should be granted.

## NOTICE

34. Notice of this Motion has been provided to (a) counsel for the Debtor; (b) the Office of the United States Trustee; (c) all creditors; and (d) all parties requesting notice pursuant to Fed. R. Bankr. P. 2002.

WHEREFORE, the Committee respectfully requests that the Court: (i) authorize and grant standing to the Committee to pursue the Retained Claims on behalf of the Debtor's estate and (ii) grant the Committee such other and further relief as the Court deems just and appropriate.

Dated: March 9, 2017

FOX ROTHSCHILD LLP

By: */s/ L. John Bird*
L. John Bird (DE No. 5310)
919 North Market Street, Suite 300
Wilmington, DE  19801
Telephone:  (302) 654-7444
Facsimile:  (302) 656-8920

-and-

Martha B. Chovanes
2000 Market Street, 20th Floor
Philadelphia, PA 19103-3222
Telephone:  (215) 299-2019
Facsimile:  (215) 299-2150
mchovanes@foxrothschild.com

and

Michael A. Sweet, Esquire
345 California Street, Suite 2200
San Francisco, CA 94104-2670
Telephone:  (415) 364-5540
Facsimile:  (415) 391-4436
msweet@foxrothschild.com

*Counsel to the Official Committee of Unsecured Creditors*